**APPEAL**

# U.S. Bankruptcy Court
## Eastern District of Pennsylvania (Philadelphia)
### Adversary Proceeding #: 18−00137−mdc

*Assigned to:* Chief Judge Magdeline D. Coleman
*Lead BK Case:* 18−13098
*Lead BK Title:* Lyndel Toppin
*Lead BK Chapter:* 13
*Demand:*
  *Nature[s] of Suit:*  91 Declaratory judgment
                  72 Injunctive relief −
                     other

*Date Filed:* 06/11/18

### *Plaintiff*
————————————————

**Lyndel Toppin**
146 S. 62nd Street
Philadelphia, PA 19145
SSN / ITIN: xxx−xx−2550

represented by **STEPHEN MATTHEW DUNNE**
Dunne Law Offices, P.C.
1515 Market Street
Suite 1200
Philadelphia, PA 19102
U.S.A.
215−551−7109
Fax : 215−525−9721
Email: bestcasestephen@gmail.com

**PREDRAG FILIPOVIC**
I Fight 4 Justice
1735 Market Street
Ste. 3750
Philadelphia, PA 19103
267 265 0520
Email: pfesq@ifight4justice.com
*TERMINATED: 06/18/2019*

**MEGAN N. HARPER**
City of Philadelphia − Law/Revenue Dept.
1401 JFK Blvd.
Room 580
Philadelphia, PA 19102
215 686 0503
Email: megan.harper@phila.gov
*TERMINATED: 02/14/2019*

**DAVID M. OFFEN**
The Curtis Center
601 Walnut Street
Suite 160 West
Philadelphia, PA 19106
(215) 625−9600
Email: dmo160west@gmail.com
*TERMINATED: 02/14/2019*

1

V.

*Defendant*
————————————————
**Jewell Williams**
Sheriff of the City of Philadelphia
Land Title Building
Fifth Floor
100 South Broad Street
Philadelphia, PA 19110

represented by **MEGHAN ANNETTE BYRNES**
City of Philadelphia
1515 Arch Street
Ste 17−151
Philadelphia, PA 19102
215−683−5011
Email: meghan.byrnes@phila.gov

**JOSHUA DOMER**
City of Philadelphia Law Department
1401 JFK Blvd
5th Floor
Philadelphia, PA 19102
215 686 0519
Email: joshua.domer@phila.gov

**MEGAN N. HARPER**
(See above for address)

*Defendant*
————————————————
**Abdeldayem Hassan**
309 Barker Avenue
Lansdowne, PA 19050
*aka* **Abdeldyem Hassan**

represented by **STEPHEN MATTHEW DUNNE**
(See above for address)
*TERMINATED: 02/14/2019*

**DAVID M. OFFEN**
(See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 01/17/2020 | | 88 | Document in re: *Pretrial Disclosures* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin. (DUNNE, STEPHEN) (Entered: 01/17/2020) |
| 02/05/2020 | | 105 | Response to Motion for Summary Judgment filed by Defendant Jewell Williams Filed by Lyndel Toppin (related document(s)71). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E # 6 Exhibit F # 7 Exhibit G # 8 Exhibit H # 9 Exhibit I # 10 Exhibit J # 11 Exhibit K # 12 Exhibit L # 13 Exhibit M # 14 Exhibit N # 15 Exhibit O) (DUNNE, STEPHEN) (Entered: 02/05/2020) |
| 02/14/2020 | | 112 | Brief *Reply Brief in Support of Summary Judgment* Filed by MEGAN N. HARPER on behalf of Jewell Williams (related document(s)71). (Attachments: # 1 Exhibit A − Hassan Dep. # 2 Service List) (HARPER, MEGAN) (Entered: 02/14/2020) |
| 03/12/2020 | | 122 | Affidavit Re: *Sheriffs Efforts to Produce Employee Responsive to the Courts Order* Filed by JOSHUA DOMER on behalf of Jewell Williams (related document(s)111). (DOMER, JOSHUA) (Entered: 03/12/2020) |
| 04/06/2020 | | 126 | Supplemental Memorandum in Support of *Motion for Summary Judgment* Filed by MEGAN N. HARPER on behalf of Jewell Williams (related document(s)71). (Attachments: # 1 Exhibit A # 2 Service List) |

| | | | |
|---|---|---|---|
| | | | (HARPER, MEGAN) (Entered: 04/06/2020) |
| 04/06/2020 | | <u>127</u> | Supplemental Memorandum in Opposition to *Motion for Summary Judgment* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin (related document(s)<u>71</u>). (DUNNE, STEPHEN) (Entered: 04/06/2020) |
| 06/30/2020 | | <u>128</u> | Order Governing Procedures At Trial Conducted Remotely By Videoconference on July 17,2020 2 10:30 A.M. (J., Christina) (Entered: 06/30/2020) |
| 07/14/2020 | | <u>137</u> | Trial (related document(s)<u>1</u>)re−scheduled for 8/21/2020 at 10:30 AM at nix2 − Courtroom #2. (G., Eileen) (Entered: 07/14/2020) |
| 07/29/2020 | | <u>140</u> | Order Governing Procedures at Trial Conducted Remotely by Video Conference . (D., Virginia) (Entered: 07/29/2020) |
| 08/17/2020 | | <u>147</u> | Sheriff of the City of Philadelphia's Remote Witness and Exhibit List in re: Filed by MEGAN N. HARPER on behalf of Jewell Williams (related document(s)<u>140</u>). (HARPER, MEGAN) **Modified on 8/18/2020 to add the words "Sheriff of the City of Philadelphia's Remote Witness and Exhibit List" to reflect the PDF**(D., Virginia). (Entered: 08/17/2020) |
| 08/17/2020 | | <u>148</u> | Plaintiff's Remote Witness List Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin (related document(s)<u>140</u>). (DUNNE, STEPHEN) Modified on 8/18/2020 (D., Virginia). (Entered: 08/17/2020) |
| 08/21/2020 | | 153 | Evidentiary Trial Held and Concluded (related document(s),<u>137</u>). Defendents's counsel shall order the Transcript within 30 days weeks; 2 weeks after response to be filed; 2 weeks after Plaintiff shall respond; to be held Under Advisement (G., Eileen) (Entered: 08/24/2020) |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA and | : | |
| ABDELDAYEM HASSAN a/k/a | : | |
| ABDELDYEM HASSAN, | : | |
| Defendants. | : | |

**PRETRIAL DISCLOSURES OF LYNDELL TOPPIN, PLAINTIFF, AS
REQUIRED BY <u>FED. R. CIV. P. 26(a)(3)</u>**

1. Pretrial disclosures pursuant to Rule 26(a)(3)(A)(i):

a. Witnesses the Plaintiff reserves the right to call:

Lieutenant Sean Thornton

Philadelphia Sheriff's Office

Civil Enforcement/ Investigations Units,

Monta Guess, Inspector (same Unit)

100 South Broad Street, 5th Floor

Philadelphia, PA 19110

Deputy Jetaria Taylor

Witnesses the Sheriff may call if the need arises:

Abdeldayem Hassan

309 Barker Avenue

Lansdowne, PA 19050

Barrington Whyte

146 S. 62nd Street

Philadelphia, PA 19139

Lyndel Toppin

146 S. 62nd Street

Philadelphia, PA 19139

Custodian of Records, Office of Judicial Records

City Hall Philadelphia, PA 19107

Custodian of Records, Philadelphia Sheriff's Office

100 South Broad Street, 5th Floor

Philadelphia, PA 19110

David Offen, Esquire

Mr. Offen's contact information available on the docket of this action.


The Plaintiff reserves the right to call any witnesses identified by in their pretrial

disclosure.


2. Pretrial Disclosures pursuant to Rule 26(a)(3)(A)(ii):

Plaiintiff reserves the right, to present the deposition testimony of Abdeldayem Hassan or the
deposition testimony of any of the Sheriff's deponents ( Taylor, Thorton, Guess, and others),
should either witness fail to appear at the time of trial, or for impeachment.

3. Pretrial disclosures pursuant to Rule 26(a)(3)(A)(iii):

a. Documents the Plaintiff expects to offer:

i. Writ of Possession maintained by the Sheriff's Office.

ii. Fax of Notice of Bankruptcy dated May 08, 2018.

iii. Sheriff's Return of Service for Court of Common Pleas Docket No.

1504T0192.

iv. Service Event Report dated May 10, 2018.

v. Fax of Notice of Bankruptcy dated June 07, 2018.

vi. Record from the Sheriff's log book for possessions/evictions listing

the property 146 S. 62nd Street, Philadelphia, PA 19139.

vii. Service Event Report dated June 25, 2018

b. Documents the Sheriff may offer if the need arises:

i. Philadelphia Court of Common Pleas Docket Report No. 1504T0192.

ii. Sheriff's Deed for 146 S 62nd Street.

iii. Philadelphia Court of Common Pleas Docket Report No. 180103400.

iv. Praecipe for Issuance of Writ of Possession and Writ of Possession.

v. All pleadings, exhibits, and discovery disclosures from the Plaintiff, the

Sheriff of the City of Philadelphia, and Abdeldayem Hassan, including all deposition exhibits and the exhibits attached to the Motion for Judgment on Pleadings and all other motions, and all documents exchanged in discovery among parties, including those that are matter of public record.


Dated:  January 17, 2020


By: /s/ *Predrag Filipovic*          BY: /s/ *Stephen M. Dunne*

**Predrag Filipovic, Esquire**        **Stephen M. Dunne, Esquire**

1735 Market St., Suite 3750          1515 Market Street, Suite. 1200

Philadelphia, PA 19103              Philadelphia, PA 19102

267-265-0520 Phone                 (215) 551-7109 Phone

     Attorney for Plaintiff              Attorney for Plaintiff

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: : | |
| : | Chapter 13 |
| LYNDEL TOPPIN, : | |
| : | |
| Debtor. : | Bankruptcy No. 18-13098 (MDC) |
| : | |
| LYNDEL TOPPIN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Adv. Proc. No. 18-00137 (MDC) |
| : | |
| JEWELL WILLIAMS, SHERIFF : | |
| OF THE CITY OF PHILADELPHIA and : | |
| ABDELDAYEM HASSAN a/k/a : | |
| ABDELDYEM HASSAN, : | |
| : | |
| Defendants. : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

It is well known that the automatic stay is designed to stop pending debt collection activity and litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code.

In this case, there is no dispute that the Philadelphia Sheriff had knowledge of the bankruptcy case on May 8, 2018.

Sheriff's position that it is somehow above the law and immune from contempt of court is ill-conceived and misplaced as a matter of established law. Congress intended that the automatic stay reach governmental entities irrespective of any immunity that they might have.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

1. Admitted. By a way of further response, debtor's home at 146 S. 62nd Street, Philadelphia, PA 19139 (the "Property") was sold at sheriff's sale on October 5, 2017 due to delinquent real estate taxes amounting to $1,967.40. A true and correct copy of the Sheriff's Distribution is attached hereto as Exhibit "A."

2.    Admitted to the extent stated in Plaintiff's Complaint. By way of further response, Abdeldayem Hassan a/k/a Abdeldyem Hassan was the winning bidder at the sale.

3.    Admitted to the extent Plaintiff's Complaint so indicates. By way of further response, on January 22, 2018, Defendant Hassan filed an ejectment action in the Philadelphia Court of Common Pleas against "Unknown Occupants" of the Property.

4.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, on April 05, 2018, Defendant Hassan received a default judgment and filed a Motion for Writ of Possession against Unknown Occupants, which was granted on April 30, 2018.

5.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, Defendant Hassan filed the Praecipe and the court issued the Writ of Possession against Unknown Occupants for the Property on May 07, 2018.

6.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, on May 8, 2018 at 6.04 PM, Mr. Lyndel Toppin filed a Chapter 13 bankruptcy petition in a matter styled In re: Toppin, E.A. Pa. Bankr. No. 18-13098-MDC.

7    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response, on May 8, 2018 at 6.27 PM Debtor's Counsel provided the Notice of Bankruptcy Case Filing to the Sheriff via facsimile at 215-686-3555. See Ex. "B"

8.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on May 8, 2018 at 6.28 PM Debtor's Counsel provided the Notice of Bankruptcy Case Filing to the Sheriff via facsimile at 215-686-3971. See Ex. "C"

9.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on or around May 8, 2018, at 10:25 PM, the Sheriff received a fax with the subject line "Notice of Bankruptcy Case Filing – Book/Writ 1707-5002.1." See Def.'s Mot. at pg. 3, ¶11.

10.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below.  By way of further response on May 9, 2018 Debtor's Counsel telephoned Sheriff at 215-686-3565 and provided oral Notice of Bankruptcy Case Filing. See Ex. "D"

11.    Foregoing is a conclusion of law to which no response is required. To the extent a response is required, the averment is denied for reasons stated below. By way of further response on May 10, 2018 Debtor's Counsel provided the Notice of Bankruptcy Case Filing to the Sheriff via facsimile at 215-686-3555. See Ex. "E."

## STATEMENT OF PLAINTIFF'S UNDISPUTED FACTS:

12.     On or about May 10, 2018, Deputy Sheriff Jetaria Taylor ("Deputy Taylor") went out to the Property to personally serve the Notice to Vacate the premises.  See Def.'s Memo at pg. 4, ¶18.

13.     On or about May 10, 2018, Sheriff Taylor posted the notice to the front door, left a copy of the notice in the mail slot at the Property, and mailed a copy of the notice through regular mail. See Def.'s Memo at pg. 4, ¶19.

14.     On or about May 18, 2018, Sheriff served Debtor, Lyndel Toppin with a Notice to Vacate. See Ex. "F."

15.     On or about May 24, 2018, Sheriff served Debtor, Lyndel Toppin with a Notice to Vacate. See Ex. "G."

16.     On or about May 30, 2018, Sheriff served Debtor, Lyndel Toppin with a Notice to Vacate. See Ex. "H."

17.     On May 31, 2018, the Bankruptcy Noticing Center mailed a notice of the Plaintiff's bankruptcy case to the Philadelphia Sheriff's Office at 100 S. Broad Street, 5th Floor, Philadelphia, PA 19110, and provided electronic notice to the City of Philadelphia Law Department at bankruptcy@phila.gov. See Def.'s Memo at pg. 4, ¶20.

18.     On or about June 1, 2018, Sheriff Taylor returned to the Property to personally serve the Eviction Notice. See Def.'s Memo at pg. 4, ¶21.

19.     On or about June 1, 2018, Sheriff Taylor posted the notice to the front door, left a copy of the notice in the mail slot at the Property, and mailed a copy of the notice through regular mail. See Def.'s Memo at pg. 5, ¶22.

20.     On or about June 1, 2018, Sheriff served Debtor, Lyndel Toppin with an Eviction Notice. See Ex. "I."

21.     On or about June 5, 2018, Sheriff served Debtor, Lyndel Toppin with an Eviction Notice. See Ex. "J."

22.     On or about June 7, 2018, Sheriff served Debtor, Lyndel Toppin with an Eviction Notice. See Ex. "K."

23.     Despite ample notice of the underlying bankruptcy, Sheriff violated the statutory injunction imposed by 11 U.S.C. § 362 on at least six ("6") separate occasions.

24.     Sheriff's 30(b)(6) witness Lieutenant Thornton testified that Sheriff's Office did not devise a telephone line or a web site, or establish an electronic mailbox or a facsimile number

where debtors or their attorneys could transmit notice of a bankruptcy to the Sheriff's Office.
See Thornton Dep. 13:5 -14:9, Dec. 12, 2019.

25.  Accordingly, Sheriff's litigation tactic in defense of automatic stay violation cases,
when receipt of Notice of bankruptcy is at issue, is to pass the receipt of Notice burden from one
of its departments to another in an attempt to shift the burden onto the Debtors and their
attorneys to guess which department deemed themselves notified and which one should be, and
or whether or not Sheriff's interdepartmental communication of the Notice took place. See Def.'s
Memo at pg. 3, ¶13, pg. 4, ¶15-16.

26. The Sheriff's legal legerdemain is evident upon reviewing the Sheriff's Service Event
Report dated May 10, 2018 which indicates a bankruptcy filing and is categorized as "Writ of
Possession," which would be presumably handled by the Civil Enforcement Unit. See Ex. "L."

27. The Sheriff's Service Event Report dated June 25, 2018 is also categorized as "Writ
of Possession," although it states that notice of the bankruptcy was received on June 6, 2018. See
Ex. "M."

28. Despite the above inconsistency claiming notice of the bankruptcy on June 6, 2018, a
Sheriff's Return of Service dated August 20, 2019 indicates that Defendant's Attorney (Stephen
M. Dunne, Esq.) visited the Sheriff's Office on May 8, 2018 and also states that a "Bankruptcy
Filed in Sheriff's Office" on May 9, 2018.  See Ex. "N."

29. The Sheriff's Return of Service noting "Bankruptcy Filed in Sheriff's Office" and
dated May 9, 2018 was presumably delivered to the Sheriff at/around 9.00 AM as evidenced by
the Sheriff's handwritten note "Bankruptcy Filed" but Sheriff's handwritten note is dated June
25th without any year cited. See Ex. "O."

30. Sheriff's haphazard system places the public at grave risk as Debtors and their
attorneys have no way of uploading; inputting; or sending notice of a bankruptcy to the Sheriff's
Office.

31. Consequently, the Sheriff's Office has no discernable process; procedure; or internal
policy to accept and process notices of bankruptcy cases and otherwise comply with federal
bankruptcy law.

32. Sheriff's legally erroneous submissions in summary judgment motion claiming
sovereign immunity from BK code, further bolster the facts on the record pointed to by Plaintiff
above that the operations of the Sheriff are not sufficiently equipped or even particularly
interested in complying with the Automatic stay provisions of Bankruptcy Code.

## II.    LAW AND ARGUMENT

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) adopted in the Bankruptcy code as 7056 a), states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Movant in this instance failed to demonstrate the absence of genuine issue of fact, that would allow summary judgment to be entered in their favor.

"A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" *Compton v. Nat'l League of Prof'l Baseball Clubs*, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998) (quoting *Liberty Lobby*, 477 U.S. at 255).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. *Tziatzios v. United States*, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine disputes of material fact, then summary judgment will be granted. *Celotex*, 477 U.S. at 322.  Plaintiff has pointed to concrete admissions under oath, in the pleadings, as well as various admissible documents which preclude summary judgment in Sheriff's favor.

### A.      THE AUTOMATIC STAY

Section 362(a) of the Code provides an automatic stay of certain actions once a petition under the Code is filed, including:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate.

It is clear that the actions of the sheriff in continuing with the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor after the debtor had filed his petition is a violation of the automatic stay.

### B.      NOTICE TO SHERIFF OF THE TOPPIN BANKRUPTCY CASE

A violation of the automatic stay is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case. *Laboy v. Doral Mortg. Corp. (In re Laboy),* 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen,* 386 F.3d 320, 330 (1st Cir. 2004) (internal quotations omitted)). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999).

Sheriff acknowledged receiving actual notice of Mr. Toppin's bankruptcy filing on May 8, 2018. See Def.'s Memo at pg. 3, ¶11.

Sheriff's actions in continuing with the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor by visiting his personal residence; posting his property; inserting notices in his mailbox; and mailing Notices to Vacate and Eviction Notices all constitute individual and separate violations of the automatic stay under § 362(k). It is well known that the automatic stay is designed to stop pending debt collection activity and litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code. E.g., *In re Billings*, 544 B.R. 529, 533 (Bankr. E.D. Pa. 2016) (citing *H & H Beverage Distributors v. Dep't of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988)*), aff'd, 687 Fed.Appx. 163, 2017 WL 1488657 (3d Cir. Apr. 26, 2017) (nonprecedential).

The automatic stay, imposed by 11 U.S.C. § 362(a), prohibits, inter alia, "any act to collect ... or recover a claim against the debtor that arose before the commencement of the case," 11 U.S.C. § 362(a)(6) and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3).

A willful violation of the automatic stay gives rise to a claim for damages, as set forth in 11 U.S.C. § 362(k):

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k) (emphasis added).

The Third Circuit recently summarized the well established standard for the concept of a "willful" violation of the automatic stay:

> "It is a willful violation of the automatic stay when a creditor violates the stay with the knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.... [A] creditor's `good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness...."

*In re Lansaw*, 853 F.3d 657, 664 n.4 (3d Cir. 2017) (emphasis added) (quoting *In re Lansdale Family Rests., Inc*, 977 F.2d 826, 829 (3d Cir. 1992)); see also *In re Atlantic Business & Community Corp.*, 901 F.2d 694*694 325, 329 (3d Cir. 1990) ("the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional") (citations omitted).

## C.    THE AUTOMATIC STAY ENCOMPASSES ACTIONS BY THE SHERIFF

Bankruptcy Courts have long held Sheriffs' in contempt of court for violating the automatic stay.

*In re Bunnell*, 19 F. Supp. 861 - Dist. Court, MD Pennsylvania 1937 (Wyoming County Sheriff held in contempt of court for executing on an alias writ of fieri facias against the debtor's exempt property in violation of the bankrupts restraining order);

*In re Dennis*, 14 BR 125 - Bankr. Court, ED Pennsylvania 1981 (Delaware County Sheriff continuing with the sheriff's sale after the debtor had filed her petition was a violation of the automatic stay);

*In re Wilson*, (19 B.R. 45 ) Bankr. Court, ED Pennsylvania 1982 (Philadelphia County Sheriff held in contempt for issuing a deed to debtor's residence; having that deed acknowledged

by the prothonotary and recorded after the Sheriff had actual notice that the debtors had filed a
petition under Chapter 13 of the Bankruptcy Code);

*In re Denklau* (158 BR 796) Bankr. Court, ND Iowa 1993 (Sheriff's conduct was in
willful violation of the automatic stay although correct under Iowa law. Where state law is in
conflict with federal bankruptcy law, the state law must give way).

### D.    THE SHERIFF IS IN CONTEMPT OF COURT

Sheriff conflates the question of contempt by arguing the merits and legitimacy of its
post-petition activity. This line of reasoning is misplaced as the automatic stay imposed by the
filing of a bankruptcy petition acts as a specific and definite order of court so as to restrain
creditors from the continuance of judicial process or collection efforts against the debtor. *Fidelity
Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976). *In re Mealey,* 16 B.R.
800 (Bkrtcy.E.D.Pa.1982). *In re Demp*, 23 BR 239 - Bankr. Court, ED Pennsylvania 1982.

Neither agency principles nor claims of sovereign immunity will shield the Sheriff from
this liability.  Moreover, § 106(a)(1) of the Bankruptcy Code provides that "sovereign immunity
is abrogated as to a governmental unit to the extent set forth in this section with respect to [§
362]." 11 U.S.C. § 106(a)(1). Subsection 2 provides that "[t]he court may hear and determine any
issue arising with respect to the application of such section[] to governmental units." *Id.* at §
106(a)(2).

### E.    THE SHERIFF'S IMMUNITY DEFENSE

The Sheriff's posits that Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.
C.S. §§ 8541 et seq. (the "PSTCA") provides a complete, affirmative defense to the Debtor's
claim.  "However, in this bankruptcy proceeding, in which the Debtor asserts a cause of action
created by the Bankruptcy Code, the statutory immunity provided by the PSTCA has no
applicability." See *In re Odom* (571 BR 687) Bankr. Court, ED Pennsylvania 2017.

Any potential Eleventh Amendment immunity has been waived and imposes no obstacle
to the bankruptcy court's adjudication of this proceeding for damages under 11 U.S.C. § 362(k).

In *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163
L.Ed.2d 945 (2006), the Supreme Court held that the "States agreed in the plan of the
Convention not to assert any sovereign immunity defense they might have had in proceedings
brought pursuant to `Laws on the subject of Bankrupcies.'" *Id.* at 377. As a result, bankruptcy in
rem jurisdiction extends against a state in all matters arising in bankruptcy cases that are
"necessary to effectuate the in rem jurisdiction of the bankruptcy courts." *Id.* at 378. The exercise
of this bankruptcy jurisdiction is not dependent upon 11 U.S.C. § 106 or any Congressional
action.

In *Katz*, the Supreme Court identified three (3) "[c]ritical features" of the bankruptcy
court's in rem jurisdiction: the exercise of exclusive jurisdiction over all of the debtor's property,

the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a `fresh start' by releasing him, her, or it from further liability for old debts. *Id.* at 363-64.

A proceeding involving the enforcement of the automatic stay constitutes a "critical feature" in the exercise of in rem bankruptcy jurisdiction in that it facilitates the exercise of the court's exclusive jurisdiction over the debtor's property. As the Eleventh Circuit has explained:

Ordinarily, an adversary action arising out of a creditor's violations of the automatic stay forces the creditor to honor the automatic stay and thereby assists the bankruptcy court in carrying out its *in rem* functions. That holds true even where the action takes the form of a motion seeking contempt and sanctions. Although these kinds of actions `may resemble money damage lawsuits in *form,* it is their *function* that is critical, and their *function* is to facilitate the *in rem* proceedings that form the foundation of bankruptcy.' (italics in original).

*In re Diaz*, 647 F.3d 1073, 1085 (11th Cir. 2011); accord *In re Schroeder*, 2009 WL 3526504, at *4 (Bankr. D. Neb. Oct. 23, 2009) (under *Katz*, "damages for violating the automatic stay are within the scope of the [bankruptcy] court's authority over the states").

Section 106(a) purports to be a Congressional waiver of Eleventh Amendment immunity (an immunity which the *Katz* court held was waived through the ratification of the Constitution and not dependent on Congressional action).

After *Katz*, both *Sacred Heart* and § 106(a) essentially are irrelevant in the analysis of waiver of state sovereign immunity. See *In re Odom*, 571 BR 687 - Bankr. Court, ED Pennsylvania 2017:

"In any event, as previously explained in the previous section of this Memorandum: (1) as a local agency, the PPA cannot invoke state sovereign immunity; and (2) even if the PPA were a state instrumentality, under Katz, it could not invoke sovereign immunity as a defense to an action under 11 U.S.C. § 362(k)." *Id* at 696.

In the case at hand, the Sheriff is in contempt of court for violation of a federal court order and its attempt to assert local agency's immunity under the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §8541-8542 is abrogated by 11 U.S.C. § 106(a)(1) of the Bankruptcy Code. Section 106(a)(1) of the Bankruptcy Code provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following," and then lists sixty Bankruptcy Code sections, including § 362.

## F.    DAMAGES UNDER SECTION 362(K)(1)

Section 362(k)(1) of the Bankruptcy Code provides redress for violations of the automatic stay. It mandates that, subject to exceptions not applicable in this case, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

The Debtor requests an award of actual damages, including attorney's fees and costs, and punitive damages pursuant to section 362(k)(1). An individual harmed by a willful violation of the automatic stay can recover actual damages, including costs and attorneys' fees, as well as punitive damages in appropriate circumstances. See 11 U.S.C. § 362(k)(1). The court in *In re Rodriguez*, No. 07-24687 (MBK), 2012 WL 589553 (Bankr. D.N.J. Feb. 22, 2012) explained that the test under section 362(k)(1): is "remarkably simple" and requires the imposition of sanctions on a party violating the automatic stay upon three provisions: First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury. *Rodriguez*, 2012 WL 589553, at *3 (citing, *In re Miller*, 447 B.R. 426, 433 (Bankr. E.D. Pa. 2011)).

As set forth above, Sheriff has violated the automatic stay. The court need only to address the remaining two elements under section 362(k)(1).  As to the second element of that test, "willfulness can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless." *Rodriguez*, 2012 WL 589553 at *4. In addition, "[w]illfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992).

Here, Sheriff acknowledged receiving actual notice of Mr. Toppin's bankruptcy filing on May 8, 2018. See Def.'s Memo at pg. 3, ¶11. Sheriff was provided notice of Plaintiff's bankruptcy long before the alleged stay violations occurred.

Despite actual notice of the filing, the Sheriff intentionally pursued a course of unlawful action in violation of 11 U.S.C. § 362(a). The Sheriff had actual notice, was warned, and should not have taken any action against the Debtor without first obtaining stay relief. The second element is satisfied. That the Sheriff willfully violated the automatic stay is a matter of well-established law.

## 1. COMPENSATORY DAMAGES

Plaintiff, Lyndel Toppin suffered actual damages in the form of out-of-pocket expenses; lost time; transportation expenses; attorney's fees, and emotional distress. The Sheriff's actions clearly reflect a willful violation of 11 U.S.C. § 362 automatic stay for which sanctions should be imposed. Where a willful violation of the stay is demonstrated, compensatory damages are mandatory. 11 U.S.C. § 362(h) (1988). See Also *In re Like*, 103 BR 830, (Bankr.SD.Tx 1989); *Internal Revenue Service v. Murphy*, No. 17-1601 (1st Cir. 2018) (IRS's willful violation of the debtor's bankruptcy discharge result in $175,000.00 in damages).

16

## 2. EMOTIONAL DISTRESS

Defendant's unlawful action caused irreparable harm to the Plaintiff in the form of emotional distress, including: anxiety, difficulty sleeping, depression, and mental anguish.

Most bankruptcy courts have held that emotional distress damages may be awarded only if a causal connection is established between the creditor's actions and the emotional distress suffered. See *Stinson v. Bi-Rite Restaurant Supply, Inc.* (*In re Stinson*), 295 B.R. 109, 120 n. 8 (9th Cir. BAP 2003) quoted in *In re Wingard*, 382 B.R. 892, 906 (Bankr. W.D.Pa.2008). The Sheriff's actions caused irreparable harm to the Plaintiff in the form of emotional distress

## 3. PUNITIVE DAMAGES HAVE BEEN AWARDED IN THIS CIRCUIT WHERE CULPABILITY OF THE DEFENDANT'S CONDUCT MET THE THRESHOLD

Genuine issues of material fact exist precluding Summary Judgment to the Sheriff on this issue.

In *NCVAMD*, the court awarded punitive damages against a state agency for violation of the automatic stay. The court reasoned that, in light of the consent by ratification theory accepted by the Supreme Court in *Katz*, a bankruptcy court may award punitive damages, notwithstanding § 106(a)(3), "when doing so is necessary to effectuate the court's *in rem* jurisdiction." 2013 WL 6860816 at * See e.g. *Jones v. Keene Corp.*, 933 F.2d 209, 214 (3d Cir. 1991) ("If a provision of the [bankruptcy] Plan, a creature of federal law, conflicts with the law of a state and the state law `frustrates the full effectiveness of federal law the state law is rendered invalid by the Supremacy Clause.'") (quoting *Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)); *In re Midway Airlines, Inc.*, 175 B.R. 239, 243 (Bankr. N.D. Ill. 1994) ("[a]ny state common or other law to the contrary must defer to the relevant provisions of the Bankruptcy Code ... pursuant to the Supremacy Clause of the United States Constitution"); *In re Woodings-Verona Tool Works, Inc.*, 157 B.R. 575, 577 n.4 (Bankr. W.D. Pa. 1993) (noting the same); see generally *Buskirk v. Seiple*, 560 F.Supp. 247, 250 (E.D. Pa. 1983) ("state law may not `frustrate or interfere with the implementation of national policies.'") (quoting *Knoll v. Springfield Township School Dist.*, 699 F.2d 137, 141 (3d Cir. 1983)) (further citations omitted).

In order to sustain an award for punitive damages, "the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *Wagner*, 74 B.R. at 904 (citing *Cochetti v. Desmond*, 572 F.2d 102 (3rd Cir.1978)). Punitive damages are proper as a deterrent to those entities who willfully violate the automatic stay provisions, even if actual damages are minimal. *NWFX*, 81 B.R. at 504. "The amount of punitive damages awarded is a function of the offending party's financial capabilities. The award must be sufficient to sting the pocketbook of the wrongdoer." *Mercer v. D.E.F., Inc.* (*In re Mercer*), 48 B.R. 562, 566 (Bankr.D.Minn.1985).

The Sheriff had full knowledge that Toppin had filed a Chapter 13 petition, and yet, it refused to adhere to the requirements of the automatic stay. The Sheriff acted with reckless disregard and in "arrogant defiance" of a federally protected right. The Sheriff's actions caused unnecessary expense to Toppin which could have been avoided if the Sheriff had first sought

relief from the stay under 11 U.S.C. § 362(d). See Also *In re Like*, 103 BR 830, (Bankr.SD.Tx 1989)(punitive damages of $100,000 are necessary to deter the IRS from willfully violating 11 U.S.C. § 362(a) in the future).

Defendant has acted in "arrogant defiance" of the Bankruptcy Code and deserves to be punished accordingly for its egregious behavior in tormenting the Plaintiff and the resulting consequences on the Plaintiff's immediate family. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin*, 201 672*672 B.R. 188, 194 (Bankr.E.D.Tenn.1996) (cited in *In re Curtis*, 322 B.R. 470, 486 (Bankr. D.Mass.2005)). This Court has entered an Order compelling the deposition of one of the Sheriff's 30(b)(6) witnesses, whose identity was not previously disclosed by the Sheriff, and who is alleged to have first-hand knowledge and to have dealt directly with the petitioner of the Writ the Execution at issue herein, and at the very least her forthcoming testimony on this issue precludes a partial summary judgment for the Sheriff on the issue of punitive damages, since there have been circumstances where this Court has awarded punitive damages even against State entities for violations of automatic stay. Whether or not the facts in this case warrant punitive damages against the Sheriff is a trial issue.

**WHEREFORE**, Plaintiff, by and through his counsel, respectfully request that this Honorable Court deny Defendant's Motion for Summary Judgment.

Dated:  February 5, 2020

By: /s/ *Predrag Filipovic*                    BY: /s/ *Stephen M. Dunne*
**Predrag Filipovic, Esquire**          **Stephen M. Dunne, Esquire**
1735 Market St., Suite 3750              1515 Market Street, Suite. 1200
Philadelphia, PA 19103                     Philadelphia, PA 19102
267-265-0520 Phone                         (215) 551-7109 Phone
Attorney for Plaintiff                          Attorney for Plaintiff

# SHERIFF'S OFFICE OF PHILADELPHIA COUNTY

**Jewell Williams**
*Sheriff*

**Richard Verrecchio**
*Captain*

**Kevin Lamb**
*Chief Deputy*

**Robert Jackson**
*Chief of Staff*

Date: **May 07, 2018**

To: **STANLEY ZALKIN AND ELEANOR ZALKIN**
**146 SOUTH 62ND STREET**
**PHILADELPHIA, PA 19139**

## INVOICE

ΓAX COLLECTION - GRB (5000

| CITY OF PHILADELPHIA | **Case Number** |
|---|---|
| vs. | 1504T0192 |
| STANLEY ZALKIN AND ELEANOR ZAL | (1707-5002) |

**PROPERTY ADDRESS**
146 S 62ND ST, PHILADELPHIA, PA 19139-2928

**The following costs have been incurred in the above captioned action. Money owed is due upon receipt. Thank you for your cooperation in this matter.**

**BALANCE DUE:** $ **$0.00**

*Jewell Williams*
Jewell Williams
Sheriff

## COSTS

| DATE | CATEGORY | MEMO | CHK # | DEBIT | CREDIT |
|---|---|---|---|---|---|
| 12/29/2017 | Advertising | Total Advertising | | $255.81 | $0.00 |
| 12/29/2017 | Sheriff Costs | Total Sheriff Costs | | $2,452.90 | $0.00 |
| 10/05/2017 | Deposit on Sale | Deposit on Sale JW 53837 | 940613646 | $0.00 | $1,000.00 |
| 10/05/2017 | Deposit on Sale | Deposit on Sale JW 53837 | 1601804265 | $0.00 | $2,000.00 |
| 11/03/2017 | Balance on Sale | Balance on Sale - ABDELDAYEM HASSAN | 1601804564 | $0.00 | $27,000.00 |
| 10/06/2017 | Delinquent Taxes | (PAID 11/13/2017) | 104311 | $1,967.40 | $0.00 |
| 10/06/2017 | Current Taxes | (PAID 11/13/2017) | 104310 | $61.87 | $0.00 |
| 10/06/2017 | Water | (PAID 11/13/2017) | 104309 | $1,532.83 | $0.00 |
| 10/06/2017 | Meter Install | (PAID 11/13/2017) | 104307 | $195.00 | $0.00 |
| 11/10/2017 | Sheriff Transfer Taxes (City) | (PAID 11/15/2017) | 104318 | $1,064.54 | $0.00 |
| 11/10/2017 | Sheriff Transfer Taxes (State) | (PAID 11/15/2017) | 104318 | $343.40 | $0.00 |
| 11/10/2017 | Sheriff Record Deed | (PAID 11/15/2017) | 104318 | $257.00 | $0.00 |
| 12/29/2017 | Unused Proceeds | tbd | | $21,869.25 | $0.00 |
| | | | | $30,000.00 | $30,000.00 |
| | | | **BALANCE:** | $0.00 | |

City of Philadelphia Sheriff, Land Title Building, Philadelphia, Pennsylvania, 19110, (215) 686-3530, (215) 686-3979 (fax)

19

6/7/2018     Dunne Law Offices, P.C. Mail - Successful transmission to 12156863555. Re: Notice of Bankruptcy Case Filing - Book/Writ1707-5002





Stephen Dunne <stephen@dunnelawoffices.com>

## Successful transmission to 12156863555. Re: Notice of Bankruptcy Case Filing - Book/Writ1707-5002
1 message

**NoReply@myfax.com** <NoReply@myfax.com>                         Tue, May 8, 2018 at 6:27 PM
To: stephen@dunnelawoffices.com



Hi Stephen,                    **Re: Notice of Bankruptcy Case Filing - Book/Writ1707-5002**

The fax you sent through MyFax to 12156863555 was successfully transmitted.

| Fax Details | |
| --- | --- |
| **Date:** | 2018-05-08 22:27:38 (GMT) |
| **Number of Pages:** | 2 |
| **Length of Transmission:** | 114 seconds |
| **Receiving Machine Fax ID:** | 111 |

If you have any questions, please call (866) 563-9212 or visit our online help center at
www.myfax.com/support. Thank you for using the MyFax service.

Sincerely,
The MyFax Team

     

© 2018 j2 Global, Inc. and affiliates. All rights reserved.
MyFax is a registered trademark of j2 Global, Inc. and affiliates.
6922 Hollywood Blvd., Los Angeles, CA 90028

Your use of the MyFax service is subject to the terms of the MyFax Customer Agreement.

https://mail.google.com/mail/u/0/?ui=2&ik=4254f0c1a0&jsver=etqpWYX_4_c.en.&cbl=gmail_fe_180524.11_p15&view=pt&cat=Bankruptcy%2FToppin%2C%20Lyndel&search=c...

# FAX COVER SHEET

| TO | Sheriff |
|---|---|
| COMPANY | Sheriff |
| FAX NUMBER | 12156863555 |
| FROM | Stephen Dunne |
| DATE | 2018-05-08 22:25:14 GMT |
| RE | Notice of Bankruptcy Case Filing - Book/Writ 1707-5002 |

## COVER MESSAGE

Please see Notice of Bankruptcy Case Filing for Lyndel Toppin, who resides at 146 S. 62nd Street, Philadelphia, PA 19145.

Book/Writ 1707-5002

Thank you.

Stephen M. Dunne, Esq.

WWW.MYFAX.COM

Live Database Area                                                                                    Page 1 of 2

United States Bankruptcy Court
Eastern District of Pennsylvania

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s)
listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on
05/08/2018 at 6:04 PM and filed on 05/08/2018.

**Lyndel Toppin**
146 S. 62nd Street
Philadelphia, PA 19145
SSN / ITIN: xxx-xx-2550



The case was filed by the debtor's attorney:

**STEPHEN MATTHEW DUNNE**
Dunne Law Offices, P.C.
1515 Market Street
Suite 1200
Philadelphia, PA 19102
U.S.A.
215-551-7109

The case was assigned case number 18-13098-mdc to Judge Magdeline D. Coleman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://ecf.paeb.uscourts.gov or at the Clerk's Office, 900 Market
Street, Suite 400, Philadelphia, PA 19107.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Timothy B McGrath**

file:///S:/ECF/Toppin,%20Lyndel/Filed%7BEmergency%7D/Ecf%20NoticeOfFiling%2020...    5/8/2018





**Stephen Dunne <stephen@dunnelawoffices.com>**

---

# Successful transmission to 12156863971. Re: Notice of Bankruptcy Case Filing - Book/Writ1707-5002

1 message

---

**NoReply@myfax.com** <NoReply@myfax.com>
To: stephen@dunnelawoffices.com

Tue, May 8, 2018 at 6:28 PM



Hi Stephen,                    **Re: Notice of Bankruptcy Case Filing - Book/Writ1707-5002**

The fax you sent through MyFax to 12156863971 was successfully transmitted.

| Fax Details | |
|---|---|
| **Date:** | 2018-05-08 22:28:02 (GMT) |
| **Number of Pages:** | 2 |
| **Length of Transmission:** | 114 seconds |
| **Receiving Machine Fax ID:** | Sheriff-Real Estate |

If you have any questions, please call (866) 563-9212 or visit our online help center at
www.myfax.com/support. Thank you for using the MyFax service.

Sincerely,
The MyFax Team

      **FuseMail** *campaigner* **KeepItSafe** **onebox**

© 2018 j2 Global, Inc. and affiliates. All rights reserved.
MyFax is a registered trademark of j2 Global, Inc. and affiliates.
6922 Hollywood Blvd., Los Angeles, CA 90028

Your use of the MyFax service is subject to the terms of the MyFax Customer Agreement.

# FAX COVER SHEET

| TO | Sheriff |
|---|---|
| COMPANY | Sheriff |
| FAX NUMBER | 12156863971 |
| FROM | Stephen Dunne |
| DATE | 2018-05-08 22:25:14 GMT |
| RE | Notice of Bankruptcy Case Filing - Book/Writ1707-5002 |

## COVER MESSAGE

Please see Notice of Bankruptcy Case Filing for Lyndel Toppin, who resides at 146 S. 62nd Street, Philadelphia, PA 19145.


Book/Writ1707-5002


Thank you.


Stephen M. Dunne, Esq.

Live Database Area                                                                    Page 1 of 2

United States Bankruptcy Court
Eastern District of Pennsylvania

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s)
listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on
05/08/2018 at 6:04 PM and filed on 05/08/2018.

**Lyndel Toppin**
146 S. 62nd Street
Philadelphia, PA 19145
SSN / ITIN: xxx-xx-2550



The case was filed by the debtor's attorney:

**STEPHEN MATTHEW DUNNE**
Dunne Law Offices, P.C.
1515 Market Street
Suite 1200
Philadelphia, PA 19102
U.S.A.
215-551-7109

The case was assigned case number 18-13098-mdc to Judge Magdeline D. Coleman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://ecf.paeb.uscourts.gov or at the Clerk's Office, 900 Market
Street, Suite 400, Philadelphia, PA 19107.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Timothy B McGrath**

file:///S:/ECF/Toppin,%20Lyndel/Filed%7BEmergency%7D/Ecf%20NoticeOfFiling%2020...   5/8/2018

*Call Log* (handwritten)

CallLog_20180611-200801

| Type | Direction | From | To | Extension | Forwarded To | Name | Date | Time | Action | Action Result | Result Description | Duration | Included | Purchased |
|------|-----------|------|-----|-----------|--------------|------|------|------|--------|---------------|--------------------|----------|----------|-----------|
| Voice | Outgoing | Softphone | (215) 688-3585 | 101 - Stephen Dunne | | | Thu 06/07/2018 | 4:08 PM | VoIP Call | Call connected | | 0:00:37 | 0 | - |
| Voice | Outgoing | Softphone | (215) 688-3585 | 101 - Stephen Dunne | | | Tue 05/15/2018 | 11:31 AM | VoIP Call | Call connected | | 0:00:14 | 0 | - |
| Voice | Outgoing | Softphone | (215) 688-3585 | 101 - Stephen Dunne | | | Tue 05/15/2018 | 11:27 AM | VoIP Call | Call connected | | 0:01:05 | 0 | - |
| Voice | Outgoing | Softphone | (215) 688-3585 | 101 - Stephen Dunne | | | Thu 05/10/2018 | 11:15 AM | VoIP Call | Call connected | | 0:13:24 | 0 | - |
| Voice | Outgoing | Softphone | (215) 688-3585 | 101 - Stephen Dunne | | | Wed 05/09/2018 | 12:12 PM | VoIP Call | Call connected | | 0:01:02 | 0 | - |
| Voice | Outgoing | Softphone | (215) 688-3585 | 101 - Stephen Dunne | | | Mon 05/07/2018 | 2:59 PM | VoIP Call | Call connected | | 0:02:19 | 0 | - |

1



Stephen Dunne <stephen@dunnelawoffices.com>

---

**Successful transmission to 12156863555. Re: Notice if Bankruptcy -**
1 message

---

**NoReply@myfax.com** <NoReply@myfax.com>                    Thu, May 10, 2018 at 11:28 AM
To: stephen@dunnelawoffices.com



Hi Stephen,                                    **Re: Notice if Bankruptcy -**


The fax you sent through MyFax to 12156863555 was successfully transmitted.

| Fax Details | |
| --- | --- |
| **Date:** | 2018-05-10 15:28:09 (GMT) |
| **Number of Pages:** | 2 |
| **Length of Transmission:** | 112 seconds |
| **Receiving Machine Fax ID:** | 111 |

If you have any questions, please call (866) 563-9212 or visit our online help center at
www.myfax.com/support. Thank you for using the MyFax service.

Sincerely,
The MyFax Team

    

© 2018 j2 Global, Inc. and affiliates. All rights reserved.
MyFax is a registered trademark of j2 Global, Inc. and affiliates.
6922 Hollywood Blvd., Los Angeles, CA 90028

Your use of the MyFax service is subject to the terms of the MyFax Customer Agreement.

# FAX COVER SHEET

| TO | Sheriff |
|---|---|
| COMPANY | Sheriff |
| FAX NUMBER | 12156863555 |
| FROM | Stephen Dunne |
| DATE | 2018-05-10 15:25:37 GMT |
| RE | Notice if Bankruptcy - |

COVER MESSAGE

Property Address: 146 S 62ND ST, 19139

Property Owner: STANLEY ZALKIN

Buyer's Name: ABDELDAYEM HASSAN

Live Database Area                                                                      Page 1 of 2

United States Bankruptcy Court
Eastern District of Pennsylvania

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s)
listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on
05/08/2018 at 6:04 PM and filed on 05/08/2018.

**Lyndel Toppin**
146 S. 62nd Street
Philadelphia, PA 19145
SSN / ITIN: xxx-xx-2550



The case was filed by the debtor's attorney:

**STEPHEN MATTHEW DUNNE**
Dunne Law Offices, P.C.
1515 Market Street
Suite 1200
Philadelphia, PA 19102
U.S.A.
215-551-7109

The case was assigned case number 18-13098-mdc to Judge Magdeline D. Coleman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://ecf.paeb.uscourts.gov or at the Clerk's Office, 900 Market
Street, Suite 400, Philadelphia, PA 19107.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Timothy B McGrath**

file:///S:/ECF/Toppin,%20Lyndel/Filed%7BEmergency%7D/Ecf%20NoticeOfFiling%2020...    5/8/2018



CITY OF PHILADELPHIA
**OFFICE OF THE SHERIFF**
CIVIL ENFORCEMENT

# <u>NOTICE TO VACATE</u>

SHERIFF NUMBER: ___231566___

To: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor

By virtue a **Writ of Possession of Real Property** a copy of which is attached
**YOU HAVE 21 DAYS TO VACATE THE PREMISES DESCRIBED IN THE WRIT, FAILURE TO DO SO WILL RESULT IN THE IMMEDIATE SCHEDULING OF AN EVICTION**

Civil Enforcement Unit ▪ 100 S. Broad Street ▪ Philadelphia, PA 19110 ▪ 5th Floor
Phone: (215) 686-3542 Fax: (215) 686-3555

5/18/18



CITY OF PHILADELPHIA
**OFFICE OF THE SHERIFF**
CIVIL ENFORCEMENT

# NOTICE TO VACATE

SHERIFF NUMBER: _231566_

To: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor

By virtue a *Write of Possession of Real Property* a copy of which is attached
**YOU HAVE 21 DAYS TO VACATE THE PREMISES DESCRIBED IN THE WRIT, FAILURE TO DO
SO WILL RESULT IN THE IMMEDIATE SCHEDULING OF AN EVICTION**

Civil Enforcement Unit ▪ 100 S. Broad Street ▪ Philadelphia, PA 19110 ▪ 5th Floor
Phone: (215) 686-3542 Fax: (215) 686-3555

5/24/18



CITY OF PHILADELPHIA
**OFFICE OF THE SHERIFF**
CIVIL ENFORCEMENT

# NOTICE TO VACATE

SHERIFF NUMBER: _231566_

To: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor

By virtue a **Writ of Possession of Real Property** a copy of which is attached
**YOU HAVE 21 DAYS TO VACATE THE PREMISES DESCRIBED IN THE WRIT, FAILURE TO DO SO WILL RESULT IN THE IMMEDIATE SCHEDULING OF AN EVICTION**

Civil Enforcement Unit ■ 100 S. Broad Street ■ Philadelphia, PA 19110 ■ 5th Floor
Phone: (215) 686-3542 Fax: (215) 686-3555

5/30/18



CITY OF PHILADELPHIA
**OFFICE OF THE SHERIFF**
CIVIL ENFORCEMENT

# EVICTION NOTICE

SHERIFF NUMBER: _231566_

To: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor

By virtue of a *Writ of Possession of Real Property* a copy of which is attached
YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER
THAN: June 25th, 2018
@ 9Am

Civil Enforcement Unit ■ 100 S. Broad Street ■ Philadelphia, PA 19110 ■ 5th Floor
Phone: (215) 686-3542 Fax: (215) 686-3555

6/1/18        146 S 62nd ST
UNKNOWN OCCUPEANTS

ted to levy upon any property of                                    you are

oS.62nd ST
PHila 8A 19139                                                      and sell

interest therein.

ERIC FEDER
Director, Office of Judicial Records

By _____
                    Clerk        ATTEST
                                 MAY 07 2018
Date May 7, 2018
                                 D. SAVAGE
                                 JUDICIAL RECORDS

v. 1/01)



CITY OF PHILADELPHIA
**OFFICE OF THE SHERIFF**
CIVIL ENFORCEMENT

# EVICTION NOTICE

SHERIFF NUMBER: 231566

To: Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor

By virtue of a *Writ of Possession of Real Property* a copy of which is attached
YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER
THAN: June 25th 2018
@ 9Am

Civil Enforcement Unit ■ 100 S. Broad Street ■ Philadelphia, PA 19110 ■ 5th Floor
Phone: (215) 686-3542 Fax: (215) 686-3555

6/5/18

146 S 62nd St
unkown occupcants

ted to levy upon any property of                                    you are

@ S. 62nd St
Phila PA 19139

and sell

interest therein.



ERIC FEDER
Director, Office of Judicial Records

By _N. Tang_ Clerk    **ATTEST**

Date _May 7, 2018_

**MAY 07 2018**
D. SAVAGE
JUDICIAL RECORDS

v. 1/01)



CITY OF PHILADELPHIA
SHERIFF'S OFFICE
100 S. Broad Street 5th Floor
Philadelphia, PA 19110



6/7/18

Unknown Occupants
146 S. 62nd St
Phila. PA. 19139

19139$2928 C044



CITY OF PHILADELPHIA
**OFFICE OF THE SHERIFF**
CIVIL ENFORCEMENT

# EVICTION NOTICE

SHERIFF NUMBER: 231866

To: *Judgment debtor, members of the judgment debtor's household, and any occupants residing with the judgment debtor*

By virtue of a ***Writ of Possession of Real Property*** a copy of which is attached
YOU ARE ORDERED TO VACATE THE PREMISES DESCRIBED IN THE WRIT NOT LATER

THAN: June 25th, 2018
@ 9AM

Civil Enforcement Unit ■ 100 S. Broad Street ■ Philadelphia, PA 19110 ■ 5th Floor
Phone: (215) 686-3542 Fax: (215) 686-3555

146 S 62nd St

35

HASSAN
vs.
UNKOWN OCCUPANTS

**Case Number**
180103400
(231566)

# SERVICE EVENT REPORT
( Posted )

## Service Details:

| | |
|---|---|
| **Category:** | Writ of Possession - Common Pleas - Possession |
| **Manner:** | < Not Specified > |
| **Notes:** | MAIN DESK CLERK: LIONEL COOK |

| | |
|---|---|
| **Expires:** | 08/07/2018 |
| **Warrant:** | |

## Serve To:

| | | | |
|---|---|---|---|
| **Name:** | UNKOWN OCCUPANTS | **Mobile:** | |
| **Primary Address:** | 146 S. 62ND ST PHILADELPHIA, PA 19139 | **Notes:** | |
| **Phone:** | | | |

## Service Event Details:

| | | | |
|---|---|---|---|
| **Date:** | 05/10/2018 | **Category:** | Posted |

**Notes:** DEPUTY JETARIA TAYLOR, BEING DULY SWORN ACCORDING TO LAW, POSTED ONE TRUE AND ATTESTED COPY OF THE WITHIN WRIT OF POSSESSION UPON REAL ESTATE LOCATED AT 146 S. 62ND ST, PHILADELPHIA, PA 19139. 21 DAY NOTICE POSTED

POSSESSION DATE 6/25/18 @9AM

CANCELED PER DEFT FILED BANKRUPTCY

## Delivery Details:

| | | | | | |
|---|---|---|---|---|---|
| **Time In:** | | **Time Out:** | 9:45 AM | **Deputy 1:** | Jetaria Taylor |
| **Mileage:** | 0 | | | **Deputy 2:** | |
| **Accepted:** | | | | | |
| **Notes:** | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Entered By:** | Joshua Wigfall | **Print Date:** | 02/21/2019 | **Print Time:** | 10:16 AM |

HASSAN
vs.
UNKOWN OCCUPANTS

**Case Number**
180103400
(231566)

# SERVICE EVENT REPORT
### ( Other )

## Service Details:

| | | | |
|---|---|---|---|
| **Category:** | Writ of Possession - Common Pleas - Possession | **Expires:** | 08/07/2018 |
| **Manner:** | < Not Specified > | **Warrant:** | |
| **Notes:** | MAIN DESK CLERK: LIONEL COOK | | |

## Serve To:

| | | | |
|---|---|---|---|
| **Name:** | UNKOWN OCCUPANTS | **Mobile:** | |
| **Primary Address:** | 146 S. 62ND ST PHILADELPHIA, PA 19139 | **Notes:** | |
| **Phone:** | | | |

## Service Event Details:

| | | | |
|---|---|---|---|
| **Date:** | 06/25/2018 | **Category:** | Other |

**Notes:** letter from bankruptcy court sent to the office. Defendant claims eviction proceedings continued after notifying the sheriff's office that bankruptcy was filed. Inspector Guess received bankruptcy fax on June 6th 2018. Bankruptcy notice was logged in possession book and on Jewell system. No other eviction actions were taken by the civil enforcement unit as of that date.
Letter and supporting documents are being forwarded to undersheriff vignola.

Inspector Guess

## Delivery Details:

| | | | |
|---|---|---|---|
| **Time In:** | | **Time Out:** | | **Deputy 1:** | Monte Guess |
| **Mileage:** | 0 | **Deputy 2:** | |
| **Accepted:** | | | |
| **Notes:** | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Entered By:** | Monte Guess | **Print Date:** | 02/21/2019 | **Print Time:** | 10:15 AM |

# SHERIFF'S OFFICE OF PHILADELPHIA COUNTY

**Jewell Williams**
*Sheriff*

**Richard Verrecchio**
*Chief Inspector*

**Kevin Lamb**
*Chief Deputy*

**Robert Jackson**
*Chief of Staff*

---

CITY OF PHILADELPHIA
vs.
STANLEY ZALKIN AND ELEANOR ZALKIN

**Case Number**
1504T0192
(1707-5002)

---

## SHERIFF'S RETURN OF SERVICE

| | |
|---|---|
| 04/27/2017 | COURT DECREE, HANDBILL, LEGAL DESCRIPTION |
| 04/27/2017 | WRIT DATA VERIFIED BY TOMIKO VAUGHON |
| 07/06/2017 | AS DIRECTED BY GRB LAW, ATTORNEY FOR THE PLAINTIFF, SHERIFF'S SALE CONTINUED TO 9/7/2017 |
| 09/07/2017 | AS DIRECTED BY GRB LAW, ATTORNEY FOR THE PLAINTIFF, SHERIFF'S SALE CONTINUED TO 10/5/2017 |
| 10/05/2017 | REAL ESTATE SOLD AT SHERIFF'S SALE |
| 10/05/2017 | SALES RECEIPT DATA VERIFIED BY TOMIKO VAUGHON |
| 10/05/2017 | AUTOMATED DEED ASSIGNMENT PATRIOT LAND TRANSFER, LLC |
| 10/06/2017 | BUYER'S ACKNOWLEDGEMENT |
| 11/03/2017 | SHERIFF'S SETTLEMENT |
| 11/03/2017 | PRINTED ON NOVEMBER 03, 2017 BY MARK WILSON WITH TRACKING ID:  1509726459 |
| 11/09/2017 | REAL ESTATE:<br>ABDELDAYEM HASSAN<br>309 BARKER AVENUE<br>LANSDOWNE, PA 19050 |
| 05/08/2018 | DEFENDANT ATTORNEY |
| 05/09/2018 | BANKRUPTCY FILED IN SHERIFF'S OFFICE |
| 07/26/2018 | DART DISTRIBUTION POLICY REQUESTED FROM PATRIOT LAND TRANSFER, LLC (NOTED BY BADIA BEASLE) |
| 11/07/2018 | DISTRIBUTION POLICY RECECIVED FROM PATRIOT LAND TRANSFER, LLC (NOTED BY RICHARD VERRECCHIO) |

SHERIFF COST: $2,931.71

SO ANSWERS,

JEWELL WILLIAMS, SHERIFF

August 20, 2019

JUNE 25

| | | | |
|---|---|---|---|
| 230615 | Metropolitian Contracting LLC | Franco Bowens | 228267 |
| 12⁰⁰pm | 223-225 Market St. | 215-237-2633 | 12⁰⁰pm |
| | | | |
| 231936 | ANNYAH MOORE | KML | 231609 |
| 9AM | 5367 MORRIS St. GIVEN | 215 825 6454 | 9AM |
| 231900 | FATMOTA BANGURA | KRISTA LITTLE Cancelled | 231583 |
| 9:00 | 6709 Woolston | 610 278 6800 | 9AM |
| 231566 | UNKNOWN OCCUPANTS Bankruptcy | JASON | 231777 |
| 9AM | 146 S 62ND filed | 484 557 1737 | 9AM |
| 231718 | DAWN CYRUS PD | Tyshaan Hargrove | 232064 |
| 9AM | 2443 So. EDGEWOOD | 215 791 5751 | LockOut 10 |
| 231897 | TARA KENNEDY GIVEN | SUNIL NUNET | 231904 |
| LockOut 10AM | 3645 N 19th | 973 953 7345  *973 986 9282 | LockOut 10 |
| | | | 228587 |
| | | | 10:⁰⁰AM |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

--------------------------------------------------------x
In re:                                          :
                                                :        Chapter 13
LYNDEL TOPPIN,                                   :
                                                :        Bankruptcy No. 18-13098 (MDC)
          Debtor.                                :
--------------------------------------------------------x
--------------------------------------------------------x
                                                :
LYNDEL TOPPIN,                                   :
                                                :        Adv. Pro. No. 18-00137 (MDC)
          Plaintiff,                             :
                                                :
          v.                                     :
                                                :
JEWELL WILLIAMS SHERIFF                           :
OF THE CITY OF PHILADELPHIA and                  :
ABDELDAYEM HASSAN a/k/a                          :
ABDELDYEM HASSAN,                                :
                                                :
          Defendant                              :
--------------------------------------------------------x

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S REPLY BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Jewell Williams, Sheriff of the City of Philadelphia (the "Sheriff"), by and through his

Counsel, Megan N. Harper, Deputy City Solicitor, hereby files the following Reply Brief in

Support of Motion for Summary Judgment.

**I.      PLAINTIFF IS SINGULARLY FOCUSED ON THE SHERIFF WHEN, IN FACT,
        FOCUS SHOULD BE UPON THE ACTION OR INACTION OF THE CREDITOR**

The Plaintiff's[1] Response in Opposition to Defendant's Motion for Summary Judgment

[Docket No. 105] ("Plaintiff's Memorandum") makes it once again abundantly clear that the

Plaintiff is singularly focused on the Sheriff's conduct. Plaintiff is asking this Court to hold the

Sheriff, who is not a creditor, accountable for injuries allegedly caused by actions to enforce a

facially valid writ of possession issued by a state court. The Sheriff's actions were within the scope of the writ of possession and, per the Plaintiff, efforts to enforce the writ ceased by June 7, 2018. *See* Plaintiff's Memorandum, ¶ 22. The Plaintiff was never dispossessed of the Property and there was no prior action allegedly taken by the Sheriff that needed to be or could be remedied—there was no alleged violation that needed undoing.

Plaintiff has been laser focused on the Sheriff's conduct from the outset of this case. Perhaps that is because the judgment creditor, Abdeldayem Hassan, who was, as a matter of law, required to take action to stop enforcement efforts works at Boston Market doing deliveries, washing dishes and mopping inside the restaurant and also as a Lyft driver.[2] This case raises concerns similar to those expressed by the court in *In re Pursan*:

> While attorneys' fees and costs are recoverable under § 362(k), the fees and costs must be reasonable and necessary. *In re Robinson,* 228 B.R. 75, 85 (Bankr.E.D.N.Y.1998). "The policy of section 362[k], to discourage willful violations of the automatic stay, is tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation." *Id.* (citing *Putnam v. Rymes Heating Oils, Inc. (In re Putnam),* 167 B.R. 737, 741 (Bankr.D.N.H.1994)). It is well established that "[r]easonable and necessary fees do not include unnecessary litigation costs." *Id.*; *see also Yarinsky v. Saratoga Springs Plastic Surgery, PC (In re Saratoga Springs Plastic Surgery, PC),* No. 1:03CV896, 2005 WL 357207, at *54 (N.D.N.Y. Feb. 11, 2005), *aff'd,* 172 Fed.Appx. 339 (2d Cir.2006) ("[A]n 'excessively litigious approach' to violations of the automatic stay that do not cause damages in an[d] of themselves must be guarded against.").

*In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010). In *Pursan*, the creditor filed a motion for contempt in state court litigation against the debtor after the bankruptcy petition was filed. The creditor then notified the state court of the automatic stay, as required by law, before a

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sheriff's Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 72].

[2] A true and correct copy of relevant portions of Abdeldayem Hassan's deposition are attached hereto as Exhibit A.

motion for sanctions for alleged stay violations was filed. The court found that, even assuming the creditor had notice of the bankruptcy when the motion for contempt was filed in state court, fees incurred in bringing the stay violation motion were neither reasonable nor necessary. *Id*.; *see also*, *In re Miller*, 447 B.R. 425, 435 (Bankr. E.D. Pa. 2011) (where creditor ceased violation of the stay unilaterally without any action required by the debtor and debtor later filed sanctions motion for stay violations, debtor was litigating something that did not need litigating).

Despite evidence to suggest that the creditor in this case failed to act in accordance with the law, the Plaintiff is and always has been more concerned with the Sheriff's conduct. There is no dispute that a suggestion of bankruptcy was never filed in the ejectment/possession action and there is no evidence that Mr. Hassan or the Court of Common Pleas judge directed the Sheriff to cease enforcement of the writ against unknown occupants of the Property. The duty to stop enforcement of the writ rested with the co-defendant, Mr. Hassan. Courts place the burden on the creditor to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or enforcement must cease.

For example, in *In re Westman*, 300 B.R. 338 (Bankr. D. Minn. 2003), a county sheriff had lawfully seized a debtor's vehicle pre-petition pursuant to a writ of execution. The sheriff failed to release the vehicle post-petition upon notice of the bankruptcy without satisfaction of towing/storage fees. The bankruptcy court found the sheriff was entitled to a release from the creditor or an order from the court releasing him of his obligation under the writ of execution. The court felt it inappropriate to place the burden on the sheriff to determine the intent of the creditor or determine the nature of the debt when the burden is on the creditor, not the sheriff, to prevent stay violations. *In re Westman*, 300 B.R. at 345.

In *In re Hardesty*, <u>442 B.R. 110</u> (Bankr. N.D. Ohio 2010), the fact that three independent appraisers assigned by the sheriff were sent to the debtor's property post-petition in furtherance of execution on a pre-petition foreclosure process did not shield the mortgagee creditor from liability. The court reasoned that, "Once a creditor commences legal proceedings, it cannot disown all responsibility for actions taken by other parties in furtherance of the action." *In re Hardesty*, <u>442 B.R. at 115</u>.

Lastly, in *In re Brown*, No. BR 12-14058, <u>2012 WL 3908029</u> (Bankr. E.D. Pa. Sept. 7, 2012), a pre-petition writ of execution was issued that directed the Sheriff of Chester County to levy upon debtors' property. The judgment creditors received notice of bankruptcy and failed to notify the Sheriff. The Sheriff served the execution writ post-petition. The judgment creditors disclaimed any liability for the Sheriff's conduct. The Court found the creditor had the duty to take affirmative action to notify relevant third parties that the bankruptcy stay was in place. *In re Brown*, <u>2012 WL 3908029</u>, at *5–6.

The Sheriff, in contrast to a judgment creditor engaged in enforcement efforts against a debtor post-petition, had no discretion in performing his official duty when executing the writ on unknown occupants at the Property. It was not the Sheriff's burden to look beyond the facially valid writ to determine the nature of Mr. Hassan's legal right to possession versus the rights of the unknown occupants at the Property, it was Mr. Hassan's burden. Plaintiff's choice to 1) look passed the law that places the burden on the creditor to stop enforcement efforts; 2) largely ignore whether and when the judgment creditor received notice of the bankruptcy and his action or inaction in response thereto; and, 3) look directly at the Sheriff for compensatory and punitive damages is an unreasonable approach to litigation over alleged stay violations.

4

## II.    QUASI-JUDICIAL IMMUNITY AND THE MINISTERIAL ACTS EXCEPTION ≠ ELEVENTH AMENDMENT IMMUNITY

The Plaintiff misunderstands the Sheriff's arguments in support of summary judgment. The Sheriff does not disagree that Eleventh Amendment immunity has been abrogated by ratification of the Bankruptcy Clause at the Constitutional Convention. *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 378, 126 S. Ct. 990, 1005, 163 L. Ed. 2d 945 (2006) ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."). Nor does the Sheriff suggest that a claim for violation of the automatic stay does not implicate the Court's *in rem* jurisdiction. *Id.* at 378, 126 S.Ct. 990; *see also*, *In re Odom*, 571 B.R. 687, 694 (Bankr. E.D. Pa. 2017). The Sheriff is not arguing that sovereign immunity is an absolute defense to the Plaintiff's claims for alleged violations of the automatic stay under Section 362(k) of the Bankruptcy Code.

The Sheriff does argue, however, that quasi-judicial immunity extends to the Sheriff. Quasi-judicial immunity is not the same as sovereign immunity under the Eleventh Amendment. Rather, quasi-judicial immunity is an extension of the doctrine of judicial immunity, which has its origins in common law. *Forrester v. White*, 484 U.S. 219, 225, 108 S. Ct. 538, 543, 98 L. Ed. 2d 555 (1988) (judicial immunity was the settled doctrine of English courts and has not been denied by courts of this country). Quasi-judicial immunity is an offshoot of judicial immunity which extends to nonjudicial officers who perform functions closely associated with the judicial process. *In re Cedar Funding, Inc.*, 419 B.R. 807, 822 (B.A.P. 9th Cir. 2009); *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S. Ct. 496, 500, 88 L. Ed. 2d 507 (1985). The doctrine of quasi-judicial immunity extends immunity to persons executing valid court orders from civil actions for damages challenging conduct authorized by the order. *See Coverdell v. The Department of*

*Social and Health Services, State of Washington,* 834 F.2d 758, 764–765 (9th Cir. 1987); *see also Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 772–73 (3d Cir. 2000).

Here, "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the [P]laintiff, but disregarding unsupported conclusions, unwarranted inferences, and legal conclusions couched as factual allegations" the facts alleged in this case describe the execution of a facially valid state court order and conduct within the scope of that order, thus entitling the Sheriff to quasi-judicial immunity. *Garrett v. PennyMac Loan Servs.,* No. 3:18-CV-00718, 2019 WL 4732048, at *8 (M.D. Pa. Aug. 29, 2019), *report and recommendation adopted as modified,* No. 3:18-CV-0718, 2019 WL 4688376 (M.D. Pa. Sept. 26, 2019) (extending quasi-judicial immunity to Sheriff of Monroe County in context of a sheriff's sale).

The Sheriff also argues that the mandate to enforce the writ of possession is so clear that the act of execution is a ministerial act not subject to the automatic stay. This argument is also not founded in Eleventh Amendment sovereign immunity. Rather, it "stems from the common-sense principle that a judicial 'proceeding' within the meaning of section 362(a) ends once a decision on the merits has been rendered. Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding." *In re Pettit,* 217 F.3d 1072, 1080 (9th Cir. 2000).

Taking the allegations in the complaint as true and viewing them in the light most favorable to the Plaintiff and disregarding legal conclusions couched as factual allegations, the facts alleged in this case describe the execution of an order of the Court of Common Pleas as mandated by law. Upon issuance of the writ the prothonotary *shall* transmit it directly to the sheriff to whom it is directed or deliver it to the plaintiff for transmittal. Pa. R.C.P. No. 3103.

6

The sheriff *shall* note on the writ the date and time when it is received. Pa. R.C.P. No. 3105. The Sheriff "either personally or by deputy, *shall* serve process and execute orders directed to him pursuant to law." 42 Pa. Stat. and Cons. Stat. Ann. § 2921. Here, the actions taken by the Sheriff were ministerial because the law not only allowed the act of executing the writ, but demanded it. *In re Williams*, 371 B.R. 102, 111 (Bankr. E.D. Pa. 2007) (citing *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420, 51 S.Ct. 502, 504, 75 L.Ed. 1148 (1931)). The Sheriff's post-petition efforts to enforce the writ were not in violation of the automatic stay.

### III. EMOTIONAL DISTRESS AND PUNITIVE DAMAGES MAY NOT BE AWARDED IN THIS CASE

Plaintiff makes an overly simplified argument that because emotional distress and punitive damages may be awarded for violations of the automatic stay, emotional distress and punitive damages must be awarded against the Sheriff. Congress provided for a limited waiver of sovereign immunity as to governmental units. 11 U.S.C. § 106(a). While the Bankruptcy Code allows a court to enter a judgment against a governmental unit and award a "money recovery," the Bankruptcy Code does not abrogate a governmental unit's sovereign immunity as to emotional distress damages. *In re Rivera*, 432 F.3d 20 (1st Cir. 2005). Thus, absent a waiver of immunity under 106(a), the Plaintiff's claim must proceed through the analysis of the governmental immunity enjoyed by the Sheriff. As set forth more fully in the Memorandum of Law in Support of Summary Judgement, the Sheriff of the City of Philadelphia is protected with immunity from liability granted under Pennsylvania's Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa. C.S.A. §§ 8541–64.

With respect to punitive damages, the plain language of 11 U.S.C. § 106(a)(3) provides that a court may not issue punitive damages against a governmental unit. The Plaintiff does not dispute that the allegations in the Complaint are against the Sheriff acting in his official capacity,

46

and, as such, this suit against the Sheriff is a suit against the Sheriff's Office, which is clearly a

"governmental unit" as defined by 11 U.S.C. § 101(27). The Plaintiff's only support for an award

of punitive damages against the Sheriff is the *NCVAMD, Inc.* case.[3] A case that no other court

has agreed with. In fact, this Court has expressly disagreed with the *NCVAMD, Inc.* court in

favor of the plain language of the Bankruptcy Code. *In re Odom*, 571 B.R. at 698. There is no

support for an award of punitive damages in this case.

WHEREFORE, the City of Philadelphia respectfully requests that the Court grant

summary judgment in the Sheriff's favor, dismiss the Complaint with prejudice and grant such

other and further relief as this Court deems appropriate.


Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: February 14, 2020        By:        */s/ Megan N. Harper*
                                            MEGAN N. HARPER
                                            Deputy City Solicitor
                                            PA Attorney I.D. 81669
                                            Attorney for the City of Philadelphia
                                            City of Philadelphia Law Department
                                            Municipal Services Building
                                            1401 JFK Boulevard, 5th Floor
                                            Philadelphia, PA  19102-1595
                                            215-686-0503 (phone)
                                            Email: Megan.Harper@phila.gov

---

[3] *In re NCVAMD, Inc.,* No. 10-03098-8-SWH, 2013 WL 6860816, at *1 (Bankr. E.D.N.C. Dec. 31, 2013).

Abdeldayem Hassan

```
                                               Page 1
              UNITED STATES BANKRUPTCY COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                  CASE NO. 18-13098-MDC
     _____

     LYNDEL TOPPIN,

              Debtor/Plaintiff,

        vs.

     JEWELL WILLIAMS and
     ABDELDAYEM HASSAN
     a/k/a ABDELDYEM
     HASSAN,

              Defendants.

     _____


             *      *      *      *

          WEDNESDAY, NOVEMBER 6, 2019

             *      *      *      *



     Oral deposition of ABDELDAYEM HASSAN,

     taken pursuant to notice, was held at the

     Dunne Law offices, P.C., 1515 Market Street,

     Suite 1200, Philadelphia, Pennsylvania,

     commencing at 11:00 a.m., on the above date,

     before Lori A. Porto, a Certified Court

     Reporter.
                  KAPLAN, LEAMAN & WOLFE
            230 SOUTH BROAD STREET, SUITE 1303
             PHILADELPHIA, PENNSYLVANIA 19102
                     (215) 922-7112
                  www.klwreporters.com
```

Abdeldayem Hassan

Page 2

```
 1    A P P E A R A N C E S:

 2

 3        DUNNE LAW OFFICES, P.C.
          BY:  STEPHEN M. DUNNE, ESQUIRE
 4                 - and
              PREDRAG FILIPOVIC, ESQUIRE
 5        1515 Market Street
          Suite 1200
 6        Philadelphia, PA 19109
          215.551.7109
 7        stephen@dunnelawoffices.com
          pfesq@ifight4justice.com
 8        Counsel for the Debtor/Plaintiff

 9
          CITY OF PHILADELPHIA LAW DEPARTMENT
10        BY:  MEGAN N. HARPER, DEPUTY CITY SOLICITOR
                 - and -
11            JOSHUA DOMER, ASSISTANT CITY SOLICITOR
          1401 John F. Kennedy Boulevard
12        Room 580
          Philadelphia, PA 19102
13        215.686.0503
          megan.harper@phila.gov
14        joshua.domer@phila.gov
          Counsel for the Defendant
15        Jewell Williams

16
          LAW OFFICES OF DAVID M. OFFEN
17        BY:  DAVID M. OFFEN, ESQUIRE
          601 Walnut Street
18        Suite 160 West
          Philadelphia, PA 19106
19        215.625.9734
          dmo160west@gmail.com
20        Counsel for the Defendant
          Abdeldayem Hassan
21

22

23

24

25
```

Abdeldayem Hassan

```
                                                        Page 3

  1                W I T N E S S   I N D E X

  2

  3     Examination of Mr. Hassan

  4

  5          By Mr. Filipovic:  Pages 7, 73, 80

  6
             By Ms. Harper:  Page 63
  7

  8          By Mr. Offen:  Pages 74, 86

  9

 10

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

Abdeldayem Hassan

Page 8

1    and I can see you, because we don't have a video

2    here, the court reporter needs your answers to be

3    vocal.

4           A.      What do you mean by vocal?

5                   I don't understand.

6           Q.      Vocal means by words.

7           A.      Okay.

8           Q.      I will also ask you some questions that,

9    perhaps, you know, may be insulting to you, but they

10   are asked of any deponent, everybody gets asked these

11   questions, and that is whether you are under any

12   drugs or alcohol today that would cause you not to be

13   able to give truthful testimony.

14          A.      No.

15          Q.      Thank you.

16                  So we can proceed?

17          A.      Yes.

18          Q.      Could you please tell me your first and

19   last name, sir?

20          A.      Abdeldayem Hassan.

21          Q.      Mr. Hassan, what is your address?

22          A.      309 Barker Avenue, Lansdowne,

23   Pennsylvania 19050.

24          Q.      How long have you lived at that address,

25   sir?

Abdeldayem Hassan

Page 9

| | | |
|---|---|---|
| 1 | A. | Like 10 to 12 years. |
| 2 | Q. | And do you own that house? |
| 3 | A. | Yes. |
| 4 | Q. | Who do you live there with? |
| 5 | A. | My wife and my kids. |
| 6 | Q. | What is your wife's name? |
| 7 | A. | Michelle Hassan. |
| 8 | Q. | Is that Michelle? |
| 9 | A. | Michelle. |
| 10 | Q. | What is your occupation currently? |
| 11 | A. | I work at Boston Market. |
| 12 | Q. | What is your job at Boston Market? |
| 13 | A. | Delivery, wash dishes, mop inside the |
| 14 | | restaurant. |
| 15 | Q. | Which location? |
| 16 | A. | 39th and Chestnut, Philadelphia. |
| 17 | | 3901 Chestnut. |
| 18 | Q. | I happen to know exactly where it is. |
| 19 | | Is that a full-time position? |
| 20 | A. | Yeah. |
| 21 | Q. | Do you do anything else besides that? |
| 22 | A. | No. |
| 23 | Q. | Sir, are you familiar with a property at |
| 24 | | 146 South 62nd Street? |
| 25 | A. | Yes. |

Abdeldayem Hassan

1          Q.      And what is your familiarity with that

2    property?

3          A.      Say that again, please.

4          Q.      What do you know about that property?

5          A.      That property, I bought it from the

6    sheriff.

7          Q.      When did you buy it from the sheriff?

8          A.      I think in November of 2017, or October,

9    I'm not sure.

10                 November or October.

11         Q.      You said you bought it.

12                 Was it at a sheriff's sale that you

13   bought it?

14         A.      Yeah.

15         Q.      What was the price that you ended up

16   paying?

17                 What was the winning bid?

18         A.      30,000, 3-0.

19         Q.      30,000 dollars?

20         A.      Yes.

21         Q.      Did you pay 30,000 dollars to the

22   sheriff's office?

23         A.      Yes.

24         Q.      You had 30 days to pay it, is that

25   correct?

Abdeldayem Hassan

Page 26

1   understand what it meant?

2        A.     I didn't understand what it meant, but I

3   signed it.

4        Q.     Can you read it?

5        A.     I can read it.

6        Q.     Read it again.

7        A.     I hereby verify that the statements set

8   forth in the foregoing complaint are true and correct

9   to the best of my knowledge, information and belief.

10  I understand that these statements are made subject

11  to the penalties of 18 Pa.C.S.4904, relating to

12  unsworn falsification to authorities.

13       Q.     So your testimony today is you don't

14  know what that means?

15       A.     I don't know what that means.

16       Q.     Go on to the next page, where it says

17  that you have certified that the property is

18  unoccupied.

19              Can you find that page for me?

20       A.     Which one?

21       Q.     You just went over it.

22              The page that certifies that the

23  property is unoccupied.

24       A.     You're talking about this one

25  (indicating)?

Abdeldayem Hassan

Page 27

1       Q.      Yes.

2               Do you see there, where it says

3   occupied or unoccupied, and you checked off that it's

4   unoccupied?

5       A.      No, I don't see it.

6       Q.      Can I take a look at that page?

7               This isn't the page.

8               (AT WHICH TIME MR. DUNNE ENTERS THE

9   DEPOSITION ROOM)

10              MR. FILIPOVIC:  Off the record.

11              (OFF-THE-RECORD DISCUSSION)

12  BY MR. FILIPOVIC:

13      Q.      Isn't it true, sir, that you also drive

14  an Uber or a Lyft?

15      A.      Sometimes I do, yeah.

16      Q.      Sometimes you do?

17      A.      Yeah.

18      Q.      Do you recall, when I asked you here

19  earlier, under oath, if you had any other jobs, you

20  said no?

21      A.      When I have time, sometimes I do Lyft.

22      Q.      Did you forget to mention that earlier?

23      A.      Yeah, because I don't do it full-time.

24              You were asking for full-time jobs.

25      Q.      No, I didn't.

Abdeldayem Hassan

Page 28

1                I asked you if you did anything else.

2        A.     I misunderstood you.

3        Q.     Who is Mubarak?

4        A.     My friend.

5        Q.     Did you send Mubarak to the property to

6   evict the occupants?

7                And, by occupants, I'm talking about at

8   146 South 62nd Street.

9        A.     No.

10       Q.     What is your friend's last name?

11       A.     Ahmed.

12       Q.     What is it?

13       A.     Ahmed.

14       Q.     Could you spell that, sir?

15       A.     A-h-m-e-d.

16       Q.     Did you ever have a phone number that is

17  as follows, 610-818-5463?

18       A.     I used to have that phone number.

19       Q.     And what about 267-670-4481?

20                Is that Mubarak's phone number?

21       A.     Mubarak's phone number.

22       Q.     Do you know if that is still his phone

23  number?

24       A.     Yeah.

25                MR. FILIPOVIC:  I'm going to be handing

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
-------------------------------------------------------x
In re:                                      :
                                            :          Chapter 13
LYNDEL TOPPIN,                              :
                                            :          Bankruptcy No. 18-13098 (MDC)
           Debtor.                          :
-------------------------------------------------------x
-------------------------------------------------------x
                                            :
LYNDEL TOPPIN,                              :
                                            :          Adv. Pro. No. 18-00137 (MDC)
           Plaintiff,                       :
                                            :
     v.                                     :
                                            :
JEWELL WILLIAMS SHERIFF                     :
OF THE CITY OF PHILADELPHIA and            :
ABDELDAYEM HASSAN a/k/a                     :
ABDELDYEM HASSAN,                           :
                                            :
           Defendant                        :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Sheriff of the City of Philadelphia's Reply Brief in Support of Motion for Summary Judgment was served via CM/ECF filing and electronic mail upon the parties listed below:

Stephen M. Dunne, Esquire
515 Market Street
Suite 1200
Philadelphia, PA 19102

Predrag Filipovic, Esq.
BNY Mellon Center
1735 Market Street, Suite 3750
Philadelphia, PA 19103

David M. Offen, Esquire
The Curtis Center
601 Walnut Street
Philadelphia, PA 19106

THE CITY OF PHILADELPHIA

Dated: February 14, 2020           By:     */s/ Megan N. Harper*
                                            MEGAN N. HARPER
                                            Deputy City Solicitor
                                            PA Attorney I.D. 81669
                                            City of Philadelphia Law Department
                                            Municipal Services Building
                                            1401 JFK Boulevard, 5th Floor
                                            Philadelphia, PA  19102-1595
                                            215-686-0503 (phone)
                                            Email: Megan.Harper@phila.gov

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
----------------------------------------------------x
In re:                                      :
                                            :        In Chapter 13
LYNDEL TOPPIN,                              :
                                            :        Bankruptcy No. 18-13098 (MDC)
            Debtor.                         :
----------------------------------------------------x
----------------------------------------------------x
                                            :
LYNDEL TOPPIN,                              :
                                            :
            Plaintiff,                      :        Adv. Pro. No. 18-00137 (MDC)
                                            :
            v.                              :
                                            :
JEWELL WILLIAMS, SHERIFF                    :
OF THE CITY OF PHILADELPHIA and            :
ABDELDAYEM HASSAN a/k/a                     :
ABDELDYEM HASSAN,                           :
                                            :
            Defendants.                     :
----------------------------------------------------x
```

## AFFIDAVIT

I, Sean Thornton, do hereby aver the following:

1.      I am the Deputy Sheriff Lieutenant assigned to the Civil Enforcement Unit of the

Philadelphia Sheriff's Office.

2.      I am responsible for overseeing the administration of the Civil Enforcement Unit.

3.      In response to the Court's Order, dated February 3, 2020, and amended February

11, 2020 (the "Court Order"), I have searched for the female employee of the Philadelphia

Sheriff's Office who allegedly met with Abdeldayem Hassan on June 22, 2018.

4.      Mr. Hassan testified in his deposition on November 6, 2019, as follows:

> "I went to the sheriff's office, I think I went to the third floor. I went there and
> they said -- they saw the letter and they told me I had to go to another level. I

don't know, maybe the fifth floor. They called someone. They told me, you're not allowed to go there by yourself. They called someone and the lady came out and met me at the fifth floor steps, at the elevator, and she took the letter from me and she read it and she said, okay, we have to stop what we are doing, and she kept the letter."

Hassan Dep. 46:11–20.

5.      In response to the Court Order, I investigated to find which female employees worked in the Civil Enforcement Unit in June 2018.

6.      Deputy Sheriff Jetaria Taylor was the only female employee in the Civil Enforcement Unit during June 2018 that still works for the Sheriff's Office.

7.      Deputy Taylor informed me that she did not meet or interact with Mr. Hassan in June 2018.

8.      I also identified all female employees who staffed the front desk during June 2018.

9.      The same female employees who staffed the front desk during June 2018 continue to work in that capacity today.

10.     I asked each employee whether they remember meeting with Mr. Hassan during June 2018.

11.     On February 24, 2020, counsel for the Sheriff also emailed myself and the five employees I identified inquiring whether anyone remembered meeting or speaking with Mr. Hassan from June 22, 2018.

12.     Included on that email was the visitor's log from June 22, 2018, which documented Mr. Hassan's visit to the Sheriff's Office.

13.     None of the employees questioned remember meeting with Mr. Hassan during June 2018.

14.    Additionally, none of the employees questioned are able to identify the officer
who wrote Mr. Hassan's name from the handwriting on the visitor's log.

15.    Despite my best efforts, the Sheriff is unable to identify the employee responsive
to the Court Order.

I certify that the statements made herein are true and correct to the best of my knowledge,
information and belief. I understand that false statements made herein are subject to the penalties
of 28 U.S.C. § 1746, relating to unsworn falsification to authorities.


Dated: 3/16/2020        By: _____
                             Sean Thornton
                             Deputy Sheriff Lieutenant
                             Civil Enforcement Unit
                             Office of the Sheriff of the City of Philadelphia



Sworn and subscribed before me
this    11th day of March    , 2020.


_____
Notary Public

> Commonwealth of Pennsylvania - Notary Seal
> CRAIG W MARTIN SR - Notary Public
> Philadelphia County
> My Commission Expires May 25, 2022
> Commission Number 1102887

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
---------------------------------------------------x
In re:                                    :
                                          :    Chapter 13
LYNDEL TOPPIN,                            :
                                          :    Bankruptcy No. 18-13098 (MDC)
          Debtor.                         :
---------------------------------------------------x
---------------------------------------------------x
                                          :
LYNDEL TOPPIN,                            :
                                          :    Adv. Pro. No. 18-00137 (MDC)
          Plaintiff,                      :
                                          :
     v.                                   :
                                          :
JEWELL WILLIAMS SHERIFF                   :
OF THE CITY OF PHILADELPHIA and           :
ABDELDAYEM HASSAN a/k/a                   :
ABDELDYEM HASSAN,                         :
                                          :
          Defendant                       :
---------------------------------------------------x
```

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S SUPPLEMENTAL**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Jewell Williams, Sheriff of the City of Philadelphia (the "Sheriff"), by and through his

Counsel, Megan N. Harper, Deputy City Solicitor, hereby files the following Supplemental

Memorandum of Law in Support of Motion for Summary Judgment[1].

Oral argument on the Sheriff's Motion for Summary Judgment was held on February 18,

2020. The Court requested that the parties submit supplemental briefs responsive to the

following issue: Whether, by ratifying the United States Constitution and the Bankruptcy Clause

---
[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sheriff's
Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 72].

contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the stay imposed by 11 U.S.C. §362 for enforcement of a writ of possession.[2]

The Eleventh Amendment to the Constitution has been long understood to stand for the broad supposition that a federal court generally may not hear a suit brought by any person against a nonconsenting State. *Allen v. Cooper*, No. 18-877, 2020 WL 1325815, at *3 (U.S. Mar. 23, 2020). The Amendment protects States and their agencies and departments from suit in federal court. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). A suit against a State official in his or her official capacity is a suit against the official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In this case, the Sheriff was sued in his official capacity. Thus, if the Sheriff was acting as an arm of the State of Pennsylvania, this lawsuit is an action again Pennsylvania and may be barred by Eleventh Amendment sovereign immunity.

In the Sheriff's Memorandum of Law in Support of Summary Judgment, the Sheriff outlined the role sheriffs play in Pennsylvania, which bears repeating here as it establishes that the Sheriff, in executing the Writ of Possession, was acting as an arm of the State, not as a county official. A sheriff's only duties established by statute are court-related functions. The Pennsylvania Constitution provides that sheriffs are county officers. Pa. Const. Art. IX, § 4. Although the Constitution establishes the office, it does not describe the duties of a sheriff. *Kopko v. Miller*, 892 A.2d 766, 770–71 (Pa. 2006). While the sheriff's power at common law was formidable, other institutions, including modern law enforcement agencies, have greatly diminished the authority of the sheriff's office. *Com. v. Leet*, 585 A.2d 1033, 1037 (Pa. Super.

---

[2] Although the Sheriff's Supplemental Memorandum is limited to addressing this issue, the Sheriff wishes to draw the Court's attention to a Third Circuit opinion issued the day after oral argument on the Motion for Summary Judgment. The Sheriff's Motion included argument that the Sheriff is entitled to quasi-judicial immunity. Attached hereto as Exhibit A is a copy of the Third Circuit's opinion in *Villarreal v. New Jersey*, No. 19-1426, 2020 WL

1991) (citations omitted). "Today, the sheriff's principal function is as an arm of the court, which is the duty specifically assigned to the office of sheriff by the legislature." *Com. v. Leet*, 585 A.2d at 1037. A sheriff is mandated to "serve process and execute orders directed to him pursuant to the law." 42 Pa.C.S.A. § 2921; *Kopko v. Miller*, 892 A.2d at 772; *Commonwealth v. Copenhaver*, 200 A.3d 956, 960–61 (Pa. Super. 2018), *appeal granted*, 215 A.3d 970 (Pa. 2019); *Allegheny County Deputy Sheriff's Ass'n v. Pennsylvania Labor Relations Bd.*, 504 A.2d 437, 439 (PA Cmwlth. 1986) (a sheriff's role is as an arm of the judicial system, implementing court-related processes). It is manded that the Sheriff, "either personally or by deputy, *shall* serve process and execute orders directed to him pursuant to law." 42 Pa.C.S.A. § 2921 (emphasis added). The Sheriff may be held in contempt of court for failure to do so. 42 Pa.C.S.A.§ 4132.

The Seventh Circuit's opinion in *Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992), explains why the extension of Eleventh Amendment sovereign immunity to the Sheriff is appropriate. Sheriffs in Illinois, as in Pennsylvania, are deemed to be county officials by the Illinois Constitution. Illinois county sheriffs' salaries are paid by the counties and the counties are responsible for providing the sheriffs offices and expenses. *Scott v. O'Grady*, 975 F.2d at 370. Illinois law provides that county sheriffs, like those in Pennsylvania, have no discretion in executing court orders. The sheriff has a statutory duty to serve all warrants, process orders and judgments directed or delivered to them. *Id*. at 371. In *Scott*, the Sheriff of Cook County was ordered by Writ of Assistance to accompany a foreclosing bank to a property and use all means to ensure the bank's ability to take possession of the property. Had the Cook County Sheriff failed to do so, it could have been held in contempt of court. Under these circumstances, the Seventh Circuit held the sheriffs executing the Writ were not acting as county officials, but as an

---

864143 (3d Cir. Feb. 21, 2020) wherein the Court held a sheriff enforcing a foreclosure judgment was immune from liability under the doctrine of quasi-judicial immunity.

arm of the Illinois state judicial system and were thus entitled to Eleventh Amendment immunity from suit. *Id.*, *see also*, *Johnson v. Duncan*, 719 F. App'x 144 (3d Cir. 2017) (Hudson County, New Jersey Sheriff's Department entitled to Eleventh Amendment protection from suit in federal court for alleged federal and state violations); *Gray v. Pagano*, No. CV 07-2810, 2007 WL 9754344 (E.D. Pa. July 16, 2007), *aff'd*, 287 F. App'x 155 (3d Cir. 2008) (Delaware County Sheriff entitled to sovereign immunity for conduct related to foreclosure action as all actions were within scope of his duties).

When enforcing the writ of the Court of Common Pleas of the First Judicial District, the Sheriff was acting as an arm of the State, not as a Philadelphia County official. The Plaintiff does not allege that the Sheriff was acting outside the scope of his authority pursuant to the facially valid Writ. Plaintiff's allegations against the Sheriff all stem from the lawful enforcement of the Writ. The allegations against the Sheriff are essentially that after allegedly receiving notice of the bankruptcy, the Sheriff sought to enforce the Writ of Possession on. There is no suggestion that the Writ was enforced in a manner that was beyond the scope of the mandate contained therein, which directed the Sheriff to deliver possession to Defendant Hassan. As set forth below, the inquiry regarding the Sheriff's entitlement to sovereign immunity does not end with the conclusion that he was, in his official capacity, acting as an arm of the State.

As noted, a federal court generally may not hear a suit brought by any person against a nonconsenting State except on two conditions: 1) Congress has enacted unequivocal statutory language abrogating the States' immunity from suit; and 2) a constitutional provision must allow Congress to so encroach. *Allen v. Cooper*, No. 18-877, 2020 WL 1325815, at *3 (U.S. Mar. 23, 2020). "Not even the most crystalline abrogation [however] can take effect unless it is 'a valid exercise of constitutional authority.'" *Id*. Section 106 of the Bankruptcy Code purports to

abrogate sovereign immunity for certain bankruptcy proceedings including stay violations under

Section 362(a). The Third Circuit held more than twenty years ago, however, that the abrogation

of State sovereign immunity contained in 11 U.S.C. 106(a) was unconstitutional and beyond

Congress's power under the Bankruptcy Clause. *Sacred Heart Hosp. v. Dep't of Pub. Welfare*,

133 F.3d 237, 245 (1998). The Third Circuit's holding remains good law in this circuit, thus

Section 106 cannot be used to defeat sovereign immunity in the context of a stay violation

action. *See e.g.*, *In re La Paloma Generating Co.*, 588 B.R. 695, 727 (Bankr. D. Del. 2018), *aff'd*

*sub nom. In re La Paloma Generating Co. LLC*, 607 B.R. 794 (D. Del. 2019).

Absent an express abrogation of sovereign immunity, or a litigation waiver (which is not

at issue here as the Sheriff has not filed a proof of claim and the Complaint does not respect the

adjudication of a claim by the Sheriff), the sovereign immunity analysis must follow *Central Va.

Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990 L.Ed.2d 945 (2006), In *Katz*, the

Supreme Court held that in ratifying the Constitution, the States agreed to waive sovereign

immunity with regard to "proceedings brought pursuant to 'Laws on the subject of

Bankruptcies.'" *Katz* at 378. The Court noted that bankruptcy jurisdiction has historically

principally been *in rem* as it was premised on the debtor and the bankruptcy estate and not on

private or State creditors. *Katz*, 546 U.S. at 369-70. The Supreme Court concluded that the

Framers would have understood the Bankruptcy Clause to include not just adjudications of rights

in the *res*, but also proceeding ancillary to the exercise of *in rem* jurisdiction as falling within the

scope of "Laws on the subject of Bankruptcies" for which immunity had been waived. *Id*. at 371-

72. As *Katz* held, Congress "has the power to enact bankruptcy laws the purpose and effect of

which are to ensure uniformity in treatment *of state and private creditors*." *Id*. at 377 n.13

(emphasis added).

> Congress may, at its option, *either treat States in the same way as other creditors* insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute.

*Id.* at 377 (emphasis added).

Whether consent by ratification exists turns on whether the proceeding against the Sheriff, acting as an arm of the State, effectuates the *in rem* jurisdiction of the Court or is necessary to effectuate the *in rem* jurisdiction. *In re Diaz*, 647 F.3d 1073, 1084 (11th Cir. 2011). Critical *in rem* functions of bankruptcy courts include: "[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Id.* at 1084 (citations omitted).

The Sheriff does not dispute that the automatic stay is a fundamental procedural mechanism that allows a bankruptcy court to exercise its core *in rem* functions – jurisdiction over the bankruptcy estate and the equitable distribution of the debtor's property among its creditors. *In re Diaz*, 647 F.3d. at 1085. Nor does the Sheriff dispute that contempt motions alleging a State creditor has violated the automatic stay generally qualify as "proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 1086. Accordingly, consent by ratification generally allows a bankruptcy court to exercise jurisdiction over a State in an action for violation of the automatic stay when the State is acting as a creditor.

However, here the Sheriff was not acting as a creditor nor on behalf of a State creditor. Rather, the Sheriff was acting as an arm of the State judiciary by enforcing an order of court which it was bound to do by statute and for which failure to do so may have resulted in a contempt sanction. It does not follow, based upon the *Katz* analysis, that the Founders would

have contemplated waiver of sovereignty under these circumstances. "[A] bankruptcy court's *in rem* jurisdiction over a debtor's property is limited to the bankruptcy administration of that property, to wit, the adjudication of interest in and the disposition of the debtor's property." *In re La Paloma Generating Co.*, 588 B.R. at 728 (citations omitted). There simply is no *in rem* jurisdiction over the claims against the Sheriff. The Sheriff had no rights or claims to the Property – the *res* – and the Sheriff has no debtor/creditor relationship with the Plaintiff. There is no reason to believe *in rem* jurisdiction extends beyond rights and claims tied to the *res*. *Id.*

The Plaintiff seeks damages against the Sheriff acting as an arm of a non-consenting, non-creditor State with no interest in or claim against the Property. The allegations have no meaningful nexus to the bankruptcy's administration. Such an action could not have been within scope of the States' consent to sue upon ratification of the Bankruptcy Clause. A suit against the Sheriff under these circumstances was not part of the fabric of debtor/creditor law, even if it relates to a core aspect of the bankruptcy administration, as it does nothing to further the uniform treatment of State and private creditors. *See e.g.*, *In re Philadelphia Entm't & Dev. Partners, L.P.*, 611 B.R. 51, 67–68 (Bankr. E.D. Pa. 2019) (holding fraudulent transfer actions part of the fabric of debtor-creditor law at the time of ratification and such actions aid in uniform treatment of State and non-state transferees and constitute core aspects of bankruptcy administration). Holding a Sheriff, acting as an arm of a non-consenting, non-creditor State, in contempt for executing on a valid State Court order does implicate the State's sovereign immunity and is not within the States' narrow waiver of immunity.

There is no administration of the estate pursuant to an action under Section 362 of the Bankruptcy Code that cannot be accomplished in a suit solely against Hassan, the creditor. *See e.g.*, *In re La Paloma*, 588 B.R. at 734 (where purpose of claim is best served elsewhere,

proceeding cannot be considered core to bankruptcy courts' *in rem* functions). Actions for violation of the automatic stay were meant to add to uniform treatment of creditors by avoiding piecemeal distribution of the debtor's assets by creditors. The purpose of Section 362(k) is best served by a proceeding against a creditor. As purchaser of the Property the Plaintiff seeks to redeem, Hassan is deemed a secured creditor of the bankruptcy estate. Staying actions to gain possession of the Property pursuant to a valid pre-petition Writ of Possession does restructure the debtor/creditor relationship as between Hassan and the Plaintiff and is related directly to claims and interests of Hassan and the Plaintiff in the Property. Thus, the action against Hassan furthers the administration of the estate and is core to the Bankruptcy Court's *in rem* functions.

The conclusion that the States did not contemplate waiving immunity for circumstances such as this when ratifying the Bankruptcy Clause is supported by the well settled law that the burden is on the creditor to notify third-parties that the automatic stay is in place and that efforts in furtherance of execution or enforcement must cease. *See e.g.*, *In re Westman*, 300 B.R. 338 (Bankr. D. Minn. 2003) (burden is on creditor, not sheriff in possession of lawfully seized vehicle, to prevent stay violations); *In re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010) (once a creditor commences legal proceedings it cannot disown responsibility for actions take by third parties in furtherance of action); *In re Brown*, No. BR 12-14058, 2012 WL 3908029 (Bankr. E.D. Pa. Sept. 7, 2012) (judgment creditors had duty to take affirmative action to notify sheriff that the bankruptcy stay was in place); *Eskanos & Adler, P.C., v. Leetien*, 309 F.3d 1210, 1215 (9th Cir.2002) (§ 362(a)(1) imposes on a creditor an affirmative duty to discontinue its post-petition collection actions); *Roche v. Pep Boys, Inc., (In re Roche)*, 361 B.R. 615 (Bankr. N.D. Ga. 2005) (creditor has an affirmative duty to cease its garnishment upon learning of debtor's bankruptcy filing); *In re Manuel*, 212 B.R. 517, 519 (Bankr. E.D. Va. 1997) (The creditor,

"having an affirmative obligation not to continue a violation of the automatic stay, acted willfully when he failed to promptly dismiss the garnishment against debtor's wages."); *In re Baum,* 15 B.R. 538 (Bankr. E.D. Va. 1981) (a creditor has a responsibility to stop the snowballing of continuing garnishment) and *In re Banks*, 253 B.R. 25 (Bankr. E.D. Mich. 2000) (creditor who had previously obtained relief from stay, but who had failed to wait the required ten-day period prior to executing on debtor's property and failed to take any steps to have writ vacated, willfully violated automatic stay). The duty to stop enforcement of the Writ rested with the co-defendant, Mr. Hassan, not the Sheriff. The Plaintiff's remedy for contempt of the stay order is against Mr. Hassan.

This does not mean that a debtor is entirely without remedy against a State official for stay violations under the circumstances similar to those presented here. The Supreme Court's decision in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), provides federal jurisdiction over a suit against a State official when that suit seeks prospective injunctive relief to end a continuing violation of federal law. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996) (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). The exception to sovereign immunity in *Ex parte Young* is based in part on the premise that certain suits for declaratory or injunctive relief against state officers must be permitted if the Constitution is to remain the supreme law of the land. *Alden v. Maine*, 527 U.S. 706, 747, 119 S. Ct. 2240, 2263, 144 L. Ed. 2d 636 (1999) (citations omitted). In *Seminole,* the Supreme Court indicated that *Ex parte Young* would be applied where (1) "the suit seeks only prospective injunctive relief" and (2) and where Congress has not "prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." 527 U.S. at 73–74, 119 S.Ct. 1849. *Ex parte Young* was deemed potentially applicable to a stay

9

70

violation against an official of the Washington Metropolitan Area Transit Authority enjoining violations of Sections 362 and 525(a), as neither section contains a "detailed remedial scheme" for enforcement against a State. *In re Metromedia Fiber Network, Inc.*, 281 B.R. 524, 534–35 (Bankr. S.D.N.Y. 2002). In this case, the Complaint did seek injunctive relief against the Sheriff, however, the *Ex parte Young* exception to sovereign immunity is inapplicable as it was rendered moot prior to the filing of the Complaint. Any alleged conduct in violation of stay ceased prior to filing of the Complaint. The Plaintiff was never dispossessed of the Property, there was no ongoing conduct that needed enjoining and there was no prior action allegedly taken by the Sheriff that needed to be or could be remedied.

WHEREFORE, the City of Philadelphia respectfully requests that the Court grant summary judgment in the Sheriff's favor, dismiss the Complaint with prejudice and grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: April 6, 2020          By:    */s/ Megan N. Harper*
                                      MEGAN N. HARPER
                                      Deputy City Solicitor
                                      PA Attorney I.D. 81669
                                      Attorney for the City of Philadelphia
                                      City of Philadelphia Law Department
                                      Municipal Services Building
                                      1401 JFK Boulevard, 5th Floor
                                      Philadelphia, PA  19102-1595
                                      215-686-0503 (phone)
                                      Email: Megan.Harper@phila.gov

2020 WL 864143
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued
on or after Jan. 1, 2007. See also U.S.Ct. of
Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals, Third Circuit.

Eugene VILLARREAL; Soon
Sik Villarreal, Appellants

v.

State of NEW JERSEY, a/k/a Judiciary Courts
of the State of New Jersey, Duns: 60-2158974,
a/k/a Judiciary Courts of the State of NJ Duns:
03-8052028, a/k/a Superior Court of New
Jersey, a/k/a Superior Court of New Jersey
Office of Foreclosure; Michelle M. Smith,
individually and severally; Superior Court of New
Jersey Bergen County Vicinage; Ellen Koblitz,
individually and severally; Edward A. Jerejian,
individually and severally; Menelaos W. Toskos,
individually and severally; Michael Saudino, a/
k/a Office of County of Bergen Sheriff, a/k/
a Bergen County Sheriff's Office Occupied by
Michael Saudino; Thomas J. Sullivan, individually
and severally; Germaine M. Ortiz, individually
and severally; Mary J. Amoroso, individually
and severally; David L. Ganz, individually
and severally; Steven A. Tanelli, individually
and severally; Joan M. Voss, individually and
severally; Tracy S. Zur, individually and severally

No. 19-1426
|
Submitted Pursuant to Third Circuit
L.A.R. 34.1(a) on February 19, 2020
|
(Opinion filed: February 21, 2020)

On Appeal from the United States District Court for the
District of New Jersey (D.C. No. 2:18-cv-10444), District
Judge: Honorable Madeline C. Arleo

**Attorneys and Law Firms**

Eugene Villarreal, Pro Se

Soon Sik Villarreal, Pro Se

Ashley L. Costello, Esq., Office of Attorney General of New
Jersey, Department of Law & Public Safety, Trenton, NJ,
for Defendants - Appellees State of New Jersey, Michelle
M. Smith, Superior Court of New Jersey Bergen County
Vicinage, Ellen Koblitz, Edward A. Jerejian, Menelaos W.
Toskos

Louis M. DiLuzio, Esq., Ridgefield Park, NJ, Edward
J. Florio, Esq., Florio Kenny Raval, Hoboken, NJ, for
Defendant - Appellee Michael Saudino

Edward J. Florio, Esq., Florio Kenny Raval, Hoboken, NJ,
for Defendants - Appellees Thomas J. Sullivan, Germaine M.
Ortiz, Mary J. Amoroso, David L. Ganz, Steven A. Tanelli,
Joan M. Voss, Tracy S. Zur

Before: JORDAN, BIBAS, and PHIPPS, Circuit Judges

OPINION [*]

PER CURIAM

**\*1** Pro se Appellants Eugene Villarreal and Soon Sik
Villarreal appeal from the District Court's order dismissing
their complaint. For the following reasons, we will affirm.

I.

The following facts are taken from the complaint. In October
2006, the Villarreals entered into a mortgage agreement with
J.P. Morgan Chase Bank for property located at 501 Lincoln
Avenue in Ridgefield, New Jersey. J.P. Morgan later initiated
a foreclosure action in the Superior Court of New Jersey. On
May 13, 2016, the Superior Court entered a Final Judgment
of Foreclosure and Writ of Execution. After the property was
sold at the Bergen County Sheriff's Office in February 2018,
the Villarreals were ordered to vacate the premises.

On June 12, 2018, the Villarreals filed a pro se complaint
in the United States District Court for the District of New
Jersey alleging that their rights had been violated in numerous
respects during the foreclosure and Sheriff's Sale. They

named as defendants: the State of New Jersey; the Superior Court of New Jersey Bergen Vicinage; Michelle M. Smith, the Clerk of the Superior Court; and Superior Court Judges Ellen L. Koblitz, Edward A. Jerjian, and Menelaos W. Toskos (together, the "State Defendants"). They also named as a defendant Bergen County Sheriff Michael Saudino, as well as the seven members of the Bergen County Board of Chosen Freeholders.

The complaint, which is oftentimes rambling and difficult to follow, contained the following claims: (1) the State Defendants ordered the Villarreals to satisfy a Note that was unsatisfiable because it "demands payment in U.S. $, which is impossible for [the Villarreals] to satisfy as there are no United States Dollars currently in circulation, and there is no Act of Congress which declares a Federal Reserve Note to be a United States Dollar," Compl. 15, D.C. Dkt. No. 1; (2) the State Defendants violated their "Un-Alienable Rights Re-Affirmed Under Public Law 39-26 [1] by claiming *In Personam* Jurisdiction over Eugene and Soon Villareal, living sentient beings and not artificial entity/legal persons, which is the only 'person' over which said court can obtain *in personam* jurisdiction in clear absence of all jurisdiction," Compl. 17; [2] (4) Sheriff Saudino violated their rights by enforcing the "void 'Judicially Robo Signed' 'Final Judgment' and 'Writ of Execution' " unlawful foreclosure judgment and conducting the sale of the property, id. at 24; (5) the Freeholders, "as Sheriff Michael Saudino's Respondeat Superior's are fully responsible for the actions and misdeeds of the Sheriff and his department," id. at 25; (6) the Villarreals are entitled to a declaratory judgment deeming the Note fraudulent because "there are no United States Dollars in circulation to tender as cash," no loan was ever consummated, and no funds were ever transferred into an account belonging to the Villarreals, id. at 30; (7) the Villarreals were placed into involuntary servitude when induced into signing the Note, id. at 31, 33–34; and (8) the Superior Court and its judges seized their property in the clear absence of all jurisdiction, id. at 34–35.

**\*2**  The Villarreals alleged that, as a result of the defendants' actions, they suffered involuntary servitude, loss of title to real property, loss of personal property, damage to earning capacity, lost earnings, physical pain and mental anguish in the past and future, property damage, disruption of family harmony, and "[f]ear for Life when Sheriff of Bergen County will use men with guns to break down their door to evict them from their property." Compl. 36–38. By way of damages, the Villarreals sought $75 million for each claim, plus "[a]ctual

damages," an order declaring the Note and mortgage null and void, and an order restoring title to their property. Id. at 39.

The State Defendants, Sheriff Saudino, and the Board of Freeholders all moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. By Letter Order entered on January 22, 2019, the District Court dismissed the complaint on the ground that it lacked subject-matter jurisdiction under the Rooker-Feldman doctrine. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). [3]

This appeal followed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's application of the Rooker-Feldman doctrine. Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006). We also exercise plenary review over the dismissal of a complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). We may affirm on any basis supported by the record. Fairview Township v. U.S. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

## III.

On appeal, the Villarreals raise several challenges to the District Court's application of the Rooker-Feldman doctrine. Leaving aside, however, whether the District Court's reliance on Rooker-Feldman was proper, the Villarreals' claims for damages under § 1983 face other legal bars identified in the defendants' motions to dismiss.

First, the State of New Jersey and the Superior Court are entitled to Eleventh Amendment immunity from this suit. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63, 94

S.Ct. 1347, 39 L.Ed.2d 662 (1974). Eleventh Amendment immunity protects not only states but also state agencies and departments, such as the Superior Court here, "that are so intertwined with them as to render them 'arms of the state.' " Karns v. Shanahan, 879 F.3d 504, 513 (3d Cir. 2018) (quoting Bowers v. NCAA, 475 F.3d 524, 545 (3d Cir. 2007)). While it is not entirely clear from the complaint, it appears that the Villarreals sought to proceed under 42 U.S.C. § 1983, see supra note 1, and § 1983 does not abrogate New Jersey's immunity. See Quern v. Jordan, 440 U.S. 332, 340-41, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Further, New Jersey has neither consented to suit nor waived its Eleventh Amendment immunity here. Accordingly, the Villarreals' claims against the State and the Superior Court are barred.

The Villarreals' claims against the Superior Court judges who presided over the foreclosure proceedings are also barred. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). This holds true even if the action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.' " Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). Here, the Villarreals' allegations against Judges Koblitz, Jerejian, and Toskos relate to actions they took as judges—namely, their enforcement of an allegedly unconscionable and unenforceable Note. Although they allege that the judges (a) lacked in personam jurisdiction over their sentient beings, and (b) issued orders in the wrong venue, these claims are frivolous and do not show a clear absence of jurisdiction under Azubuko and Stump.

**\*3** Clerk Smith is also entitled to quasi-judicial immunity for carrying out a facially valid Writ of Execution. See Kincaid v. Vail, 969 F.2d 594, 601–02 (7th Cir. 1992).

Next, Sheriff Saudino was immune from liability for enforcing the foreclosure judgment and conducting the sale of the property. "[L]aw enforcement officials executing a facially valid court order are protected by absolute quasi-judicial immunity." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994) (emphasis omitted). Although the Villarreals

allege that Sheriff Saudino is liable because the sale was unlawful, they do not allege any facts suggesting that the Sheriff had reason to question the validity of the state-court foreclosure judgment. Therefore, he too is immune from this suit. See, e.g., Henry v. Farmer City State Bank, 808 F.2d 1228, 1238–39 (7th Cir. 1986) (holding that a sheriff who was acting pursuant to an official court order to enforce a validly entered judgment was entitled to quasi-judicial immunity).[4]

Lastly, we conclude that the Villarreals failed to state a claim against the seven members of the Board of Freeholders based on their alleged failure to supervise the Sheriff's Office. Even accepting the Villarreals' allegation that the Board of Freeholders is the managing body of the Bergen County Sheriff's Office and that they have a duty to supervise that office, liability under § 1983 cannot be based on respondeat superior, Rizzo v. Goode, 423 U.S. 362, 375–76, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and the Villarreals failed to identify any specific policy, procedure, or custom of the Board of Freeholders to support a § 1983 claim against a local government, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, the Villarreals failed to state a claim against the Freeholders.

In their brief, the Villarreals also argue that the District Court erred in dismissing the complaint without providing them with an opportunity to amend it. However, given our conclusion that most of the defendants are immune from suit and that the Villarreals' remaining allegations against the Freeholders were woefully insufficient, amendment would have been futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

### IV.

We have considered Appellants' remaining arguments on appeal and conclude that they are meritless. Accordingly, we will affirm the District Court's order dismissing the complaint.

**All Citations**

--- Fed.Appx. ----, 2020 WL 864143

## Footnotes

\*    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1    Public Law No. 39-26 is the immediate predecessor of the Civil Rights Act of 1866, which is currently codified as 42 U.S.C. §§ 1981 and 1982. Because claims under §§ 1981 and 1982 necessarily include allegations of racial discrimination, which the Villarreals do not allege, we will liberally construe the pro se complaint as invoking § 1983, which is the vehicle by which private citizens may seek redress for violations of constitutional rights committed by state officials.

2    These numbers track the Villarreals' numbering in the complaint. Pages 20 through 22 (which presumably include claim three), are missing from the copy of the complaint uploaded to the District Court docket as well the copy provided by the Villarreals in their appendix.

3    In the letter order dismissing the complaint, the District Court also denied the Villarreals' motion for a preliminary injunction. They do not challenge that ruling on appeal. Therefore, we deem it waived. See Voci v. Gonzales, 409 F.3d 607, 609 n.1 (3d Cir. 2005).

4    Sheriff Saudino is also shielded by the doctrine of qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

---

**End of Document**                                                  © 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.    

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
---------------------------------------------------x
In re:                                  :
                                        :        Chapter 13
LYNDEL TOPPIN,                          :
                                        :        Bankruptcy No. 18-13098 (MDC)
          Debtor.                       :
---------------------------------------------------x
---------------------------------------------------x
                                        :
LYNDEL TOPPIN,                          :
                                        :        Adv. Pro. No. 18-00137 (MDC)
          Plaintiff,                    :
                                        :
     v.                                 :
                                        :
JEWELL WILLIAMS SHERIFF                 :
OF THE CITY OF PHILADELPHIA and         :
ABDELDAYEM HASSAN a/k/a                 :
ABDELDYEM HASSAN,                       :
                                        :
          Defendant                     :
---------------------------------------------------x
```

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Sheriff of the City of Philadelphia's

Supplemental Brief in Support of Motion for Summary Judgment was served via CM/ECF filing

upon the parties listed below:

Stephen M. Dunne, Esquire
515 Market Street
Suite 1200
Philadelphia, PA 19102

Predrag Filipovic, Esq.
BNY Mellon Center
1735 Market Street, Suite 3750
Philadelphia, PA 19103

David M. Offen, Esquire
The Curtis Center
601 Walnut Street
Philadelphia, PA 19106


THE CITY OF PHILADELPHIA


Dated: April 6, 2020          By:     */s/ Megan N. Harper*
                                     MEGAN N. HARPER
                                     Deputy City Solicitor
                                     PA Attorney I.D. 81669
                                     City of Philadelphia Law Department
                                     Municipal Services Building
                                     1401 JFK Boulevard, 5th Floor
                                     Philadelphia, PA  19102-1595
                                     215-686-0503 (phone)
                                     Email: Megan.Harper@phila.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA and | : | |
| ABDELDAYEM HASSAN a/k/a | : | |
| ABDELDYEM HASSAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**LYNDEL TOPPIN'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION
TO THE SHERIFF OF THE CITY OF PHILADELPHIA'S
MOTION FOR SUMMARY JUDGMENT**

The Court requested that the parties submit supplemental briefs responsive to the following issue: Whether, by ratifying the United States Constitution and the Bankruptcy Clause contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the stay imposed by 11 U.S.C. §362 for enforcement of a writ of possession.

Plaintiff, Lyndel Toppin ("Toppin"), through undersigned counsel submits that the States do not enjoy sovereign immunity for violations of the automatic stay imposed by §362 of the Bankruptcy Code as that would thwart the orderly and even administration of the debtor's estate, one of the central goals of bankruptcy. In *Katz*, the Supreme Court repeatedly referenced bankruptcy courts' ancillary power "to issue compulsory orders to facilitate administration and distribution of the bankruptcy *res*." Indeed, the importance of a uniform set of bankruptcy laws was penned by James Madison in Federalist Paper No. 42: "The power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States, that the expediency of it seems not likely to be drawn into question."

The United States Supreme Court correctly recognized in the 2004 *Hood[1]* and 2006 *Katz[2]* cases that the fundamental nature of bankruptcy cases and proceedings is distinct from litigation of statutes enacted under the Commerce Clause or other sections of Article I of the Constitution, in a way that is critical to sovereign immunity analysis. Unlike the laws at issue in the *Seminole Tribe[3]* and other non- bankruptcy sovereign immunity cases before *Hood* and *Katz*, the substantive provisions of bankruptcy statutes are not regulatory laws, and do not apply to the populace at large or mandate or proscribe any action in the course of everyday affairs. Bankruptcy laws only apply in conjunction with bankruptcy cases adjudicating the status of the bankrupt debtor. Effectively, the federal government supplies the forum and standards for resolution of private debt matters. Unlike federal regulatory statutes that are enforceable by federal authorities, bankruptcy discharges, the automatic stay, preference actions and the like are enforceable only by debtors and creditors, and only in the context of specific bankruptcy cases, not by United States Attorneys or federal agencies in federal or state court suits. It is only private parties who can enforce such bankruptcy law provisions through bankruptcy court proceedings in specific debtors' bankruptcy cases.

**The Katz Analysis**

In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), The Court concluded that sovereign immunity does not bar federal bankruptcy courts from exercising authority over States in adversary proceedings to recover preferential transfers.[4]  It reasoned that *in rem* bankruptcy jurisdiction includes "the power to issue compulsory orders to facilitate the administration and distribution of the *res*."[5] Further, "courts adjudicating disputes concerning bankrupts' estates historically have had the power to issue ancillary orders enforcing their *in rem* adjudications."[6]

The Court explained that while the principal focus of a bankruptcy is adjudication of rights in the *res* of the bankruptcy estate and discharge of the debtor, the Framers of the Constitution understood that proceedings brought pursuant to laws on the subject of bankruptcies encompassed certain ancillary proceedings as well.[7]  The Court concluded that such proceedings included avoidance of preferential transfers and recovery of preferentially transferred property.[8]

---

[1] Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004).

[2] Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006);

[3] Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)

[4] See *Katz*, 126 S. Ct. at 1001–02 ("[T]hose who crafted the Bankruptcy Clause would have understood it to give Congress the power to authorize courts to avoid preferential transfers and to recover the transferred property.").

[5] *Id*. at 996.

[6] *Id*. at 1000.

[7] *See id.* at 1005 ("But while the principal focus of the bankruptcy proceedings is and was always the res, some exercises of bankruptcy courts' powers . . . unquestionably involved more than mere adjudication of rights in a res.").

[8] *Id.* at 1001–02 ("[I]nterplay between *in rem* adjudications and orders ancillary thereto is evident in the case before us.").

Through adopting the Constitution, the States abrogated sovereign immunity to effectuate *in rem* bankruptcy jurisdiction in at least some ancillary proceedings that Congress might authorize in enacting laws on the subject of bankruptcies:[9]

> Insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction, like orders directing turnover of preferential transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity.[10]

> In ratifying the Bankruptcy Clause, the States acquiesced in subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy court.[11]

In coming to its conclusion, the majority of the Court declined to follow dicta in *Seminole Tribe v. Florida* suggesting a contrary result. Justice Thomas, writing for himself and three other justices, argued the historical record indicated states did not give up their sovereign immunity under the Bankruptcy Clause. The dissenters would have followed the view that nothing in Article I abrogates state sovereign immunity, however they were one Justice short of majority whose ruling became the law of the land on the issue.

**In Rem Jurisdiction**

Bankruptcy cases do arise under the Constitution, *i.e.* under the Bankruptcy Clause.[12] As required by the wording of that clause, there must also be and now is a federal statutory basis for jurisdiction as well, the Bankruptcy Code. But bankruptcy also has a historical, theoretical grounding in *in rem* jurisdiction to render judgments relating to the bankruptcy *res* that informs the meaning of the constitutional and statutory provisions.

The Supreme Court repeatedly recognized that bankruptcy is an *in rem* proceeding even before *Hood* and *Katz*.[13]   The *res* in a bankruptcy case is not merely the debtor's assets or the

---

[9] *See id.* at 1002, 1004–05; *see also* Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779 (1991) (observing States are not "subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention.'"); *In re* Kids World of Am., Inc., 349 B.R. 152, 165 (Bankr. W.D. Ky. 2006) ("[T]he Framers, in adopting the Bankruptcy Clause, plainly intended to give Congress the power to redress the rampant injustice resulting from States' refusal to respect one another's discharge orders . . . the power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty, albeit within a limited sphere.").

[10] *Katz*, 126 S. Ct. at 1002.

[11] *Id.* at 1005.

[12] The Bankruptcy Clause empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. I, § 8, cl. 4.

[13] *E.g.*, Katchen v. Landy, 382 U.S. 323, 329 (1966) ("This power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.'"); *Gardner*, 329 U.S. at 574 (explaining constitutional

bankruptcy "estate," although the assets are part of it.[14] Rather, the *res* encompasses the bankrupt debtor personally. The Court so found in *Moyses*, where Max Moyses' discharge was upheld against a creditor that had not been served with process or appeared.[15] The Court recognized in that case that "[t]he subject of 'bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities as well as to distribute his property."[16] The debtor as the *res* was even more evident when the Constitution was adopted than it is today, because then it was the debtor personally who was freed by federal court order from state debtors' prison by bankruptcy adjudication.[17] Discharging the debtor from prison was an integral aspect of bankruptcy when our Constitution was adopted, and it required an order by a federal court to a state court to release the debtor-prisoner. The *Katz* opinion cites issuance of a writ of habeas corpus to extricate a discharged debtor from prison as an example of a proceeding ancillary to the *in rem* discharge adjudication.[18]

**Ancillary Jurisdiction**

Ancillary jurisdiction is a type of subject matter jurisdiction invoked when no such jurisdiction is expressly conferred on federal courts by the Constitution or by federal statute.[19] The court acquires jurisdiction of a case or controversy in its entirety, and as an incident to the disposition of that matter, may decide other matters raised by the case which it could not hear if independently presented.[20]

---

authority of bankruptcy court when State is actor); *Moyses*, 186 U.S. at 192 ("Proceedings in bankruptcy are, generally speaking, in the nature of proceedings *in rem*").

[14] *See Gardner*, 329 U.S. at 574.

[15] *Moyses*, 186 U.S. at 183, 192. The Court held that bankruptcy proceedings are *in rem* with respect to the debtor. *Id.* at 192.

[16] *Id.* at 188; *see* Bailey v. Baker Ice Mach. Co., 239 U.S. 268, 275–76 (1915) ("'The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and disposition of his estate.'" (citations omitted)).

[17] *See In re* Universal Labs. Inc., No. 77 B 4082, 1978 WL 21369, at *987–88 (N.D. Ill. Dec. 15, 1978) (elaborating on impact discharge has on debtors in prison). *But see* Martin v. Kilbourne, 11 Vt. 93, 94, 1839 Vt. LEXIS 18, at *2–3 (1839) (providing "the creditor shall have full power to discharge the debtor from prison").

[18] *Katz*, 126 S. Ct. at 1005 (explaining "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.").

[19] *See* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D § 3523 (deeming ancillary jurisdiction most important when courts lack subject matter jurisdiction).

[20] Id. The Supreme Court has previously held that sovereign immunity cannot exempt a State from monetary obligations that are ancillary to compliance with prospective injunctive relief against a State officer, even though a damages award for past actions may be barred. Edelman v. Jordan, 415 U.S. 651, 668 (1974) (recognizing practical effect of relief under Ex parte Young, 209 U.S. 123 (1908)). Under that reasoning, a court may order a State to pay for programs designed to remedy past wrongdoing such as segregation of public schools. Milliken v. Bradley, 433 U.S. 267, 288–89 (1977). That is not a matter of ancillary jurisdiction, however, but of ancillary consequences of an exercise of jurisdiction under the Ex parte Young exception to sovereign immunity.

In 1990, Congress provided broad statutory authority for the exercise of ancillary and pendent jurisdiction by federal courts under the name "supplemental jurisdiction."[46] Long before the supplemental jurisdiction statute was enacted, however, the Court upheld the exercise of ancillary jurisdiction in cases initiated under a federal bankruptcy statute as a matter of common law, sometimes referring to ancillary jurisdiction to *in rem* bankruptcy jurisdiction.[21]

Ancillary jurisdiction usually falls within two categories of cases:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.[22]

> In a narrow sense, the "operative facts" of a bankruptcy case may be considered the debtor's discharge and the determination of claims and distribution of the debtor's assets to creditors. It is not a typical lawsuit where ancillary jurisdiction arises in the context of factually intertwined claims, counterclaims and third party claims.[23] However, ancillary jurisdiction may be needed for dischargeability litigation, as in the *Hood* case. And in many bankruptcy cases disputes over assets being liquidated requires litigation, and some of the assets consist of causes of action. Such litigation is not a matter of determining claims against the *res* of the estate, but it is certainly factually intertwined with the *res* and the amount that can be distributed to creditors.[24] The litigation encompasses both federal and state law issues, and may well entail purely state-law claims between non-diverse litigants.[25]

> Bankruptcy court cases may be more complex and procedurally involved than ordinary bilateral commercial litigation. In reorganization cases especially, bankruptcy court orders may implement the restructuring of a business and the disposition of multiple assets and claims. A variety of court proceedings may be required to facilitate a successfully functioning reorganization case, and may be needed to implement reorganization decisions and effectuate court decrees. Some determinations that would require orders in non-bankruptcy cases are automatic in bankruptcy, such as the automatic stay, and litigation to enforce such statutory orders is not uncommon. Chapter 11 bankruptcy cases last for years, and litigation under confirmed reorganization plans affecting creditor distributions may be commenced by restructured companies or liquidating trusts.

---

[21] *See, e.g., Local Loan Co.*, 292 U.S. at 240–41 (stating bankruptcy proceedings are generally *in rem* proceedings); *Moyses*, 186 U.S. at 192; Commercial Bank of Manchester v. Buckner, 61 U.S. 108, 118 (1857) ("And the said courts shall have full authority and jurisdiction to compel obedience to all orders and decrees passed by them in bankruptcy ").

[22] Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379–80 (1994) (citations omitted).

[23] *See, e.g., Gibbs*, 383 U.S. at 725 (recognizing pendent jurisdiction over state claims arises out of "common nucleus of operative fact" with federal claims).

[24] *See Gardner*, 329 U.S. at 578 (holding "the reorganization court has jurisdiction over all of the property of the debtor"); *In re* Metromedia Fiber Network, Inc., 299 B.R. 251, 273 (Bankr. S.D.N.Y. 2003)(including aspects of estate administration within *in rem* proceedings).

[25] 51*See* Butner v. United States, 440 U.S. 48, 54 (1979) (noting property rights in estate assets determined by applying state law)

In a very real sense, many types of proceedings are factually interdependent with and indeed integral to the resolution of a bankruptcy case, and to the successful functioning of the bankruptcy court and effectuation of its orders.

**Sovereign Immunity:**

The principle of sovereign immunity is associated with the ancient maxim that "the King can do no wrong."[26]  In some cases, sovereign immunity poses a complete bar to recovery of a particular claim in state or federal court. For certain purposes, the Bankruptcy Code provides a means to overcome this bar. Section 106 of the Code contains a broad abrogation of sovereign immunity with respect to governmental units.[27] Sovereign immunity is expressly abrogated with respect to a wide range of statutory provisions listed in section 106(a). Included among these are virtually all of the provisions that normally would give rise to claims against the government in bankruptcy.

A notable exception to the list is section 541 of the Code. The legislative history states that the amendment was not intended to permit a debtor to sue the government on a prebankruptcy cause of action when suit would otherwise have been barred by sovereign immunity.[28] But section 542 is included in the list, and section 542(b) permits a debtor to recover "a debt that is property of the estate and that is matured, payable on demand, or payable on order" except to the extent it may be offset under section 553.

The legislative history[29] states clearly that the amendment was intended to abrogate both federal sovereign immunity and state Eleventh Amendment immunity, overruling *Hoffman v. Connecticut Department of Income Maintenance*[30] and the *United States v. Nordic Village Inc.*[31] In consumer cases, this history should remove any doubts about federal governmental monetary liability and the immunity of other entities that are not states,[32] not only for transfer avoidance,

---

[26] 'Seminole Tribe v. Florida, 517 U.S. 44, 103 n.2 (Souter, **J.,** dissenting) (citing 1 William Blackstone, Commentaries *238).

[27] "Governmental unit" is defined in 11 U.S.C. § 101(27). The definition excludes a United States trustee, but only when acting as a trustee. Nonetheless, one court has erroneously held that there is no waiver at all with respect to the United States trustee. Balser v. Dep't of Justice, 327 F.3d 903 (9th Cir. 2003).

[28] 140 Cong. Rec. H10,766 (Oct. 4, 1994) (remarks of Rep. Brooks); Hunsaker v. United States, 902 F.3d 963 (9th Cir. 2018) (section 106 permitted debtor to sue state for emotional distress damages resulting from automatic stay violation); Zazzali v. United States (In re DBSI, Inc.), 869 F.3d 1004 (9th Cir. 2017) (section 106 abrogated sovereign immunity for action under section 544 even though section 544 incorporated state fraudulent transfer law).

[29] Id.

[30] 492 U.S. 96, 109 S. Ct. 2818, 106 L. Ed. 2d 76 (1989). and United States v. Nordic Village Inc.

[31] 503 U.S. 30, 112 S. Ct. 1011, 117 L. Ed. 2d 181 (1992).

[32] See Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055 (9th Cir. 2004) (Indian tribe's immunity abrogated by § 106(a)). But see Buchwald Capital Advisors, L.L.C. v. Papas (In re Greektown Holdings, L.L.C.), 532 B.R. 680 (E.D. Mich. 2015) (Congress did not unequivocally eliminate tribes' sovereign immunity); Bucher v. Dakota Fin. Corp. (In re Whitaker), 474 B.R. 687 (B.A.P. 8th Cir. 2012) (section 106 does not mention Indian tribes); In re Mayes, 294 B.R. 145 (B.A.P. 10th Cir. 2003) (when debtor did not raise section 106 argument, tribe's common law immunity precluded lien avoidance motion).

but also for stay and discharge violations, as well as sanctions under Federal Rule of Bankruptcy Procedure 9011.[33]

However, the ability of Congress to abrogate the states' Eleventh Amendment immunity may be somewhat limited by the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*.[34]  The reach of *Seminole Tribe* was greatly diminished by the Court's later decision in *Central Virginia Community College v. Katz*,[35] which appears to permit most, and perhaps all, bankruptcy proceedings to be brought against state governments based upon the Bankruptcy Clause of the Constitution. Indeed, in that case the Court found that the abrogation of sovereign immunity in section 106 was unnecessary.[36] However the precise contours of the right to sue a state government have yet to be developed by the courts.[37]

This problem may be avoided occasionally if it is possible to argue that the entity being sued is not a state or an arm of a state.[38] In some cases involving state action in which the state has not filed a proof of claim or otherwise waived its immunity,[39] and that immunity is not

---

[33] Hanna Oil Co. v. Internal Revenue Serv., 198 B.R. 672 (W.D. Va. 1996). But see In re Rivera Torres, 432 F.3d 20 (1st Cir. 2005) (section 106(a) did not waive federal government's immunity from emotional distress damages).

[34] 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).

[35] 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006).

[36] Id., 546 U.S. at 362. See Florida Dep't of Revenue v. Omine (In re Omine), 485 F.3d 1305 (11th Cir. 2007) (actions to force a state creditor to honor the automatic stay are permitted as proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy court).

[37] See Florida Dep't of Revenue v. Diaz (In re Diaz), 647 F.3d 1073 (11th Cir. 2011) (sovereign immunity abrogated as to discharge violation claim, but not stay violation claim, because proceeding was brought long after stay was necessary to protect in rem bankruptcy jurisdiction).

[38] In re MD Recycling, Inc., 475 B.R. 885 (Bankr. E.D. Tenn. 2012) (local utility failed to show that it is an arm of the state); In re Lees, 264 B.R. 884 (W.D. Tenn. 2001) (student loan agency was not arm of state entitled to immunity).

[39] Generally, a party that files a proof of claim is deemed to submit to the bankruptcy court's jurisdiction, at least as to a claim arising out of the same transaction that created the government's claim. Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17 (1st Cir. 2001); In re Rose, 187 F.3d 926 (8th Cir. 1999) (state waived Eleventh Amendment with respect to claims for which it filed proofs of claim); In re Jackson, 184 F.3d 1046 (9th Cir. 1999) (state waived Eleventh Amendment with respect to tax claims by filing proof of claim); In re Burke, 146 F.3d 1313 (11th Cir. 1998) (state waived Eleventh Amendment by filing proofs of claim in debtors' cases); In re Straight, 143 F.3d 1387 (10th Cir. 1998); In re Rose, 227 B.R. 518 (W.D. Mo. 1997) (state waived Eleventh Amendment protection from being sued to determine dischargeability of student loan by filing claim for student loan debt); In re Bliemeister, 251 B.R. 383 (Bankr. D. Ariz. 2000) (state waived sovereign immunity by seeking summary judgment in adversary proceeding involving dischargeability of state's claim), aff'd, 296 F.3d 858 (9th Cir. 2002); In re Huffine, 246 B.R. 405 (Bankr. E.D. Wash. 2000) (state waived sovereign immunity by signing student loan participation agreement); In re Lazar, 200 B.R. 358 (Bankr. C.D. Cal. 1996); In re Burke, 200 B.R. 282 (Bankr. S.D. Ga. 1996). See also In re Innes, 184 F.3d 1275 (10th Cir. 1999) (state consented to litigation in federal court by signing participation agreement with U.S. Department of Education agreeing to oppose dischargeability complaints); In re Platter, 140 F.3d 676 (7th Cir. 1998) (state waived Eleventh Amendment immunity by filing dischargeability complaint); In re White, 139 F.3d 1268 (9th Cir. 1998) (sovereign immunity waived by participation in case through objection to plan confirmation and voting

abrogated by section 106, debtors may be barred from suing for damages in the bankruptcy court, and may still have to resort to devices used in other areas of the law, such as suits against state officers for injunctive relief. The *Ex parte Young* doctrine holds that an action brought against state officials in their individual capacities seeking prospective declaratory and injunctive relief for continuing violations of federal law is not barred by the Eleventh Amendment.[40] For example, a suit seeking a declaration that particular property is property of the estate could be brought for injunctive and declaratory relief against the state officer heading the relevant state agency.[41]

The discharge itself is an injunction, which can be[42] enforced against a state officer,[43] as may the *automatic stay*, the discrimination protections,[44] the turnover requirements (except if seeking a money judgment)[45] and a confirmed plan.[46]

The Supreme Court has clearly held that because bankruptcy is an in rem proceeding, affecting the debtor's property, the bankruptcy case itself is not a suit against the state and the discharge of a debt to the state is not barred by the Eleventh Amendment.[47] The court's jurisdiction over the dischargeability of debt, just like its jurisdiction to confirm a plan of reorganization, derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over debtors and their estates.[48] Similarly, court proceedings about the debtor's property, such as proceedings to avoid liens on the property or to compel turnover of preferential transfers, are not suits against the state that implicate a state's sovereign immunity because they are ancillary to a bankruptcy court's in rem jurisdiction.[49]

---

against plans); In re Barrett Ref. Corp., 221 B.R. 795 (Bankr. W.D. Okla. 1998) (state could not undo waiver by withdrawing proof of claim).

[40] See Coeur d'Alene Tribe of Idaho, 531 U.S. 261, 269, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); Green v. Mansour, 474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985); Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908); In re LTV Steel Co., 264 B.R. 455 (Bankr. N.D. Ohio 2001) (action to enforce automatic stay could be brought against state officials under Ex parte Young doctrine).

[41] In re Ellett, 243 B.R. 741 (B.A.P. 9th Cir. 1999) (suit against state tax official to enjoin collection of taxes discharged in chapter 13 may proceed under Ex parte Young doctrine), aff'd sub nom. Ellett v. Goldberg, 254 F.3d 1135 (9th Cir. 2001); In re DeAngelis, 239 B.R. 426 (Bankr. D. Mass. 1999).

[42] In re Rainwater, 233 B.R. 126 (Bankr. N.D. Ala. 1999).
[43] In re Lapin, 226 B.R. 637 (B.A.P. 9th Cir. 1998)
[44] In re Kidd, 227 B.R. 161 (Bankr. E.D. Ark. 1998).
[45] In re Zywiczynski, 210 B.R. 924 (Bankr. W.D.N.Y. 1997).
[46] Maryland v. Antonelli Creditors' Liquidating Trust, 123 F.3d 777 (4th Cir. 1997).
[47] Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S. Ct. 1905, 158 L. Ed. 2d 764 (2004).

[48] Id.

[49] Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006); In re Pavlovic, 474 B.R. 601 (Bankr. N.D. Ill. 2012) (debtor could avoid judicial lien despite claim of

As a limitation on the broad abrogation of sovereign immunity in section 106(a), the state and federal government extracted provisions limiting punitive damages and attorney fees awards. Section 106(a)(3) prohibits an award of punitive damages and limits attorney fee awards. However, this section should not be read to prohibit all monetary sanctions that are not compensatory damages.[50] "Punitive damages" should be given its normal meaning, limited to cases in which that term has traditionally been used to describe a monetary award (as opposed to "sanctions" under Federal Rules of Bankruptcy Procedure 7037 or 9011). Attorney fees and costs are limited to those consistent with 28 U.S.C. § 2412(d)(2)(A) (the Equal Access to Justice Act).[51]

The sovereign immunity provisions were also clarified with respect to counterclaims against the government. Under section 106(b) (formerly section 106(a)), such a counterclaim may be asserted only if the governmental unit has actually filed a proof of claim in the bankruptcy case.[52] This reverses the result reached by some courts, which had held that a counterclaim could be asserted if the government had taken an action that could be deemed an "informal proof of claim."[53] As under prior law, the counterclaim must be a compulsory counterclaim to the government's claim, arising out of the same transaction or occurrence to come within this section.[54]

---

sovereign immunity). See also In re Slayton, 409 B.R. 897 (Bankr. N.D. Ill. 2009) (permitting suit for damages against state for alleged violations of §§ 524 and 525).

[50] Section 106(a) provides that a bankruptcy court may issue an order or judgment awarding a "money recovery" against a governmental unit, which should include a recovery of emotional distress damages and other actual damages. However, one court of appeals has held that section 106(a) does not waive immunity from an award of emotional distress damages as a contempt sanction for violation of the discharge injunction. In re Rivera Torres, 432 F.3d 20 (1st Cir. 2005). But see In re Griffin, 415 B.R. 64 (Bankr. N.D.N.Y. 2009) (section 106(a) provides for abrogation of sovereign immunity for award of actual damages, including damages for emotional distress).

[51] This incorporates limits on the amount of fees, but not other substantive limitations of the EAJA.

[52] See Aer-Aerotron v. Texas Dep't of Transp., 104 F.3d 677 (4th Cir. 1997) (postpetition letters to debtor demanding payment did not constitute proof of claim for purposes of this section); Carrington Gardens Assoc. v. United States, 258 B.R. 622 (E.D. Va. 2001) (government waived sovereign immunity by filing proof of claim even though debtor's claim was not strictly a counterclaim when proof of claim was filed after adversary complaint was brought against agency), aff'd, 49 Fed. Appx. 427 (4th Cir. 2002) (table); In re Gibson, 176 B.R. 910 (Bankr. D. Or. 1994) (federal government considered one governmental unit, so proof of claim waived sovereign immunity for all agencies under predecessor to this provision). See also Lapides v. Bd. of Regents, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002) (by removing action to federal court, a state waives Eleventh Amendment immunity, relying on Gardner v. N.J., 329 U.S. 565, 574, 67 S. Ct. 467, 91 L. Ed. 504 (1947), which held that filing a proof of claim waives a state's immunity); In re Stanley, 273 B.R. 907 (Bankr. N.D. Fla. 2002) (having waived immunity by filing proofs of claim, state could not reinstate immunity by withdrawing them).

[53] See, e.g., Sullivan v. Town & Country Nursing Home Services, Inc., 963 F.2d 1146 (9th Cir. 1992).

[54] In re Supreme Beef Processors, Inc., 391 F.3d 629 (5th Cir. 2004) (claims did not arise out of same transaction or occurrence and could not be asserted under section 106(b), but could be set off against

A debtor or trustee may also offset against a claim or interest of a governmental unit any claim against the governmental unit that is property of the estate.[55] However, in some cases courts will have to define whether different agencies of the same government are the same governmental unit for purposes of this section.[56]

Because it is still possible that some actions may not be brought directly against a state that has not waived its immunity,[57] proceedings seeking injunctive or declaratory relief should also be brought under the *Ex parte Young* doctrine.[58] Because civil contempt damages and attorney fees are considered prospective relief, they may be awarded against a state officer notwithstanding the state's Eleventh Amendment immunity.[59] Additionally, nonbankruptcy limitations on and waivers of sovereign immunity remain applicable in bankruptcy.[60]

---

government claim under section 106(c)), later decision at 468 F.3d 248 (5th Cir. 2006) (disallowing setoff under section 106(c)). See Lazar v. California, 237 F.3d 967 (9th Cir. 2001) (state's proof of claim arose out of same transaction or occurrence as mandamus action against state seeking payment of claims from Underground Storage Tank Cleanup Trust); In re Price, 42 F.3d 1068 (7th Cir. 1994) (violation of automatic stay arose out of same transaction as government's tax claim); In re Graham, 981 F.2d 1135 (10th Cir. 1992) (section 106(a) requires claims against government to be compulsory counterclaims for sovereign immunity waiver under that subsection); In re Rebel Coal Co., 944 F.2d 320 (6th Cir. 1991) (preference claim arising from garnishment for fines did not arise from same transaction or occurrence as government's claim for remaining fines, so sovereign immunity not waived under section 106(a)). Cf. United States v. Pullman Constr. Indus., Inc., 153 B.R. 539 (N.D. Ill. 1993) (preference action against Internal Revenue Service was compulsory counterclaim to government's claim for taxes).

[55] 11 U.S.C. § 106(c).

[56] See In re Charter Oak Assoc., 361 F.3d 760 (2d Cir. 2004) (proof of claim filed by state tax agency waived immunity for claim against state social services agency); In re Hal, Inc., 122 F.3d 851 (9th Cir. 1997) (federal government is unitary creditor for purposes of setoff rights); In re Turner, 84 F.3d 1294 (10th Cir. 1996) (en banc) (federal government is unitary creditor for bankruptcy purposes so debt owed to one agency may be set off against claim of another); Doe v. United States, 58 F.3d 494 (9th Cir. 1995) (all agencies of United States are a single governmental unit);

[57] Murphy v. Michigan Guar. Agency, 271 F.3d 629 (5th Cir. 2001); In re Mitchell, 209 F.3d 1111 (9th Cir. 2000).

[58] See Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

[59] In re Colon, 114 B.R. 890 (Bankr. E.D. Pa. 1990). See also In re Bryant, 116 B.R. 272 (Bankr. D. Kan. 1990) (IRS had no defense of sovereign immunity when it violated discharge injunction), aff'd, 1991 WL 204911 (D. Kan. Sept. 9, 1991); In re Adams, 115 B.R. 59 (Bankr. D.N.J. 1990) (wage order entered against debtor employed by Navy did not violate sovereign immunity because order provided injunctive, not monetary, relief). But see In re Gustafson, 934 F.2d 216 (9th Cir. 1991) (state immune from money damages for violations of the stay without express consideration of potential contempt remedies).

[60] See In re Epps, 110 B.R. 691 (E.D. Pa. 1990) (debtor's action against Dep't of Housing and Urban Development for equitable relief was not barred by sovereign immunity because it was permitted under Administrative Procedure Act).

One other way of dealing with federal sovereign immunity problems may be available under the Tucker Act[61] and the "Little Tucker Act."[62] The latter statute permits non-tort suits for money damages arising under federal law to be brought against the federal government in district court if the amount sought is less than $10,000.[63] Thus, a debtor or trustee should be able to file such a proceeding arising under the Bankruptcy Code, or the Constitution or any other federal statute, in the district court. Probably, if the proceeding arises under the Code, it would automatically be referred to the bankruptcy court under the general order of reference applicable in that district court.[64]

However, the Supreme Court has ruled that the Little Tucker Act does not apply when a statute provides its own detailed remedial scheme.[65] Whether a claim under the Bankruptcy Code, which has its own sovereign immunity provisions in section 106, could survive this test is questionable.

**The Ancillary Jurisdiction Exception to Sovereign Immunity**

The broad historical scope of ancillary to *in rem* bankruptcy jurisdiction bears on the scope of the exception to sovereign immunity established in *Katz*. The Eleventh Amendment was written using subject matter jurisdiction terminology; it limits "[t]he Judicial power of the United States."[66]The Supreme Court cited to that language in *Seminole Tribe*:

---

[61] 28 U.S.C. § 1491. See generally Dennis M. Garvis & Frank W. Koger, If at First You Don't Succeed . . . ; An Alternative Remedy After Nordic Village, 66 Am. Bankr. L.J. 423 (1992).

[62] 28 U.S.C. § 1346(a)(2).

[63] 28 U.S.C. § 1346(a)(2).

Claims over $10,000 must be brought in the United States Claims Court. 28 U.S.C. § 1491. But see Bowen v. Massachusetts, 487 U.S. 879, 906 n.42, 108 S. Ct. 2722, 2738 n.42, 101 L. Ed. 2d 749, 771 (1988) (legislation upon which claim is based must be such that it can fairly be interpreted as mandating compensation by the federal government for damage sustained); Sheehan v. United States, 2012 WL 1637967 (N.D. W. Va. May 8, 2012) (no jurisdiction unless there is an express provision for payment from funds appropriated by Congress).

[64] See Dennis M. Garvis & Frank W. Koger, If at First You Don't Succeed ; An Alternative Remedy After Nordic Village, 66 Am. Bankr. L.J. 423, 434 (1992).

[65] United States v. Bormes, 568 U.S. 6, 133 S. Ct. 12, 184 L. Ed. 2d 317 (2012).

[66] U.S. Const. amend. XI. The choice of words may have simply been a response to the language in *Chisholm v. Georgia*, 2 U.S. 419 (1793), which was decided based on constitutional language granting subject matter jurisdiction, and it may have been an attempt to ensure applicability of the amendment to pending cases, or to ensure that States could determine when they could be sued. *See* Caleb Nelson, *Sovereign Immunity as a Doctrine of Personal Jurisdiction*, 115 Harv. L. Rev. 1559, 1603–07 (2002) (discussing possible reasons Congress chose wording of Eleventh Amendment).

The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.[67]

Just as Eleventh Amendment sovereign immunity is a "hybrid" of subject matter and personal jurisdiction, bankruptcy *in rem* ancillary jurisdiction highlighted by the *Katz* case is also a hybrid.  The Supreme Court may have limited the breadth of such litigation against States, however, in that the *Katz* case analyzed the understanding of the framers of the Constitution as well as the concept of ancillary jurisdiction to *in rem* proceedings. Several times, the Court used limiting language in describing the States' surrender of immunity with respect to bankruptcy in the plan of the Convention:

> [R]atification of the Bankruptcy Clause does represent a surrender by the States of their sovereign immunity in *certain* federal proceedings.[68]

> The Framers would have understood that laws 'on the subject of Bankruptcies' included laws providing, in *certain limited* respects, for more than simple adjudications of rights in the *res*.[69]

> [T]he power to enact bankruptcy legislation was understood to carry with it the power to subordinate state sovereignty, albeit *within a limited sphere*.[70]

The Court analyzed the historical record, and determined that the particular type of ancillary proceeding at issue in *Katz* was within the understanding of the people crafting and ratifying the Constitution when they authorized Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States."[71]

Instead of using such historical concerns to limit the meaning of the Bankruptcy Clause, the *Katz* opinion used history to show that the Framers of the Constitution were aware of the issues and intentionally conferred broad authority to enact "Laws on the subject of Bankruptcies" that could bind States.[72] It explained that this power could be exercised by Congress to treat States in a special manner, or to treat them like other creditors; the Constitution did not impose restrictions.[73] Referring to the Bankruptcy Act of 1800, the Court said:

> That Congress felt the need to carve out an exception for States' preferences undermines any suggestion that it was operating against a background presumption of state sovereign immunity to bankruptcy laws.[74]

---

[67] Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72–73 (1996).
[68] *Katz*, 126 S. Ct. at 1000 n.9 (emphasis added).
[69] *Id*. at 1000 (emphasis added).
[70] *Id*. at 1004 (emphasis added).
[71] *Id*. at 1000–02 (quoting U.S. CONST. art. I, §8, cl. 4)
[72] *Id*. at 1004 (citing Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779 (1991) (internal quotations omitted)).
[73] *Id*. at 1005.
[74] *Id*. at 1003 n.12.

The point, said the Court, was that Congress was empowered to make determinations about the extent of bankruptcy court power over States:

> The relevant question is not whether Congress has "abrogated States" immunity in proceedings to recover preferential transfers. The question, rather, is whether Congress' determination that States should be amenable to such proceedings is with the scope of its power to enact "Laws on the subject of Bankruptcies."[75]

Analogizing historical examples cited by the Court in *Katz* to modern-day equivalents, however, it is evident that bankruptcy proceedings determining rights of States are extensive.

For example, *Katz* cited *habeas corpus* proceedings directing States to release debtors from state prisons as an illustration of the exercise of jurisdiction ancillary to *in rem* bankruptcy jurisdiction.[76]The current Bankruptcy Code expressly does not stay criminal actions against debtors, or state proceedings to suspend or restrict debtors' licenses to move in vehicles or operate their businesses.[77]

But a bankruptcy statute could provide otherwise under the reasoning in *Katz* and older Supreme Court cases, and federal bankruptcy court *in rem* ancillary jurisdiction over a debtor apparently would encompass adversary proceedings to enjoin government officials from exercising such power to terminate a debtor's rights. The Bankruptcy Code does stay numerous other types of actions States can take, such as seizing tax refunds or impressing liens on estate property to satisfy debts.

*Katz* noted that historically, bankruptcy courts had authority "to imprison recalcitrant third parties in possession of the estate's assets" and to "pursue any *legal* method of recovering [the debtor's] property "[78] The *Katz* opinion recognized that the bankruptcy court has power under the current Bankruptcy Code to recover property under section 550 and mandate turnover of assets to marshal the entirety of a debtor's estate.[79]
By inference as well as by statute, the bankruptcy court accordingly has jurisdiction over adversary proceedings to seize assets in which the estate allegedly has an interest, pursue avoidance actions of all kinds, and simply liquidate assets including causes of action. *Katz* repeatedly referenced bankruptcy courts' ancillary power "to issue compulsory orders to facilitate administration and distribution of the bankruptcy *res*."[80] That would logically include authority

---

[75] *Katz*, 126 S. Ct. at 1005 (internal citations omitted).

[76] *Id*. at 1004–05 (recognizing Sixth Congress' authorization of federal courts to release debtors from state prisons).

[77] *Id*. at 1004–05 (recognizing Sixth Congress' authorization of federal courts to release debtors from state prisons).

[78] *Katz*, 126 S. Ct. at 1000 (emphasis in original).

[79] *Id.*; *see* 11 U.S.C. §§ 550, 541, 542 (2006) (discussing property of estate, turnover of property to estate, and liability of transferee of avoided transfer).

[80] *Katz*, 126 S. Ct. at 996 (recognizing bankruptcy court's power to distribute *res*).

to determine an estate's tax liability, contract assumption rights, claim allowance and status, rights and claims with respect to use and sale of estate property, and similar matters.[81]

Congress may have determined that States should not be obliged to participate in some bankruptcy proceedings without their consent, however. Section 106(a) of the Bankruptcy Code lists numerous Code provisions where Congress specified that "sovereign immunity is abrogated as to a governmental unit."[157] *Id.* § 106(a) (2006).

*Katz* upheld bankruptcy court jurisdiction to recover payments preferentially made to State entities.[82] The Court's reasoning appears broad enough to encompass all or virtually all proceedings that might be brought under the bankruptcy court's "arising under, arising in and related to" jurisdiction.[83] The scope of such proceedings themselves, when evaluated by a test of *in rem* ancillary jurisdiction, is far-reaching, even if section 106(a) is construed as a limited recognition of sovereign immunity in bankruptcy.

The Sheriff does not dispute that **"the automatic stay is a fundamental procedural mechanism that allows a bankruptcy court to exercise its core in rem functions – jurisdiction over the bankruptcy estate and the equitable distribution of the debtor's property among its creditors."** *In re Diaz*, 647 F.3d. at 1085. *See* Def's Memo at 6. This Court has already ruled on this issue and rejected the defense of governmental immunity in *In re Odom*, 570 B.R. 718 (2017); *In re Odom*, 571 BR 687 (2017) where the Philadelphia Parking Authority asserted governmental immunity as a defense to the § 362(k) claim. The court noted "The PPA asserts that, as a government agency, it is entitled to immunity from the Debtor's claim for damages under 11 U.S.C. § 362(k) and therefore, it is entitled to summary judgment. This argument is without merit. In evaluating an immunity defense, the starting point is to determine the source of the asserted immunity. In this case, to understand fully the contours of the immunity issue presented, it is helpful to start with the type of immunity that is not at issue. The PPA does not assert immunity based on the Eleventh Amendment to the U.S. Constitution. The Eleventh Amendment applies to actions brought by a citizen against a state or state instrumentality. The Eleventh Amendment provides no defense to the PPA for two (2) independent reasons. First, The PPA admits that it is a local agency, not a state agency or instrumentality. (PPA's Motion at 6). Consequently, Eleventh Amendment immunity is not applicable here. Second, and equally significant, any potential Eleventh Amendment immunity has been waived and imposes no obstacle to the bankruptcy court's adjudication of this proceeding for damages under 11 U.S.C. § 362(k)."

Judge Frank's immunity analysis in *In re Odom* is availing: "In *Central Virginia Community College v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), the Supreme Court held that the "States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to `Laws on the subject

---

[81] 11 U.S.C. §§ 363, 364, 365, 502, 505, 506, 510 (2006) (discussing use, sale, or lease of property, obtaining credit, executory contracts and unexpired leases, allowance of claims or interests, determination of tax liability, determination of secured status, and subordination).

[82] *Katz*, 126 S. Ct. at 994 (recovering preferential transfers to each of petitioners).

[83] *Id*. at 995–96 (failing to implicate state sovereignty to the "same degree as other kinds of jurisdiction").

of Bankruptcies.'" Id. at 377, 126 S.Ct. 990. As a result, bankruptcy in rem jurisdiction extends against a state in all matters arising in bankruptcy cases that are "necessary to effectuate the in rem jurisdiction of the bankruptcy courts." Id. at 378, 126 S.Ct. 990. The exercise of this bankruptcy jurisdiction is not dependent upon 11 U.S.C. § 106 or any Congressional action.

In *Katz*, the Supreme Court identified three (3) "[c]ritical features" of the bankruptcy court's in rem jurisdiction:

the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a `fresh start' by releasing him, her, or it from further liability for old debts. 546 U.S. at 363-64, 126 S.Ct. 990.

A proceeding involving the enforcement of the automatic stay constitutes a "critical feature" in the exercise of in rem bankruptcy jurisdiction in that it facilitates the exercise of the court's exclusive jurisdiction over the debtor's property. As the Eleventh Circuit has explained:

Ordinarily, an adversary action arising out of a creditor's violations of the automatic stay forces the creditor to honor the automatic stay and thereby assists the bankruptcy court in carrying out its in rem functions. That holds true even where the action takes the form of a motion seeking contempt and sanctions. Although these kinds of actions `may resemble money damage lawsuits in form, it is their function that is critical, and their function is to facilitate the in rem proceedings that form the foundation of bankruptcy.' (italics in original).

*In re Diaz*, 647 F.3d 1073, 1085 (11th Cir. 2011);[12] accord *In re Schroeder,* 2009 WL 3526504, at *4 (Bankr. D. Neb. Oct. 23, 2009) (under *Katz*, "damages for violating the automatic stay are within the scope of the [bankruptcy] court's authority over the states").

In its submissions, the PPA muddles the immunity issue by discussing 11 U.S.C. § 106(a) at some length. Section 106(a) purports to be a Congressional waiver of Eleventh Amendment immunity (an immunity which the *Katz* court held was waived through the ratification of the Constitution and not dependent on Congressional action).

Section 106(a) states, in relevant part,

[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to [inter alia. § 362].

The PPA points out, accurately, that in *In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 245 (3d Cir. 1998), the Third Circuit held that a prior version of § 106(a) was unconstitutional insofar as it purported to be a Congressional abrogation of the states' Eleventh Amendment immunity. See also *In re Philadelphia Entm't & Dev. Partners, L.P.,* 549 B.R. 103, 121 (Bankr. E.D. Pa. 2016) ("consistent with the Third Circuit's

opinion in *Sacred Heart*, to find that § 106(a) of the Bankruptcy Code may not be relied upon by the Trustee to defeat the Commonwealth Parties' assertion of sovereign immunity"). The PPA then argues that § 106(a) does not interfere with the immunity provided by the PSTCA.

For the reasons explained in Part V.A.1, supra, the PPA's § 106(a) argument is unavailing. It is based on the false premise that § 106(a) impacts its claimed entitlement to immunity. After *Katz*, both *Sacred Heart* and § 106(a) essentially are irrelevant in the analysis of waiver of state sovereign immunity. In any event, as previously explained in the previous section of this Memorandum: (1) as a local agency, the PPA cannot invoke state sovereign immunity; and **(2) even if the PPA were a state instrumentality, under *Katz*, it could not invoke sovereign immunity as a defense to an action under 11 U.S.C. § 362(k)."**

The automatic stay imposes a specific and definite injunction that is equivalent of a court order. The Sheriff acknowledges, as it must, that it had notice of the Debtor's bankruptcy filing and the existence of the automatic stay. The Commonwealth of Pennsylvania, (or a local agency) cannot immunize itself from liability for violation of the provisions of the federal Bankruptcy Code.

WHEREFORE, Plaintiff, by and through his counsel, respectfully request that this Honorable Court dismiss Sheriff's Motion for Summary Judgment.

Dated:  April 6, 2020

By: /s/ *Predrag Filipovic*          BY: /s/ *Stephen M. Dunne*
Predrag Filipovic, Esquire          Stephen M. Dunne, Esquire
1735 Market St., Suite 3750         1515 Market Street, Suite. 1200
Philadelphia, PA 19103              Philadelphia, PA 19102
267-265-0520 Phone                  (215) 551-7109 Phone
Attorney for Plaintiff              Attorney for Plaintiff

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Lyndel Toppin, | : | |
| Debtor. | : | Bankruptcy No.  18-13098-MDC |

| | | |
|---|---|---|
| Lyndel Toppin, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 18-00137-MDC |
| Jewell Williams, Sheriff of the City of Philadelphia and Abdeldayem Hassan aka Abdeldyem Hassan, | : | |
| Defendants. | : | |

# ORDER GOVERNING PROCEDURES AT TRIAL CONDUCTED REMOTELY BY VIDEOCONFERENCE

**AND NOW WHEREAS**, the Court scheduled a Trial in the matter of *Lyndell Toppin v. Jewell Williams, Sheriff of the City of Philadelphia and, Abdeldayem Hassan aka Abdeldyem Hassan*, Adversary No. 18-00137, for **July 17, 2020, at 10:30 a.m.** (the "Trial").

**AND**, due to the limitations on public gatherings imposed by public health authorities in response to the COVID-19 pandemic, it being impractical to conduct the Trial in the ordinary course in the courtroom.

**AND**, therefore, there being compelling circumstances justifying conducting the Trial remotely by video conference pursuant to Fed. R. Bankr. P. 9017 (incorporating Fed. R. Civ. P. 43(a)).

It is therefore **ORDERED** that the parties shall comply with the following procedures in connection with the Trial:

**Pretrial Disclosure Requirements**

1.     **On or before July 15, 2020**, any party intending to call a witness to testify by video conference (the "Remote Witness") shall file and serve[1] a Remote Witness List setting forth the following:

     a.    the name and title of the Remote Witness;

     b.    a summary of subject matter of the anticipated testimony;

     c.    an e-mail address for the witness;[2]

     d.    the location of the Remote Witness (city, state, country);

     e.    the place from which the Remote Witness will testify (e.g. home, office – no addresses are required);

     f.    whether any other person(s) will be in the room with the Remote Witness during the testimony, and if so, who (name, title and the other person(s)' relationship to the Remote Witness), and the purpose of the other person(s)' presence;

     g.    whether the Remote Witness will have access to any documents other than exhibits included on the Exhibit List required by Paragraph 3 below and, if so, a description of those documents and the reason why they have not been included on the Exhibit List.

2.     **On or before July 15, 2020**, any party intending to offer into evidence in its case in chief or otherwise use at the Trial any exhibits shall:

     a.    pre-mark each exhibit;

     b.    serve each party who has appeared in the matter(s) being heard at the Trial with a list of each exhibit ("the Exhibit List");

     c.    serve each party with each pre-marked exhibit on the Exhibit List;[3]

---

[1]  It is contemplated and preferred that all service required by this Order will be accomplished by e-mail. However, other means of service are acceptable so long as the document to be served is received within one (1) business day of service.

[2]  The witness' e-mail address provides a means for opposing parties to communicate with the witness (when that is legally permissible) as well as a means for service of exhibits to be used in connection with the witness' examination by opposing counsel during the Trial.

[3]  If an exhibit is on the docket, counsel may reference the applicable CM/ECF docket number rather than serving the exhibit itself on opposing counsel.  However, an exhibit used in connection with the testimony

2

    d.      deliver the Exhibit List and the exhibits to the court by e-mailing them to the Courtroom Deputy at Eileen_Godfrey@paeb.uscourts.gov.

3.      A party that wishes to use an exhibit in connection with the examination or cross-examination of a witness shall serve the witness with each such exhibit (with notice to all other parties) at least 24 hours prior to the Trial.

4.      If a party anticipates the possibility of offering into evidence or otherwise using exhibits at the Trial in the party's case in rebuttal:

    a.      On the same date as set forth in Paragraph 2, the party shall prepare a Rebuttal Exhibit List and shall e-mail the Rebuttal Exhibit List and all rebuttal exhibits to the Courtroom Deputy.

    b.      The court will retain, without reviewing, the Rebuttal Exhibit List and the rebuttal exhibits unless and until the party seeks to use a rebuttal exhibit at the Trial.

    c.      If a party seeks to use a rebuttal exhibit, the rebuttal exhibit will then be e-mailed to all parties participating in the Trial and the witness.  If appropriate, the court will take a short recess to allow the other parties to review the exhibit.[4]

5.      **FAILURE TO COMPLY STRICTLY WITH THE REQUIREMENTS OF PARAGRAPHS 1-4 MAY RESULT IN THE EXCLUSION OF EVIDENCE OFFERED DURING THE TRIAL**.

<u>**Technological and Logistical Protocols**</u>

6.      Any attorney or party or representative of a party wishing to attend the Trial and participate by video shall notify the Courtroom Deputy at least 72 hours prior to the Trial in order to obtain the access information to the Trial.[5]

---

of a witness must be supplied to the witness.

[4] The procedures in Paragraph 3 are included because there are situations in which a party may legitimately wish to hold back a rebuttal exhibit and use it only if necessary due to the developments during a Trial.  If no such concerns exist, nothing in this Order precludes a party from including rebuttal exhibits on the primary Exhibit List and labeling them as such.

[5] An attorney may make the request on behalf of a client or client representative.

7.      **ALL AUDIO WILL BE THROUGH THE ZOOM WEBSITE.  IT IS STRONGLY PREFERRED THAT ALL PARTICIPANTS EMPLOY THE COMPUTER AUDIO OPTION, RATHER THAN THE TELEPHONIC OPTION AVAILABLE ON THE ZOOM WEBSITE.**

8.      Each party calling a witness is responsible for providing the Zoom link to the witness.

9.      To reduce the risk of transmission problems with the video or audio during the Trial, the parties should, when possible, limit themselves to one (1) participating attorney and it is preferable that those persons who do not anticipate addressing the court limit themselves to audio participation.  The court reserves the right to limit the attendance of non-litigants and their counsel to receipt of audio.

10.     Since Zoom technology permits the participants to set a virtual background when using the video function, all participants are instructed that any virtual background must be dignified and respectful.  The background may not contain any messages or background that is political or that may influence the witness or the proceeding or that is otherwise inappropriate. **FAILURE TO COMPLY WITH THIS PARAGRAPH MAY RESULT IN THE IMPOSITION OF SANCTIONS**.

11.     **CONSISTENT WITH JUDICIAL CONFERENCE POLICY, NO PERSON MAY RECORD THE VIDEO OR AUDIO OF THE TRIAL.  FAILURE TO COMPLY WITH THIS PARAGRAPH MAY RESULT IN THE IMPOSITION OF SANCTIONS.**

4

Dated:  June 30, 2020

MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Stephen M. Dunne, Esquire
Dunne Law Offices, P.C.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Predrag Filipovic, Esquire
1735 Market Street, Suite 3750
Philadelphia, PA 19103

Megan N. Harper, Esquire
Joshua Domer, Esquire
City of Philadelphia
Law/Revenue Department
Municipal Service Building
1401 John F. Kennedy Boulevard, Room 580
Philadelphia, PA 19102-1595

David M. Offen, Esquire
The Curtis Center
601 Walnut Street, Suite 160 West
Philadelphia, PA 19106

*UNITED STATES BANKRUPTCY COURT*
*EASTERN DISTRICT OF PENNSYLVANIA*

---

In Re: Lyndel Toppin                                  Chapter: 13

                        Plaintiff

           v.                                         Bankruptcy No. 18−13098−mdc

Jewell Williams

                        Defendant                     Adversary No. 18−00137−mdc

---

*NOTICE OF TRIAL*

PLEASE TAKE NOTICE that a TRIAL will be held on the above captioned matter before the
Honorable Magdeline D. Coleman , United States Bankruptcy Court

           on: 8/21/20

           at: 10:30 AM

           in: Courtroom #2, 900 Market Street, Philadelphia, PA 19107

Dated: 7/14/20

                                                      For The Court

                                                      Timothy B. McGrath
                                                      Clerk of Court

                                                                      137 − 1
                                                                      Form 169

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Lyndel Toppin, | : | |
| Debtor. | : | Bankruptcy No.  18-13098-MDC |

| | | |
|---|---|---|
| Lyndel Toppin, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 18-00137-MDC |
| Jewell Williams, Sheriff of the City of Philadelphia and Abdeldayem Hassan aka Abdeldyem Hassan, | : | |
| Defendants. | : | |

# ORDER GOVERNING PROCEDURES AT TRIAL CONDUCTED REMOTELY BY VIDEO CONFERENCE

**AND NOW WHEREAS**, it is necessary and appropriate to conduct *Lyndell Toppin v. Jewell Williams, Sheriff of the City of Philadelphia and Abdeldayem Hassan aka Abdeldyem Hassan*, Adversary No. 18-00137, for **August 21, 2020, at 10:30 a.m.** (the "Trial").

**AND**, due to the limitations on public gatherings imposed by public health authorities in response to the COVID-19 pandemic, it being impractical to conduct the Trial in the ordinary course in the courtroom.

**AND**, therefore, there being compelling circumstances justifying conducting the Trial remotely by video conference pursuant to Fed. R. Bankr. P. 9017 (incorporating Fed. R. Civ. P. 43(a)).

It is therefore **ORDERED** that the parties shall comply with the following procedures in connection with the Trial:

100

## Pretrial Disclosure Requirements

1.     **On or before August 17, 2020**, any party intending to call a witness to testify by video conference ("the Remote Witness") shall file and serve[1] a Remote Witness List setting forth the following:

    a.    the name and title of the Remote Witness.

    b.    a summary of subject matter of the anticipated testimony.

    c.    an e-mail address for the witness.[2]

    d.    the location of the Remote Witness (city, state, country).

    e.    the place from which the Remote Witness will testify (e.g. home, office – no addresses are required).

    f.    whether any other person(s)  will be in the room with the Remote Witness during the testimony, and if so, who (name, title and the other person(s)' relationship to the Remote Witness), and the purpose of the other person(s)' presence.

    g.    whether the Remote Witness will have access to any documents other than exhibits included on the Exhibit List required by Paragraph 3 below and, if so, a description of those documents and the reason why they have not been included on the Exhibit List.

2.     **On or before August 17, 2020**, any party intending to offer into evidence in its case in chief or otherwise use at the Trial any exhibits shall:

    a.    pre-mark each exhibit.

    b.    serve each party who has appeared in the matter(s) being heard at the Trial with a list of each exhibit ("the Exhibit List").

    c.    serve each party with each pre-marked exhibit on the Exhibit List.[3]

---

[1]  It is contemplated and preferred that all service required by this Order will be accomplished by e-mail. However, other means of service are acceptable so long as the document to be served is received within one (1) business day of service.

[2]  The witness' e-mail address provides a means for opposing parties to communicate with the witness (when that is legally permissible) as well as a means for service of exhibits to be used in connection with the witness' examination by opposing counsel during the Trial.

[3]  If an exhibit is on the docket, counsel may reference the applicable CM/ECF docket number rather than

2

      d.      deliver the Exhibit List and the exhibits to the court by e-mailing them to the Courtroom Deputy at Eileen_Godfrey@paeb.uscourts.gov.

3.      A party that wishes to use an exhibit in connection with the examination or cross-examination of a witness shall serve the witness with each such exhibit (with notice to all other parties) at least 24 hours prior to the Trial.

4.      If a party anticipates the possibility of offering into evidence or otherwise using exhibits at the Trial in the party's case in rebuttal:

      a.      On the same date as set forth in Paragraph 2, the party shall prepare a Rebuttal Exhibit List and shall e-mail the Rebuttal Exhibit List and all rebuttal exhibits to the Courtroom Deputy.

      b.      The court will retain, without reviewing, the Rebuttal Exhibit List and the rebuttal exhibits unless and until the party seeks to use a rebuttal exhibit at the Trial.

      c.      If a party seeks to use a rebuttal exhibit, the rebuttal exhibit will then be e-mailed to all parties participating in the Trial and the witness. If appropriate, the court will take a short recess to allow the other parties to review the exhibit.[4]

5.      **FAILURE TO COMPLY STRICTLY WITH THE REQUIREMENTS OF PARAGRAPHS 1-4 MAY RESULT IN THE EXCLUSION OF EVIDENCE OFFERED DURING THE TRIAL**.

<u>**Technological and Logistical Protocols**</u>

6.      Any attorney or party or representative of a party wishing to attend the Trial and participate by video shall notify the Courtroom Deputy at least 72 hours prior to the Trial in

---

serving the exhibit itself on opposing counsel. However, an exhibit used in connection with the testimony of a witness must be supplied to the witness.

[4] The procedures in Paragraph 3 are included because there are situations in which a party may legitimately wish to hold back a rebuttal exhibit and use it only if necessary due to the developments during a hearing. If no such concerns exist, nothing in this Order precludes a party from including rebuttal exhibits on the primary Exhibit List and labeling them as such.

order to obtain the access information to the Trial.[5]

      7.    **EACH PARTY CALLING A WITNESS IS RESPONSIBLE FOR PROVIDING THE ZOOM LINK TO THE WITNESS**.

      8.    **ALL AUDIO WILL BE THROUGH THE ZOOM WEBSITE.  IT IS STRONGLY PREFERRED THAT ALL PARTICIPANTS EMPLOY THE COMPUTER AUDIO OPTION, RATHER THAN THE TELEPHONIC OPTION AVAILABLE ON THE ZOOM WEBSITE.**

      9.    When signing into Zoom, each participant shall use their first and last name as their screen name, not an e-mail address or nickname.

      10.    Counsel and parties must treat the proceeding as if it were in open court so appropriate dress and decorum are required.

      11.    To reduce the risk of transmission problems with the video or audio during the Trial, the parties should, when possible, limit themselves to one (1) participating attorney and it is preferable that those persons who do not anticipate addressing the court limit themselves to audio participation.  The court reserves the right to limit the attendance of non-litigants and their counsel to receipt of audio.

      12.    No participant may use a virtual background without Court permission.  Any virtual background must be dignified and respectful.  The background may not contain any messages or background that is political or that may influence the witness or the proceeding or that is otherwise inappropriate.  **FAILURE TO COMPLY WITH THIS PARAGRAPH MAY RESULT IN THE IMPOSITION OF SANCTIONS**.

---

[5] An attorney may make the request on behalf of a client or client representative.

4

13.     During testimony by a party or witness, no one is permitted to communicate - via text or chat application or any other means - with the testifying witness except by way of on the record oral questions directed toward that witness.

14.     All participants must appear on camera during the entire trial, whether or not they are speaking, unless the Court directs otherwise.

15.     Participants must limit or eliminate possible background distractions.

16.     If during the course of the proceeding it becomes necessary for counsel to consult with a client in private, counsel request to be sent to a breakout room for a short time to have a private conversation.  However, this Paragraph does not apply when the client is in the midst of testifying.

17.     **CONSISTENT WITH JUDICIAL CONFERENCE POLICY, NO PERSON MAY RECORD THE VIDEO OR AUDIO OF THE TRIAL.  FAILURE TO COMPLY WITH THIS PARAGRAPH MAY RESULT IN THE IMPOSITION OF SANCTIONS.**

Dated:  July 29, 2020

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Stephen M. Dunne, Esquire
Dunne Law Offices, P.C.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Megan N. Harper, Esquire
Joshua Domer, Esquire
City of Philadelphia
Law/Revenue Department
Municipal Service Building
1401 John F. Kennedy Boulevard, Room 580
Philadelphia, PA 19102-1595

David M. Offen, Esquire
The Curtis Center
601 Walnut Street, Suite 160 West
Philadelphia, PA 19106

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
--------------------------------------------------x
In re:                                        :
                                              :        Chapter 13
LYNDEL TOPPIN,                                 :
                                              :        Bankruptcy No. 18-13098 (MDC)
            Debtor.                            :
--------------------------------------------------x
--------------------------------------------------x
                                              :
LYNDEL TOPPIN,                                 :
                                              :        Adv. Pro. No. 18-00137 (MDC)
            Plaintiff,                         :
                                              :
      v.                                       :
                                              :
JEWELL WILLIAMS SHERIFF                         :
OF THE CITY OF PHILADELPHIA and                :
ABDELDAYEM HASSAN a/k/a                         :
ABDELDYEM HASSAN,                              :
                                              :
            Defendant                         :
--------------------------------------------------x
```

**SHERIFF OF THE CITY OF PHILADELPHIA'S**
**<u>REMOTE WITNESS AND EXHIBIT LIST</u>**

Defendant Sheriff of the City of Philadelphia (the "Sheriff"),[1] hereby submits this Remote

Witness and Exhibit List related to the trial scheduled July 17, 2020 at 10:30 a.m.:

**WITNESSES**

1.      Captain Sean Thornton
        Philadelphia Sheriff's Office Civil Enforcement/Investigations Units
        100 South Broad Street, 5th Floor
        Philadelphia, PA 19110
        Sean.thornton@phila.gov

        Captain Thornton is expected to testify regarding policies and procedures of the Civil

Enforcement Unit, including those with respect to receipt of notices of bankruptcy. He will testify

---

[1] Note the current Sheriff of the City of Philadelphia is Rochelle Bilal and an amended case caption is appropriate.

regarding the Civil Enforcement Unit's records with respect to notice of Lyndel Toppin's bankruptcy case. Captain Thornton will also testify as to the Civil Enforcement Unit's record keeping procedures and resources, the Civil Enforcement Unit's record keeping with respect to Writs of Possession, and the Civil Enforcement Unit's records with respect to the Writ of Possession at issue in this case. He will also testify in general regarding his duties and the duties of the Civil Enforcement Unit.

It is anticipated that Captain Thornton will be testifying remotely from a City of Philadelphia office conference room and that counsel for the Sheriff will also be present.

2.      Sergeant Jetaria Taylor
        Philadelphia Sheriff's Office
        100 South Broad Street
        Philadelphia, PA 19110
        Jetaria.taylor@phila.gov

Sergeant Taylor is expected to testify regarding her duties as a deputy sheriff in the Civil Enforcement Unit. She will also testify regarding the manner in which Writs of Possession are executed and the manner in which she executed upon the Writ of Possession in this case. Sergeant Taylor will testify regarding record keeping with respect to the Writ of Possession at issue in this case and Writs of Possession in general. She will testify regarding her knowledge, if any, of notice of Lyndel Toppin's bankruptcy case as well as her understanding fo procedures and policies of the Unite regarding notices of bankruptcy.

It is anticipated that Sergeant Taylor will be testifying remotely from a City of Philadelphia office conference room and that counsel for the Sheriff will also be present.

3.      Abdeldayem Hassan
        309 Barker Avenue
        Lansdowne, PA 19050
        dyem341@yahoo.com

Mr. Hassan will testify regarding what notice he received, if any, regarding Lyndel Toppin's bankruptcy proceedings including how and when notice was received. Mr. Hassan will also testify regarding when (if) he gave notice of the bankruptcy proceedings to the Sheriff's Office and how such notice was given.

It is anticipated that Mr. Hassan will be testifying remotely from a home or office and that his counsel may be present.

The Sheriff reserves the right to examine any additional witnesses identified by the other parties.

## EXHIBITS

City-1:     Writ of Possession maintained by Sheriff's Office

City-2:     Fax Notice of Bankruptcy dated May 8, 2018

City-3:     Sheriff's Return of Service for Court of Common Pleas Docket No. 1504T0192

City-4:     Service Event Report dated May 10, 2018

City-5:     Fax of Notice of Bankruptcy dated June 7, 2018

City-6:     Service Event Report dated June 25, 2018

City-7:     Handwritten Entries in Logbook Dated June 25

City-8:     Handwritten Entries Regarding 21-Day Notice and Final Notice

City-9:     Philadelphia Sheriff's Sign In Sheets for Fridays in May and June 2018 as Redacted and Produced by Sheriff

City-10:    Notes of Sergeant Jetaria Taylor Produced by City December 9, 2019

City-11:    Declaration of Barrington Whyte attached to Motion for Judgment on Pleadings [Docket No. 48 in Adversary Proceeding]

City-12:    Employee Income Records [Docket No. 23 in Main Case]

City-13:     Plaintiff's Responses to Defendant, the Sheriff of the City of Philadelphia's First Set of Interrogatories

City-14:     Copy of Notice to Vacate 5/18/2018

City-15:     Copy of Notice to Vacate 5/24/2018

City-16:     Copy of Notice to Vacate 5/30/2018

City-17:     Copy of Eviction Notice 6/1/2018

City-18:     Copy of Eviction Notice 6/5/2018

City-19:     Copy of Eviction Notice 6/7/2018

City-20:     Plaintiff's Responses to Defendant, City of Philadelphia Sheriff's Department, Requests for Admission

City-21:     Verification of Barrington Whyte Regarding Responses to Defendant, City of Philadelphia Sheriff's Department, Requests for Admission

City-22:     Deposition Transcript of Barrington Whyte Dated December 12, 2019

City-23:     Deposition Transcript of Abdeldayem Hassan Dated November 6, 2019

City-24:     Abdeldayem Hassan's Answers to Request for Admission

City-25:     Abdeldayem Hassan's Answers to Interrogatories

City-26:     Philadelphia Sheriff's Office Directive 28

City-27:     Motion for Writ of Possession, with Exhibits, as Attached to Plaintiff's Second Amended Complaint at Exhibit I

City-28:     Praecipe for Writ of Possession, with Exhibits, as Attached to Plaintiff's Second Amended Complaint at Exhibit J

City-29     Deposition Transcript of Captain Sean Thornton Dated December 12, 2019

City-30     Deposition Transcript of Sergeant Jetaria Taylor Dated December 12, 2019

The City reserves the right to rely upon any exhibits identified by other parties in this matter

on direct or rebuttal.


Respectfully submitted,


THE CITY OF PHILADELPHIA

Dated: August 17, 2020       By:     /s/ *Megan N. Harper*
                                  MEGAN N. HARPER
                                  Deputy City Solicitor
                                  PA Attorney I.D. 81669
                                  JOSHUA DOMER
                                  Assistant City Solicitor
                                  PA Attorney I.D. 319190
                                  Attorneys for the City of Philadelphia
                                  Municipal Services Building
                                  1401 JFK Boulevard, 5th Floor
                                  Philadelphia, PA 19102-1595
                                  215-686-0503 (phone)
                                  Email: Megan.Harper@phila.gov

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA and | : | Plaintiff's Remote Witness List |
| ABDELDAYEM HASSAN a/k/a | : | |
| ABDELDYEM HASSAN, | : | |
| | : | |
| Defendants. | : | |

**Plaintiff's Remote Witness List**

### I. Barrington Whyte

| Witness Name/Title | Summary of Anticipated Testimony | Email Address | Location of Remote Witness |
|---|---|---|---|
| Barrington White "FRIEND OF THE COURT" pursuant to Order Doc. 22 (Case # 18-13098-mdc). | >Plaintiff's residence and relevant financial affairs, >Bankruptcy filing and the notice to the Sheriff thereof. >First hand knowledge of the ill effect the post BK notice collection and writ enforcement had on the Plaintiff. | phillypride21514 @gmail.com | Philadelphia, PA, USA |

| Place from which Remote Witness will testify | Person(s) in the room where Remote Witness will testify | Whether Remote Witness will have access to any documents other those on the Exhibit List | |
|---|---|---|---|
| Dunne Law Offices, P.C. 1515 Market Street, Suite 1200 Philadelphia, PA 19102 | Stephen M. Dunne, Debtor's Attorney Lyndel Toppin, Debtor | Barrington White Will only have access to those documents on the Exhibit List | |

## II. Jetaria Taylor

| Witness Name/Title | Summary of Anticipated Testimony | Email Address | Location of Remote Witness |
|---|---|---|---|
| Jetaria Taylor Philadelphia Sheriff Officer | >Philadelphia Sheriff Office's visits to Plaintiff's residence post-petition >Sheriff's Policy and Procedures | Megan Harper <megan.harper@phila.gov>, | Philadelphia, PA, USA |

| Place from which Remote Witness will testify | Person(s) in the room where Remote Witness will testify | Whether Remote Witness will have access to any documents other those on the Exhibit List | |
|---|---|---|---|
| City of Philadelphia Law Department Municipal Services Building 1401 J.F.K. Blvd., 5th Floor Philadelphia, PA 19102-1595 | Unknown | Unknown | |

### III. Custodian of Records

| Witness Name/Title | Summary of Anticipated Testimony | Email Address | Location of Remote Witness |
|---|---|---|---|
| Philadelphia Sheriff's Custodian of Records | >Authenticate Facsimile Transmissions and Correspondence to Philadelphia Sheriff Office >Sheriff's Policy and Procedures | Megan Harper <megan.harper@phila.gov>, | Philadelphia, PA, USA |

| Place from which Remote Witness will testify | Person(s) in the room where Remote Witness will testify | Whether Remote Witness will have access to any documents other those on the Exhibit List | |
|---|---|---|---|
| City of Philadelphia Law Department Municipal Services Building 1401 J.F.K. Blvd., 5th Floor Philadelphia, PA 19102-1595 | Unknown | Unknown | |