**APPEAL**

# U.S. Bankruptcy Court
## Eastern District of Pennsylvania (Philadelphia)
### Adversary Proceeding #: 18−00137−mdc

*Assigned to:* Chief Judge Magdeline D. Coleman                    *Date Filed:* 06/11/18
*Lead BK Case:* 18−13098
*Lead BK Title:* Lyndel Toppin
*Lead BK Chapter:* 13
*Demand:*
  *Nature[s] of Suit:*  91 Declaratory judgment
               72 Injunctive relief −
                   other

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−−−−

**Lyndel Toppin**                            represented by **STEPHEN MATTHEW DUNNE**
146 S. 62nd Street                            Dunne Law Offices, P.C.
Philadelphia, PA 19145                        1515 Market Street
SSN / ITIN: xxx−xx−2550                       Suite 1200
                                 Philadelphia, PA 19102
                                 U.S.A.
                                 215−551−7109
                                 Fax : 215−525−9721
                                 Email: bestcasestephen@gmail.com

                                 **PREDRAG FILIPOVIC**
                                 I Fight 4 Justice
                                 1735 Market Street
                                 Ste. 3750
                                 Philadelphia, PA 19103
                                 267 265 0520
                                 Email: pfesq@ifight4justice.com
                                 *TERMINATED: 06/18/2019*

                                 **MEGAN N. HARPER**
                                 City of Philadelphia − Law/Revenue Dept.
                                 1401 JFK Blvd.
                                 Room 580
                                 Philadelphia, PA 19102
                                 215 686 0503
                                 Email: megan.harper@phila.gov
                                 *TERMINATED: 02/14/2019*

                                 **DAVID M. OFFEN**
                                 The Curtis Center
                                 601 Walnut Street
                                 Suite 160 West
                                 Philadelphia, PA 19106
                                 (215) 625−9600
                                 Email: dmo160west@gmail.com
                                 *TERMINATED: 02/14/2019*

1

V.

**Defendant**
─────────────────────────

**Jewell Williams**
Sheriff of the City of Philadelphia
Land Title Building
Fifth Floor
100 South Broad Street
Philadelphia, PA 19110

represented by **MEGHAN ANNETTE BYRNES**
City of Philadelphia
1515 Arch Street
Ste 17−151
Philadelphia, PA 19102
215−683−5011
Email: meghan.byrnes@phila.gov

**JOSHUA DOMER**
City of Philadelphia Law Department
1401 JFK Blvd
5th Floor
Philadelphia, PA 19102
215 686 0519
Email: joshua.domer@phila.gov

**MEGAN N. HARPER**
(See above for address)

**Defendant**
─────────────────────────

**Abdeldayem Hassan**
309 Barker Avenue
Lansdowne, PA 19050
*aka* **Abdeldyem Hassan**

represented by **STEPHEN MATTHEW DUNNE**
(See above for address)
*TERMINATED: 02/14/2019*

**DAVID M. OFFEN**
(See above for address)

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 10/08/2020 | | 157 | Motion *for Directed Verdict* Filed by Sheriff of the City of Philadelphia Represented by MEGAN N. HARPER (Counsel). (Attachments: # 1 Proposed Order) (HARPER, MEGAN) (Entered: 10/08/2020) |
| 10/08/2020 | | 158 | Memorandum in Support of *Motion for Directed Verdict* Filed by MEGAN N. HARPER on behalf of Sheriff of the City of Philadelphia (related document(s)157). (HARPER, MEGAN) (Entered: 10/08/2020) |
| 10/29/2020 | | 161 | Response to Generic Motion filed by Defendant Sheriff of the City of Philadelphia Filed by Lyndel Toppin (related document(s)157). (DUNNE, STEPHEN) (Entered: 10/29/2020) |
| 11/06/2020 | | 162 | Supplemental Statement *Notice of Supplemental Authority* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin (related document(s)72, 71, 112, 157, 126). (DUNNE, STEPHEN) (Entered: 11/06/2020) |
| 11/10/2020 | | 163 | Hearing Held on Motion for Directed Verdict Filed by Sheriff of the City of Philadelphia Represented by MEGAN N. HARPER − HELD UNDER ADVISEMENT (G., Eileen) (Entered: 11/10/2020) |
| 11/08/2021 | | 164 | Order entered Granting in part, Denying in part Summary Judgment Motion (Related Doc # 157) . It is GRANTED with respect to the |

| | | | |
|---|---|---|---|
| | | | Debtor's request for damages for emotional distress and DENIED on all other grounds asserted. 3. The Directed Verdict Motion is GRANTED. 3. The Debtor's requested relief for sanctions against the Sheriff's Office pursuant to Section 362 (k) of the Bankruptcy Code is DENIED. (D., Virginia) (Entered: 11/09/2021) |
| 11/08/2021 | | <u>165</u> | Memorandum Order Re: <u>157</u> . An Order consistent with this Memorandum will be entered. (D., Virginia) (Entered: 11/09/2021) |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------x
In re:                                          :
                                                :   Chapter 13
LYNDEL TOPPIN,                                   :
                                                :   Bankruptcy No. 18-13098 (MDC)
             Debtor.                             :
-------------------------------------------------------x
-------------------------------------------------------x
                                                :
LYNDEL TOPPIN,                                   :
                                                :   Adv. Pro. No. 18-00137 (MDC)
             Plaintiff,                          :
                                                :
       v.                                        :
                                                :
JEWELL WILLIAMS SHERIFF                          :
OF THE CITY OF PHILADELPHIA and                  :
ABDELDAYEM HASSAN a/k/a                          :
ABDELDYEM HASSAN,                                :
                                                :
             Defendant                           :
-------------------------------------------------------x

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S**
**MOTION FOR DIRECTED VERDICT**

The Sheriff of the City of Philadelphia ("Sheriff") submits this Motion for Directed Verdict and in support thereof avers the following:

1.     Plaintiff, Lyndel Toppin (the "Plaintiff"), commenced this Adversary Proceeding against the Sheriff and Abdeldayem Hassan alleging willful violations of the automatic stay under Section 362(a) of Chapter 11 of title 11 of the United States Code § 101, *et seq.* (the "Bankruptcy Code") for post-petition enforcement of a Writ of Possession against unknown occupants at 146 S. 62nd Street, Philadelphia, Pennsylvania ("Property").

2.     The Plaintiff seeks damages including actual damages for emotional distress, costs and attorney's fees pursuant to Section 362(k) of the Bankruptcy Code.

3.      Trial in this matter commenced on August 21, 2020.

4.      At the close of Plaintiff's case, the Sheriff moved for a directed verdict.

5.      As set forth more fully in the Sheriff's Memorandum of Law in Support of Directed Verdict, the Sheriff is entitled to a directed verdict pursuant to <u>Federal Rule of Civil Procedure 52(c)</u>, made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 52, as Plaintiff failed to meet his burden of proof at trial.

WHEREFORE, Court grant a directed verdict in the Sheriff's favor, dismiss this adversary proceeding and grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: October 8, 2020          By:      _/s/ Megan N. Harper_
                                         MEGAN N. HARPER
                                         Deputy City Solicitor
                                         PA Attorney I.D. 81669
                                         Attorney for the City of Philadelphia
                                         City of Philadelphia Law Department
                                         Municipal Services Building
                                         1401 JFK Boulevard, 5th Floor
                                         Philadelphia, PA  19102-1595
                                         215-686-0503 (phone)
                                         Email: Megan.Harper@phila.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
-------------------------------------------------------x
In re:                                       :
                                             :    Chapter 13
LYNDEL TOPPIN,                               :
                                             :    Bankruptcy No. 18-13098 (MDC)
            Debtor.                          :
-------------------------------------------------------x
-------------------------------------------------------x
                                             :
LYNDEL TOPPIN,                               :
                                             :    Adv. Pro. No. 18-00137 (MDC)
            Plaintiff,                       :
                                             :
            v.                               :
                                             :
JEWELL WILLIAMS SHERIFF                      :
OF THE CITY OF PHILADELPHIA and              :
ABDELDAYEM HASSAN a/k/a                      :
ABDELDYEM HASSAN,                            :
                                             :
            Defendant                        :
-------------------------------------------------------x
```

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2020, upon consideration of The

Sheriff of the City of Philadelphia's Motion for Directed Verdict ("Motion") and Memorandum

of Law in Support thereof, and any response thereto, it is hereby ORDERED that the Motion is

GRANTED and the Complaint is hereby DISMISSED with prejudice.

BY THE COURT:

_____
MAGDELINE D. COLEMAN
CHIEF JUDGE, U.S. BANKRUPTCY COURT

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
-------------------------------------------------x
In re:                                    :
                                          :    Chapter 13
LYNDEL TOPPIN,                            :
                                          :    Bankruptcy No. 18-13098 (MDC)
          Debtor.                         :
-------------------------------------------------x
-------------------------------------------------x
                                          :
LYNDEL TOPPIN,                            :
                                          :    Adv. Pro. No. 18-00137 (MDC)
          Plaintiff,                      :
                                          :
          v.                              :
                                          :
JEWELL WILLIAMS SHERIFF                   :
OF THE CITY OF PHILADELPHIA and           :
ABDELDAYEM HASSAN a/k/a                   :
ABDELDYEM HASSAN,                         :
                                          :
          Defendant                       :
-------------------------------------------------x
```

**THE SHERIFF OF THE CITY OF PHILADELPHIA'S MEMORANDUM OF LAW
IN SUPPPORT OF MOTION FOR DIRECTED VERDICT**

The Sheriff of the City of Philadelphia ("Sheriff"),[1] hereby files the following Memorandum of Law in Support of Motion for Directed Verdict.

**I.    PROCEDURAL AND STIPULATED FACTUAL BACKGROUND**

1.    On May 8, 2018, Lyndel Toppin ("Plaintiff") petitioned this court for relief under Chapter 13 of the Bankruptcy Code.[2]

2.    On June 11, 2018, Plaintiff commenced this adversary proceeding by filing a Complaint Concerning Willful Violations of the Automatic Stay by Defendant Sheriff of the City of Philadelphia [Docket No. 1].

---

[1]The current Sheriff of the City of Philadelphia is Rochelle Bilal.

3.     On June 18, 2018, Plaintiff filed an Amended Complaint Concerning Willful Violations of the Automatic Stay by Defendants Sheriff of the City of Philadelphia and Abdeldayem Hassan a/k/a  Abdeldyem Hassan [Docket No. 3] ("First Amended Complaint").

4.     On July 19, 2019, the Sheriff filed an Answer to the First Amended Complaint with Affirmative Defenses [Docket No. 7].

5.     On August 18, 2018, the Sheriff filed a Motion for Judgment on the Pleadings [Docket No. 9] to which Plaintiff filed a reply [Docket No. 17].

6.     A hearing on the Motion for Judgment on the Pleadings was held on September 25, 2018. The Court held the Motion under advisement [Docket No. 21].

7.      On September 26, 2018, Plaintiff filed a Motion for Leave to Amend Adversary Complaint [Docket No. 23] to which the Sheriff objected [Docket No. 25].

8.     Following a hearing on October 23, 2018, the Motion for Leave to Amend Adversary Complaint was granted [Docket No. 28].[3]

9.     On October 24, 2018, Plaintiff filed the Second Amended Complaint Concerning Willful Violations of the Automatic Stay by Defendants Sheriff of the City of Philadelphia and Abdeldayem Hassan a/k/a Abdeldyem Hassan ("Second Amended Complaint") [Docket No. 29].

10.     On November 21, 2018, the Sheriff filed an Answer to the Second Amended Complaint with Affirmative Defenses [Docket No. 37].

11.     On May 24, 2019, Plaintiff filed a Motion for Judgment on the Pleadings [Docket No. 48] to which the Sheriff objected [Docket No. 50].

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion for Directed Verdict.

[3] A docket entry on the date of the hearing [Docket No. 27] includes the notation "UNDER ADVISEMENT MOOT", which likely refers to the Sheriff's Motion for Judgment on the Pleadings, the only motion under advisement at that time.

12.     A hearing on Plaintiff's Motion for Judgment on the Pleadings was held on June 18, 2019 and the Court ordered that a Scheduling Order be submitted [Docket No. 53].

13.     On July 18, 2019, the Court issued a Pre-Trial Scheduling Order setting November 26, 2019 as the discovery deadline; December 26, 2019 as the deadline for filing summary judgment; January 16, 2020 as the discovery disclosures deadline; and February 28, 2020 as the deadline for motions in limine [Docket No. 56].

14.     On December 26, 2019, the Sheriff filed a Motion for Summary Judgment [Docket No. 71] and Memorandum of Law in Support of Motion for Summary Judgment [Docket No. 72].

15.     Plaintiff filed a response to the Motion for Summary Judgment [Docket No. 105] and the Sheriff filed a Reply Brief in Support of Summary Judgment [Docket No. 112].

16.     On November 26, 2020, the date of the discovery deadline, Plaintiff filed two Motions to Compel Discovery [Docket Nos. 59 and 60] to which the Sheriff filed a response [Docket Nos. 68 and 69].

17.     On January 15, 2020, Plaintiff filed a Motion for Sanctions against the Sheriff [Docket No. 77] to which the Sheriff filed a response [Docket No. 92].

18.     On January 16, 2020, in accordance with the Pre-Trial Scheduling Order, the Sheriff submitted its discovery disclosures [Docket No. 86], Plaintiff filed his disclosures a day later [Docket No. 88].

19.     On January 28, 2020, a hearing was held on the Motion for Sanctions and Motions to Compel. The Motion for Sanctions and Motions to Compel were denied [Docket Nos. 99, 101 and 111], however, the Court granted Plaintiff's request for a deposition of an additional witness and instructed the Sheriff to either produce the witness or file a sworn affidavit regarding

3

measures taken to identify and produce the witness [Docket No. 111]. The Sheriff complied with the Court's Order and, on March 12, 2020, filed an affidavit [Docket No. 122].

20.     A hearing on the Motion for Summary Judgment was held on February 18, 2020. The Court granted the Motion in part as to Plaintiff's claim for punitive damages and suspended its ruling on all other issues pending supplemental briefing on whether, by ratifying the United States Constitution and the Bankruptcy Clause contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the stay imposed by 11 U.S.C. §362 for enforcement of a writ of possession [Docket No. 119].

21.     On March 25, 2020, the Court scheduled trial for July 17, 2020 [Docket No. 124].

22.     Supplemental briefs were submitted on April 6, 2020 [Docket Nos. 126 and 127].

23.     On July 10, 2020, Plaintiff filed a Motion to Continue the July 17, 2020 Trial Date and sought expedited consideration of same [Docket Nos. 130 and 131].

24.     Following a hearing, on July 14, 2020, the Court granted the Motion and continued the trial to August 21, 2020 [Docket No. 137].

25.     The morning of the trial, Plaintiff filed a Motion In Limine to Exclude the Testimony of Abdeldayem Hassan ("Motion to Exclude") [Docket No. 151].

26.      Trial commenced on August 21, 2020. At the outset of the hearing, the Court denied the Motion to Exclude  Mr. Hassan's testimony.

27.     The parties stipulated to the following facts:

- Abdeldayem Hassan filed a Complaint in Ejectment against "Unknown Occupants" pertaining the Property in Philadelphia Court of Common Pleas, in January 2018, docketed as 003400;

- Abdeldayem Hassan procured a Judgment by Default for Possession, which was entered against Unknown Occupants on April 5th, 2018 in the Philadelphia Court of Common Pleas;

4

- Abdeldayem Hassan procured a Writ of Possession against "Unknown Occupants" on May 7, 2018;

- On May 8, 2018, Plaintiff Lyndel Toppin filed a Chapter 13 bankruptcy in the Eastern District of Pennsylvania, Bankruptcy Court.

*See* August 21, 2020 Trial Transcript ("Tr. Trans.") at 55:1-17.

28.    At the close of Plaintiff's case in chief, the Sheriff moved for a directed verdict.[4]

Tr. Trans. at 253:2-255:13.

## II.    PRELIMINARY STATEMENT AND DIRECTED VERDICT STANDARD

As a preliminary matter, the Sheriff's Motion for Summary Judgment remains under advisement. At trial, the Court noted the Motion was under advisement and commented that it viewed the Motion for Summary Judgment as a threshold matter that will be addressed in the context of the entire case. Tr. Trans. at 7:24-9:13. The Sheriff incorporates by reference the Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Reply Brief in Support of Motion for Summary Judgment and Supplemental Brief in Support of Motion for Summary Judgment as though fully set forth herein. In addressing the merits of Plaintiff's case at trial, the Sheriff does not, nor does the Sheriff intend to, waive any arguments raised in the Motion for Summary judgment including, but not limited to, arguments with respect to sovereign immunity, quasi-judicial immunity and immunity from emotional distress damages under the Pennsylvania Political Subdivision Tort Claims Act.

The Sheriff moves for a directed verdict pursuant to <u>Federal Rule of Civil Procedure 52(c)</u> made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052 which is titled "Judgment on Partial Findings." The rule provides that if, during

---

[4] At trial, the Sheriff moved for a directed verdict, but mis-cited the applicable code provision as <u>Federal Rule of Civil Procedure 41(b)</u> made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7041. <u>Federal Rule of Civil Procedure 41(b)</u>, however, has been replaced by <u>Federal Rule of Civil Procedure 52(c)</u>. *See* Fed. R. Civ. P. 52(c), advisory committee's note.

a nonjury trial, a party has been fully heard on an issue essential to its case and the court finds against the party on that issue, the court may enter judgment against the party. Such judgment must be supported by findings of fact and conclusions of law pursuant to Rule 52(a). Fed. R. Civ. P. 52. On a motion under the rule, the court applies the same standard of proof and weighs evidence as it would at the conclusion of trial, including making determinations of witness credibility. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272–73 (3d Cir. 2010). Unlike a motion for summary judgment, the court is not required to draw any special inferences in the nonmovant's favor or consider the evidence in the light most favorable to the nonmovant. *Id.* at 273. The purpose of Rule 52 motions is to conserve the time and resources of the parties and the court by obviating the need for the moving party to present its rebuttal case. *In re Gisondi*, 487 B.R. 423, 427 (Bankr. E.D. Pa. 2013), *aff'd*, No. CIV.A. 13-6147, 2014 WL 683755 (E.D. Pa. Feb. 21, 2014).

Plaintiff claims the Sheriff violated Section 362(a)(3) of the Bankruptcy Code, which stays any act to obtain possession of property of the estate, property from the estate or to exercise control over property of the estate. Plaintiff alleges that such violations were willful entitling Plaintiff to damages pursuant to Section 362(k) of the Code. Tr. Trans. at p. 40:2-15. Plaintiff did not meet his burden at trial.

### III.     PLAINTIFF'S CASE AGAINST THE SHERIFF IS FUNDAMENTALLY

The general policy behind the automatic stay is to grant complete, temporary relief to the debtor from creditors and also to prevent the piecemeal dismantling of assets through unilateral creditor action. *See e.g., Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 271 (3rd Cir.1984); *In re Philadelphia Consumer Disc. Co.*, 37 B.R. 946, 949 (E.D. Pa. 1984) (citations omitted). Following the conclusion of Plaintiff's case in chief, there is no

question that the Sheriff was not acting as a creditor nor as the agent of a creditor. The Sheriff was acting as an arm of the state court in enforcing a facially valid Writ of Possession. The transcript is devoid of any evidence or testimony to the contrary.

Captain Sean Thornton, of the Sheriff's Civil Enforcement Unit, testified that the unit oversees the execution of writs, injunctions, protections from abuse, and other civil processes. Tr. Trans. at 122:1-7. Sergeant Jertaria Taylor corroborated Cpt. Thornton's testimony regarding her duties. Sgt. Taylor's duties with the Civil Enforcement Unit were to enforce court orders including writs of possession, writs of executions, writs of attachment, "any type of court orders." Tr. Trans. at 216:16-23.

With respect the Writ of Possession, according to Cpt. Thornton, Sgt. Taylor would have gone to the Property on two occasions in accordance with Civil Enforcement Unit practice, once to attempt service of a notice to vacate and a second time to attempt service of notice of eviction. Each time notice would be posted to the property, left at the property and mailed to the property if not hand delivered to the occupant. Tr. Trans. at 203:5-14; 206; 207:8-16; 210:14-211:5.

Sgt. Taylor confirmed that when serving writs of possession, she would first go to the property to serve a 21-day notice to vacate and then a second time to serve a notice of eviction. Two copies of each notice are left at the property and one is mailed. Tr. Trans. at 217:7-21. Plaintiff, testifying through his court appointed next friend, Barrington Whyte, testified that he saw a total of six notices inside the home between May 18, 2018 and June 7, 2018. Tr. Trans. at 65:8-67:21; 72:23-73:23; 77:17-79:5; 84:19-86:2; 88:4-8; 89:20-90:10; 91:10-92:16.

Plaintiff's allegations against the Sheriff all stem from the lawful enforcement of the Writ of Possession. Sgt. Taylor sought to personally serve a notice to vacate once and an eviction notice once, but because personal service could not be made, a copy of each document was

posted to the Property, left in the mail slot of the Property and mailed to the Property. There is no suggestion that the Writ was enforced in a manner that was beyond the scope of the mandate contained therein, which directed the Sheriff to deliver possession to Mr. Hassan. Per Mr. Whyte, the last notice was received on or about June 7, 2018, before the adversary proceeding was commenced. Tr. Trans. at 91:10-92:16; 100:4-11. The Plaintiff was never evicted. Tr. Trans. at 98:4-7. There was no prior action allegedly taken by the Sheriff that needed to be or could be remedied—there was no alleged violation of the automatic stay that needed undoing.

In addition, Plaintiff presented no evidence or testimony regarding whether notice was given to the creditor in this case, Abdeldayem Hassan, nor was there testimony or evidence to show that Mr. Hassan took any action to stop enforcement of the Writ of Possession. In fact, just prior to the trial, Plaintiff filed a motion seeking to preclude any testimony from Mr. Hassan.

It is generally accepted law that the burden is on the creditor to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or enforcement must cease. *See e.g.*, *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mi. 2000) ("many courts have emphasized the obligation incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition."); *In re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010) ("Once a creditor commences legal proceedings, it cannot disown all responsibility for actions taken by other parties in furtherance of the action."); *In re Brown*, No. BR 12-14058, 2012 WL 3908029, *5–6 (Bankr. E.D. Pa. Sept. 7, 2012) (creditor had duty to take affirmative action to notify Sheriff of Chester County to cease enforcement of pre-petition writ of execution

once creditor received notice of bankruptcy). Plaintiff recognizing the significance of the flaw in

his case sought to exclude Mr. Hassan's testimony as prejudicial and irrelevant.

## IV. PLAINTIFF HAS NOT PROVEN A WILLFUL VIOLATION OF THE AUTOMATIC STAY

Assuming, but not conceding, the Sheriff, a non-creditor third-party, can be held liable

for violating the stay under the circumstances presented here, the burden was on the Plaintiff to

prove a willful stay violation by a preponderance of the evidence.

> A 'willful' violation of the automatic stay occurs when the debtor
> shows, by a preponderance of the evidence, that: (1) a violation of
> the stay occurred; (2) the creditor had knowledge of the bankruptcy
> case when acting; and (3) the violation caused actual damages. *In
> re Linsenbach*, 482 B.R. 522, 526 (Bankr. M.D. Pa. 2012)
> (citing *In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011)
> (citation omitted); *In re Frankel*, 391 B.R. 266, 271 (Bankr. M.D.
> Pa. 2008) (citations omitted)). "Willfulness does not require that
> the creditor intend to violate the automatic stay provision, rather it
> requires that the acts which violate the stay be intentional." *In re
> Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992)
> (citing *In re University Medical Center*, 973 F.2d 1065, 1087–88
> (3d Cir. 1992)).

*In re Kaushas*, 616 B.R. 57, 62 (Bankr. M.D. Pa. 2020).

The facts presented by Plaintiff regarding notice are confusing and inconclusive. There

was some testimony from Cpt. Thornton, upon reviewing a document not introduced into

evidence, that a fax was sent to the Real Estate Unit of the Sheriff's Office on May 8, 2018. Tr.

Trans. at 169:13-170:5. Cpt. Thornton also provided some testimony regarding a document from

the Real Estate Unit identified as a "Sheriff's Return of Service" with a Book/Writ number on it

and the notation "5/8/2018 defending attorney. 5/9/2018." Tr. Trans. at 178:4-180:5; 182:2-15.

Throughout this same testimony, however, Cpt. Thornton testified that he is not familiar with the

"Sheriff's Return of Service", does not know what Book and Writ refers to and that he is not

familiar with the operations of the Real Estate Unit. Tr. Trans. at 178:4-9; 180:2-21; 182:1-3.

The Sheriff has admitted, however, in its Response to Requests for Admission, which were admitted into evidence at trial as P-23, that the Sheriff's Real Estate Unit received notice of Plaintiff's bankruptcy on or about May 8, 2018 and that a fax was received at the fax number for the Real Estate Unit containing a Notice of Bankruptcy on behalf of Plaintiff on May 8, 2018. *See* P-23 at Response to Request 15 and Response to Request 19.

Cpt. Thornton was also referred to another document not admitted into evidence that had the fax number for the Civil Enforcement Unit that was a two-page document that looked like a notice of bankruptcy that he had only seen in the context of trial. Tr. Trans. at 189:19-190:20. The Sherriff admitted in its Responses to Requests for Admissions *only* that on May 10, 2018 a fax was transmitted to fax number 215-686-3955 with the subject line "Notice of Bankruptcy." *See* P-23 at Response to Request 22. Requests for Admission seemed to refer to, but did not attach nor specifically identify documents produced by Plaintiff during discovery. It remains entirely unclear whether the Response to Request 22 is referring to the same document that Cpt. Thornton was asked to review at trial, which was not admitted. The Sheriff did admit, however, that it received a fax sent to the fax number for the Civil Enforcement Unit containing a Notice of Bankruptcy Filing on behalf of Plaintiff on June 7, 2018. *See* P-23 at Response to Request 24.

The evidence with respect to notice, at the close of Plaintiff's case, is that the Real Estate Unit received notice of Plaintiff's bankruptcy on May 8, 2018 and the Civil Enforcement Unit received notice of Plaintiff's bankruptcy on June 7, 2018. There is no evidence or testimony to establish that efforts to enforce the Writ of Possession continued after June 7, 2018.

Plaintiff's position appears to be that notice to the Real Estate Unit is notice to all departments of the Sheriff's Office, which include installations at the Criminal Justice Center and Family Court, the Warrant Unit, Civil Enforcement Unit and Real Estate Unit. Tr. Trans. at

125:3-126:4. Even a creditor cannot be held responsible for a violation of the automatic stay unless conduct that is the subject of such violation receives sufficient notice of the order for relief under Section 342 of the Bankruptcy Code. 11 U.S.C.A. § 342(g)(2). The Sheriff is not a creditor. There was no evidence at trial that prior to June 7, 2018 the Civil Enforcement Unit received notice of the bankruptcy. When the Civil Enforcement Unit did receive notice of the bankruptcy, it followed policy and ceased enforcement. [5]

Even if the Court finds the Sheriff had sufficient notice of the bankruptcy when it made efforts to enforce the Writ of Possession, the violation did not cause the Plaintiff any actual damages. Section 362(k) allows a debtor to recover actual damages stemming from a willful violation of the automatic stay. 11 U.S.C. § 362(k)(1). An award of actual damages may include lost wages or emotional distress damages. *See  In re Johnson*, 601 B.R. 365, 378 (Bankr. E.D. Pa. 2019); *In re Lansaw*, 853 F.3d 657. 668 (3rd Cir. 2017); *In re Vu*, 591 B.R. 596, 605 (Bankr. E.D. Pa. 2018). Actual damages must be supported by concrete evidence and proven with reasonable certainty and cannot be based upon speculation, guess and conjecture. *In re Vu*, 591 B.R. at 604 (citations omitted). The only evidence of damages at trial was the following testimony from Mr. Whyte:

> Q. Mr. Whyte, I'll ask you now some questions about your uncle. And I'm going to direct you at the exact time when these notices started arriving at your house. How did those notices affect your uncle, if at all? From your own personal observations?
>
> A. Well, from me seeing, you know, and knowing, and living with him for so long, he's just -- he's been kind of like distorted. You

---

[5] Philadelphia Sheriff's Office Directive #28 ("Directive") was admitted into evidence as City-28. The Directive provides:

> When [a notice of bankruptcy is] received by the Sheriff's Office, all legal action is to stop. Details, numbers and other particulars are to be recorded in division docket and on writ. If there is any question as to the validity, postpone any action. Must check with attorney on writ for Bar Order.

*See* City 28.

know, he's always like looking at me when he picks up the papers, just like to -- for me to give a good response to him, you know, basically on it. But I think – I can't really give a good response because I don't know a good response. I don't know how this situation is going to turn out. So and my stress, you know, leans off on him. But on top of that also, just been -- you know, he's been off. He hasn't been, like, 100%. You know, he's been smoking cigarettes more a lot. He's been, like, not basically eating the dinners that I, like, serve for him or, like, put out for him to eat.

Tr. Trans. at 95:11-96:3.

Q. Do you think that from your, I guess, experience with your uncle, what kind of effect, if any, do you think that they had on him and did that manifest itself somehow in his behavior? If you could tell the court.

A. Well, as I said before, he hasn't been eating. Like, his normal routine, and he's been, like, smoking more Newports, you know, now because, you know, I smell it more often now. And like I say, he's like -- he's basically not what I'm used to. He's, like, kind of out of it. He's been, like, missing sleep and things like that. Because I would notice when I come in his, you know, light would be on in his room about 2:00, 3:00 in the morning. Normally, you know, we're asleep and the household is down by that time.

Q. Do you believe upon your personal observations, did he understand what the notice entails? Do you know if he knows what it means to vacate?

A. Well, he doesn't -- he cannot read the notice at all, but what he actually directly pointed out to me was, you know, the big bold red letters and the little shield that's on there. That's mainly what he pointed out to me.

Q. Okay. And how is he now? It's been some time since the notices came in, how is he now?

A. He's still not eating on, you know, on schedule as we usually do. He's still smoking a lot. He's still doing that. And he's still just, like, sitting around in the living room, you know, just there. He's not -- like, with no T.V. on or nothing. He'll just be, like, there.

Tr. Trans. at 97:2-98:3.

The Sheriff recognizes that Plaintiff is purportedly deaf and mute with no ability to read which would make establishing emotional distress damages difficult to prove. However, the lack of any context, detail or temporal perspective that can link any of Mr. Whyte's observations causally to the alleged stay violations renders the damages testimony unconvincing and unreliable. Mr. Whyte's testimony alone is not sufficient to award actual damages in this case. This is especially so in light of the fact that there is no evidence, circumstantial or direct, that Mr. Toppin or anyone else observed Sgt. Taylor at the Property or had any interaction with Sgt. Taylor.

The Third Circuit has noted that, in the absence of "patently egregious" violations, "corroborating medical evidence may be required to prove emotional harm and causation." *Lansaw*, 853 F.3d at 669. Although the court did not define what facts would give rise to such a determination, the facts of the instant case are markedly different from the "patently egregious" fact pattern in *Lansaw*, which included post-petition conduct by a defendant landlord such as entering plaintiff's business without permission, chaining and padlocking doors, physical intimidation and threatened legal action. *Id.* at 661-662.

Here, the Sheriff was tasked with enforcing a facially valid court order for Writ of Possession. In an attempt to properly notify any potential occupants at the Property, attempt at personal service was made on two occasions. When personal service could not be had on those two occasions, notice was posted to the property, left in the mail slot and sent by mail. The Civil Enforcement Unit had no knowledge that there was a bankruptcy related to the eviction action. Further, the Sheriff in this context was not acting as a creditor, but rather as an arm of the judicial system, implementing court-related processes as mandated by state law.

13

These facts do not rise to a willful violation of the automatic stay, let alone the type of egregious conduct that would absolve the Plaintiff from presenting corroborating information of emotional distress. *See e.g.*, *In re Wingard*, 382 B.R. 892, 906 (Bankr. W.D. Pa. 2008)(creditor's post-petition debt collection activity not patently egregious to give rise to presumption of emotional distress without demonstration of significant harm). The reason why hard evidence of emotional distress damages is required is to ensure against "a 'cottage industry' built around satellite fee litigation" where a violation does not cause damages. *In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010) (citations omitted).

WHEREFORE, the City of Philadelphia respectfully requests that the Court grant a directed verdict in the Sheriff's favor, dismiss this adversary proceeding and grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: October 8, 2020          By:     */s/ Megan N. Harper*
                                        MEGAN N. HARPER
                                        Deputy City Solicitor
                                        PA Attorney I.D. 81669
                                        Attorney for the City of Philadelphia
                                        City of Philadelphia Law Department
                                        Municipal Services Building
                                        1401 JFK Boulevard, 5th Floor
                                        Philadelphia, PA  19102-1595
                                        215-686-0503 (phone)
                                        Email: Megan.Harper@phila.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA and | : | |
| ABDELDAYEM HASSAN a/k/a | : | |
| ABDELDYEM HASSAN, | : | |
| | : | |
| Defendants. | : | |

**LYNDEL TOPPIN'S MEMORANDUM OF LAW IN RESPONSE
TO THE SHERIFF OF THE CITY OF
PHILADELPHIA'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

Lyndel Toppin asks the Court to deny the Sheriff of the City of Philadelphia's motion for

judgment on partial findings.

### A.  INTRODUCTION

1.    Plaintiff is Lyndel Toppin; defendant is the Sheriff of the City of Philadelphia;

2.    Plaintiff sued defendant for violation of the automatic stay;

3.    The bench trial of this case began on August 21, 2020;

4.    The Court heard Plaintiff's case and after Plaintiff rested, 55 days later, on October 15th

2020, Defendant filed its motion claiming it is entitled to directed verdict judgment as a matter of

law on partial findings and without its own evidence or witnesses to rebut what the Plaintiff has

set forth;

5.      For reasons stated below this Court should deny Defendant's motion.

I.      **STANDARD FOR REVIEW**

Federal Rule of Bankruptcy Procedure 7052 entitled "Findings by the Court,"

incorporates <u>Federal Rule of Civil Procedure 52</u>.  <u>Federal Rule of Civil Procedure 52(c)</u> states:

> Judgment on Partial Findings
>
> If a party has been fully heard on an issue during a nonjury trial and the court finds
> against the party on that issue, the court may enter judgment against the party on a claim
> or defense that, under the controlling law, can be maintained or defeated only with a
> favorable finding on that issue. The court may, however, decline to render any judgment
> until the close of the evidence. A judgment on partial findings must be supported by
> findings of fact and conclusions of law as required by Rule 52(a).

Under this Rule, a court assesses the evidence presented and may render judgment if the

evidence is insufficient to support a claim or defense.5 See Carter v. Ball, <u>33 F.3d 450</u> (4th

Cir.1994); <u>FED. R. CIV. PROC. 52</u> Advisory Committee Note (2007) (noting that "[t]he

standards that govern judgment as a matter of law in a jury case have no bearing on a decision

under Rule 52(c)"). The Court is required by <u>Federal Rule of Civil Procedure 52(a)</u> to "find the

facts specially and state its conclusions of law separately."

Plaintiff has more than ample evidence in introduced evidentiary evidence as well as

sworn testimony as well as admissions by the Defendant made pursuant to F.R.C.P 36.

## II.  SUMMARY OF THE ARGUMENT

The automatic stay, imposed by 11 U.S.C. § 362(a), prohibits, inter alia, "any act to collect ... or recover a claim against the debtor that arose before the commencement of the case," 11 U.S.C. § 362(a)(6) and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3).

A willful violation of the automatic stay gives rise to a claim for damages, as set forth in 11 U.S.C. § 362(k): Plaintiff has shown in no small part by use of City's exhibits that there was at least 6 instances or acts by the Sheriff that sought "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3). "

## B. ARGUMENT

During a bench trial, a court may render judgment on partial findings against a party if it determines that the party cannot prevail on an issue and that the party's claim or defense cannot be maintained or defeated without a favorable finding on that issue. Fed. R. Civ. P. 52(c); see Geddes v. Nw. Mo. State Univ., 49 F.3d 426, 429 n.7 (8th Cir. 1995). However, this is not a case in which the Court should do so.

The Court should deny the Sheriff of the City of Philadelphia's motion for judgment on partial findings because all material issues of fact are supported by evidence sufficient for Lyndel Toppin to prevail.

## I.      THROUGH DOCUMENTIARY EVIDENCE, WITNESS TESTIMONY AND ADMISSIONS OF THE SHERIFF PLAINTIFF HAS SHOWN BY PREPONDERANCE OF EVIDENCE THAT DEFENDANT HAD NOTICE OF THE BANKRUPTCY CASE

The Philadelphia Sheriff's Office admitted receiving multiple Notice(s) of the Lyndel

Toppin Bankruptcy on May 8, 2018 in its Response(s) to Requests for Admission, which were

admitted into evidence at trial as P-23.

F.R.C.P 36 (b) **Effect of an Admission; Withdrawing or Amending It**.

A matter admitted under this rule is conclusively established unless the court, on motion,

permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit

withdrawal or amendment if it would promote the presentation of the merits of the action and if

the court is not persuaded that it would prejudice the requesting party in maintaining or

defending the action on the merits. An admission under this rule is not an admission for any

other purpose and cannot be used against the party in any other proceeding.

In this case, Court did not allow the admission to be withdrawn or amended and Defendant did

not seek to withdraw or amend any of its admissions. At issue herein are on notice are the

following admissions:

**RFA No. 15:**  Admit that You received notice of the Lyndel Toppin bankruptcy on May 8,
2018?

**Answer No. 15: Admitted.**

**RFA No. 19:**  Admit that You received a fax at 215-686-3971 from Stephen Dunne on May 8,
2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**Answer No. 19: Admitted.**

The evidence with respect to notice is unequivocal that multiple Notice(s) of the Lyndel

Toppin Bankruptcy were received by the Sheriff's office on May 8, 2018.  Even the Sheriff's

trial exhibits suggest that the Sheriff was fully aware of the Lyndel Toppin bankruptcy on May

10, 2018 as evidenced by Defendant's Trial exhibit, "Service Event Report" entered by Sgt. J.

Taylor on May 10, 2018 admitted into evidence at trial as C-4. Further, the Defendant's internal

records identified as "Sheriff's Return of Service" marked (P-35) indicate that a bankruptcy was

filed in the Sheriff's office on May 9, 2018.

Furthermore, Captain Sean Thornton testified that a Notice of Bankruptcy Case Filing on

behalf of Lyndel Toppin admitted into evidence at trial as C-2 was transmitted to 215-686-3971

which he identified as the fax number for the Real Estate Division of the Office of the Sheriff.

Tr. Trans. at 169:13 - 170:5. Notwithstanding, that does not stop the Sheriff from displaying

remarkable ineptitude in taking the strained, if not disingenuous position that those Notice(s) do

not count because the Sheriff's Office has several departments and therefore deserves additional

notice.

A similar argument demanding more notice was advanced by the defendant, United

Student Aid Funds, Inc. in Espinosa v. United Student Aid Funds, Inc., 553 F. 3d 1193 - Court of

Appeals, 9th Circuit 2008 and the Ninth Circuit harshly rejected the Funds' arguments stating:

"The Funds are not "destitute widows and orphans, or people who don't speak English or can't

afford a lawyer." Espinosa, 553 F.3d at 1201. The Ninth Circuit explained that "notice of how

the Chapter 13 plan affects creditors' rights is all that the Constitution, the Bankruptcy Code and

the Bankruptcy Rules require to bind creditors to the provisions of the confirmed plan.

"Espinosa, 553 F.3d at 1202 (citations omitted).

The Supreme Court addressed how much notice and due process is enough to constitute

notice under the U.S. Constitution and the Bankruptcy Code in United Student Aid Funds, Inc. v.

Espinosa, 559 US 260 - Supreme Court 2010, 130 S.Ct. 1367 (2010). The Supreme Court has

held that constitutionally "adequate notice" is a low barrier to meet in that all that is required is

that "notice [be] reasonably calculated under all circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections." Espinosa

v. United Student Aid Funds, Inc., 553 F.3d 1193, 1202 (9th Cir. 2008), cert. granted, 2009 WL

646192 (U.S. 2009)(quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314,

70 S. Ct. 652, 94 L. Ed. 865 (1950)).

There is conclusive evidence that notice was received by the Sheriff's office on May 8,

2018 in the Sheriff's Response(s) to Requests for Admission, which were admitted into evidence

at trial as P-23. There are multiple trial exhibits that support this fact - "Service Event Report"

marked C-4; "Sheriff's Return of Service" marked (P-35); "Notice of Bankruptcy Case Filing"

on behalf of Lyndel Toppin marked C-2; along with Captain Sean Thornton's testimony on

Exhibit C-2 identifying the fax number for the Real Estate Division.  Tr. Trans. at 169:13 -

170:5.

Therefore, the Sheriff's actual notice of the debtor's bankruptcy filing more than satisfied

its due process rights and its persistent contumacy is no excuse for violating this Court's order

which automatically became effective on May 8, 2018 when Lyndel Toppin petitioned this Court

for relief under Chapter 13 of the Bankruptcy Code.

Defendants own policies and procedures admitted at trial, (P-16, C-26) in relevant portion

states:

A. Bankruptcy.

   1. When received by the Sheriff's Office, all legal action is to stop.
   Details, numbers and other particulars are to be recorded in division
   docket and on writ.  If there is any question as to the validity, postpone
   any action.  Must check with attorney on writ for Bar Order.

Indeed, the Court clarified the term "Sheriff's office" in the Sheriff's bankruptcy policy sua sponte by questioning the witness, Lt. Thornton:

**THE COURT:** Do you agree, Mr. Thornton, it doesn't say which department. It says when received by the Sheriff's office.

**A.**    That is correct.  Tr. Trans. at 132:22 - 132:25.

Defendant is now attempting to avoid liability and negate notice, by inserting a departmentalization requirement for the notice, not found in the statute, in case law, and certainly not in Sheriff's own policies and procedures. Even without viewing all reasonable inferences in light most favorable to Plaintiff which the Court must do, Plaintiff easily meets the burden.

## II.    SHERIFF'S VIOLATION(S) OF THE AUTOMATIC STAY

A violation of the automatic stay is willful if a creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case. *Laboy v. Doral Mortg. Corp. (In re Laboy),* 647 F.3d 367, 374 (1st Cir. 2011) (*quoting In re McMullen,* 386 F.3d 320, 330 (1st Cir. 2004). "A willful violation does not require a specific intent to violate the automatic stay[,]" rather, the creditor need only intend the act which violates the stay. *Fleet Mortg. Grp. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999).

It is well known that the automatic stay is designed to stop pending debt collection activity and litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code. E.g., *In re Billings*, 544 B.R. 529, 533 (Bankr. E.D. Pa. 2016) (citing *H & H Beverage Distributors v. Dep't of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988)*), aff'd, 687 Fed.Appx. 163, 2017 WL 1488657 (3d Cir. Apr. 26, 2017) (nonprecedential).

Sheriff's actions in continuing with the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor by visiting his personal residence; posting his property; inserting notices in his mailbox; and mailing Notices to Vacate and Eviction Notices all constitute individual and separate violations of the automatic stay under § 362(k). Nothing is more threatening to a debtor than the strong arm of the state engaging in unlawful enforcement.  The Sheriff engaged in unlawful employment of process specifically prohibited by the automatic stay and its own Sheriff's bankruptcy policy.

Captain Sean Thornton testified that the Sheriff's policy admitted into evidence at trial as C-26 is to stop action in connection with any type of enforcement, including the deliverance of any writs, service of any notices to vacate properties when the Sheriff is given notice that a debtor filed bankruptcy.  Tr. Trans. at 126:9 - 126:21.   Indeed, this bankruptcy policy to stop unlawful enforcement during the pendency of a bankruptcy case has been in effect at the Sheriff's office since May 12, 1988.  Tr. Trans. at 127:20. Cpt. Thornton testified that "The purpose of this directive is to establish a policy of receiving, recording, and handling of stay order, bankruptcy petitions, and appeals when received by the sheriff's office." Tr. Trans. at 130:5 - 130:8.

Cpt. Thornton testified that when notice is received by the sheriff's office all legal action is to stop.  Tr. Trans. at 130:13 - 130:14. Notice of Bankruptcy is effective on the same day it is received by the Sheriff's office as set forth by the Sheriff's bankruptcy policy and confirmed by Cpt. Thornton. All legal action is to stop when bankruptcy notice is received by Sheriff's office. Tr. Trans. at 130:13 - 130:14.

Case 18-00187-mdc Doc 41-1 Filed 10/29/20 Entered 10/29/20 Page 9 of 77 Desc Main
Case 18-01872-mdc Doc 14 Filed 10/28/20 Entered 10/29/20 14:29:45 of 7 Desc Main
Document    Page 9 of 13

It's important to highlight the term "Sheriff's office" in the Sheriff's bankruptcy policy as the defendant is attempting to evade notice of the bankruptcy in this case as well as shirk responsibility for its actions in violating the automatic stay by suggesting to the court that a specific department or sub-division of the Sheriff's office must be notified in order for the bankruptcy notice to be effective.

Plaintiff has shown that actions of Office of the Sheriff were willful in that it engaged in above cited acts forbidden by 11 U.S.C. § 362(a), with full knowledge of BK, in contravention of not only the BK code section cited, but also in infringement of its own policy and procedure.

The Sheriff's bankruptcy policy was violated on May 8, 2018 as the Sheriff acknowledged receiving actual notice of Lyndel Toppin's bankruptcy filing on May 8, 2018. See Def.'s Memo at pg. 10, ¶1.

Barrington Whyte testified that Lyndel Toppin brought all ("6") six Notices to Vacate and Eviction Notice inside the house.  Tr. Trans. at 93:14 - 93:20. Mr. Whyte also testified to inserting a date notation on each document received from the Sheriff's Office in order to remember the date that each notice was delivered.  Tr. Trans. at 76:20 - 76:24.   Mr. Whyte testified that he inserted the May 18, 2018 date on the Sheriff's Notice to Vacate marked as C-14;  the May 24, 2018 date on the Sheriff's Notice to Vacate marked as C-15; the May 30, 2018 date on the Sheriff's Notice to Vacate marked as C-16; the June 1, 2018 date on the Sheriff's Eviction Notice marked as C-17; the June 5, 2018 date on the Sheriff's Eviction Notice marked as C-18 which was erroneously described by the transcriber as a Notice to Vacate; the June 7, 2018 date on the Sheriff's Eviction Notice marked as C-19 which was erroneously described by the transcriber as a Notice to Vacate.  Tr. Trans. at 73:20 - 73:23; 78:25 - 79:21; 85:23 - 86:2; 88:4 - 88:14; 90:1 - 90:13; 91:19 - 92:8.

The aforementioned six ("6") notices received by Lyndel Toppin are in line with the

Sheriff's practice as explained by Cpt. Thornton whereby a deputy will go to the subject property

and hand deliver notice to the occupant and if the occupant does not answer the door, they will

post it on the property; leave it in the mail slot; and mail a notice in the United States Postal Mail

addressed to the recipient. Tr. Trans. at 210:18 - 211:5; 211:14 -211:17.

The Court sua sponte asked Cpt. Thornton for clarification on the number of notices

served upon an occupant:

**THE COURT:** Oh, so let me — that's three documents that are left on each occasion?

**A.**    But it's the same document, Your Honor.

**THE COURT:** Documents are left at the property and one's mailed out?

**A.**    That is correct, yeah.

Tr. Trans. at 206:21 - 207:6.

Sergeant Taylor testified that she personally served the red Notice to Vacate on May 10,

2018 and posted it on the property by taping it to the door. Tr. Trans. at 221:20 - 221:23; 239:5 -

239:6; 241:2. Sgt. Taylor further testified to serving the Notice to Vacate on May 10, 2018

marked as C-14 along with the Eviction Notice on June 1, 2018 marked as C-17. Tr. Trans. at

221:20 - 221:23; 237:6 - 237:10.

Sheriff had knowledge of the existence of the Lyndel Toppin bankruptcy case on May 8,

2018. Knowledge of the existence of the bankruptcy case is "treated as knowledge of the

automatic stay." In re Theokary, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011). In this case, there is

no dispute that the Sheriff engaged in unlawful process post-petition and Sheriff's acts were

carried out with intent.

30

### III.    LYNDEL TOPPIN'S ACTUAL DAMAGES

Plaintiff Lyndel Toppin has a mental disability in that he is both deaf and mute and unable to communicate to the court the extent of his emotional; physical; and psychological distress that he has experienced at the hands of the Sheriff's office in connection with its unlawful enforcement of the Writ, attempting to seize his home.

Barrington Whyte was Appointed Next Friend on July 10, 2018 permitting Barrington to testify on behalf of Uncle, Lyndel.  Barrington has lived with Lyndel most of his adult life. Barrington is very familiar with Lyndel's habits, mannerisms and his idiosyncrasies. Defendant's argument in the area of damages really comes down to a challenge to this Orde, and the notion that Barrington Whyte a friend of Court by Order of this Court. Since this issue has already been decided, such challenge is now barred by doctrine of res judicata and collateral estoppel.

Barrington testified that Lyndel brought all ("6") six Notices to Vacate and Eviction Notices inside the house.  Tr. Trans. at 93:14 - 93:20. Barrington testified that he personally observed Lyndel picking up these notices a couple of times and looking at Barrington to give him an answer. Tr. Trans. at 96:13 - 96:19. Barrington testified that Lyndel 'directly pointed out to Barrington' the "big bold red letters and the little shield" on the Notices to Vacate and Eviction Notices. Tr. Trans. at 97:19- 97:20.

Barrington testified that Lyndel would "pick up the papers" and look at him "to give a good response to him" and because Barrington was unable to do so he described Lyndel as "been off." Tr. Trans. at 95:19- 95:24. Barrington testified that the Sheriff's notices caused Lyndel to be 'distorted,' and he knows this to be true based upon "living with him for so long." Tr. Trans. at 95:16- 95:18.

As his only caretaker, Barrington personally observed that Lyndel "not basically eating dinners that I serve for him. Tr. Trans. at 96:1- 96:2. Barrington observed that Lyndel "smoking cigarettes more a lot." Tr. Trans. at 95:25- 96:1. Barrington specifically stated that Lyndel hasn't been eating; smoking more cigarettes; missing sleep; pacing in his bedroom at 2.00 AM, 3.00 AM in the morning and generally "He's, like, kind of out of it." Tr. Trans. at 97:6- 97:13.

On the day of the trial, Barrington testified that the stress of these events has still affected his Uncle Lyndel in that "He's still not eating; on schedule as we usually do; he's still smoking a lot; and he's sitting around in the living room with the T.V. off." Tr. Trans. at 97:24- 98:3.

Plaintiff has demonstrated that the Sheriff's conduct has caused actual damages that are still lingering today through the first-hand personal observations of the Appointed Next Friend, Barrington Whyte.

## C. CONCLUSION

The Court should deny the Sheriff of the City of Philadelphia's motion for judgment on partial findings because all material issues of fact are supported by evidence sufficient for Lyndel Toppin to prevail. There is conclusive evidence that notice was received by the Sheriff's office on May 8, 2018 in the Sheriff's Response(s) to Requests for Admission which were admitted into evidence at trial as P-23. There are multiple trial exhibits that support this fact - "Service Event Report" marked C-4; "Sheriff's Return of Service" marked (P-35); "Notice of Bankruptcy Case Filing" on behalf of Lyndel Toppin marked C-2; along with Captain Sean Thornton's testimony on Exhibit C-2 identifying the fax number for the Real Estate Division. Tr. Trans. at 169:13 - 170:5.

Sergeant Taylor testified that she personally served the red Notice to Vacate on May 10, 2018 and posted it on the property by taping it to the door. Tr. Trans. at 221:20 - 221:23; 239:5 -

239:6; 241:2. Sgt. Taylor further testified to serving the Notice to Vacate on May 10, 2018

marked as C-14 along with the Eviction Notice on June 1, 2018 marked as C-17.  Tr. Trans. at

221:20 - 221:23; 237:6 - 237:10.

Barrington Whyte testified that Lyndel Toppin brought all ("6") six Notices to Vacate

and Eviction Notice inside the house.  Tr. Trans. at 93:14 - 93:20. Mr. Whyte also testified to

inserting a date notation on each document received from the Sheriff's Office in order to

remember the date that each notice was delivered.  Tr. Trans. at 76:20 - 76:24.

Plaintiff has demonstrated that the Sheriff's conduct has caused actual damages that are

still lingering today through the first-hand personal observations of the Appointed Next Friend,

Barrington Whyte.


 For these reasons, Lyndel Toppin asks the Court to deny the City of Philadelphia's

motion for judgment on partial findings.


Respectfully submitted,


Dated:  October 29th, 2020


BY: /s/ *Predrag Filipovic*          BY: /s/ *Stephen M. Dunne*
Predrag Filipovic, Esquire          Stephen M. Dunne, Esquire
1735 Market St., Suite 3750         1515 Market Street, Suite. 1200
Philadelphia, PA 19103              Philadelphia, PA 19102
267-265-0520 Phone                  (215) 551-7109 Phone
Attorney for Plaintiff              Attorney for Plaintiff

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lyndel Toppin | : | Chapter 13 |
| | : | |
| Debtor. | : | Case No. 18-13098-MDC |

| | | |
|---|---|---|
| | : | |
| Lyndel Toppin | : | |
|     Debtor/Plaintiff | : | |
| v. | : | Adv. Proc. No. 18-00137-MDC |
| | : | |
| Jewell Williams, Sheriff of the City of Philadelphia | : | |
| and Abdeldayem Hassan a/k/a Abdeldyem Hassan | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY RELATED TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Lyndel Toppin respectfully submits this Notice of Supplemental Authority relating to the Bankruptcy Code's broad abrogation of sovereign immunity.

In the case of In re Brian Coughlin, (Bankr. D. Mass. 10/19/20), Case No. 19-14142, Judge Bailey held that:

"The Bankruptcy Code contains a broad abrogation of sovereign immunity. Pursuant to Section 106(a) of Title 11, "sovereign immunity is abrogated as to a governmental unit," with respect to Section 362.  Section 101(27) defines "governmental unit" as follows "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27) (emphasis added).

Plaintiff attaches the decision which is germane to the Defendant's position that the Sheriff enjoys immunity to an action under 11 U.S.C. § 362(k).

Dated: November 6, 2020                    By: /s/ Stephen M. Dunne

34

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re<br><br>BRIAN W. COUGHLIN,<br><br>                 Debtor | Chapter 13<br>Case No. 19-14142-FJB |

### MEMORANDUM OF DECISION AND ORDER ON
### MOTIONS TO DISMISS THE DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY

The debtor, Brian W. Coughlin (the "Debtor"), filed a motion to determine that four related

parties have violated the automatic stay (the "Stay Motion").  See 11 U.S.C. §362(k). Those parties are

Niiwin, LLC d/b/a Lendgreen ("Lendgreen"), L.D.F. Business Development Corporation ("BDC"), L.D.F.

Holdings, LLC ("Holdings"), and the Lac du Flambeau Band of Lake Superior Chippewa Indians (the

"Tribe") (collectively, the "Alleged Violators"). The Alleged Violators filed motions to dismiss the Stay

Motion, and the court ordered that the provisions of Fed.R.Bankr.P. 7012 would apply to the motions to

dismiss. See Fed.R.Bankr.P. 9014(c)("[t]he court may at any stage in a particular matter direct that one

or more of the other rules in Part VII shall apply").

In evaluating a motion to dismiss, I take the well-pled facts to be true (although I note that the

Alleged Violators hotly dispute for a variety of reasons that they either individually or in concert are

liable for a stay violation). The Debtor filed a chapter 13 petition on December 4, 2019. It is sufficient for

present purposes to say that the Debtor claims that after he filed his petition he gave written and oral

notice to the Alleged Violators, but that the Alleged Violators continued to send him emails and to make

telephone calls to him seeking payment of a so-called payday loan that they made to him prepetition. It

is undisputed that the amount due on the payday loan on the day of filing was less than $1,600. The

Debtor also claims that he was so emotionally upset by the continued collection activities that he suffered depression, anxiety, and suicidal ideation, resulting in catastrophic damages.

The Alleged Violators seek dismissal under both Fed.R.Civ.P. 12(b)(1) and (6). See Fed.R.Bankr.P. 7012(b). Under Fed.R.Civ.P. 12(b)(1), a party may seek dismissal of a claim by motion if the court lacks subject matter jurisdiction. Of course, it is axiomatic that a court must first determine whether it has subject matter jurisdiction before proceeding on the merits of a pending matter. *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). The Alleged Violators argue that I lack subject matter jurisdiction in this dispute because, as a sovereign nation, they are immune from suit in this court. After careful consideration of the extensive briefing filed in this case, I must agree.

The Tribe is a federally recognized Indian tribe and Indian tribes are sovereign nations with a "direct relationship with the federal government." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 788 (2014) (Sotomayor, J., concurring). The Debtor concedes in the Stay Motion that Lendgreen, BDC, and Holdings are all arms of the Tribe. See Stay Motion, ¶3. See also *Ninegret Development v. Narragansetts Indian Wetuomuck Housing Authority*, 207 F.3d 21, 29 (1st Cir. 2000) (finding that an arm of a tribe enjoys the full extent of the tribe's sovereign immunity). Thus, whatever immunity the Tribe has is also attributable to Lendgreen, BDC, and Holdings.

The Bankruptcy Code contains a broad abrogation of sovereign immunity. Pursuant to Section 106(a) of Title 11, "sovereign immunity is abrogated as to a governmental unit," with respect to Section 362. Section 101(27) defines "governmental unit" as follows "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or *other foreign or domestic government*." 11 U.S.C. § 101(27) (emphasis added). Section 101(27) does not specifically include federally recognized Indian tribes as a "governmental unit." This brings me to the question of whether sovereign immunity is abrogated by 11 U.S.C. ¶106(a) as to Indian tribes. While this

2

appears to be a matter of first impression in this circuit, other circuit courts have grappled with this

question and come to differing results.

      The Supreme Court has consistently held that Indian tribes are "separate sovereigns" and as

such have "common law immunity from suit." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788

(2014) ; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); *United States v. United States Fidelity &*

*Guaranty Co.*, 309 U.S. 506, 512-13 (1940); *Turner v. United States*, 248 U.S. 354, 358 (1919. But

Congress can abrogate that immunity "as and to the extent it wishes." *Id*. at 803-04. That abrogation

must be expressed "unequivocally" in the statute at issue. *Id*. at 788; *see Narragansett Indian Tribe v.*

*Rhode Island*, 449 F.3d 16, 25 (1st Cir. 2006) (abrogation "must be clear and unequivocal"). At the center

of the circuit split is whether an Indian tribe is an "other foreign or domestic government" whose

sovereign immunity is "unequivocally" abrogated by section 106(a) of Title 11. See 11 U.S.C. § 101(27).

      In *Buchwald Capital Advisors, LLC. v. Sault Ste. Marie Tribe of Chippewa Indians (In re Greektown*

*Holdings)*, LLC, 917 F.3d 451 (6th Cir. 2019), the Sixth Circuit declined to conclude that section 106

abrogates sovereign immunity as to Indian tribes.  After noting that the words "Indian tribes" are not

present in section 101(27), the Sixth Circuit observed that (a) in many other statutes Congress has used

the words "Indian tribes" when it eliminated their sovereign immunity, *id*. at 456, and that (b) where

Congress intends to abrogate immunity for tribes it must do so in a manner that "leaves no doubt." *Id*.

at 457. The court then rejected the Ninth Circuit's conclusion in *Krystal Energy Co. v. Navajo Nation*, 357

F.3d 1055 (9th Cir. 2004) that the words "domestic government" in section 101(27) are sufficiently

similar to the words "domestic dependent nations," which are the words often used by the Supreme

Court to refer to Indian tribes, to meet the unequivocality requirement. *Id*. The Sixth Circuit relied on the

fact that "there is not one example in all of history where the Supreme Court has found that Congress

has intended to abrogate tribal sovereign immunity without expressly mentioning Indian tribes

somewhere in the statute." *Id*. at 460 (quoting *Meyers v. Oneida Tribe of Indians Wisc.*, 836 F.3d 818,

824 (7th Cir. 2016) (declining to find tribal immunity abrogated by section 106(a)). The Sixth Circuit

concluded that "11 U.S.C. §§ 106, 101(27) lack the requisite clarity of intent to abrogate tribal sovereign

immunity."

In this case, Coughlin argues that I should follow the reasoning of the Ninth Circuit in *Krystal*

*Energy*, which has been rejected by three other circuit courts, and find that sections 101(27) and 106

abrogate the immunity upon which the Alleged Violators rely.  See *Buchwald Capital Advisors, LLC. v.*

*Sault Ste. Marie Tribe of Chippewa Indians (In re: Greektown Holdings), LLC*, 917 F.3d 451 (6th Cir. 2019);

*Meyers v. Oneida Tribe of Indians Wisc.*, 836 F.3d 818, 824 (7th Cir. 2016): *In re Whitaker*, 474 B.R. 687

(8th Cir. 2012).  I agree with the three circuits that have rejected the Ninth Circuit.

Coughlin raises one other argument.  He says that the words "other . . . domestic

government[s]" must refer to Indian tribes because there are no other entities that fit that definition.

But that argument fails for two reasons.  First, if that were the case Congress could have avoided any

ambiguity simply by using the words "Indian tribes" in section 101(27).  Second, as the Alleged Violators

point out, if the words "other . . . domestic governments" is a catch-all phrase, then all the other words

in that section are surplusage, which of course makes no sense.

Finally, Coughlin ignores the special place that Indian tribes occupy in our jurisprudence.  Any

consideration of the statutory waiver of tribal immunity starts with "the baseline position [that the

Supreme Court has] often held is tribal immunity." *Michigan v. Bay Mills Indian Cmty*, 572 U.S. at 790.

Thus, "[a]mbiguities in federal law [are] construed generously in order to comport with . . . traditional

notions of sovereignty and with the federal policy of encouraging tribal independence." *White Mountain*

*Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980).[1]

---

[1] I note that Coughlin also argues, for the first time in his sur-reply, that the long line of Supreme Court cases finding that Indian tribes are entitled to sovereign immunity subject only to precise congressional limitations should be overruled.  That, of course, is well beyond the province of this court.  *State Oil Co. v. Khan*, 522 U.S. 3,20 (1997) (". . . it is [the Supreme] Court's prerogative alone to overrule one of its precedents.").  Moreover, Coughlin has not stated a basis for that relief.

**ORDER**

For the reasons stated above, the Motions to Dismiss are hereby granted, and accordingly, the

Stay Motion will, by separate order, be dismissed for lack of subject matter jurisdiction.

Date: October 19, 2020

Frank J. Bailey
United States Bankruptcy Judge

5

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Lyndel Toppin, | : | |
| Debtor. | : | Bankruptcy No.  18-13098-MDC |
| | | |
| Lyndel Toppin, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 18-00137-MDC |
| Jewell Williams, Sheriff of the City of Philadelphia | : | |
| and Abdeldayem Hassan aka Abdeldyem Hassan, | : | |
| Defendants. | : | |

# <u>O R D E R</u>

**AND NOW**, upon consideration of (i) the Summary Judgment Motion,[1] and (ii) the
Directed Verdict Motion, each filed by the Sheriff's Office, and for the reasons set forth in the
accompanying Memorandum.

**IT IS HEREBY ORDERED** that:

1.      The Summary Judgment Motion is **GRANTED IN PART** and **DENIED IN
PART**.  It is **GRANTED** with respect to the Debtor's request for damages for emotional distress
and **DENIED** on all other grounds asserted.

2.      The Directed Verdict Motion is **GRANTED**.

3.      The Debtor's requested relief for sanctions against the Sheriff's Office pursuant to
§362(k) of the Bankruptcy Code is **DENIED**.

---

[1] Capitalized terms used herein but not defined shall have the meaning given to them in the accompanying
Memorandum.

Dated:  November 8, 2021

_Magdeline D. Coleman_
_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Stephen M. Dunne, Esquire
Dunne Law Offices, P.C.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Predrag Filipovic, Esquire
I Fight for Justice
1735 Market Street, Suite 3750
Philadelphia, PA 19103

Megan Harper, Esquire
Joshua Domer, Esquire
City of Philadelphia
Law Department
1401 John F. Kennedy Boulevard, 5th Floor
Philadelphia, PA 19102

2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Lyndel Toppin, | : | |
| Debtor. | : | Bankruptcy No.   18-13098-MDC |
| | | |
| Lyndel Toppin, | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 18-00137-MDC |
| Jewell Williams, Sheriff of the City of Philadelphia | : | |
| and Abdeldayem Hassan aka Abdeldyem Hassan, | : | |
| Defendants. | : | |

# <u>MEMORANDUM</u>

## I.     INTRODUCTION

Lyndel Toppin (the "Debtor") filed a chapter 13 bankruptcy petition on May 8, 2018, and

approximately one month later, on June 11, 2018, initiated this adversary proceeding (the

"Adversary Proceeding") by filing a Complaint[1]  against Jewell Williams, in his capacity as

Sheriff of the City of Philadelphia (the "Sheriff's Office," and together with the Debtor, the

"Parties").    The Complaint alleges that the Sheriff's Office violated the automatic stay imposed

by §362 of the Bankruptcy Code, <u>11 U.S.C. §§101</u>, *et seq.*, by taking certain post-petition actions

to enforce a writ of possession obtained by Abdeldayem Hassan ("Mr. Hassan") with respect to

the Debtor's home, which Mr. Hassan acquired at a tax foreclosure sale.[2]    The Court held a trial

---

[1]  Adv. Pro. <u>Docket No. 1</u>.

[2]  The Debtor subsequently filed an Amended Complaint that added Mr. Hassan as a named defendant,
*see* Adv. Pro. <u>Docket No. 3</u>, but later moved to dismiss all claims against Mr. Hassan, *see* Adv. Pro.
<u>Docket No. 142</u>.   That motion was granted on the record at the trial in this matter on August 21, 2020.
*See* N.T. 33:7 to 33:12.

("Trial") on August 21, 2020.    Pending before the Court for decision are (i) the motion for

summary judgment (the "Summary Judgment Motion")[3]  filed by the Sheriff's Office, (ii) the

motion for a directed verdict (the "Directed Verdict Motion")[4]  filed by the Sheriff's Office, and

(iii) the Debtor's request for relief under §362(k) of the Bankruptcy Code.    For the reasons

discussed herein, the Court will (i) grant the Summary Judgment Motion in part and deny it in

part, (ii) grant the Directed Verdict Motion, and (iii) deny the Debtor's request for damages

under §362(k).

## II.    RELEVANT FACTUAL BACKGROUND[5]

The Debtor resides at 146 S. 62nd Street in Philadelphia (the "Property").    The Debtor is

both deaf and mute, and lives at the Property with his nephew, Barrington Whyte ("Mr. Whyte").

On October 5, 2017, the Property was sold at a sheriff's sale for delinquent taxes.[6]    Mr. Hassan

was the winning bidder at the sheriff's sale.    In January 2018, Mr. Hassan filed a complaint in

ejectment in the Court of Common Pleas of Philadelphia (the "CCP Court") against "unknown

occupants" of the Property.    Mr. Hassan then obtained a judgment by default against "unknown

occupants," entered on April 5, 2018, for possession of the Property.    On May 7, 2018, Mr.

Hassan procured a writ of possession from the CCP Court against "unknown occupants" of the

---

[3] Adv. Pro. Docket No. 71.

[4] Adv. Pro. Docket No. 157.

[5] The factual background described herein is taken from the admitted allegations of the Second Amended
Complaint, see Adv. Pro Docket No. 29, the admitted factual allegations set forth in the memorandum of
law the Sheriff's Office submitted in support of the Summary Judgment Motion (the "Summary Judgment
Supporting Brief"), see Adv. Pro. Docket No. 72, the stipulated facts read into the record at Trial, and the
evidence adduced at Trial.

[6] The tax collection proceeding was filed against Stanley Zalkin and Eleanor Zalkin as the record owners
of the Property.

2

Property.    The following day, on May 8, 2018, the Debtor filed his chapter 13 bankruptcy

petition (the "Petition").

The Real Estate Unit of the Sheriff's Office received notice of the Petition on May 8,

2018.[7]    On May 10, 2018, Jetaria Taylor ("Officer Taylor"), then an officer with the Civil

Enforcement Unit of the Sheriff's Office, went to the Property to serve a Notice to Vacate,

giving the occupants of the Property 21 days to vacate the Property before an eviction notice

would be issued.    After knocking on the door of the Property and receiving no response, Officer

Taylor taped the Notice to Vacate on the front door and left another copy either in the mail slot

or inside the front door.    Another copy of the Notice to Vacate was mailed to the Property.

Officer Taylor returned to the Property on June 1, 2018, to serve an Eviction Notice

ordering the occupants of the Property to vacate it by June 25, 2018.    After knocking on the

door of the Property and receiving no response, Officer Taylor again taped the Eviction Notice

on the front door and left another copy either in the mail slot or inside the front door.    Another

copy of the Eviction Notice was mailed to the Property.

On June 7, 2018, the Civil Enforcement Unit of the Sheriff's Office received a fax from

the Debtor's counsel attaching a Notice of Bankruptcy with respect to the Debtor's case.

Thereafter, the Civil Enforcement Unit ceased all efforts to enforce the CCP Court's writ of

possession.

---

[7] At the Trial, a fax cover sheet from the Debtor's counsel, attaching notice of the Petition (the "Notice of
Bankruptcy"), was admitted into evidence.    That cover sheet reflects that the Notice of Bankruptcy was
sent to the fax number for the Real Estate Unit.    Both the fax cover sheet and the Notice of Bankruptcy
note the Debtor's name as well as the address of the Property.    A fax attaching the Notice of Bankruptcy
was also transmitted to a fax number for the Civil Enforcement Unit of the Sheriff's Office on May 8,
2018, although the Court was not provided with documentary evidence or testimony confirming that it
was in fact received.

3

### III.        RELEVANT PROCEDURAL BACKGROUND

#### A.        The Second Amended Complaint

As noted *supra*, on June 11, 2018, the Debtor filed the Complaint against the Sheriff's

Office, alleging that the post-petition service of the Notice to Vacate and Eviction Notice

violated the automatic stay imposed by §362 of the Bankruptcy Code.[8]    The Debtor sought

actual damages, attorneys' fees and expenses, emotional distress damages, and punitive

damages.    On November 21, 2018, the Sheriff's Office answered the Second Amended

Complaint.[9]

#### B.        The Summary Judgment Motion

On December 26, 2019, the Sheriff's Office filed the Summary Judgment Motion.    The

Sheriff's Office argues that summary judgment in its favor is appropriate because: (i) the

Sheriff's Office is entitled to quasi-judicial immunity for conduct in execution of an order of

court (the "Quasi-Judicial Immunity Argument"); and (ii) executing the writ of possession issued

by the CCP Court was a ministerial act that is not subject to the Bankruptcy Code's automatic

stay (the "Ministerial Act Argument").    The Sheriff's Office further argues that to the extent the

Court denies summary judgment on both of these grounds, partial summary judgment is

warranted with respect to damages because (i) emotional distress damages cannot be awarded

against the Sheriff's Office pursuant to §106(a)(3) of the Bankruptcy Code and the Pennsylvania

Political Subdivision Tort Claims Act, 42 Pa. C. S. A. §8541, *et seq.* (the "Tort Claims Act"), nor

do the alleged acts by the Sheriff's Office warrant emotional distress damages (the "Emotional

---

[8] The Complaint has been amended twice, *see* Adv. Pro. Docket Nos. 3, 29.    As such, the Second Amended Complaint is the operative pleading.

[9] Adv. Pro. Docket No. 37.

Distress Damages Argument"), and (ii) punitive damages are not available against the Sheriff's Office pursuant to §106(a)(3) of the Bankruptcy Code.

On February 5, 2020, the Debtor filed a response to the Summary Judgment Motion (the "Summary Judgment Response"),[10] arguing that (i) the actions by the Sheriff's Office are subject to the automatic stay; (ii) the Sheriff's Office does not enjoy sovereign immunity with respect to acts that are in violation of the automatic stay; (iii) the actions by the Sheriff's Office caused compensable emotional distress damages to the Debtor; and (iv) summary judgment should be denied with respect to whether punitive damages are warranted because genuine issues of material fact exist.   On February 14, 2020, the Sheriff's Office filed a reply (the "Summary Judgment Reply Brief") to the Debtor's Summary Judgment Response,[11] responding that (i) the Debtor seeks to hold the Sheriff's Office accountable for Mr. Hassan's failure to notify it of the Petition in order to halt any enforcement actions; (ii) the Sheriff's Office's arguments related to quasi-judicial immunity and the ministerial acts exception are not grounded in sovereign immunity; (iii) the Tort Claims Act precludes the recovery of emotional distress damages against a governmental unit; and (iv) the plain language of §106(a)(3) provides that a court cannot award punitive damages against a governmental unit.

On February 18, 2020, the Court held a hearing on the Summary Judgment Motion (the "Summary Judgment Hearing").   At the Summary Judgment Hearing, the Debtor withdrew his request for punitive damages,[12] and therefore on February 20, 2020, the Court entered an

---

[10] Adv. Pro. Docket No. 105.

[11] Adv. Pro. Docket No. 112.

[12] Summary Judgment Hearing Audio Recording, at 3:22 p.m. (ET).

Order[13] granting the Summary Judgment Motion in part, finding that the Debtor is not entitled to recover punitive damages.    The Court held the rest of the issues raised by the Summary Judgment Motion in suspension, pending the receipt of supplemental briefing (each, a "Supplemental Brief") from the Parties on the issue of whether, by ratifying the United States Constitution and the Bankruptcy Clause contained therein, the States agreed to waive their sovereign immunity with respect to claims for violation of the automatic stay for enforcement of a writ of possession (the "Sovereign Immunity Issue").    On April 6, 2020, the Sheriff's Office submitted a Supplemental Brief arguing that, in enforcing the CCP Court's writ of possession, it was acting as an arm of the Pennsylvania judiciary, and therefore is entitled to the protection of sovereign immunity.    The Sheriff's Office argues that it was not acting as a creditor nor on behalf of a government creditor, and therefore an action asserting violation of the automatic stay does not effectuate this Court's *in rem* jurisdiction as required to find a waiver of sovereign immunity under *Central Va. Community College v. Katz*, 546 U.S. 356, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006).    The Debtor, by contrast, argues that a proceeding to enforce the automatic stay is an exercise of the bankruptcy court's *in rem* jurisdiction, and therefore sovereign immunity with respect to such a proceeding has been waived under *Katz*.

        C.    **The Trial**

        On August 21, 2020, the Court held the Trial in this Adversary Proceeding.    At the outset of the Trial the Court advised the Parties that it would hold the Summary Judgment Motion in abeyance and would proceed with Trial, but in resolving the dispute would still rule on the Summary Judgment Motion first as a threshold matter.

---

[13] Adv. Pro. Docket No. 115.

6

The Debtor called three witnesses for its case in chief: (i) Mr. Whyte, (ii) Captain Sean Thorton ("Captain Thornton"), a captain in the Civil Enforcement Unit, and (iii) Officer Taylor. During the course of the testimony, the Debtor also submitted certain documents into evidence.

Mr. Whyte testified that he found three copies each of the Notice to Vacate and the Eviction Notice in the residence at the Property and testified to the various dates in May and June 2018 that each were received.    On direct examination Mr. Whyte testified that the Debtor brought each of the notices received into the house at the Property, but on cross-examination admitted that the first Notice to Vacate was posted on the door and Mr. Whyte took it into the house.    Mr. Whyte also testified regarding his observations as to the effect that receiving these notices had on the Debtor's behavior, including reduced appetite, activity, and sleep.    On cross-examination, however, Mr. Whyte admitted that the Debtor did not understand exactly what the notices were.

Captain Thornton testified that he is the commander of the Civil Enforcement Unit and detailed the other units of the Sheriff's Office.    Captain Thornton testified that, per internal Sheriff's Office policy, when a notice of bankruptcy filing is received by the Sheriff's Office, all enforcement action of any type is to cease.    Captain Thornton testified that a notice of the Debtor's bankruptcy was transmitted to a fax number for the Real Estate Unit of the Sheriff's Office on May 8, 2018.    Captain Thornton provided some limited testimony about a document titled Return of Service from the Real Estate Unit that included a reference on May 9, 2018, to the Debtor's bankruptcy.    That document was not admitted into evidence, however.    Captain Thornton also testified that Officer Taylor went to the Property two times and described the Sheriff's Office's process for serving notices to vacate and eviction notices at a property.

7

According to Captain Thornton, if the Civil Enforcement Unit can hand deliver a notice to the occupants of a property, that is done.   If no occupants are present to allow hand delivery of the notice, the Civil Enforcement Unit will post a notice on the door of the property and leave another notice in the mail slot, with a third to follow by mail.   Captain Thornton testified that he had no reason to believe that Officer Taylor did not follow this procedure.

Officer Taylor also testified regarding the Civil Enforcement Unit's procedure for serving notices to vacate and eviction notices, consistent with Captain Thornton's testimony.   Officer Taylor testified that she was in plain clothes and drove her own vehicle when in the field but was armed with a handgun.   Officer Taylor testified that she would have posted the Notice to Vacate to the door of the Property and left one in the mailbox or inside the door, with the third sent via mail.   Officer Taylor further testified that after visiting the Property on May 10, 2018, she entered notes in the Sheriff's Office's internal "Jewel System" reflecting that she served the Notice to Vacate on that date.   Officer Taylor also testified that she returned to the Property on June 1, 2018, to serve the Eviction Notice, consistent with the process described for serving the Notice to Vacate.

At the close of the Debtor's case-in-chief, the Sheriff's Office advised the Court that, rather than calling any rebuttal witnesses, it would be moving for a directed verdict.[14]  The Court therefore directed the Sheriff's Office to file an appropriate motion after obtaining a transcript of the Trial.

---

[14]  At Trial the Sheriff's Office cited <u>F.R.B.P. 7041(b)</u> as the basis for it moving for a directed verdict. N.T. 253:2 to 253:19. The Directed Verdict Motion, however, correctly cites to <u>F.R.B.P. 7052</u>.

### D.    The Directed Verdict Motion

On October 8, 2020, the Sheriff's Office filed the Directed Verdict Motion and a brief in support (the "Directed Verdict Supporting Brief"), without waiving its arguments in support of summary judgment.[15]    The Sheriff's Office makes two arguments in support of a directed verdict in its favor.    First, the Sheriff's Office argues that the Debtor's case against it is "fundamentally flawed" because (i) the evidence at Trial established that the Sheriff's Office was not acting as a creditor or the agent of a creditor, but instead was acting as an arm of the CCP Court in enforcing a facially valid writ of possession, and there was no evidence that enforcement was beyond the scope of the mandate contained therein; and (ii) the Debtor presented no evidence that Mr. Hassan was given notice of the Petition or that Mr. Hassan took any action to stop enforcement of the writ of possession, despite the burden being on the creditor to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or enforcement must cease.    Second, the Sheriff's Office argues that the Debtor has not proven a willful violation of the automatic stay.    The Sheriff's Office argues that the Debtor failed to even establish when notice of the Petition was provided to the Sheriff's Office.    The Sheriff's Office acknowledges the evidence produced at Trial establishes that the Real Estate Unit received notice on May 8, 2018, and that the Civil Enforcement Unit received notice on June 7, 2018.    The Sheriff's Office argues, however, that notice to one unit of the Sheriff's Office does not serve to effectuate notice to all other units.    The Sheriff's Office further argues that even if the Court were to find that notice was provided on May 8, 2018, the Debtor did not establish any actual damages from any stay violation that may have occurred after that date.    Rather, the

---

[15]  Adv. Pro. Docket Nos. 157, 158.

9

Sheriff's Office argues, Mr. Whyte's testimony at Trial on the Debtor's alleged damages was unconvincing and unreliable because it lacked sufficient context, detail, and temporal perspective to establish a causal link to the Sheriff's actions.

On October 29, 2020, the Debtor filed a response in opposition to the Directed Verdict Motion (the "Directed Verdict Opposition Brief").[16]   The Debtor argues that various exhibits admitted into evidence at the Trial, as well as certain testimony, establish that the Sheriff's Office received adequate notice of the Petition on May 8, 2018, and the Sheriff's Office's own internal policy mandated that enforcement of the writ terminate upon receiving such notice. The Debtor further argues that the Sheriff's Office's willful violation of the automatic stay was established by the evidence at Trial that Officer Taylor served the Notices to Vacate, and the Eviction Notices after the Sheriff's Office had notice of the Petition.    Finally, the Debtor argues that Mr. Whyte's testimony as to the effect of those notices on the Debtor sufficiently established actual damages.

On November 10, 2020, the Court held a hearing on the Directed Verdict Motion, after which it took the matter under advisement.

## IV.    DISCUSSION

### A.    Motion for Summary Judgment

#### 1.    Standard for Summary Judgment

The standard for evaluating a motion for summary judgment is well-established:

> Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *E.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir.

---

[16]  Adv. Pro. Docket No. 161.

> 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). In other
> words, summary judgment may be entered if there are no disputed issues
> of material fact and the undisputed facts would require a directed verdict
> in favor of the movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,
> 1115 (11th Cir. 1993).
>
> In evaluating a motion for summary judgment, the court's role is not to
> weigh the evidence, but to determine whether there is a disputed, material
> fact for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material
> fact is one in which sufficient evidence exists that would permit a
> reasonable fact finder to return a verdict for the non-moving party. *Id.* at
> 248. In evaluating the record, the court must view the underlying facts and
> make all reasonable inferences therefrom in the light most favorable to the
> party opposing the motion. *Montone v. City of Jersey City*, 709 F.3d 181,
> 189 (3d Cir. 2013); *United States v. 717 South Woodward St.*, 2 F.3d 529,
> 533 (3d Cir. 1993). On the other hand, if it appears that the evidence "is so
> one-sided that one party must prevail as a matter of law," the court should
> enter judgment in that party's favor. *Anderson*, 477 U.S. at 252.

*Fraction v. Jacklily, LLC (In re Fraction)*, 622 B.R. 642, 646-647 (Bankr. E.D. Pa. 2020).

When the non-moving party bears the burden at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of fact, the non-moving party must produce evidence sufficient to create a genuine issue. *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 435 (E.D. Pa. 2004). A plaintiff cannot simply rest on the allegations in its pleadings, but rather must present evidence from which a fact-finder could find in its favor. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 251 n.2 (3d Cir. 2010). That is, to survive summary judgment, the nonmovant must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

As noted *supra*, the Court has already granted the Sheriff's Office partial summary judgment with respect to the issue of punitive damages upon the Debtor withdrawing his requested relief on that issue, leaving the three remaining purported grounds for summary

11

judgment to be resolved: (i) the Quasi-Judicial Immunity Argument; (ii) the Ministerial Act

Argument; and (iii) the Emotional Distress Damages Argument.

### 2.    The Sheriff's Office is Not Entitled to Quasi-Judicial Immunity

The Sheriff's Office argues that it cannot be held liable for violation of the stay because it

is entitled to quasi-judicial immunity, which it asserts extends absolute immunity to persons

executing valid court orders from civil actions for damages challenging conduct authorized by

the order.    Summary Judgment Supporting Brief, at 7 (*citing Coverdell v. The Department of

Social and Health Services, State of Washington*, 834 F.2d 758, 764-765 (9th Cir. 1987) and

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 772-73 (3d Cir. 2000)).

The Sheriff's Office points to its purported lack of discretion in enforcing the CCP

Court's writ of possession: "The application of quasi-judicial immunity to any public official

acting pursuant to court directive is based on a well-grounded principle that those who are

required to follow the instructions of a court have no discretion but to obey the order and

mandate of the court.    Thus, the Sheriff, in executing the writ against unknown occupants at the

Property, was performing a ministerial function, without discretion, at the direction of the judge

and is entitled to immunity."    Summary Judgment Supporting Brief, at 7-8.    The Sheriff's

Office asserts that its actions in serving the Notice to Vacate, and Eviction Notice were

enforcement actions within the scope of the writ of possession, and there is no allegation that the

Sheriff's Office took enforcement action beyond the scope of the writ.

The Sheriff's Office is correct that the doctrine of quasi-judicial immunity applies where

the function performed serves the judicial process but the individual performing it lacks

discretion in doing so.    Absolute quasi-judicial immunity is distinct from absolute judicial

12

immunity in that it does not derive from the discretionary nature of an official's actions; rather, it derives from the official's *lack* of discretion. *Latour v. McCullar*, 2016 U.S. Dist. LEXIS 96961, at *36 (W.D. Pa. July 26, 2016) (*quoting Coopshaw v. Figurski*, 2008 U.S. Dist. LEXIS 8530, at *10-11 (E.D. Mich. Feb. 6, 2008)). As such, quasi-judicial immunity "applies only where officials perform a ministerial task at the specific direction of a judge." *Rucinski v. U.S.*, 1995 U.S. Dist. LEXIS 2700, at *8 (N.D. Ill. Mar. 2, 1995) (citing cases). It extends only to suits challenging conduct prescribed by the court order, and officials are not immune from *the manner* in which they carry out otherwise proper court orders. *Id.* at n.2.

The Court, however, is not convinced that the Sheriff's Office lacked all discretion in enforcing the writ of possession. Rather, the Sheriff's Office acknowledges[17] that it ceased all enforcement action upon the Civil Enforcement Unit's receipt of notice of the Petition on June 7, 2018, evidencing that it was not without discretion to cease enforcement actions in the event of a bankruptcy filing. In fact, the Sheriff's Office's own internal policy mandates that upon receiving notice of a bankruptcy, "all legal action is to stop."[18] This policy embodies the discretion that the Sheriff's Office had and exercised in ceasing enforcement upon the Civil Enforcement Unit receiving notice of the Petition. The writ did not direct the Sheriff's Office to cease enforcement upon receiving notice of a bankruptcy; the Sheriff's Office made that determination, consistent with its own policy and as required by the Bankruptcy Code. This independent exercise of discretion, rooted in deference to the automatic stay imposed upon the filing of a bankruptcy petition, is inconsistent with the picture the Sheriff's Office attempts to

---

[17] See Summary Judgment Supporting Brief, at ¶¶23 to 25.

[18] Exhibit C-26.

paint of a judicial officer mechanically enforcing the terms of a facially valid court order.[19]
The Sheriff's Office exercised its discretion to cease enforcement, without the CCP Court first
authorizing or directing it to do so.    The Sheriff's Office is therefore not entitled to the
protection of quasi-judicial immunity.

### 3.     Enforcement of the Writ Was Not a Ministerial Act

The Sheriff's Office argues that its post-petition actions to enforce the CCP Court's writ
of possession were merely ministerial and not subject to the automatic stay.    The Sheriff's
Office asserts that an act is ministerial where the law compels it and argues that its post-petition
acts to enforce the CCP Court's writ of possession was mandated by Pennsylvania statutory law
and a number of provisions of the Pennsylvania Rules of Civil Procedure using the term "shall"
to dictate what action is required at particular stages of the ejectment and possession process.

The Sheriff's Office points to 42 Pa. C. S. A. §2921, titled "Powers and duties of the
sheriff," providing that "The sheriff, either personally or by deputy, shall serve process and
execute orders directed to him pursuant to law."    While the Sheriff's Office appears to advance
the view that this as an unqualified directive to serve process and execute orders directed to it,
the very language of the statute itself belies this position.    It *requires* that the Sheriff's Office do

---

[19] The Debtor's claim against the Sheriff's Office for violation of the bankruptcy stay is not about *how*
the writ of possession was enforced, but rather that it was enforced after the Petition was filed.   The cases
the Sheriff's Office cites in its Summary Judgment Supporting Brief finding sheriffs protected by quasi-
judicial immunity are distinguishable from the issue presented in this case.   *See* Summary Judgment
Supporting Brief, at 8-9.   Those cases found the doctrine applicable because the sheriffs or sheriff's
deputies in those cases were acting in accordance with a facially valid court order.   There is no argument
that the CCP Court's writ of possession was not facially valid.   However, the difference here is that after
the Debtor's bankruptcy was filed, enforcement of that writ, *notwithstanding its facial validity*, required
relief from the automatic stay.   Absent such relief, it could not be enforced.   Therefore, this is not simply
a case of the Sheriff's Office enforcing a facially valid court order according to its terms; the crux of the
issue is whether enforcement *at all* violated the stay.

14

so "pursuant to law."   Whatever the law may be in other contexts, in the context of this case, the

Sheriff's Office was required to act in accordance with the limitations imposed on all parties by

the Bankruptcy Code's automatic stay.   As such, the provision of Pennsylvania statutory law

relied upon does not strip all discretion from the Sheriff's Office in executing a writ of

possession, and does not make doing so a mere ministerial act.

Furthermore, the mandates in the Pennsylvania Rules of Civil Procedure cited by the

Sheriff's Office are not the actions that are at issue here.   Those mandates dictate the process

generally for ejectment and possession, providing procedural steps that are necessary in order to

execute possession once a judgment is obtained.   *See* Summary Judgment Supporting Brief, at

12 (citing Pa. R.C.P. Nos. 3103, 3105, 3160, and 3161).   The Sheriff's Office has cited to these

various rules to argue that they leave the Sheriff's Office with no discretion in fulfilling its

obligations with respect to enforcing the writ of possession.   None of the rules cited, however,

mandate that the Sheriff's Office "shall" enforce a writ of possession post-petition

notwithstanding the imposition of the automatic stay or a similar prohibition to act.[20]   That is

the issue to be decided here.   As discussed *supra*, the Sheriff's Office's acknowledgement that

enforcement action ceased upon the Civil Enforcement Unit receiving notice of the Petition

evidences that it did believe the automatic stay trumped any statutory or rule-based duties it

otherwise had to enforce the writ of possession.   The discretion the Sheriff's Office exercised at

that point undermines its argument that the post-petition actions it took were mere ministerial

acts not subject to the automatic stay.

---

[20] In fact, to the extent the Pennsylvania Rules of Civil Procedure did so provide, it would be in direct
conflict with the Pennsylvania statutory provision cited above requiring that sheriffs execute orders
pursuant to law.

The Sheriff's Office relies heavily on *In re Williams*, <u>371 B.R. 102</u> (Bankr. E.D. Pa.
2007).    There, the bankruptcy court found that a landlord's post-petition request for an Order of
Possession from a state court, based on a prepetition judgment granting it possession of the
debtors' leased real property, did not violate the automatic stay.    *Id.* at 111.    In the *Williams*
court's view, the procedural rules relating to the Pennsylvania Landlord Tenant Act required that
such action be taken and divested the state court from discretion in issuing the Order of
Possession: "The rules for enforcing that judgment require that the landlord first file a request for
an Order of Possession.    Upon such a request, 'the magisterial judge <u>shall</u> issue the order for
possession and <u>shall</u> deliver it for service and execution to the sheriff … The order <u>shall</u> direct
the officer executing to deliver actual possession of the real property to the plaintiff.'    In using
the word 'shall' the Rule makes the issuance of the Order for possession mandatory, making the
issuance and execution of the order a ministerial act rather than judicial function requiring the
exercise of discretion.'"    *Id.* at 111 (emphasis in original).    This logic underpins the Sheriff's
Office's argument that enforcement of the CCP Court's writ of possession was similarly
ministerial.    This Court, however, respectfully disagrees with the *Williams* decision's reasoning.
Although the use of the term "shall" may denote lack of discretion in most other contexts, the
overlay of the Bankruptcy Code's automatic stay, which brings all enforcement and collection
efforts to at least a temporary halt, changes what is or is not compelled, and therefore what may
be "ministerial" in nature.    The *Williams* decision used the entry of a judgment on the docket by
a prothonotary as an example of a function that case law has long held is a ministerial task.
This Court views that type of post-petition action as far different in nature from service of the
Notice to Vacate and Eviction Notice at issue here, and the Sheriff's Office's cessation of

16

enforcement efforts after June 7, 2018, suggests that it did not view those acts as ministerial at the time either.   The Court therefore diverges from the *Williams* court's holding with respect to what constitutes a ministerial act and finds that the Sheriff's Office's post-petition actions in enforcing the CCP Court's wit of possession do not qualify as such.

### 4.     The Sheriff's Office is Entitled to Partial Summary Judgment with Respect to Liability for Emotional Distress Damages

The Sheriff's Office argues that partial summary judgment is warranted with respect to the Debtor's request for the award of emotional distress damages because the Debtor is not entitled to them.   The Sheriff's Office first asserts that the Debtor is not entitled to them as a matter of law because sovereign immunity insulates the Sheriff's Office from liability for emotional distress damages.   The Sheriff's Office also argues that the Debtor is not entitled to emotional distress damages as a factual matter because the Debtor did not produce any medical evidence to corroborate or establish a causal connection between the Sheriff's Office's actions and the Debtor's alleged emotional distress.

### a.     Sovereign Immunity Has Been Waived with Respect to Actual Damages, Including Emotional Distress Damages

The Sheriff's Office's argument that emotional distress damages are not permitted as a matter of law is grounded on its position that (a) the term "money recovery" used in §106(a)(3) of the Bankruptcy Code does not include emotional distress damages, such that sovereign immunity is not waived under the Bankruptcy Code with respect to them, and (b) because sovereign immunity is not waived under the Bankruptcy Code, the Court must look to the Tort Claims Act, which the Sheriff's Office asserts provides it with immunity from liability.

Before addressing the first prong of this legal argument, the Court pauses to address the Sheriff's Office's position in its Supplemental Brief that the Eleventh Amendment's sovereign

17

immunity provision protects it as a general matter from liability in this proceeding.    The

Supreme Court's decision in *Central Va. Community College v. Katz*, 546 U.S. 356, 126 S. Ct.

990, 163 L. Ed. 2d 945 (2006) governs whether sovereign immunity has been waived by the

states, as the Sheriff's Office correctly acknowledges in its Supplemental Brief on the Sovereign

Immunity Issue.    *Id.* at 5.    *Katz* held that in ratifying the United States Constitution, the states

waived sovereign immunity for proceedings brought pursuant to "Laws on the subject of

Bankruptcies," including proceedings necessary to effectuate the *in rem* jurisdiction of the

bankruptcy courts.    546 U.S. at 377-378.    A bankruptcy court's *in rem* jurisdiction therefore

extends to states, and a proceeding to enforce the automatic stay "constitutes a 'critical feature'

in the exercise of *in rem* bankruptcy jurisdiction in that it facilitates the exercise of the court's

exclusive jurisdiction over the debtor's property."    *Odom v. Phila. Parking Auth. (In re Odom)*,

574 B.R. 687, 695 (Bankr. E.D. Pa. 2017); *see also Potter v. Newkirk*, 2020 U.S. Dist. LEXIS

194033, at *27 (D.N.J. Oct. 20, 2020) (a claim against a sheriff's office for violation of the

automatic stay was not barred by sovereign immunity because it was at least ancillary to the

bankruptcy court's *in rem* jurisdiction); *In re Schroeder*, 2009 Bankr. LEXIS 3498, at * (Bankr.

D. Neb. Oct. 23, 2009) (under *Katz*, a Nebraska state agency's stay violation "plainly falls within

this court's authority to administer the bankruptcy *res*").

The Sheriff's Office attempts, however, to side-step the court's *in rem* jurisdiction by

arguing that because it was not acting as a creditor itself or on behalf of a state creditor, there is

no *in rem* jurisdiction over the claims against the Sheriff's Office.    Supplemental Brief, at 6-7.

The Sheriff's Office cites no law so holding, and taken to its logical conclusion, this argument

would hold that any non-creditor party can take action that violates the automatic stay and

18

impedes this Court's exclusive jurisdiction over the property of the bankruptcy estate, without being subject to the Court's authority to enforce the stay.    The Court rejects the Sheriff's Office's position, and agrees with *Odom's* reasoning that, under *Katz*, states waived their sovereign immunity with respect to proceedings asserting a violation of the automatic stay. This waiver does not hinge on the state actor having a claim against the bankruptcy estate or acting on behalf of a party that does.

Having found that the Sheriff's Office is not insulated as a general matter from liability by Eleventh Amendment sovereign immunity for a stay violation, the Court turns back to the Sheriff's Office's argument that, although §106(a)(3) permits "money recovery" from state actors, it does not contemplate emotional distress damages.    In *Sacred Heart Hosp. v. Dept. of Pub. Welfare (In re Sacred Heart Hosp.)*, 133 F.3d 237 (3d Cir. 1998), the Third Circuit found §106(a) unconstitutional to the extent it purports to abrogate state sovereign immunity in federal court.    *Id.* at 245.    Section 106(a)(3) purports to abrogate state sovereign immunity as to damages, by providing that a bankruptcy court can award a money recovery against the states. *Sacred Heart* remains binding in this circuit, *see In re La Poloma Generating, Co.*, 588 B.R. 695, 727 (Bankr. D. Del. 2018), and therefore the Court finds §106(a)(3) is unconstitutional under *Sacred Heart*.    Whether the states are liable for damages for violation of the automatic stay is determined by reference to the considerations articulated in *Katz*.    In *Newkirk*, the court squarely addressed this issue in determining whether a county prosecutor's office and sheriff's office could be held liable for damages for violation of the automatic stay, or were instead insulated by Eleventh Amendment immunity:

> Like the action to recover money [from] alleged preferential transfers in
> *Katz*, Plaintiff's action for violation of the automatic stay is a proceeding

19

> ancillary to the discharge of a debtor's debt … The automatic stay is a
> supplement to the Bankruptcy Court's exercise of *in rem* jurisdiction
> because it preserves 'the status quo between the debtor and [his] creditors,
> thereby affording the parties and the Court an opportunity to appropriately
> resolve competing economic interests in an orderly and effective way.
> Put differently, a violation of the automatic stay directly interferes with the
> exercise of exclusive jurisdiction over all of the debtor's property and the
> equitable distribution of that property among the debtor's creditors.
> Thus, while claims for damages based on violation of the automatic stay
> resemble traditional money damage lawsuits in form, their function is to
> facilitate the *in rem* proceedings which form the foundation of bankruptcy.
> As such, the doctrine of sovereign immunity does not apply with respect
> to the claim for violation of the automatic stay.

*Id.*, 2020 U.S. Dist. LEXIS 194033, at *27-*28.   This Court agrees with the *Newkirk* court's

analysis, and finds that state sovereign immunity has been waived with respect to the recovery of

actual damages for violation of the automatic stay.[21]

The question then becomes whether that waiver includes the recovery of emotional

distress damages.   The Sheriff's Office makes the argument in its Summary Judgment

Supporting Brief that §106(a)(3)'s use of the term "money recovery" does not include emotional

distress damages either because that was not what Congress intended in abrogating state

sovereign immunity or because the term is ambiguous and therefore must be interpreted

narrowly and consistent with state sovereign immunity.   This argument misses the mark,

however, given the Court's finding that §106(a)(3) does not govern whether sovereign immunity

has been waived.   The scope of the term "money recovery" used therein is therefore irrelevant.

Instead, the Court looks to §362(k) of the Bankruptcy Code, which provides in relevant part, that

---

[21] The argument also exists that under *Katz*, Congress has the power to bind states to uniform federal
judicial bankruptcy process.   *Davis v. California (In re Venoco LLC)*, 998 F.3d 94, 103 n.8 (3d Cir.
2021) (quoting Ralph Brubaker, *Explaining Katz's New Bankruptcy Exception to State Sovereign
Immunity: The Bankruptcy Power as a Federal Forum Power*, 15 Am. Bank. Inst. L. Rev. 95, 129
(2007)).   Section 362(k), discussed *infra,* represents a uniform bankruptcy process for the imposition of
sanctions for parties violating the automatic stay.

20

"an individual injured by any willful violation of a stay provided by this section shall recover

actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages." 11 U.S.C. §363(k).[22]

In *Lansaw v. Zokaites (In re Lansaw)*, 853 F.3d 657 (3d Cir. 2017), the Third Circuit

joined "a growing number of circuits" in holding that Congress intended the automatic stay to

protect both financial and non-financial interests, and that the term "actual damages" as used in

§362(k) includes damages for emotional distress resulting from a willful violation of the

automatic stay.  *Id.* at 667 (citing cases).  *Lansaw* therefore answers the question; in the Third

Circuit, actual damages that may potentially be recovered include emotional distress damages.

Relying on a footnote in *Lansaw*, however, the Sheriff's Office argues that the Third Circuit's

general holding should not apply to it.  In arriving at its holding, the Third Circuit distinguished

*FAA v. Cooper*, 566 U.S. 284, 132 S. Ct. 1441, 182 L. Ed. 2d 497 (2012), where the Supreme

Court held that the term "actual damages" as used in the Privacy Act did not authorize emotional

distress damages from the federal government.  *Id.* at 667 n.8.  The Third Circuit reasoned that,

in *Cooper*, the Supreme Court looked to the legislative history of the Privacy Act indicating that

Congress could have, but chose not to, clearly authorize the recovery of emotional distress

damages.  *Id.*  The Third Circuit was "unaware of any legislative history indicating that

Congress refused to authorize emotional-distress damages for stay violations.  If anything, the

legislative history is to the contrary."  *Id.*  The Third Circuit therefore concluded that *Cooper*

did not compel a different result but commented that it would "leave open for another case the

---

[22] As noted *supra*, the Debtor withdrew his request for punitive damages at the Summary Judgment
Hearing, and the Court therefore entered an order partially granting the Summary Judgment Motion with
respect to that issue.

21

question of whether emotional-distress damages may be recovered under §362(k)(1) against federal or state governments." *Id.* The Sheriff's Office argues that this reservation by the Court makes it reasonable to view the term "money recovery" in §106(a)(3) narrowly.

Again, given the Court's finding that *Sacred Heart* renders §106(a)(3) of the Bankruptcy Code unconstitutional, the term "money recovery" in §106(a)(3) is irrelevant to the Third Circuit's reservation as to how "actual damages" would be viewed in the context of sovereign immunity. Moreover, notwithstanding the Third Circuit's comment in *Lansaw*, this Court sees no reason why, if the states waived sovereign immunity for actual damages sustained from the state's violation of the automatic stay, such waiver would not include any resulting emotional distress damages, given *Lansaw's* finding that the term "actual damages" in §362(k) includes emotional distress damages. *Cf. In re Griffin*, 415 B.R. 64, 68-69 (Bankr. N.D.N.Y. 2009) (finding that §362(k)'s use of the term "actual damages" includes emotional distress damages, such that the abrogation of sovereign immunity under §106(a) "unequivocally provides for the abrogation of sovereign immunity in connection with an award of actual damages, including damages arising from emotional distress to the extent they were caused by the willful violation of the automatic stay by a governmental unit and not from the anxiety and pressures inherent in the bankruptcy process."). The Sheriff's Office has offered no compelling reason why *Lansaw's* holding as to the scope of "actual damages" under §362(k) is subject to a carve-out for governmental actors, and this Court finds that it is not.[23]

---

[23] The Court's conclusion that in ratifying the Bankruptcy Clause of the Constitution, the states waived sovereign immunity as to liability for resulting actual damages pursuant to §362(k), including emotional distress damages, renders moot the second prong of the Sheriff's Office's argument; *i.e.*, because §106(a)(3) is ambiguous as to emotional distress damages, the Court must look to the Tort Claims Act.

22

### b. The Debtor Has Failed to Produce Factual Support on Emotional Distress Damages to Survive Summary Judgment

The Sheriff's Office argues that "Plaintiff averred generally in his Complaint as to the nature of his emotional injuries but has not produced any medical evidence to corroborate the harm or to establish the causal connection to the Sheriff's actions." Summary Judgment Supporting Brief, at 17. According to the Sheriff's Office, *Lansaw* holds that only when violations are truly egregious should testimony alone suffice to award emotional distress damages, and the facts here are markedly different from the patently egregious fact pattern in *Lansaw*. Summary Judgment Supporting Brief, at 17-18.

The Court first notes that the *Lansaw* holding regarding what evidence is required to establish emotional distress damages is more nuanced than the Sheriff's Office argues. The *Lansaw* court stated that:

> Depending on the circumstances of each individual case, corroborating medical evidence *may be required* to prove emotional harm and causation. But we decline to adopt a bright-line rule requiring such evidence to prove emotional-distress damages under §362(k)(1). As we have concluded in the context of other federal statutes, we see no reason to require that a specific type of evidence be introduced to demonstrate injury in the form of emotional distress. And we agree with the Bankruptcy Court that, *at least* where a stay violation is patently egregious, a claimant's credible testimony alone *can be sufficient* to support an award of emotional-distress damages. We are confident that courts can ensure that plaintiffs recover only for actual injury even in the absence of expert medical testimony in such cases.

*Id.*, 853 F.3d at 669 (emphasis added, internal citations and quotations omitted). Although "the majority of courts have denied damages for emotional distress where there is no medical or other hard evidence to show something more than fleeting or inconsequential injury," *see Stinson v. Bi-Rite Restaurant Supply, Inc. (In re Stinson)*, 295 B.R. 109, 120 n.8 (9th Cir. B.A.P. 2003), *aff'd in part, rev'd in part,* 128 Fed. Appx. 30 (9th Cir. 2005), it goes too far to argue, as the

23

Sheriff's Office does, that *Lansaw* stands for the bright-line rule that only when violations are truly egregious should testimony alone suffice to establish emotional distress damages.   Rather, the fact-finding court must determine what evidence is sufficient under the circumstances of the particular case before it, even where a stay violation may be egregious.

Regardless of what evidence is required in any particular case, however, the Sheriff's Office alleges that "Plaintiff has presented zero evidence to corroborate his averments of emotional distress or connect the specific actions of the Sheriff to the alleged harm suffered." Summary Judgment Supporting Brief, at 18.   In his Summary Judgment Response, the Debtor devotes only three conclusory sentences in response: "Defendant's unlawful action caused irreparable harm to the Plaintiff in the form of emotional distress, including: anxiety, difficulty sleeping, depression, and mental anguish.   Most bankruptcy courts have held that emotional distress damages may be awarded only if a causal connection is established between the creditor's actions and the emotional distress suffered.   The Sheriff's actions caused irreparable harm to the Plaintiff in the form of emotional distress."   Summary Judgment Response, at 11 (unnumbered) (citations omitted).   The Debtor did not, as required by Federal Rule of Bankruptcy Procedure 7056(c), cite to any materials in the record or show that the Summary Judgment Motion's citation to the averments in the Complaint did not establish the absence of a genuine dispute.   F.R.B.P. 7056(c)(1)(A)-(B).

The Debtor bears the burden of producing evidence to support each element of his claim for emotional distress damages.   In order to recover emotional distress damages for willful violation of the automatic stay, a party must (1) have suffered significant emotional distress, (2) clearly establish the significant emotional distress; and (3) demonstrate a causal connection

24

between that significant emotional distress and the stay violation.   *Boltz-Rubenstein v. Bank of Am. (In re Boltz-Rubinstein)*, 596 B.R. 494, 503 (Bankr. E.D. Pa. 2019).   The Debtor cannot survive summary judgment, however, by simply relying on the allegations in the Complaint or conclusory assertions of emotional distress.   *NGK Metals Corp.*, 609 F.3d at 251 n.2; *Banno v. Experian Info. Sols., Inc.*, 2017 U.S. Dist. LEXIS 113045, at *11 (N.D. Ill. Jul 20, 2017).   Here, although the Debtor may not have been required to produce corroborating medical evidence to contest summary judgment under *Lansaw*, he did not come forth with *any* factual support for his alleged emotional distress damages in response to the Summary Judgment Motion.   The bare-bones conclusory statements in his Summary Judgment Response, simply summarizing or parroting the allegations of the Complaint, do not suffice to contest summary judgment, even where all inferences are drawn in a light most favorable to him.   *Butler v. County of Bucks*, 2005 U.S. Dist. LEXIS 4197, at *9 (E.D. Pa. Mar. 18, 2005) (the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion).   The Debtor was instead required to come forth with evidence in support of those allegations, in the form of "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials."   F.R.C.P. 56(c)(1)(A). The Debtor failed to do so.

If the non-moving party fails to meet their evidentiary burden, the court should, in most circumstances, grant summary judgment in favor of the movant.   *Medtronic*, 302 F. Supp. 2d at 435.   Here, the Debtor has failed to meet his evidentiary burden in contesting the Summary Judgment Motion with respect to his entitlement to emotional distress damages, and therefore the

Court will grant the motion on that issue.

### B.    Directed Verdict Motion

Having found that the Sheriff's Office is not immunized from liability from actual damages for violation of the automatic stay under any of the theories espoused in the Summary Judgment Motion, the Court turns to the Directed Verdict Motion.

#### 1.    Standard for Directed Verdict Under F.R.C.P. 52(c)

The Sheriff's Office moves for a directed verdict pursuant to Federal Rule of Civil Procedure 52(c), made applicable here pursuant to Federal Rule of Bankruptcy Procedure 7052. The rule provides, in relevant part, that "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."   F.R.C.P. 52(c).    In considering whether to grant judgment under Rule 52(c), the Court applies the same standard of proof and weighs the evidence as it would at the conclusion of trial.   *Carter v. U.S.*, 2011 U.S. Dist. LEXIS 148631, at *2 (E.D. Pa. Dec. 27, 2011) (*quoting EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010)).   The Court does not view the evidence through a particular lens or draw inferences favorable to either party, and should make determinations of witness credibility where appropriate.   *Id.*

#### 2.    The Parties' Arguments

The Sheriff's Office makes several arguments in support of a directed verdict in its favor. It first argues that the Debtor's case is fundamentally flawed because (i) the Sheriff's Office, in lawfully enforcing the facially valid writ of possession, was not acting as a creditor or agent of a

26

creditor, but rather as an arm of the CCP Court, and (ii) there was no evidence that Mr. Hassan,

who was the creditor, notified the Sheriff's Office of the Debtor's Petition or took any action to

stop enforcement of the writ.     The Sheriff's Office next argues that the Debtor did not establish

a willful violation of the automatic stay by a preponderance of the evidence at Trial.     The

Sheriff's Office argues the evidence at Trial established that, although its Real Estate Unit

received notice of the Petition on or about May 8, 2018, its Civil Enforcement Unit did not

receive notice until June 7, 2018, and there was no evidence establishing that the Sheriff's Office

continued its enforcement efforts after that date.     Finally, the Sheriff's Office argues that even if

the Court finds the Sheriff's Office had effective notice of the Petition as of May 8, 2018, the

Debtor failed to establish any actual damages violation of the stay caused.     The Sheriff's Office

asserts that Mr. Whyte's testimony was insufficient to award actual damages because it lacked

precision and reliability with respect to a causal link between the Sheriff's Office's enforcement

actions and the Debtor's damages.

     In response, the Debtor argues the evidence at Trial conclusively established that the

Sheriff's Office had notice of the Petition as of May 8, 2018, when the Sheriff's Office admits its

Real Estate Unit received notice.     The Debtor contests the Sheriff's Office's position that June

7, 2018, when it asserts the Civil Enforcement Unit received notice, is the trigger date for

determining whether the Sheriff's Office willfully violated the automatic stay.     The Debtor

therefore argues that the enforcement actions by the Sheriff's Office after May 8, 2018, were

done with knowledge of the bankruptcy, and constitute willful violations of the automatic stay.

Finally, the Debtor argues his damages were established through Mr. Whyte's testimony as to the

behavioral changes the Notice to Vacate and Eviction Notice caused in the Debtor, such as

reduced appetite for dinner, increased smoking, and reduced sleep.

### 3.   Legal Standard for Willful Violation of the Automatic Stay

The Second Amended Complaint lacks clarity as to which subsection or subsections of §362(a) the Debtor is asserting the Sheriff's Office violated. *See* Second Amended Complaint, at ¶47, 56 (asserting violation of §362 generally); ¶49 (asserting violations of §362(a)(1), (2), and (3), but not differentiating as to Mr. Hassan and the Sheriff's Office); ¶65 (asserting violation of §362(a)(1), (3), (4), (5) and/or (6)).   Regardless of which provision or provisions the Debtor relies on for its claim against the Sheriff's Office, however, when the automatic stay has been violated, the relevant provision for sanctions is §362(k)(1) of the Bankruptcy Code. As noted *supra*, §362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k).   The section "is 'remarkably simple' and requires the imposition of sanctions on a party violating the automatic stay upon the [the satisfaction of three elements]: First, the offending party must have violated the automatic stay.   Second, the violation of the stay must have been willful.   Finally, the willful violation must have caused Debtors some injury."   *In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011) (*quoting Wingard v. Altoona Reg. Health Systems (In re Wingard)*, 382 B.R. 892, 900 n.6 (Bankr. W.D. Pa. 2008)).   The Debtor bears the burden of proving these elements by a preponderance of the evidence. *Wingard*, 382 B.R. at 900 n.6.

A willful violation of the stay occurs where the stay has been violated "with knowledge that the bankruptcy petition has been filed.   Willfulness does not require that the creditor intend

28

to violate the automatic stay provision, rather it requires that the acts which violates the stay be intentional." *Lansaw*, 853 F.3d at 664 n.4; *Renzulli v. Ullman (In re Renzulli)*, 2015 Bankr. LEXIS 4439, at *25 (Bankr. D.N.J. Nov. 23, 2015) (willfulness can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless and does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional) (*citing In re Lansdale Family Rest., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992)).   As such, knowledge of the existence of the bankruptcy case is treated as knowledge of the automatic stay.   *Boltz-Rubenstein*, 596 B.R. at 503.

With respect to damages, there must be a sufficient factual finding to support a damages award.   *In re Brown*, 2012 Bankr. LEXIS 4271, at *22-23 (Bankr. E.D. Pa. Sept. 6, 2012) (*citing In re Grine*, 439 B.R. 461, 468 (Bankr. N.D. Ohio 2010)).   It is the Debtor's burden to prove injury.   *City of Phila. v. Walker*, 2015 U.S. Dist. LEXIS 157629, at *7 (E.D. Pa. Nov. 23, 2015).   Damages must be proven with reasonable certainty and must not be speculative or based on conjecture.   *Brown*, 2012 Bankr. LEXIS 4271, at *22-23 (*quoting Grine*, 439 B.R. at 469 and citing cases).

### 4. The Debtor Failed to Establish All Elements Required Under §362(k)(1)

#### a. The Debtor Established Violation of the Stay by the Sheriff's Office

The evidence, in the form of the Sheriff's Office's own admission, established that its Real Estate Unit received notice of the Debtor's Petition on May 8, 2018.   As noted *supra*, the Real Estate Unit received a faxed notice of the Debtor's bankruptcy on that date, and both the fax cover sheet from the Debtor's counsel and the notice itself provided the Debtor's name and the

29

address of the Property.    The Sheriff's Office has sought to mitigate this fact by drawing

attention to the reference in the fax cover sheet, as well as the Sheriff's Return of Service

generated by the Real Estate Unit, to a Book/Writ number.    Directed Verdict Motion, at 9.

Although it may be that reference to the Book/Writ number alone would not have provided

notice to the Sheriff's Office as to who the Debtor was or his relationship to the Property, that

argument is a red herring where the fax cover sheet and the bankruptcy notice each expressly

stated the Debtor's name and the Property address.    That information served as sufficient notice

both of the Debtor's Petition and, as importantly for purposes of the automatic stay, that the

Property was subject in some way to a pending bankruptcy case.

The evidence also established that the Sheriff's Office, through its Civil Enforcement

Unit, served the Notices to Vacate and the Eviction Notices on the Debtor after that date, and did

not cease its enforcement actions with respect to the CCP Court's writ of possession until June 7,

2018.    This is a violation of the plain language of §362(a)(2), which stays "the enforcement,

against the debtor or against property of the estate, of a judgment obtained before the

commencement of the case under this title."    11 U.S.C. §362(a)(2).    The stay is "applicable to

all entities."    *Id.*    The Court rejects the Sheriff's argument in the Directed Verdict Motion that

because there was no showing that the Sheriff's Office was acting as a creditor or the agent of a

creditor, it cannot have violated the stay.    If that were the case, it seems a sheriff's office would

virtually never be held liable for stay violations because it is rarely, if ever, the creditor.    The

Court concludes that where the Sheriff's Office took action violative of the stay, notwithstanding

that it is not a creditor or acting strictly as an agent of a creditor, it may be held liable for such.

*See, e.g., In re Wilson*, 19 B.R. 45 (Bankr. E.D. Pa. 1982) (finding sheriff to have violated the

30

automatic stay where it had notice of the bankruptcy petition but issued a sheriff's deed post-petition).

The Sheriff's Office argues in its Directed Verdict Motion that there was no evidence or testimony that Mr. Hassan, as the creditor, was given notice of the Petition or took any action to stop enforcement of the writ of possession, and that it is "generally accepted law that the burden is on the creditor to notify third-parties that the automatic stay is in place and efforts in furtherance of execution or enforcement must cease." Directed Verdict Motion, at 8-9. While that may be true in other contexts, it has no relevance here, where the Sheriff's Office admits that it received notice itself on the date the Petition was filed. The Sheriff's Office therefore cannot point the finger at the creditor after-the-fact to argue that it needed to have received notice from the creditor as well.

**b.      The Debtor Established That the Violation Was Willful**

As stated *supra,* willful violation of the stay occurs where the stay has been violated with knowledge that the bankruptcy petition has been filed. The evidence at Trial established that the Real Estate Unit of the Sheriff's Office had notice of the Debtor's Petition on May 8, 2018, but the Sheriff's Office continued its enforcement actions until June 7, 2018, when its Civil Enforcement Unit received notice. The Sheriff's Office therefore had knowledge of the Debtor's bankruptcy filing on May 8, 2018, and its service of the Notices to Vacate and Eviction Notices after that date constitute a willful violation of the automatic stay.

The Sheriff's Office seeks to skirt this by arguing that there was no evidence that the Civil Enforcement Unit, which was responsible for carrying out the writ enforcement actions, had notice of the Debtor's bankruptcy prior to June 7, 2018. The Court rejects this argument

31

and finds that notice of the Debtor's Petition received by the Real Estate Unit on May 8, 2018,

charged the Sheriff's Office as a whole with knowledge of Petition.    The Sheriff's Office's own

internal policy, admitted into evidence, does not differentiate between its various units when

directing that all enforcement action is to cease upon the Sheriff's Office receiving notice of a

bankruptcy filing.    To the extent the Sheriff's Office is comprised of different units with

varying responsibilities, and even disparate physical headquarters, it is incumbent upon the

Sheriff's Office to develop procedures and training to ensure that notice of a bankruptcy filing

received by one unit is timely and effectively disseminated to all other units to prevent violations

of the automatic stay.    *Cf., e.g., In re Smith Audio Visual, Inc.*, 2013 Bankr. LEXIS 1211, at

*14-15 (Bankr. D. Kan. Mar. 28, 2013) (finding the IRS could not argue that bankruptcy notice

sent to one division of its offices in Philadelphia was not proper where it could have been

forwarded to the appropriate division if its employees were properly trained); *Reyes v. Standard

Parking Corp.*, 461 B.R. 153, 160 (D.R.I. 2011) (noting that "[i]n the bankruptcy context, notice

to a company's branch or division generally satisfies the due process requirements for the entire

company."); *In re Drexel Burnham Lambert Grp., Inc.*, 129 B.R. 22, 24 (Bankr. S.D.N.Y. 1991)

(finding notice properly served on branch offices of a bank because the bank "bears

responsibility for having adequate systems in place to ensure that legal notices and other

communications reach the appropriate parts of its business empire").

<strong>c.    The Debtor Did Not Establish Injury or Damages Causally<br>Connected to the Stay Violation</strong>

Where a debtor proves a willful violation of the automatic stay by a preponderance of the

evidence, recovery pursuant to §362(k)(1) also requires proof by a preponderance of the

evidence of actual injury and damages.    Here, the Debtor did not meet that evidentiary burden.

32

At Trial, the Debtor relied on the testimony of Mr. Whyte to establish the Debtor's injury and damages resulting from the Sheriff's Office serving the Notices to Vacate and Eviction Notices.[24]   When asked about the effect the notices had on the Debtor, Mr. Whyte testified that "he's been kind of like distorted … But on top of that also, just been – you know, he's been off."[25]   Mr. Whyte testified that the Debtor had been smoking more cigarettes, not eating dinners that Mr. Whyte made for him, "missing sleep and things like that," and at times sitting alone in the living room without watching television.[26]   Mr. Whyte testified, however, that the Debtor continued to work at his part-time job.[27]   Mr. Whyte's testimony on the Debtor's purported damages was brief and very limited, and the Sheriff's Office argues that "the lack of context, detail or temporal perspective that can link any of Mr. Whyte's observations causally to the alleged stay violations renders the damages testimony unconvincing and unreliable."   The Court does not view Mr. Whyte's testimony as unreliable in a general sense, but agrees that it lacked the precision, clarity, and detail to meet the Debtor's burden of establishing a causal link between the Sheriff's Office's stay violation and the Debtor's relatively subtle behavioral changes.   Mr. Whyte's testimony did not establish that the somewhat ill-defined changes he observed in the Debtor were caused by the Sheriff's Office serving the Notice to Vacate and the Eviction Notice, and not by other factors such as the Debtor having to file for bankruptcy in the

---

[24] As noted *supra*, the Debtor is deaf and mute, and was unable to testify on his own behalf.   Mr. Whyte's testimony regarding the Debtor's injury and damages was limited to his own observations. N.T. 43:7 to 45:24. The Court is cognizant of the limitation that the Debtor's condition presented with respect to his ability to present evidence on damages and considered Mr. Whyte's testimony in light of that limitation, but remains unconvinced that such testimony was sufficient to meet the Debtor's evidentiary burden.

[25] N.T. at 95:16 to 95:25.

[26] N.T. at 95:25 to 98:6.

[27] N.T. at 59:6 to 59:17.

33

first place or the issuance of the writ of possession the day before the Debtor filed his Petition.
Where damages must be proven with reasonable certainty and must not be speculative or based
on conjecture, Mr. Whyte's testimony was insufficient for the Court to make factual findings,
supported by the evidence, that the Sheriff's Office's stay violation <u>caused</u> the Debtor's
behavioral changes on which the Debtor relies for his purported damages.

Having found that the Debtor failed to prove injury or damages causally linked to the
Sheriff's Office's stay violation, the remaining question is whether the Debtor can, nonetheless,
recover costs and attorneys' fees as authorized by §362(k).   The caselaw on this issue cuts both
ways.   *See generally, Grine*, <u>439 B.R. 461, 471-72</u> ("Some courts hold that attorneys' fee may
not be awarded absent other compensable damages incurred by the complainant.   Other courts
hold that attorneys' fees may be recoverable as damages under §362(k) even if debtors have not
proven other compensable harm.") (collecting cases and siding with courts finding that
attorneys' fees are still recoverable even absent other provable damages, based both on §362(k)'s
provision for damages "including" attorneys' fees and on the general remedial purpose of the
statute).   Indeed, courts within this circuit have come down on opposite sides of the issue.
*Compare, e.g., In re Oakey*, <u>2015 Bankr. LEXIS 3061</u> (Bankr. D.N.J. Sept. 9, 2015) (actual
damages in the form of attorneys' fees can be appropriate, despite the fact that there may not
have been other compensable harm to the debtor), *with New MMI Corp. v. Robec, Inc.*, <u>150 B.R.</u>
<u>573</u> (Bankr. M.D. Pa. 1992) (because the plaintiff failed to establish any actual damages from a
stay violation apart from legal fees and costs, no award for sanctions, including fees and costs,
was assessable).

The Court, however, adheres to the reasoning of *Walker*, in which the district court for

34

this district reversed a bankruptcy court decision awarding fees and costs to a debtor's attorneys

where they had not proven injury or damages to the debtor caused by a stay violation.   *Walker*,

2015 U.S. Dist. LEXIS 157629.   The district court first noted that "a plain reading of

[§362(k)(1)] reveals that the bankruptcy court failed to apply the proper legal standard when it

awarded [the debtor's attorneys] their fees and costs."   *Id. at* *6.   After setting forth the three

elements required for recovery under the statute, the district court reasoned that "Section

362(k)(1) makes clear that injury is a condition precedent to any request for actual damages: 'an

individual *injured* by any willful violation of a stay provided by this section shall recover actual

damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover

punitive damages.'"   *Id.* at *7-*8 (emphasis in original).   The district court distinguished the

decisions the bankruptcy court had cited in support of awarding fees, noting that they had "first

found that the debtor proved the willful violation of the stay caused the debtor an injury *before*

awarding attorneys' fees."   *Id.* at *8 (citing cases).   Because no such finding had been made by

the bankruptcy court, the district court reversed its decision to award fees and costs to the

debtor's counsel.   *Id.* at *12.   *See also, In re Whitt*, 79 B.R. 611, 616 (Bankr. E.D. Pa. 1987)

(costs and attorneys' fees under §362(h), which later became §362(k), are allowable only to

"embellish actual damages").

        This Court agrees with the district court's holding in *Walker*.   Section 362(k)(1)

conditions the recovery of actual damages, including attorneys' fees and costs, on an individual

being injured by a willful stay violation.   This prerequisite is not only statutorily mandated, but

further serves courts' reluctance to foster a "cottage industry built around satellite fee litigation

for willful stay violations" that cause no injury.   *Miller*, 447 B.R. at 435.   Where the individual

has not proved injury, they cannot recover damages, whether it be attorneys' fees and costs or other asserted damages.   Here, the Debtor failed to prove injury or actual damages causally linked to the Sheriff's Office's stay violation, and therefore the Court will not award a sanction of attorneys' fees and costs to the Debtor.

## V.    CONCLUSION

For the reasons discussed above, this Court will (i) grant the Summary Judgment Motion with respect to the Debtor's request for damages for emotional distress, and deny it on all other grounds asserted, (ii) grant the Directed Verdict Motion, and (iii) deny the Debtor's request for damages under §362(k).   An Order consistent with this Memorandum will be entered.

Dated:   November 8, 2021

_Magdeline D. Coleman_
_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Stephen M. Dunne, Esquire
Dunne Law Offices, P.C.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Predrag Filipovic, Esquire
I Fight for Justice
1735 Market Street, Suite 3750
Philadelphia, PA 19103

Megan Harper, Esquire
Joshua Domer, Esquire
City of Philadelphia
Law Department
1401 John F. Kennedy Boulevard, 5th Floor
Philadelphia, PA 19102

36