**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re:  LYNDEL TOPPIN, | : | Chapter 13 |
| *Debtor.* | : | |
| | : | Case No. 18-13098-MDC |

| | | |
|---|---|---|
| LYNDEL TOPPIN, | : | |
| *Movant* | : | |
| v. | : | Adv. Proc. No. 18-00137-MDC |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA and | : | |
| ABDELDAYEM HASSAN a/k/a | : | |
| ABDELDYEM HASSAN, | : | |
| *Respondents* | : | |
| | : | |

**DESIGNATION OF RECORD ON APPEAL AND**
**STATEMENT OF ISSUES TO BE PRESENTED PURSUANT TO FRBP 8009(a)**

    Pursuant to Federal Rule of Bankruptcy Procedure 8009(a),  Appellant, Lyndel Toppin hereby submits this designation of the record on appeal and statement of issues to be presented in connection with the appeal from the Order of the Bankruptcy Court granting Sheriff's Office Motion for Summary Judgment with respect to the Debtor's request for damages for emotional distress and granting Sheriff's Offices Motion for Directed Verdict (Adv. Docket No. 164), as follows:

**DESIGNATION OF RECORD ON APPEAL**

| **Description of Document** | **Filing Date** | **Document No.** |
|---|---|---|
| Voluntary Petition, Schedules and Statements | 5/8/18 | Bk # 1 |
| BNC Certificate of Mailing - Voluntary Petition | 5/12/18 | Bk # 6 |
| Complaint | 6/11/18 | Bk # 14 |
| Motion to Approve Debtors Motion for Appointment of Next Friend | 7/2/18 | Bk # 15 |
| Order entered Granting Motion to Approve Next Friend. Barrington Whyte shall serve as Next Friend to permit him to testify on behalf of debtor, Lyndel Toppin. | 7/10/18 | Bk # 22 |
| Order entered Granting Application to Employ PREDRAG FILIPOVIC, Esq. as Special Counsel. | 7/26/2019 | Bk # 88 |

| **Description of Document** | **Filing Date** | **Document No.** |
|---|---|---|
| Transcript regarding Hearing Held on 8/21/2020 EMERGENCY MOTION FOR EXPEDITED CONSIDERATION OF PLAINTIFFS MOTION TO DISMISS ALL CLAIMS FOR RELIEF AGAINSTDEFENDANT ABDELDAYEM HASSAN A/K/A ABDELDYEM HASSAN FILED BY LYNDEL TOPPIN REPRESENTED BY STEPHEN MATTHEW DUNNE. Transcribed by Writer's Cramp,Inc. 268 pages. The transcript may be viewed at the Bankruptcy Court Clerk's Office. | 9/24/2020 | BK # 125 |
| Complaint | 6/11/2018 | Adv Pro # 1 |
| Amended Complaint | 6/15/18 | Adv Pro # 3 |
| Answer | 7/19/18 | Adv Pro # 7 |
| Supplemental Authority | 9/26/2018 | Adv Pro # 22 |
| Second Amended Complaint | 10/24/18 | Adv Pro # 29 |
| Exhibit *A thru K* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin | 10/24/2018 | Adv Pro # 30 |
| Answer to Second Amended Complaint Filed by Jewell Williams. | 11/21/2018 | Adv Pro # 37 |
| Pre-Trial Order. Pre-Trial Conference scheduled 7/17/2019 at 11:00 AM at nix2 - Courtroom #2. | 1/3/2019 | Adv Pro # 42 |
| Pre-Trial Scheduling Order. Pre-Trial Hearing scheduled 9/18/2019 at 11:00 AM at nix2 - Courtroom #2 | 2/14/2019 | Adv Pro # 46 |
| Pre-Trial Scheduling Order. Pre-Trial Conference scheduled 3/25/2020 at 11:00 AM at nix2 - Courtroom #2 | 7/18/2019 | Adv Pro # 56 |
| Motion For Summary Judgment Filed by Sheriff, Jewell Williams | 12/26/19 | Adv Pro # 71 |
| Memorandum in Support of Motion For Summary Judgment Filed by Sheriff, Jewell Williams | 12/26/19 | Adv Pro # 72 |
| Document in re: *Pretrial Disclosures* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin | 1/17/2020 | Adv Pro # 88 |
| Response to Motion for Summary Judgment filed by Defendant Jewell Williams Filed by Lyndel Toppin | 2/5/2020 | Adv Pro # 105 |
| Brief *Reply Brief in Support of Summary Judgment* Filed by MEGAN N. HARPER on behalf of Jewell Williams | 2/14/2020 | Adv Pro # 112 |

| Description of Document | Filing Date | Document No. |
|---|---|---|
| Affidavit Re: Sheriffs Efforts to Produce Employee Responsive to the Courts Order Filed by JOSHUA DOMER on behalf of Jewell Williams | 3/12/2020 | Adv Pro # 122 |
| Supplemental Memorandum in Support of *Motion for Summary Judgment* Filed by MEGAN N. HARPER on behalf of Jewell Williams | 4/6/2020 | Adv Pro # 126 |
| Supplemental Memorandum in Opposition to *Motion for Summary Judgment* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin | 4/6/2020 | Adv Pro # 127 |
| Order Governing Procedures At Trial Conducted Remotely By Videoconference on July 17,2020 2 10:30 A.M. | 6/30/2018 | Adv Pro # 128 |
| Trial (related document(s)[1])re-scheduled for 8/21/2020 at 10:30 AM at nix2 - Courtroom #2. | 7/14/2020 | Adv Pro # 137 |
| Order Governing Procedures at Trial Conducted Remotely by Video Conference . | 7/29/2020 | Adv Pro # 140 |
| Document in re: *Remote Hearing Witness and Exhibit List* Filed by MEGAN N. HARPER on behalf of Jewell Williams | 8/17/2020 | Adv Pro # 147 |
| Document in re: *Plaintiff's Remote Witness List* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin | 8/17/2020 | Adv Pro # 148 |
| Evidentiary Trial Held and Concluded | 8/24/2020 | Adv Pro # 153 |
| Transcript regarding Hearing Held on 8/21/2020 EMERGENCY MOTION FOR EXPEDITED CONSIDERATION OF PLAINTIFFS MOTION TO DISMISS ALL CLAIMS FOR RELIEF AGAINSTDEFENDANT ABDELDAYEM HASSAN A/K/A ABDELDYEM HASSAN FILED BY LYNDEL TOPPIN REPRESENTED BY STEPHEN MATTHEW DUNNE. Transcribed by Writer's cramp, Inc 268 pages. The transcript may be viewed at the Bankruptcy Court Clerk's Office. | 9/24/2020 | Adv Pro # 155 |
| Motion *for Directed Verdict* Filed by Sheriff of the City of Philadelphia Represented by MEGAN N. HARPER | 10/8/2020 | Adv Pro # 157 |
| Memorandum in Support of *Motion for Directed Verdict* Filed by MEGAN N. HARPER on behalf of Sheriff of the City of Philadelphia | 10/8/2020 | Adv Pro # 158 |

| **Description of Document** | **Filing Date** | **Document No.** |
| --- | --- | --- |
| Memorandum in Support of *Motion for Directed Verdict* Filed by MEGAN N. HARPER on behalf of Sheriff of the City of Philadelphia | 10/8/2020 | Adv Pro # 158 |
| Response to Generic Motion filed by Defendant Sheriff of the City of Philadelphia Filed by Lyndel Toppin | 10/29/2020 | Adv Pro # 161 |
| Supplemental Statement *Notice of Supplemental Authority* Filed by STEPHEN MATTHEW DUNNE on behalf of Lyndel Toppin | 11/6/2020 | Adv Pro # 162 |
| Hearing Held on Motion for Directed Verdict Filed by Sheriff of the City of Philadelphia Represented by MEGAN N. HARPER - HELD UNDER ADVISEMENT | 11/10/2020 | Adv Pro # 163 |
| Order entered Granting in part, Denying in part Summary Judgment Motion (Related Doc # [157]) . It is GRANTED with respect to the Debtor's request for damages for emotional distress and DENIED on all other grounds asserted. 3. The Directed Verdict Motion is GRANTED. 3. The Debtor's requested relief for sanctions against the Sheriff's Office pursuant to Section 362 (k) of the Bankruptcy Code is DENIED. | 11/9/2021 | Adv Pro # 164 |
| Memorandum Order. An Order consistent with this Memorandum will be entered. | 11/9/2021 | Adv Pro # 165 |
| Deposition of Barrington Whyte | 12/12/2019 | See Attached. |
| Sheriff's Responses to Requests for Admission | | See Attached. |
| Revised Trial Stipulations | | See Attached. |
| Plaintiff's Remote Witness List | | See Attached. |
| Plaintiff's Exhibit List: P1 to P60 | | See Attached. |
| Plaintiff's Bates Stamped Trial Exhibit Binder with Exhibits labeled P1 through P60 | | See Attached. |
| Defendant's Exhibits: D1 to D30 | | See Attached. |

## **STATEMENT OF ISSUES PRESENTED**

1. Whether the bankruptcy court erred in finding that evidence at trial failed to establish any actual damages suffered by Plaintiff as a result of Defendants' violation of the automatic stay provided by 11 U.S.C. § 362(a)?

2.  Whether the bankruptcy court erred in holding that a deaf and mute Plaintiff failed to prove emotional distress damages he suffered as a result of Defendants' violations of the automatic stay provided by 11 U.S.C. § 362(a) when Plaintiff is unable to testify on his own behalf due to his disability, and evidence by caretaker/nephew testifying at length to personal observations of Plaintiff indicated that a reasonable person would suffer significant emotional harm?

3.  Whether the bankruptcy court erred in finding that the evidence of actual damage Plaintiff suffered as a result of Defendant's conduct, produced by Plaintiff in opposition to Defendant's Motion for Summary Judgment, failed to raise a genuine triable issue of fact pursuant to 11 U.S.C. § 362(k)(1)?

4. Whether the bankruptcy court was estopped from finding that there is no triable issue of fact on the issue of actual damages, and granting partial summary judgment in favor of Defendant on that issue, by virtue of its decision to conduct a trial on all issues?

5. Whether the bankruptcy court erred in failing to design court procedures in a manner that excluded Plaintiff, Lyndel Toppin from court's view when he was present during the entire testimony of his next of friend, Barryington Whyte, thereby depriving Plaintiff, Lyndel Toppin from emoting a non-verbal response that impacts Plaintiff's credibility as a witness?


Dated:  December 2, 2021

By: /s/ *Predrag Filipovic*　　　　　BY: /s/ *Stephen M. Dunne*
**Predrag Filipovic, Esquire**　　　**Stephen M. Dunne, Esquire**
1635 Market Street, Suite 1600　　　1515 Market Street, Suite 1200
Philadelphia, PA 19103　　　　　　Philadelphia, PA 19102
267-265-0520 Phone　　　　　　　(215) 551-7109 Phone
Attorney for Plaintiff　　　　　　　Attorney for Plaintiff

Barrington Whyte
December 12, 2019

```
        IN THE UNITED STATES BANKRUPTCY COURT
     FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                      -  -  -
In re:
        LYNDEL TOPPIN     : Chapter 13,
        Debtor           : Bankruptcy No.
------------------------  18-13098
LYNDEL TOPPIN            :
        Plaintiff        :
                         :
              vs.        :
                         :
JEWELL WILLIAMS          : Adv. Proc. No.
SHERIFF OF THE CITY OF   : 18000137
PHILADELPHIA and         :
ABDELDAYEM HASSAN        :
a/k/a ABDELDYEM HASSAN   :
        Defendants       :
                      -  -  -
```

Thursday, December 12, 2019

-  -  -

Oral Deposition of BARRINGTON WHYTE,

taken pursuant to notice, held at Municipal

Services Building, 1401 John F. Kennedy

Boulevard, Room 580, Philadelphia,

Pennsylvania 19102, commencing at

9:45 a.m. before Michelle A. Landman,

Professional Reporter and Notary Public; in

and for the Commonwealth of Pennsylvania.

STREHLOW & ASSOCIATES, INC.
54 FRIENDS LANE, SUITE 116
NEWTOWN, PENNSYLVANIA  18940
(215) 504-4622
SERVING NJ, PA, NY & DE

Barrington Whyte
December 12, 2019

Page 2

1    A P P E A R A N C E S:

2

3    THE LAW OFFICES OF PREDRAG FILIPOVIC

4    By:      PREDRAG FILIPOVIC, ESQUIRE
              1735 Market Street, Suite 3750
5             Philadelphia, Pennsylvania 19103
              267-507-6084
6             PFEsq@ifight4justice.com

7             Representing the Plaintiff

8

9    THE LAW OFFICES OF STEPHEN M. DUNNE

10   By:      STEPHEN M. DUNNE, ESQUIRE
              1515 Market Street, Suite 1200
11            Philadelphia, Pennsylvania  19102
              215-551-7109
12            Stephen@dunnelawoffices.com

13            Representing the Plaintiff

14

15   THE CITY OF PHILADELPHIA - LAW DEPARTMENT

16   By:      MEGAN N. HARPER, ESQUIRE
              JOSHUA DOMER, ESQUIRE
17            Municipal Services Building
              1401 John F. Kennedy Boulevard
18            Room 580
              Philadelphia, Pennsylvania 19102
19            215-685-0503
              MEGAN.HARPER@PHILA.GOV
20            JOSHUA.DOMER@PHILA.GOV

21            Representing the Defendants

22

23

24

STREHLOW & ASSOCIATES, INC.
(215) 504-4622

Barrington Whyte
December 12, 2019

Page 3

```
 1                    -  -  -

 2                I N D E X

 3                    -  -  -

 4   WITNESS                           PAGE

 5   BARRINGTON WHYTE

 6   (Witness sworn.)

 7   EXAMINATION BY:

 8   Ms. Harper. . . . . . . . . . . . . 04, 68

 9   Mr. Filipovic . . . . . . . . . . . 66

10

11                    -  -  -

12                E X H I B I T S

13                    -  -  -

14   NUMBER              DESCRIPTION          PAGE

15   D-1    First set of Interrogatories      10

16   D-2    Second Amended Complaint          30

17   *Exhibits were retained by counsel.

18

19

20

21

22

23

24
```

STREHLOW & ASSOCIATES, INC.
(215) 504-4622

Barrington Whyte
December 12, 2019

Page 4

```
 1                  -  -  -
 2              BARRINGTON WHYTE, after having
 3         been first duly sworn, was examined
 4         and testified as follows:
 5                  -  -  -
 6              MS. HARPER:  Usual
 7         stipulations?
 8              MR. FILIPOVIC:  That's fine.
 9                  -  -  -
10              (It is hereby stipulated and
11         agreed by and between counsel for
12         the respective parties that
13         reading, signing, sealing,
14         certification and filing are waived
15         and that all objections, except as
16         to the form of the question, be
17         reserved until the time of trial.)
18                  -  -  -
19                 EXAMINATION
20                  -  -  -
21    BY MS. HARPER:
22    Q.    Mr. Whyte, my name is Megan Harper,
23    I'm an attorney with the City of
24    Philadelphia.  How are you doing?
```

STREHLOW & ASSOCIATES, INC.
(215) 504-4622

Barrington Whyte
December 12, 2019

Page 5

1   A.      Good.  How are you doing?

2   Q.      Good, thanks.

3           I'm going to start by giving you a few

4   instructions with regard to the conduct of

5   the deposition today.

6           First, as you know, we have a court

7   reporter recording our words.  So I ask that

8   you keep all your responses to my questions

9   verbal.  Nods of the head won't be -- she

10  won't be able to record those.

11  A.      Okay.

12  Q.      Also, please wait until I finish my

13  question before you start responding.  If we

14  start talking over each other, which is

15  natural in conversation, that causes some

16  confusion on the record as well.

17          I think everybody has an interest in

18  getting the most clear record possible.  So

19  in that regard, if I ask a question that you

20  don't understand, please let me know.  It's

21  important that, you know, we get an accurate

22  as possible record of what we're trying --

23  the facts we're trying to speak about here.

24          In general, I don't want you to guess

Barrington Whyte
December 12, 2019

Page 6

1    at a response to one of my questions.  If you

2    don't know the answer, let me know.  I may

3    try and re-form my question or narrow down

4    the scope of the question, so we can try and

5    get at least some sort of response

6    substantive to the question.  But other than

7    that, try not to guess.

8    A.      Okay.

9    Q.      I do have to ask one question, your

10   counsel may have prepped you on this.  Did

11   you ingest any drugs or alcohol that may

12   impair your ability to give clear testimony

13   today?

14   A.      No.

15   Q.      Okay.  Can you state your full name

16   for the record?

17   A.      Yes, Barrington Whyte.

18   Q.      What is your current address?

19   A.      1425 South 62nd Street, Philadelphia,

20   Pennsylvania 19139.

21   Q.      1425 South 62nd Street, is that --

22   A.      I mean 146, I'm sorry about that.

23   Q.      Have you resided at 1425 South 62nd

24   Street in the near past?

Barrington Whyte
December 12, 2019

1   A.      Yes.

2   Q.      Okay.  When did you last reside at

3   that address?

4   A.      I still reside there.

5   Q.      Okay.  So you do not reside at 146

6   South 62nd Street, correct?

7   A.      Yes, I do.

8   Q.      Do you reside in both locations?

9   A.      No, 146 South 62nd Street.

10  Q.      Yeah.

11  A.      That's the current address.

12  Q.      How about 1425 South 62nd Street, have

13  you lived there in the past?

14  A.      No.

15  Q.      Does that address have any

16  significance to you?  I'm just curious as to

17  why you mentioned 1425 South 62nd Street as

18  your address.

19  A.      I probably wasn't thinking.  I

20  apologize for that.

21  Q.      Do you know who lives at 1425 South

22  62nd Street?

23  A.      No.

24  Q.      Can you just give me your date of

Barrington Whyte
December 12, 2019

1  birth?

2  A.      February 25, 1983.

3  Q.      And when I refer to the property, just

4  so we're clear from this point forward,

5  unless I say otherwise, when I say the

6  property, I'm referring to 146 South 62nd

7  Street; do you understand that?

8  A.      Yes.

9  Q.      Okay.  Who lives with you at 146 South

10 62nd Street?

11 A.      Lyndel Toppin.

12 Q.      Anybody else?

13 A.      No.

14 Q.      How long have you lived at the

15 property?

16 A.      About, I would say about ten years or

17 so.

18 Q.      Do you know how long Mr. Toppin has

19 lived at the property?

20 A.      About probably 15.

21 Q.      Okay.  Mr. Toppin isn't here with you

22 today, is he?

23 A.      No.

24 Q.      Did you have any involvement in the

Barrington Whyte
December 12, 2019

Page 9

1   decision not to bring him here today?

2   A.      No.

3   Q.      Mr. Toppin is the plaintiff with

4   respect to the lawsuit that we're here taking

5   your deposition for; is that correct?

6   A.      Yes.

7   Q.      Okay.  Can you tell me where you lived

8   before living at the property, say -- give me

9   a -- you mention you lived at the property

10  for the past ten years.

11  A.      Um-hum.

12  Q.      In the ten years prior to that, can

13  you give me some addresses as to where you

14  were residing?

15  A.      I was actually staying with my mother

16  at that time before that.

17  Q.      Okay.  Where is her home?

18  A.      6045 Christian Street.

19  Q.      How about Mr. Toppin, do you know

20  where he lived prior to residing at the

21  property?

22  A.      No, I'm not sure.

23              MS. HARPER:  Could we go off

24          the record for a second.

Barrington Whyte
December 12, 2019

Page 10

```
 1                 -  -  -
 2            (Whereupon, a discussion was
 3       held off the record.)
 4                 -  -  -
 5            (Whereupon the Plaintiff's
 6       Responses to Defendant, The Sheriff
 7       of the City of Philadelphia's First
 8       Set of Interrogatories was marked,
 9       for identification purposes, as
10       Exhibit D-1.)
11                 -  -  -
12  BY MS. HARPER:
13  Q.    I'm going to hand to your counsel
14  copies of what we've marked as Exhibit D-1
15  here.
16            MS. HARPER:  Counsel, could
17       you hand -- when you're ready.
18            MR. FILIPOVIC:  Sure.
19  BY MS. HARPER:
20  Q.    Mr. Whyte, if you could take a look at
21  what has been marked as Exhibit D-1 and let
22  me know when you have had an opportunity
23  review it.  Take your time.  I'm not in a
24  rush.
```

Barrington Whyte
December 12, 2019

Page 11

1          Mr. Whyte, have you had an opportunity

2     to review the document that has been marked

3     D-1?

4     A.     Yes.

5     Q.     I'm going to refer you to the first

6     page underneath what appears as the case

7     caption, it says, Plaintiff's Responses to

8     Defendant, Sheriff of the City of

9     Philadelphia's First Set of Interrogatories,

10    do you see that?

11    A.     Yes.

12    Q.     Have you seen this document before?

13    A.     Yes.

14    Q.     I don't want to know about

15    conversations that you've had with your

16    attorneys, so just be wary that when I ask

17    you, did you assist in providing the

18    information that appears in the answers that

19    are in this document?

20          MR. FILIPOVIC:  Counsel,

21          that's a little bit of -- or is it

22          a work -- attorney work product

23          privilege.

24          MS. HARPER:  No, the

Barrington Whyte
December 12, 2019

Page 12

1          information that was actually

2          requested in the interrogatories,

3          so it's an answer.  I think it's

4          fair to ask here again.

5               MR. FILIPOVIC:  Well, it was

6          objected to as well.

7               MS. HARPER:  But it wasn't

8          objected to --

9               MR. FILIPOVIC:  It was

10         generally objected to.

11              MS. HARPER:  Okay.  Are you

12         going to allow him to answer?

13              MR. FILIPOVIC:  Sure.  But

14         under the objection.

15              So go ahead and repeat the

16         question.

17    BY MS. HARPER:

18    Q.    Do you need me to restate the

19    question?

20    A.    Yes please.

21    Q.    Mr. Whyte, did you assist in providing

22    the responses to these interrogatories?

23    A.    Yes.

24    Q.    Okay.  Can you please refer, on the

Barrington Whyte
December 12, 2019

Page 13

1    third page, the response to interrogatory No.

2    2.  Do you see where it says -- well, the

3    question states, "State all addresses where

4    you lived for the last five years, up to your

5    present address as stated above in your

6    answer to interrogatory No. 1, with

7    approximate dates of when you resided at

8    those addresses and who resided there with

9    you, if anyone."  Do you see that

10   interrogatory No. 2?

11   A.      Yes.

12   Q.      The response to interrogatory No. 2

13   says, "I have resided at 146 South 62nd

14   Street, Philadelphia, PA 19139 for the last

15   30 years."  Did you provide that information?

16   A.      Yes.

17   Q.      Okay.  And today, is it your

18   understanding that when it says "I," this is

19   referring to the plaintiff, Lyndel Toppin?

20   A.      No, I wasn't sure of that.

21   Q.      Well, were you speaking -- when you

22   provided that information that someone had

23   lived there for the last 30 years, were you

24   speaking of yourself or Mr. Toppin?

Barrington Whyte
December 12, 2019

Page 14

1   A.      Of myself.

2   Q.      Okay.  But you're not the plaintiff in

3   this case, correct?

4              MR. FILIPOVIC:  That's been

5         asked and answered.  You don't have

6         to answer it again.

7   BY MS. HARPER:

8   Q.      Okay.  And you, yourself, have only

9   lived at that address for the last ten years,

10  correct?

11  A.      On and off, yes.

12  Q.      And Mr. Toppin, you estimate, has

13  lived there for the last 15 years, correct?

14  A.      In and out of there, yes.

15  Q.      So what is the correct answer to that

16  question that's posed at interrogatory No. 2,

17  which is, "State all addresses where you

18  lived for the last five years, up to the

19  present address."  Here it states, he's lived

20  at the property for 30 years.  Is that

21  accurate?

22  A.      Well, that was actually stating that

23  me and myself was there on and off for 30

24  years.

Barrington Whyte
December 12, 2019

Page 15

1    Q.     Okay.  Can you tell me what your job

2    is currently?

3    A.     Actually, I work now at a warehouse.

4    Q.     How long have you worked at the

5    warehouse?

6    A.     For about a month now.

7    Q.     Where did you work prior to that?

8    A.     I was cooking.

9    Q.     For whom?

10   A.     Catering company by the name Just

11   Serve.

12   Q.     How long did you work for Just Serve?

13   A.     I was there for, I would say about six

14   years.

15   Q.     Okay.  So between October of 2017 and

16   July of 2018, is it fair to say that you were

17   working for the catering company?

18   A.     From July to October.

19   Q.     From October 2017 to July 2018?

20   A.     Yes.

21   Q.     Did you have any other jobs during

22   that time period?

23   A.     Well, I had little like odd carpentry

24   jobs in between.

Barrington Whyte
December 12, 2019

Page 16

1    Q.     Was that just on an as-needed basis,

2    you weren't scheduled to work?

3    A.     No, I wasn't scheduled, just when

4    needed.

5    Q.     Was it one particular contractor you

6    worked for?

7    A.     No, just for myself, doing that for

8    family members of that nature.

9    Q.     How about Mr. Toppin, I think I have a

10   sense of where he's working and how long he's

11   worked there.  Can you tell me what you know

12   about his employment?

13   A.     From what I know, he's a dishwasher at

14   his job, it's a restaurant.

15   Q.     Do you know what restaurant is it?

16   A.     I believe the name is Au Bon Pain.

17   Q.     Do you know where that restaurant is

18   located?

19   A.     I don't know exactly where it's

20   located, no.

21   Q.     How long, is it your understanding,

22   that he's worked there?

23   A.     How long has he worked there?

24   Q.     Yes.

Barrington Whyte
December 12, 2019

Page 17

```
 1   A.      I would say about over 20 years or so.

 2   Q.      Can you tell me, speaking about

 3   yourself personally, between October of 2017

 4   and July of 2018, can you tell me what your

 5   job schedule was like with the catering

 6   company?

 7   A.      It was every day from morning to

 8   night.

 9   Q.      Seven days a week?

10   A.      Yes.

11   Q.      Do you know anything about

12   Mr. Toppin's work schedule during that time

13   frame?

14   A.      Not really, because I usually work at

15   that time.

16   Q.      Do you know if he has a regularly

17   scheduled work schedule essentially?

18   A.      Monday through Friday, I believe.

19   Q.      Do you know the hours?

20   A.      That I'm not sure of.

21   Q.      Do you know how old Mr. Toppin is?

22   A.      Not really, I'm not guaranteed.  I'm

23   not sure.

24   Q.      Would you say he's in his 30's?
```

Barrington Whyte
December 12, 2019

Page 18

1    A.    No, he's older than that.

2    Q.    In his 60's?

3    A.    I could say about that, yeah.

4    Q.    Who is his mother?

5    A.    Eleanor Zalkin.

6    Q.    Who is his father?

7    A.    That I don't know.

8    Q.    What is your relationship to

9    Mr. Toppin?

10   A.    That's my uncle.

11   Q.    So is one of your parents the brother

12   or sister of Eleanor Zalkin?

13   A.    No.

14   Q.    Explain your relationship, if you

15   could, familiar relationship to Lyndel

16   Toppin.  He's your uncle by what?

17   A.    Through my grandmother.

18   Q.    Okay.  Who is your grandmother?

19   A.    Eleanor Zalkin.

20   Q.    You're saying he's the brother of

21   Eleanor Zalkin?

22   A.    That's her son.

23   Q.    It's her son?

24   A.    Yes.

Barrington Whyte
December 12, 2019

Page 19

1   Q.     Did Eleanor Zalkin have any other

2   children?

3   A.     Not that I know of.

4   Q.     Are you related by blood to

5   Mr. Toppin?

6   A.     Yes.

7   Q.     Can you explain to me how?

8   A.     I mean, from what my grandmother be

9   telling me, it's just him, her and I'm her

10  grandson.  She never really got into the

11  whole schick of everything.

12  Q.     When did you first remember meeting

13  Mr. Toppin?  Do you have a recollection of

14  that?

15  A.     When I was young.  When I was about --

16  I mean, he's been around me most of my life,

17  so I can say as far as me understanding,

18  probably about ten or eight, something like

19  that.

20  Q.     And your grandmother is Eleanor

21  Zalkin, she's deceased, correct?

22  A.     Yes.

23  Q.     Who are your parents?

24  A.     My mother is Lillian.

Barrington Whyte
December 12, 2019

Page 20

1    Q.    What's her last name?

2    A.    Brooks, B-R-O-O-K-S.

3    Q.    And your father?

4    A.    I don't know.

5    Q.    Okay.  It's my understanding that

6    Mr. Toppin has some sort of limitations in

7    his ability to communicate; is that correct?

8    A.    Yes.

9    Q.    Okay.  Can you describe for me what

10   you observe those limitations to be?

11   A.    He can't hear or talk.

12   Q.    Has it been that way since you've

13   known him?

14   A.    Yes.

15   Q.    Do you know if he ever went to school

16   at any point, like elementary or

17   kindergarten, anything?

18   A.    I'm not sure of that.

19   Q.    You don't know?

20   A.    No.

21   Q.    Do you know if he ever had a legal

22   guardian appointed for him?

23   A.    I believe that's his mother.

24   Q.    He's got a cell phone, correct?

Barrington Whyte
December 12, 2019

Page 21

1    A.      Yes.

2    Q.      What does he use the cell phone for?

3    A.      That I'm -- mostly I see him using it

4    checking the time, is mostly what he uses it

5    for.

6    Q.      Is it any sort of special kind of

7    phone?

8    A.      No.

9    Q.      Just a regular cell phone?

10   A.      Just a regular flip phone.

11   Q.      Okay.  Do you know if he uses it to

12   text folks?

13   A.      No, he can't text.

14   Q.      Can you tell me what he is able to do

15   in terms of speaking?  What can he do?

16   A.      Speaking?

17   Q.      Um-hum.

18   A.      Well, he can't speak at all.

19   Q.      No words?

20   A.      No.

21   Q.      How about in terms of hearing, to your

22   knowledge does he hear anything?

23   A.      He can't hear anything, no.

24   Q.      How about with respect to writing, can

Barrington Whyte
December 12, 2019

Page 22

1    he write anything?

2    A.      His name.

3    Q.      Anything else?

4    A.      That's it.

5    Q.      How about with respect to -- how do

6    you communicate with him?

7    A.      Just basic commands.

8    Q.      Are they sign?

9    A.      Just as, for example, bathroom, you

10   know how us men go to the bathroom, he gives

11   me that indication for bathroom.

12   Q.      So it's sort of your own method of

13   communicating, it's not an official sign

14   language?

15   A.      No, it's not official sign language.

16   Q.      Do you know if he understands sign

17   language?

18   A.      He doesn't.

19   Q.      Do you know if he can read?

20   A.      He can't read.

21   Q.      Is he able to understand what this

22   case is about?

23   A.      No.

24               MR. FILIPOVIC:  Object to that

Barrington Whyte
December 12, 2019

Page 23

1    as being in the province of an

2    expert, a medical expert.

3         MS. HARPER:  Is there an

4    expert?

5         MR. FILIPOVIC:  No, but the

6    question is within province of an

7    expert as far as -- what the

8    question goes, as far as his

9    communications with Mr. Whyte and

10   their general ideas.  But if you

11   are going to ask him about what his

12   -- what Toppin understanding goes

13   beyond communication with Barry and

14   every day activities.

15        MS. HARPER:  So you're

16   inducting him not to answer

17   questions about his understanding

18   of this case?

19        MR. FILIPOVIC:  No, I'll let

20   him answer.  The objection that's

21   on the record is that I believe

22   that that question is for an

23   expert.

24        MS. HARPER:  Okay.  All right.

Barrington Whyte
December 12, 2019

Page 24

1    BY MS. HARPER:

2    Q.     Well, let me ask you this --

3               MR. FILIPOVIC:  But he's

4         already answered.

5               MS. HARPER:  No, I'm asking a

6         different question.  That's fine.

7    BY MS. HARPER:

8    Q.     Have you tried to convey to Mr. Toppin

9    what this case is about?

10   A.     In bits and pieces, yes.

11   Q.     Do you think he understands what

12   you're trying to convey?

13   A.     No.

14   Q.     What is your understanding of what the

15   lawsuit is about?

16   A.     Basically it's from the sheriff and

17   all these statements that have been put on to

18   the home that we've been at.

19   Q.     Has Mr. Toppin ever lived alone?

20   A.     No.

21   Q.     Has Mr. Toppin ever lived at 5813

22   Lansdowne Avenue?

23   A.     Yes.

24   Q.     And when did he live there last?

Barrington Whyte
December 12, 2019

Page 25

1    A.      I want to say about five, six years

2    ago maybe.

3    Q.      How about 164 Sherbrook Boulevard in

4    Upper Darby, has he lived there?

5    A.      That I don't know of.

6    Q.      Does 6936 Ruskin Lane in Upper Darby

7    ring a bell?

8    A.      No.

9    Q.      Who is Alvita Hughes?

10   A.      That's my cousin.

11   Q.      Is she related to Lyndel Toppin by

12   blood?

13   A.      No.

14   Q.      Has she ever lived with Lyndel Toppin?

15   A.      No.

16   Q.      Have you ever lived in the same home

17   as Alvita Hughes?

18   A.      Yes.

19   Q.      When was that?

20   A.      This was about two years ago.

21   Q.      And what address was that?

22   A.      I can't really remember off top.

23   Q.      It was about two years ago, you don't

24   remember, was it in Philadelphia?

Barrington Whyte
December 12, 2019

Page 26

1    A.      Yes, it was in Philadelphia.

2    Q.      What section?

3    A.      It was in South Philadelphia.

4    Q.      You don't remember the name of the

5    street?

6    A.      I know the building, it's the -- there

7    is a nursing home that's down there in South

8    Philly.

9    Q.      It's near a nursing home or in the

10   nursing home?

11   A.      It's actually the nursing home is in

12   the building.  She was taking care of her

13   mother there.  We were both helping take care

14   of her mother while we were there.

15   Q.      Okay.  Do you know if Mr. Toppin has

16   like a primary care physician, someone who

17   oversees his medical care?

18   A.      I'm not sure of that.

19   Q.      Can you tell me on a day-to-day basis

20   how you -- how, if at all, you assist

21   Mr. Toppin with his sort of daily activities

22   of living?

23   A.      Well, myself personally, I try, you

24   know, when I get off of work, I try to like

Barrington Whyte
December 12, 2019

Page 27

1  make him meals and things like that.  You

2  know, just set up like an eating plan for

3  him.

4  Q.     Is he able to get to and from work on

5  his own?

6  A.     Yes.

7  Q.     How does he do that?

8  A.     He catches the el train.

9  Q.     Do you have his cell phone number in

10 your cell phone?

11 A.     No.

12 Q.     Do you ever use his cell phone to

13 communicate with him in any way?

14 A.     No.

15 Q.     Other than preparing meals for him, or

16 having a meal plan, eating plan for him, is

17 there anything else you do to assist with his

18 daily activities of living?

19 A.     No.  Basically I wash his clothes from

20 time to time.

21 Q.     Okay.

22 A.     And I maybe -- well, he has like this

23 kind of pain, his legs swell, so I massage

24 his leg every once in a while.

Barrington Whyte
December 12, 2019

Page 28

1   Q.      Do you know anything about the history

2   of his communication limitations?  Like do

3   you know if anything happened to him to cause

4   those?

5   A.      I'm not sure, no.

6   Q.      Okay.  Can you describe the front of

7   the property at 146 South 62nd Street.  If

8   I'm looking at it from the sidewalk -- is

9   there a sidewalk in front of it?

10  A.      Yes.

11  Q.      Describe what the front of the

12  property looks like to me.

13  A.      Looking at it from the front, you have

14  the first three steps you walk up.  And then

15  it's about another six, seven steps and then

16  it's the screen door and the regular door.

17  And to the right it has a big window.

18  Q.      Okay.  Where is your room -- do you

19  have a bedroom in that house?

20  A.      Yes.

21  Q.      Where is that?

22  A.      The front bedroom.

23  Q.      So does it face the street?

24  A.      Yes.

Barrington Whyte
December 12, 2019

1    Q.      And is there a window in your room

2    that faces the street?

3    A.      Yes.

4    Q.      Does the house currently have water

5    service?

6    A.      Yes.

7    Q.      Has it been without water service for

8    any period of time in the recent past?

9    A.      At one point I had a water pipe broke.

10   About two winters ago a pipe busted, I had

11   the water department come fix it for me.

12   Q.      Since that period two years ago, water

13   has been supplied to the property?

14   A.      Yes.

15   Q.      How about other utilities, electric?

16   A.      Yes.

17   Q.      Gas?

18   A.      Yes.

19   Q.      And was that true in October of 2017

20   through July of 2018 for all of those

21   utilities?

22   A.      I'm sorry?

23   Q.      Did the house have water --

24   A.      Yes.

Barrington Whyte
December 12, 2019

Page 30

1    Q.      -- from October 2017 to July 2018?

2    A.      Yes.

3    Q.      Did it have gas from October 2017 to

4    July 2018?

5    A.      Yes.

6    Q.      Did it have electric from October 2017

7    to July 2018?

8    A.      Yes.

9                MS. HARPER:  Mark that as D-2

10           please.

11                    -   -   -

12                (Whereupon the United States

13           Bankruptcy Court Complaint was

14           marked, for identification

15           purposes, as Exhibit D-2.)

16                    -   -   -

17   BY MS. HARPER:

18   Q.      I'm passing what has been marked as

19   D-2 along with copies of that document to

20   your counsel.

21           Once you have the document before you,

22   please take your time and take a look at it.

23                MS. HARPER:  And I will say,

24           counsel, I didn't include the

Barrington Whyte
December 12, 2019

Page 31

1          Exhibits to this just for volume

2          sake.

3                MR. DUNNE:  That's all right.

4                MR. FILIPOVIC:  Whatever fits

5          your purpose.

6     BY MS. HARPER:

7     Q.     Mr. Whyte, have you had an opportunity

8     to review what was marked as Exhibit D-2?

9     A.     Yes.

10    Q.     And can you tell me what your

11    understanding is to what this document is?

12    A.     The bankruptcy case and the claim

13    against the Sheriff's Office.

14    Q.     Have you seen this document before?

15    A.     Yes.

16    Q.     Did you assist in providing

17    information that appears in this document?

18    A.     Yes.

19    Q.     I'd like you to turn to page 2 of 14,

20    you'll see that at the top.  Are you on page

21    2 of 14?

22    A.     Yes.

23    Q.     There is a paragraph at the very top

24    of the document, I'm going to read the last

Barrington Whyte
December 12, 2019

Page 32

1    sentence of that paragraph for you.  It says,

2    "Yet, more than six weeks after it was placed

3    on notice and knowledge of, Mr. Toppin's

4    bankruptcy, defendants continue to employ

5    process by sending armed Philadelphia

6    Sheriffs to the debtor's personal residence

7    on six separate occasions in direct

8    contravention of 11 U.S.C., Section 362" --

9    that squiggly line stands for section -- "a,

10   (the automatic stay) and with express orders

11   of this court."

12          Do you see that sentence?

13   A.    Yes.

14   Q.    I'm going to refer you to the part

15   that says, "Sending armed Philadelphia

16   Sheriffs to the debtor's personal residence

17   on six separate occasions."  Do you

18   understand who the debtor is?

19   A.    I believe Lyndel.

20   Q.    Okay.  And do you understand what it

21   means when it says residence?

22   A.    The home.

23   Q.    And that's the property we have been

24   talking about?

Barrington Whyte
December 12, 2019

Page 33

1    A.      Yes.

2    Q.      And that information, six separate

3    occasions, where did that information come

4    from?

5    A.      The notices that were put on the door.

6    Q.      And the information that the sheriffs

7    were armed, do you see that?  It says,

8    "Sending armed Philadelphia Sheriffs."  Where

9    did that information come from?

10                  MR. FILIPOVIC:  I'm going to

11           just repeat my continuing objection

12           to the attorney work product for

13           the complaint.

14               MS. HARPER:  It couldn't

15           possibly come from the attorneys

16           because they weren't there.  This

17           is a fact.

18                  MR. FILIPOVIC:  It is a

19           pleading done by --

20               MS. HARPER:  It is a fact.

21               MR. FILIPOVIC:  It is a fact.

22           But where it came from is within

23           the scope of attorney work product.

24               MS. HARPER:  You couldn't have

Barrington Whyte
December 12, 2019

Page 34

```
 1         possibly given it to him.
 2              MR. FILIPOVIC:  Irregardless
 3         of who and what and where it came
 4         from, I believe that -- just my
 5         standing objection.  He can answers
 6         if he know.
 7              MS. HARPER:  Is it your belief
 8         that I don't have a right to
 9         understand where the facts that
10         were asserted against my client
11         were derived from, where they came
12         from?  Isn't that what discovery
13         was about?
14              MR. FILIPOVIC:  You just need
15         to rephrase the question a little.
16              MS. HARPER:  Okay.  I'll try.
17  BY MS. HARPER:
18  Q.    That statement, "Armed Philadelphia
19  Sheriffs," were they armed?
20  A.    That I'm not sure of.
21  Q.    You didn't see them?
22  A.    Me personally, no.
23  Q.    You weren't there on the six occasions
24  when they allegedly came to the property?
```

Barrington Whyte
December 12, 2019

Page 35

1    A.      No, I wasn't there.

2    Q.      Was Mr. Toppin?

3    A.      Probably he was.

4    Q.      How do you know?

5    A.      Well, I'm usually at work, like I

6    said, all day, and he doesn't work all day.

7    Q.      What are the hours that he works?

8            MR. FILIPOVIC:  Objection.

9            Asked and answered.

10           MS. HARPER:  No.  I know what

11           days he works.

12           MR. FILIPOVIC:  No, it was

13           about the hours.  We can go back on

14           record, counsel, and we can take a

15           look.  He said he wasn't sure about

16           the hours.

17           THE WITNESS:  No.

18   BY MS. HARPER:

19   Q.      So if you're not sure about the hours

20   that he worked, how can you be sure he was

21   there when these armed sheriffs allegedly

22   came to the property?

23   A.      The job that he works at, it's a

24   certain time it closes, it doesn't stay open

Barrington Whyte
December 12, 2019

Page 36

1   all night long.  I would take it it closes

2   regular, like 5:00.

3   Q.      Closes around 5:00?

4   A.      Like around that time.

5   Q.      So you would expect him home some time

6   after 5:00?

7   A.      Or any time before that.  I don't know

8   if he works the whole day.  I'm just saying,

9   the business probably stays open until about

10  five, but I don't know if he actually stays

11  until five.

12  Q.      But you live with him.  Do you get any

13  general sense of his comings and goings?

14  A.      Well, when I come in, I just -- I get

15  the sense when he's home.  You know, it's

16  just a feeling I get that somebody is in the

17  house already.

18  Q.      Can you tell me if there is any

19  regularity to that?  Like when you come home

20  on Monday, say -- what time do you usually

21  get home on a Monday?

22  A.      It varies, because I take public

23  transportation, so it varies.

24  Q.      I hear you.

Barrington Whyte
December 12, 2019

Page 37

1    A.      So if anything, probably about --

2    well, if I'm lucky, about 11.

3    Q.      At night?

4    A.      Yes.

5    Q.      And he's usually home by 11 at night?

6    A.      Yes.

7    Q.      Is that the same as Tuesday?

8    A.      Yes.

9    Q.      Wednesday?

10   A.      I could say that, yes.

11   Q.      Thursday?

12   A.      Yes.

13   Q.      And Friday?

14   A.      Yes.

15   Q.      Now I think when we were talking about

16   a time frame earlier, about October 2017 to

17   July 2018, I think you had a different job

18   then, that was when you were working for the

19   caterer.  What time of night or day would you

20   generally come home from that job?

21          You mentioned you worked every day,

22   morning to night.  So about what time would

23   you get home?

24   A.      If it's a normal day, probably about

Barrington Whyte
December 12, 2019

Page 38

1   11.  If we get off early or we have nobody to

2   cook for or if the show was canceled that

3   day, probably about eight, 9:00.

4   Q.     Eight, 9:00 at night?

5   A.     Yes, p.m.

6   Q.     When you had that catering job and

7   when you would get home from that catering

8   job, was Mr. Toppin generally home already?

9   A.     Yes.

10  Q.     When you left for the catering job in

11  the morning, what time would you leave?

12  A.     That would be about -- I would say

13  about like seven.  I would have to leave two

14  hours earlier than I have to be there, so

15  about seven.

16  Q.     Seven in the morning?

17  A.     Yes.

18  Q.     Was Mr. Toppin generally home when you

19  left the property?

20  A.     Well, he would be getting himself like

21  prepared to leave around that time.

22  Q.     So is it your understanding that he

23  would leave for work at like the same time as

24  you?

Barrington Whyte
December 12, 2019

Page 39

1  A.     I would say, if anything I would

2  probably think around nine or something.

3  Q.     In the morning?

4  A.     Yes.

5  Q.     And he has a Monday through Friday job

6  you think; is that correct?

7  A.     Yes.

8  Q.     Okay.  And this was true as of the

9  time frame of October 2017 to July 2018; is

10 that correct?

11 A.     Yes.

12 Q.     Okay.  So let's go back to page 2 of

13 the document that has been marked as D-2.  If

14 you look at the next paragraph, there is a

15 bunch of dates bolded and underlined; do you

16 see those?

17 A.     Yes.

18 Q.     Could you please read -- I guess

19 that's all one sentence there.  Could you

20 please read, you can do this to yourself,

21 that's fine, the sentence that includes those

22 dates.  Take a moment to look at that.

23 A.     (Witness complies.)

24 Q.     Have you had a moment to look at that

Barrington Whyte
December 12, 2019

1   sentence?

2   A.      Yes.

3   Q.      It's a pretty long one.   Those dates

4   that appear there that are bolded and

5   underlined.   I think there is three of them,

6   May 18, 2018, May 24, 2018, May 30, 2018,

7   June 1, 2018, June 5, 2018 and June 7, 2018,

8   those are six dates, correct?

9   A.      Yes.

10  Q.      And according to this document, those

11  are the dates that notices were posted on the

12  property; is that correct?

13  A.      Yes.

14  Q.      All right.  Did you provide the

15  information that appears in that sentence

16  regarding the dates that notices were posted

17  on the property?

18  A.      Yes.

19  Q.      And how do you know that that

20  information is correct?

21  A.      Well, these were around about dates

22  that they would come in.  It was so frequent,

23  you know, it was like kind of -- it was

24  getting irritating, so I couldn't really

Barrington Whyte
December 12, 2019

Page 41

1   forget those days that they were putting them

2   up there, it was really getting to me, it was

3   embarrassing at a point.

4        So my main focus was like remembering

5   these times when they were put there so I

6   could transfer that information to my lawyer.

7   Q.    And what does "posted" mean to you?

8   What does that term mean to you?

9   A.    Like placed in vision for you to

10  notice.

11  Q.    When was the first notice that you saw

12  on the property?  What date is that?

13  A.    May -- well, it was around May.

14  Around the 18th, around that time in May.

15  Q.    And where was the notice that you

16  observed?

17  A.    That one was on the front door.  It

18  was posted on the front door inside of the

19  screen door.

20  Q.    And you observed one notice on May

21  18th?

22  A.    Yes.

23  Q.    What time of day did you observe that

24  notice on May 18th; do you recall?

Barrington Whyte
December 12, 2019

Page 42

1   A.      That was -- that was like in the

2   afternoon.

3   Q.      So you were home from work on May

4   18th?

5   A.      Yes, that day, yes.

6           MS. HARPER:  I'm just looking

7           at a calendar here, and, you know,

8           I'm happy to circulate it.  I don't

9           intend to mark this as an Exhibit,

10          just a calendar from 2018.  Do you

11          want a copy to look along?

12          MR. FILIPOVIC:  We don't need

13          it.  Thank you.

14  BY MS. HARPER:

15  Q.      So May 18th was a Friday.  It says May

16  18th of 2018, that was a Friday.

17  A.      Yes.

18  Q.      You, apparently, I guess, weren't

19  working a full day that day?

20  A.      No.

21  Q.      On May 24th, that's the next date that

22  was stated, is that the next date you

23  observed a notice posted at the property?

24  A.      Well, that date is actually when

Barrington Whyte
December 12, 2019

Page 43

1    Lyndel had given me the paper on that

2    occasion.

3    Q.      Do you know where he got it?

4    A.      It had tape on it, so I'm pretty sure

5    the front door.

6    Q.      Did you see any envelope with it?

7    A.      No.  No envelope.

8    Q.      Are you sure it wasn't the notice that

9    you observed on May 18th?

10   A.      It looked like the same notice, yes.

11   Q.      Could it have been the same notice?

12   A.      Not that same.  The notice that I got

13   the first time I took that out and had it in

14   my room.  So this was the second notice that

15   he gave me this time.

16   Q.      You don't know where he observed that

17   notice first, do you?

18   A.      No, I just assumed it was the front

19   door.  When he handed it to me, it had the

20   silver two pieces of tape on the side of the

21   paper.

22   Q.      What kind of tape?

23   A.      It was just basic duct tape.

24   Q.      But you can't say personally whether

Page 44

1    that notice on May 24th was actually posted

2    to the door?

3    A.      No, not exactly.

4    Q.      How about on May 30th, that's the

5    approximate date of the next notice.  Did you

6    observe a notice on the property on May 30th?

7    A.      No, that's another one that actually

8    was inside the house actually that day.

9    Q.      What did you observe?

10   A.      Well, it was on the couch when I came

11   in, so I'm assuming he got to it first and,

12   you know, put it there.

13   Q.      But he can't communicate with you as

14   to how he got a hold of that, can he?

15   A.      No.  But I just looked at it as the

16   tape being on there, it was the same way.

17   Because they all came the same exact way.

18   Q.      Did any of them have envelopes

19   associated with them?

20   A.      No.  No envelopes.

21   Q.      How about June 1st, did you observe

22   that one posted on the house?

23   A.      That's another one that he gave to me

24   also.

Barrington Whyte
December 12, 2019

Page 45

1    Q.      Did you try and communicate with

2    Mr. Toppin at all on these dates as to what

3    the notices were about?

4    A.      Well, not actually communicate.  Well,

5    the second one, like when he -- when I saw it

6    on the couch, and I actually picked it up, he

7    was coming down at that particular time and

8    he just saw like how I was just like shaking

9    my head.

10           The first one, I understood.  But the

11   second one, I couldn't really process it

12   through my head.  So me looking at it, I was

13   just shaking my head at that time.

14   Q.      What did you do -- okay.  So I know

15   the May 18th notice you said you had taken

16   that to your room; is that correct?

17   A.      The May 18th, yes.

18   Q.      How about, what happened with the May

19   24th notice, the second one?

20   A.      Yes.

21   Q.      What happened with that after you saw

22   it?

23   A.      I kept that one also.

24   Q.      In your room?

Barrington Whyte
December 12, 2019

Page 46

1    A.      Yes.

2    Q.      All right.  How about the May 30th

3    notice, what happened to that after you saw

4    it?

5    A.      Kept that one.  Filed it also.

6    Q.      Filed it in what?

7    A.      Just put it in my folder so I wouldn't

8    lose it.

9    Q.      You had a folder for this purpose?

10   A.      No.  Just so I didn't lose it.  I had

11   a folder in my house and I decided to put it

12   in there.

13   Q.      What happened with the June 1st notice

14   after you saw it?

15   A.      Put that one up also.

16   Q.      Okay.  How about June 5th.  Can you

17   tell me when you first saw the June 5th

18   notice?

19   A.      That one was actually on the dining

20   room table when I actually came in that day

21   -- well, that night.  It was on the dining

22   room table.

23   Q.      Do you know how it got there?

24   A.      I'm pretty sure my uncle.

Barrington Whyte
December 12, 2019

1   Q.      Did this one also have tape?

2   A.      Yes.

3   Q.      Was there any envelope associated with

4   this one?

5   A.      No envelopes.  No.

6   Q.      How about June 7th?

7   A.      That one was inside the house also.

8   Q.      Where was it?

9   A.      On the table also.

10  Q.      Did it have tape on it?

11  A.      I'm sorry?

12  Q.      Was there tape on it?

13  A.      Yes.

14  Q.      Did you take the tape off of any of

15  these notices at any point in time?

16  A.      No, left it on.

17  Q.      So when you gave them to your

18  attorney, they had the tape on them?

19              MR. FILIPOVIC:  Objection.

20              MS. HARPER:  It's a question.

21              MR. FILIPOVIC:  It's a

22          question that presumes facts not on

23          the record.

24              MS. HARPER:  Okay.

Barrington Whyte
December 12, 2019

Page 48

1    BY MS. HARPER:

2    Q.    Do you know if Mr. Toppin took the

3    tape off the notices at any point in time?

4    A.    No, I don't know if he took them off.

5    Q.    Do you know if there was tape on the

6    notices -- did you provide the notices to

7    Mr. Dunne?

8    A.    Yes.

9    Q.    When you provided the notices to

10   Mr. Dunne, did they have tape on them?

11   A.    No, I don't think.  I think I took the

12   tape off of them.

13   Q.    I thought you just said you didn't

14   take the tape off of them?

15   A.    When I took them to him, I took the

16   tape off of them.  When I had it in my house

17   filed in the folder, I left it on.  To make

18   it look more neat and kosher to him, I took

19   the tape off.

20   Q.    So you don't have any photos of the

21   notices with the actual tape on them, do you?

22   A.    No.

23   Q.    Do you have a Ring doorbell?

24   A.    No.

Barrington Whyte
December 12, 2019

Page 49

1    Q.      Do you know what a Ring doorbell is?

2    A.      Yes.  I don't have one.

3    Q.      Do you have any security cameras

4    outside your house?

5    A.      No.

6    Q.      And when these notices left your

7    possession, did they have anything else with

8    them?  You said there were no envelopes,

9    correct?

10   A.      No envelopes.  No.

11   Q.      Okay.  And so it's fair to say that

12   other than the very first notice of May 18th,

13   you never actually observed a notice posted

14   on the property?

15   A.      Me personally, no.

16   Q.      Okay.

17              MR. FILIPOVIC:  Just to

18          clarify that, is that, notice being

19          posted on the property?

20              MS. HARPER:  No posted.

21              MR. FILIPOVIC:  Or a posted

22          notice on property?

23              MS. HARPER:  Um-hum.  We

24          already know he didn't see anybody

Barrington Whyte
December 12, 2019

Page 50

1          posting the notices, that's clear.

2               MR. FILIPOVIC:  I need to go

3          to the restroom, if that's okay.

4               MS. HARPER:  Sure.  Sure.

5                    -  -  -

6               (Whereupon, a brief recess was

7          taken at 10:53 a.m. and the

8          deposition resumed at 11:05 a.m.)

9                    -  -  -

10   BY MS. HARPER:

11   Q.    I'm going to ask you a series of

12   questions about Mr. Toppin, and just answer

13   me if you can, if you don't know the answer,

14   that's fine, let me know.

15   A.    Okay.

16   Q.    Counsel is probably going to accuse me

17   of having asked and answered on this one

18   already, but we have gone through specific

19   dates, May 18th, May 24th, May 30th, June

20   1st, June 5th, June 7th, can you say with

21   absolute certainty that on any one of those

22   days Mr. Toppin was home when a notice was

23   allegedly posted?

24               MR. FILIPOVIC:  Objection as

Barrington Whyte
December 12, 2019

Page 51

1          to absolute certainty.

2     BY MS. HARPER:

3     Q.     Well, do you know if he was home on

4     any one of these days when a notice was

5     allegedly posted?

6     A.     Well, I can't be actually sure.  I

7     don't know if he got there before it came or

8     after it came.

9     Q.     Do you know if he saw someone with a

10    gun on them on those days?

11    A.     I wouldn't say actually he was saying

12    like he saw somebody with a gun.  But he

13    compared like the little shield thing, he

14    just like made a comparison of the two.  Just

15    showing me the similarity of the two.

16    Q.     Was there a gun on the symbol?

17    A.     No, but just a shield.

18    Q.     Okay.  Did Mr. Toppin, at any point in

19    time, try and describe to you a person that

20    came on the property on any one of those

21    days?

22    A.     When I saw him, like I said, he showed

23    me the comparison of like the shield that was

24    on the notice or whatever, and he just

Barrington Whyte
December 12, 2019

Page 52

1    pointed to the similarity.  He put the paper

2    next to himself and he showed me he peeked

3    through.

4    Q.     So what is your understanding?

5           You're gesturing, which is hard for

6    the court reporter to take down.  And if I

7    may try and summarize what you're showing me.

8    I'm going to turn the direction you're

9    sitting.

10          Which is that you believe Mr. Toppin

11   was gesturing to a shield on a piece of paper

12   and to his chest?

13   A.     On the notice, yes.  He was showing me

14   the comparison of the two, like he seen that

15   shield on the person.

16   Q.     On the person, okay.

17   A.     Yeah.

18   Q.     All right.  I'm going to refer you

19   back to what was marked as Exhibit D-2.

20          Well, before I do that.  Let me ask

21   you a few more questions.  We talked a little

22   bit about how you assist Mr. Toppin in his

23   day-to-day life, and that included maybe a

24   leg massage and with this eating plan.

Barrington Whyte
December 12, 2019

Page 53

1        I asked you if there was anything else

2   you would do to assist him.  I don't think

3   you stated too much else.  So I'm going to

4   ask you some specific questions about that.

5        Do you do grocery shopping for

6   Mr. Toppin?

7   A.     Not particularly for him.  I do it for

8   the house.  So just whatever I buy is for

9   both of us.

10  Q.     Does he do any grocery shopping

11  himself?

12  A.     No.

13  Q.     Do you do banking for Mr. Toppin?

14  A.     Well, just on Friday when he gets paid

15  I would go down to the MAC machine with him

16  just to type his numbers in.

17  Q.     Does he have his own bank account?

18  A.     I think it's just the job card.

19  Q.     Okay.

20  A.     Jobs now, they put the paychecks on

21  cards now.

22  Q.     But back in -- when did that start?  I

23  think you just mentioned that you put

24  something in the -- go down to the machine

Barrington Whyte
December 12, 2019

Page 54

1   and put money in the ATM, correct?

2   A.      No.

3   Q.      Okay.  Maybe I misunderstood.  You

4   said on Fridays when he gets paid, you take

5   him down to the MAC machine.  Is that to get

6   money out of the machine?

7   A.      Yes, in case he needs any money or

8   anything.

9   Q.      Do you know where he does his banking?

10  A.      No, I'm not sure.

11  Q.      Do you know how much he gets paid each

12  week?

13  A.      I'm not sure on that either.

14  Q.      Do you believe he gets paid on a

15  weekly basis?

16  A.      I believe it's on a weekly basis, yes.

17  Q.      Did you have any involvement when

18  Mr. Toppin was applying for or obtaining the

19  job he's held for the last 20 years?

20  A.      No.

21  Q.      So do you have any information as to

22  how he got that job?

23  A.      I'm pretty sure through his mother, if

24  anything.

Barrington Whyte
December 12, 2019

Page 55

 1   Q.     His mother was still alive at the

 2   time?

 3   A.     Yes.

 4              MR. DOMER:  If we can take a

 5          second, go off the record.

 6                   -  -  -

 7              (Whereupon, a discussion was

 8          held off the record.)

 9                   -  -  -

10   BY MS. HARPER:

11   Q.     Mr. Whyte, just going back to what we

12   were talking about a little bit about

13   Mr. Toppin's pay.  I'd also like to know, who

14   pays the bills in the house?

15   A.     I do.

16   Q.     Okay.  So you pay the property taxes?

17   A.     Yes.

18   Q.     About how much are they, per year?

19   A.     I believe at the time it was like $360

20   or something around that.

21   Q.     How about the water bill?  How much is

22   that, on average?

23   A.     That's about, say about $100

24   something.

Barrington Whyte
December 12, 2019

Page 56

1   Q.     Gas bill, how much is that on average

2   per month?

3   A.     Close to like 80-90.

4   Q.     And lastly the energy bill for PECO,

5   how much is that a month, on average?

6   A.     That's 150 a month, sometimes more.

7   Q.     Does Mr. Toppin contribute to payment

8   for these bills?

9   A.     I don't ask for it, no.

10  Q.     So you're the only one paying these

11  bills in the house?

12  A.     Yes.

13  Q.     With your money?

14  A.     Yes.

15  Q.     All right.  So looking back again at

16  what was marked as D-2, which is the

17  complaint, if you can take a look at that.

18         Let's look at D-1.  Take a look at D-1

19  instead, I believe you had an opportunity to

20  review D-1 previously, correct?

21  A.     Yes.

22  Q.     I'm going to turn your attention then

23  to interrogatory No. 15.  Which is towards

24  the back.  Just let me know when you have

Barrington Whyte
December 12, 2019

Page 57

1    reached interrogatory No. 15.

2    A.     I'm not sure which one that is.

3    Q.     Maybe your counsel can point to -- the

4    page that starts with interrogatory No. 14,

5    interrogatory 15 is there too.

6                MR. FILIPOVIC:  Starts with

7          No. 15.

8                MS. HARPER:  14.  The top of

9          the page.

10               MR. FILIPOVIC:  Okay.  All

11         right.

12               MS. HARPER:  Third page from

13         the back.

14               MR. FILIPOVIC:  That helps.

15         Okay.  I believe that's it.

16   BY MS. HARPER:

17   Q.     All right.  So I guess these -- I have

18   to kind of cover both 14 and 15 here.  The

19   very first interrogatory No. 14 at the top,

20   do you see that where it says, "Do you claim

21   to have experienced emotional distress as a

22   result of the sheriff's alleged violations of

23   the automatic stay?"  Do you see that?

24   A.     Yes.

Barrington Whyte
December 12, 2019

Page 58

1    Q.      The answer there is what?

2    A.      "Yes."

3    Q.      Did you provide that information that

4    informed the answer to this interrogatory?

5    A.      Yes.

6    Q.      And is it your understanding that that

7    question when it says, "You claim to have

8    experienced emotional distress," that that is

9    referring to Lyndel Toppin?

10   A.      Yes.

11   Q.      In the answer to the next

12   interrogatory, you'll see there is

13   subparagraphs to interrogatory No. 15, do you

14   see that?

15   A.      Yes.

16   Q.      And it says, "If your answer to

17   interrogatory No. 14 was yes, please:"  And

18   then there is subparagraph A, "Set forth the

19   nature of the emotional distress."  Do you

20   see that?

21   A.      Yes.

22   Q.      In the response to interrogatory No.

23   15, subparagraph A it says, "Armed

24   Philadelphia Sheriffs appeared at my home and

Barrington Whyte
December 12, 2019

Page 59

1    posted six separate 'Notices to Vacate' and

2    'Eviction Notices' that caused me a

3    substantial amount of undue frustration,

4    anxiety and mental anguish."  Do you see

5    that?

6    A.      Yes.

7    Q.      Did you provide the information in

8    response to that interrogatory 15,

9    subparagraph A?

10   A.      Yes.

11   Q.      Tell me how you know -- we've already

12   discussed the armed sheriffs and whether they

13   were at the property on six separate

14   occasions to post notices, but tell me how

15   you know Mr. Toppin was caused undue

16   frustration, anxiety and mental anguish as a

17   result of those allegations?

18   A.      Well, his actions started changing

19   during the process of the whole situation.

20   Because he smokes cigarettes, so he actually

21   was smoking more during this time of this

22   whole thing.

23          A few times -- I wouldn't say a few, I

24   would say a couple.  A couple times I've come

Barrington Whyte
December 12, 2019

Page 60

1    home and the meal I set out in the microwave

2    or left on the table or whatever, still been

3    there more than any other time.

4            Normally when I get in that late --

5    normally he's probably asleep or something,

6    but I noticed that his light under his door

7    has been on.

8    Q.     And what time frame are you noticing

9    these things?  Let's start with the increased

10   smoking.  When was it that he started smoking

11   more?

12   A.     Well, that was actually, I want to say

13   after like the second time like when he

14   actually saw me with the notice in my hand.

15   Q.     Which notice?

16   A.     The second notice.

17   Q.     Okay.

18   A.     Because when I notice like after that

19   time, the smoking picked up more.  I was

20   smelling it more heavier in the house.

21   Q.     Did you notice anything like that

22   occurring before the property was sold at

23   sheriff's sale?

24   A.     He would smoke probably one cigarette

Barrington Whyte
December 12, 2019

Page 61

1    a week, if anything.

2    Q.    After the property was sold at a

3    sheriff's sale, was he still smoking one a

4    week?

5    A.    Yes, it was one a week.

6    Q.    And then when the Notice to Vacate

7    showed up, how much did he start smoking?

8    A.    Well, it kind of -- I would say it

9    increased around that time.  It was like

10   about three to -- three cigarettes maybe a

11   day at that point.

12   Q.    Do you buy the cigarettes for

13   Mr. Toppin?

14   A.    No.

15   Q.    You say you work day to night when you

16   were working for the catering company, you

17   usually got home around 11, how do you know

18   how much he was smoking?

19   A.    Well, the cigarette butts that were in

20   the house were not fully smoked all the way

21   down like people would smoke them.  It was

22   like he put them out a quarter of it, it

23   looked like there was another one lit up.  It

24   was probably about three or four in the

Barrington Whyte
December 12, 2019

Page 62

1    ashtray with the same length of the

2    cigarette.

3    Q.      What brand?

4    A.      Newports.

5    Q.      Was it always the same brand for him?

6    A.      Yes.

7    Q.      Okay.  Meals left out.  Again, I

8    believe around this time you were generally

9    getting home from work pretty late; is that

10   correct?

11   A.      Yes.

12   Q.      And Mr. Toppin, was he awake when you

13   got home during this time frame that we're

14   talking about, back when the notices were

15   showing up?

16   A.      Normally he wasn't but it was a few

17   times I seen his light under his door, like

18   when I come up, I have to walk passed his

19   door to get to my room.  I would see under

20   the door his light was on and know that he

21   was still woke.

22   Q.      Were there any other signs or symptoms

23   that you observed, besides the smoking and

24   the light under his door, and maybe an

Barrington Whyte
December 12, 2019

Page 63

1   uneaten meal here and there?

2   A.      Just him, he never actually like paced

3   before.  But that was another thing I noticed

4   also, it was kind of weird to me.

5           And then like it was only one time out

6   of that that he was telling me he had like a

7   little headache in his head.  He just

8   indicated to me that he wanted a pill because

9   his head was hurting.

10  Q.      How do you know that that was related

11  to what was going on with the notices, if at

12  all?

13  A.      Well, it just all just collided around

14  all that same time, so I just assumed it was

15  from smoking more cigarettes at the point.

16  Q.      If you turn the next page on what has

17  been marked as D-1.

18  A.      Which one?

19  Q.      I'm going to have you look at

20  interrogatory No. 17 which is the second one

21  there.  It says, "Identify the compensatory

22  damages which you seek and the facts

23  supporting your claim for such damages."

24          In response to interrogatory No. 17 it

Barrington Whyte
December 12, 2019

Page 64

1    says, "Out of pocket expenses include all the

2    time I spent visiting my attorney's office to

3    stop the continuing violation of automatic

4    stay; lost potential income due to the time I

5    was unavailable to work as a result of

6    spending time at my attorney's office and

7    transportation costs to/from my attorney's

8    office."  Do you see that information?

9    A.      Yes.

10   Q.      Now when the response uses the term

11   "I" and "my" quite a bit, is it your

12   understanding this refers to Mr. Toppin and

13   not you, correct?

14   A.      Yes.

15   Q.      So how do we know what days Mr. Toppin

16   took off from work?  Do you have any record

17   of that?

18   A.      No, I don't have any records of that.

19   Q.      Did you have to make the phone calls

20   to his employer to say he needed time off?

21   A.      Yes.

22   Q.      So do you recall what days that

23   happened?

24   A.      I don't remember exactly.  It was more

Barrington Whyte
December 12, 2019

Page 65

1    than likely after the notice -- well, the

2    first notice when I had to contact my lawyer

3    to, you know, let him know whatever.

4    Q.    He's your lawyer?  Mr. Dunne is your

5    lawyer?

6    A.    Yes.  And to let him know about the

7    notices and everything like that.

8    Q.    All right.  But do you recall how many

9    times you went to Mr. Dunne's office?

10   A.    I went there a lot of times myself.  I

11   have been there a lot.

12   Q.    Was Mr. Toppin with you every time you

13   went?

14   A.    He was only with me a few times

15   because I didn't really want to keep pulling

16   him out of work every single time for it.

17   Q.    Can you estimate the number of times

18   he had to go?

19   A.    Probably about two.

20   Q.    Okay.  And on those two occasions that

21   you remember him going down to the attorney's

22   office, did you call out of work for him?

23   A.    Yes.

24   Q.    Who did you speak with, do you

Barrington Whyte
December 12, 2019

Page 66

1    remember?  Does he have a supervisor?

2    A.    The person -- I don't remember their

3    name.  I don't remember their name at all.

4    Q.    Okay.  I think I'm done, but I want to

5    step out and go off the record a minute and

6    speak with my co-counsel here.

7                        -  -  -

8              (Whereupon, a discussion was

9         held off the record.)

10                       -  -  -

11               CROSS-EXAMINATION

12                       -  -  -

13   BY MR. FILIPOVIC:

14   Q.    I have a few questions just to follow

15   up.  For the record, clarifying, my name is

16   Counsel Predrag Filipovic, I'm special

17   counsel for Lyndel Toppin.

18         Mr. Whyte, how are you?

19   A.    Pretty good.

20   Q.    I'm going to ask you a few follow ups

21   here.  Same rules apply when answering my

22   questions as those asked by the Counsel

23   Harper there.

24         Mr. Whyte, is there anyone else in the

Barrington Whyte
December 12, 2019

Page 67

1   universe who you can think of now that is in

2   a better position to evaluate Mr. Lyndel

3   Toppin's behavior, his responses, and his

4   overall demeanor?

5               MS. HARPER:  Objection.  Calls

6          for an expert opinion.  But you can

7          answer.

8               THE WITNESS:  No.  Besides his

9          mother, it's just me.

10  BY MR. FILIPOVIC:

11  Q.     And his mother is no longer alive?

12  A.     No, she's passed.

13  Q.     She's passed, okay.

14         So is there anyone else in the

15  universe that has in the past interacted with

16  Mr. Toppin more frequently than yourself?

17  A.     No.

18  Q.     Is there anyone else in the universe

19  that you can think of that would be in a

20  better position to understand Mr. Toppin with

21  all his limitations --

22              MS. HARPER:  Objection.  Calls

23         for an expert opinion.

24  BY MR. FILIPOVIC:

Barrington Whyte
December 12, 2019

Page 68

1    Q.      -- than yourself?

2    A.      No.

3                 MS. HARPER:  My apologies,

4            counsel.

5                 MR. FILIPOVIC:  That's fine.

6    BY MR. FILIPOVIC:

7    Q.     Mr. Whyte, is there anyone else in the

8    universe that you can think of, including

9    doctors, that has more direct knowledge of

10   Mr. Toppin's limitations --

11               MS. HARPER:  Objection.  Calls

12           for an expert opinion.

13   BY MR. FILIPOVIC:

14   Q.      -- other than yourself?

15   A.      No.

16   Q.     Okay.  That's all.  I don't have

17   anything further.

18                     -  -  -

19               REDIRECT EXAMINATION

20                     -  -  -

21   BY MS. HARPER:

22   Q.     Just one follow up in regards to that

23   line of questioning, Mr. Whyte.

24               Did you know if Mr. Toppin was seeing

Barrington Whyte
December 12, 2019

Page 69

1    any doctors in the past year?

2    A.      No, he hasn't.

3            MS. HARPER:  Okay.  Also on

4            the record, counsel, I guess

5            because tape seems to become a

6            point here, I'd like to request on

7            the record that we be given access

8            to look at the actual notices that

9            I believe are in Mr. Dunne's

10           possession.  And maybe we could do

11           that, I mean we are close, offices

12           are close.  We could do that next

13           week, if that's okay?

14           MR. FILIPOVIC:  I'm sorry,

15           what are you requesting?

16           MS. HARPER:  The physical

17           notices, which I believe are in

18           Mr. Dunne's possession, we would

19           like to observe them personally.

20           We haven't had a chance to do that.

21           We've seen copies.

22           MR. FILIPOVIC:  And these

23           notices are generated, created by

24           your client?  Is that the notices

Barrington Whyte
December 12, 2019

Page 70

1        you want?

2              MS. HARPER:  Well, you

3        remember there was a big thing

4        about whether they all came with

5        tape on them or not.  I'm just

6        curious what I see.  I can't see

7        any tape in the pictures so I would

8        like to take a look at them.

9              MR. FILIPOVIC:  Yeah, we

10       provided the --

11             MS. HARPER:  Copies.

12             MR. FILIPOVIC:  -- the copies

13       that we have.  And they are here

14       for you to take a look.

15             MS. HARPER:  I've seen them.

16             MR. FILIPOVIC:  But you're

17       asking to see the original?

18             MS. HARPER:  Yes.

19             MR. FILIPOVIC:  The originals?

20             MS. HARPER:  Yes, just to take

21       a look.

22             MR. FILIPOVIC:  I don't think

23       we would have a problem with that.

24             MR. DUNNE:  No.  No problem.

Barrington Whyte
December 12, 2019

Page 71

1           MR. FILIPOVIC:  Aside from the
2       fact that it's -- we're beyond
3       discovery deadline and we have
4       motions to file and adhere to other
5       deadlines in the case.
6           MS. HARPER:  We've talked
7       about that.  We've broached that
8       subject.
9           MR. FILIPOVIC:  Of this
10      actually --
11          MS. HARPER:  Deadlines.
12          MR. FILIPOVIC:  I'm talking
13      about this request you now have.
14      Have you ever had prior to today --
15      we don't mind providing notices so
16      long as it doesn't interfere with
17      the current deadlines in the case,
18      that's all I'm saying.
19          MS. HARPER:  We can walk over
20      and look at them.
21          MR. DUNNE:  In the spirit of
22      transparency, we're still waiting
23      for response to our discovery
24      request with respect to the log in

Barrington Whyte
December 12, 2019

Page 72

1       sheets and other documents that

2       have not been provided by the City

3       to date.

4            MS. HARPER:  All right.  So

5       maybe --

6            MR. FILIPOVIC:  That's

7       correct.

8            MR. DUNE:  Could you give us

9       an update on that?

10           MR. DOMER:  We are going to be

11      here, we will speak one way or

12      another about that.

13           MS. HARPER:  But I mean I made

14      the request, it's fine.  If you

15      need a formal request or you need

16      something or you want to deny it

17      outright, that's fine too.  That's

18      your prerogative.

19           MR. FILIPOVIC:  No, we're

20      happy to provide them as long as

21      we're not extending, again, any

22      deadlines that are currently --

23      that we're under.  Only because,

24      you know, you have seen the

Page 73

1          originals -- or the copies that

2          were verified and you haven't made

3          the request that you're making now

4          within the discovery deadline.  But

5          other than that...

6                MS. HARPER:  I didn't see

7          tape.  I didn't know there was tape

8          on them.  That's why I'm looking.

9                MR. DUNNE:  Did Barry testify

10         that he removed the tape?  I don't

11         want to put words in your month.

12               MR. FILIPOVIC:  Yes, he did

13         before he give them to you.

14               However, you were privy to

15         discuss the matter with your

16         client.  They could have told you

17         about how they put notices on the

18         door.

19               MS. HARPER:  Well, I'm not

20         going to tell you what my client

21         has told me, so...

22               MR. FILIPOVIC:  Right.

23         Because I mean it comes back to the

24         fact they are your clients.

Barrington Whyte
December 12, 2019

Page 74

```
 1              MS. HARPER:  It's fine.  It's
 2       not a big deal to me.  It's your
 3       burden of proof.
 4              So if you don't want us to see
 5       it, fine, we can wait until trial.
 6              MR. FILIPOVIC:  That's fine.
 7       I just don't want to move any
 8       deadlines, that's all.
 9              We're off the record then.
10                   -  -  -
11              (Witness excused.)
12                   -  -  -
13              (Deposition concluded at 11:30
14       a.m.)
15                   -  -  -
16
17
18
19
20
21
22
23
24
```

Barrington Whyte
December 12, 2019

Page 75

1                C E R T I F I C A T E

2          I do hereby certify that I am a Notary

3    Public in good standing, that the aforesaid

4    testimony was taken before me, pursuant to

5    notice, at the time and place indicated; that

6    said deponent was by me duly sworn to tell

7    the truth, the whole truth, and nothing but

8    the truth; that the testimony of said

9    deponent was correctly recorded in machine

10   shorthand by me and thereafter transcribed

11   under my supervision with computer-aided

12   transcription; that the deposition is a true

13   and correct record of the testimony given by

14   the witness; and that I am neither of counsel

15   nor kin to any party in said action, nor

16   interested in the outcome thereof.

17          WITNESS my hand and official seal this

18   27th day of December, 2019.

19                     Michelle A. Landman

20                     _____

21                     Notary Public

22

23

24

Barrington Whyte
December 12, 2019

**A**

a.m 1:19 50:7 50:8 74:14
a/k/a 1:10
ABDELDA... 1:10
ABDELDY... 1:10
ability 6:12 20:7
able 5:10 21:14 22:21 27:4
absolute 50:21 51:1
access 69:7
account 53:17
accurate 5:21 14:21
accuse 50:16
action 75:15
actions 59:18
activities 23:14 26:21 27:18
actual 48:21 69:8
address 6:18 7:3,11,15 7:18 13:5 14:9,19 25:21
addresses 9:13 13:3,8 14:17
adhere 71:4
Adv 1:8
aforesaid 75:3
afternoon 42:2
ago 25:2,20 25:23 29:10,12
agreed 4:11
ahead 12:15
alcohol 6:11
alive 55:1 67:11
allegations 59:17

alleged 57:22
allegedly 34:24 35:21 50:23 51:5
allow 12:12
Alvita 25:9 25:17
Amended 3:16
amount 59:3
anguish 59:4 59:16
answer 6:2 12:3,12 13:6 14:6 14:15 23:16,20 50:12,13 58:1,4,11 58:16 67:7
answered 14:5 24:4 35:9 50:17
answering 66:21
answers 11:18 34:5
anxiety 59:4 59:16
anybody 8:12 49:24
apologies 68:3
apologize 7:20
apparently 42:18
appear 40:4
appeared 58:24
appears 11:6 11:18 31:17 40:15
apply 66:21
applying 54:18
appointed 20:22
approximate 13:7 44:5
armed 32:5 32:15 33:7

33:8 34:18 34:19 35:21 58:23 59:12
as-needed 16:1
ashtray 62:1
Aside 71:1
asked 14:5 35:9 50:17 53:1 66:22 70:17
asleep 60:5
asserted 34:10
assist 11:17 12:21 26:20 27:17 31:16 52:22 53:2
associated 44:19 47:3
ASSOCIA... 1:22
assumed 43:18 63:14
assuming 44:11
ATM 54:1
attention 56:22
attorney 4:23 11:22 33:12,23 47:18
attorney's 64:2,6,7 65:21
attorneys 11:16 33:15
Au 16:16
automatic 32:10 57:23 64:3
Avenue 24:22
average 55:22 56:1 56:5

awake 62:12

**B**

B 3:12
B-R-O-O-... 20:2
back 35:13 39:12 52:19 53:22 55:11 56:15,24 57:13 62:14 73:23
bank 53:17
banking 53:13 54:9
bankruptcy 1:2,5 30:13 31:12 32:4
Barrington 1:14 3:5 4:2 6:17
Barry 23:13 73:9
basic 22:7 43:23
Basically 24:16 27:19
basis 16:1 26:19 54:15,16
bathroom 22:9,10,11
bedroom 28:19,22
behavior 67:3
belief 34:7
believe 16:16 17:18 20:23 23:21 32:19 34:4 52:10 54:14,16 55:19 56:19 57:15 62:8 69:9,17
bell 25:7
better 67:2

67:20
beyond 23:13 71:2
big 28:17 70:3 74:2
bill 55:21 56:1,4
bills 55:14 56:8,11
birth 8:1
bit 11:21 52:22 55:12 64:11
bits 24:10
blood 19:4 25:12
bolded 39:15 40:4
Bon 16:16
Boulevard 1:17 2:17 25:3
brand 62:3,5
brief 50:6
bring 9:1
broached 71:7
broke 29:9
Brooks 20:2
brother 18:11,20
building 1:16 2:17 26:6 26:12
bunch 39:15
burden 74:3
business 36:9
busted 29:10
butts 61:19
buy 53:8 61:12

**C**

C 2:1 75:1,1
calendar 42:7,10
call 65:22
calls 64:19 67:5,22 68:11
cameras 49:3
canceled 38:2
caption 11:7

card 53:18
cards 53:21
care 26:12,13 26:16,17
carpentry 15:23
case 11:6 14:3 22:22 23:18 24:9 31:12 54:7 71:5,17
catches 27:8
caterer 37:19
catering 15:10,17 17:5 38:6,7 38:10 61:16
cause 28:3
caused 59:2 59:15
causes 5:15
cell 20:24 21:2,9 27:9 27:10,12
certain 35:24
certainty 50:21 51:1
certification 4:14
certify 75:2
chance 69:20
changing 59:18
Chapter 1:4
checking 21:4
chest 52:12
children 19:2
Christian 9:18
cigarette 60:24 61:19 62:2
cigarettes 59:20 61:10,12 63:15
circulate 42:8
City 1:9 2:15 4:23 10:7 11:8 72:2
claim 31:12

57:20 58:7 63:23
clarify 49:18
clarifying 66:15
clear 5:18 6:12 8:4 50:1
client 34:10 69:24 73:16,20
clients 73:24
close 56:3 69:11,12
closes 35:24 36:1,3
clothes 27:19
co-counsel 66:6
collided 63:13
come 29:11 33:3,9,15 36:14,19 37:20 40:22 59:24 62:18
comes 73:23
coming 45:7
comings 36:13
commands 22:7
commencing 1:18
Commonw... 1:21
communicate 20:7 22:6 27:13 44:13 45:1 45:4
communica... 22:13
communica... 23:13 28:2
communica... 23:9
company 15:10,17 17:6 61:16
compared 51:13

comparison 51:14,23 52:14
compensat... 63:21
complaint 3:16 30:13 33:13 56:17
complies 39:23
computer-a... 75:11
concluded 74:13
conduct 5:4
confusion 5:16
contact 65:2
continue 32:4
continuing 33:11 64:3
contractor 16:5
contraventi... 32:8
contribute 56:7
conversation 5:15
conversatio... 11:15
convey 24:8 24:12
cook 38:2
cooking 15:8
copies 10:14 30:19 69:21 70:11,12 73:1
copy 42:11
correct 7:6 9:5 14:3,10 14:13,15 19:21 20:7 20:24 39:6 39:10 40:8 40:12,20 45:16 49:9 54:1 56:20 62:10 64:13 72:7 75:13

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| correctly 75:9 | dates 13:7 39:15,22 | 9:5 50:8 74:13 | 62:17,19,20 62:24 | 44:18,20 47:5 49:8 | 34:9 47:22 63:22 | 28:14 41:11 | **G** |
| costs 64:7 | 40:3,8,11 | 75:12 | 73:18 | 49:10 | fair 12:4 | 43:13,17 | gas 29:17 |
| couch 44:10 | 40:16,21 | derived | doorbell | ESQUIRE | 15:16 | 44:11 | 30:3 56:1 |
| 45:6 | 45:2 50:19 | 34:11 | 48:23 49:1 | 2:4,10,16 | 49:11 | 45:10 | general 5:24 |
| counsel 3:17 | day 17:7 | describe 20:9 | drugs 6:11 | 2:16 | familiar | 46:17 | 23:10 |
| 4:11 6:10 | 23:14 35:6 | 28:6,11 | duct 43:23 | essentially | 18:15 | 49:12 | 36:13 |
| 10:13,16 | 35:6 36:8 | 51:19 | due 64:4 | 17:17 | family 16:8 | 57:19 65:2 | generally |
| 11:20 | 37:19,21,24 | DESCRIP... | duly 4:3 75:6 | estimate | far 19:17 | fits 31:4 | 12:10 |
| 30:20,24 | 38:3 41:23 | 3:14 | DUNE 72:8 | 14:12 | 23:7,8 | five 13:4 | 37:20 38:8 |
| 35:14 | 42:5,19,19 | different | Dunne 2:9,10 | 65:17 | father 18:6 | 14:18 25:1 | 38:18 62:8 |
| 50:16 57:3 | 44:8 46:20 | 24:6 37:17 | 31:3 48:7 | evaluate 67:2 | 20:3 | 36:10,11 | generated |
| 66:16,17,22 | 61:11,15 | dining 46:19 | 48:10 65:4 | everybody | February 8:2 | fix 29:11 | 69:23 |
| 68:4 69:4 | 75:18 | 46:21 | 70:24 | 5:17 | feeling 36:16 | flip 21:10 | gesturing |
| 75:14 | day-to-day | direct 32:7 | 71:21 73:9 | Eviction 59:2 | file 71:4 | focus 41:4 | 52:5,11 |
| couple 59:24 | 26:19 | 68:9 | Dunne's 65:9 | exact 44:17 | filed 46:5,6 | folder 46:7,9 | getting 5:18 |
| 59:24 | 52:23 | direction | 69:9,18 | exactly 16:19 | 48:17 | 46:11 | 38:20 |
| court 1:2 5:6 | days 17:9 | 52:8 | | 44:3 64:24 | filing 4:14 | 48:17 | 40:24 41:2 |
| 30:13 | 35:11 41:1 | discovery | **E** | EXAMINA... | Filipovic 2:3 | folks 21:12 | 62:9 |
| 32:11 52:6 | 50:22 51:4 | 34:12 71:3 | E 2:1,1 3:2,12 | 3:7 4:19 | 2:4 3:9 4:8 | follow 66:14 | give 6:12 |
| cousin 25:10 | 51:10,21 | 71:23 73:4 | 75:1,1 | 68:19 | 10:18 | 66:20 | 7:24 9:8,13 |
| cover 57:18 | 64:15,22 | discuss 73:15 | earlier 37:16 | examined 4:3 | 11:20 12:5 | 68:22 | 72:8 73:13 |
| created 69:23 | DE 1:24 | discussed | 38:14 | example 22:9 | 12:9,13 | follows 4:4 | given 34:1 |
| CROSS-E... | deadline 71:3 | 59:12 | early 38:1 | excused | 14:4 22:24 | forget 41:1 | 43:1 69:7 |
| 66:11 | 73:4 | discussion | EASTERN | 74:11 | 23:5,19 | form 4:16 | 75:13 |
| curious 7:16 | deadlines | 10:2 55:7 | 1:3 | Exhibit 10:10 | 24:3 31:4 | formal 72:15 | gives 22:10 |
| 70:6 | 71:5,11,17 | 66:8 | eating 27:2 | 10:14,21 | 33:10,18,21 | forth 58:18 | giving 5:3 |
| current 6:18 | 72:22 74:8 | dishwasher | 27:16 | 30:15 31:8 | 34:2,14 | forward 8:4 | go 9:23 12:15 |
| 7:11 71:17 | deal 74:2 | 16:13 | 52:24 | 42:9 52:19 | 35:8,12 | four 61:24 | 22:10 |
| currently | debtor 1:5 | distress 57:21 | eight 19:18 | Exhibits 3:17 | 42:12 | frame 17:13 | 35:13 |
| 15:2 29:4 | 32:18 | 58:8,19 | 38:3,4 | 31:1 | 47:19,21 | 37:16 39:9 | 39:12 50:2 |
| 72:22 | debtor's 32:6 | DISTRICT | either 54:13 | expect 36:5 | 49:17,21 | 60:8 62:13 | 53:15,24 |
| | 32:16 | 1:3 | el 27:8 | expenses 64:1 | 50:2,24 | frequent | 55:5 65:18 |
| **D** | deceased | doctors 68:9 | Eleanor 18:5 | experienced | 57:6,10,14 | 40:22 | 66:5 |
| D 3:2 | 19:21 | 69:1 | 18:12,19,21 | 57:21 58:8 | 66:13,16 | frequently | goes 23:8,12 |
| D-1 3:15 | December | document | 19:1,20 | expert 23:2,2 | 67:10,24 | 67:16 | going 5:3 |
| 10:10,14,21 | 1:12 75:18 | 11:2,12,19 | electric 29:15 | 23:4,7,23 | 68:5,6,13 | Friday 17:18 | 10:13 11:5 |
| 11:3 56:18 | decided | 30:19,21 | 30:6 | 67:6,23 | 69:14,22 | 37:13 39:5 | 12:12 |
| 56:18,20 | 46:11 | 31:11,14,17 | elementary | 68:12 | 70:9,12,16 | 42:15,16 | 23:11 |
| 63:17 | decision 9:1 | 31:24 | 20:16 | explain 18:14 | 70:19,22 | 53:14 | 31:24 |
| D-2 3:16 30:9 | Defendant | 39:13 | embarrassi... | 19:7 | 71:1,9,12 | Fridays 54:4 | 32:14 |
| 30:15,19 | 10:6 11:8 | 40:10 | 41:3 | express 32:10 | 72:6,19 | FRIENDS | 33:10 |
| 31:8 39:13 | defendants | documents | emotional | extending | 73:12,22 | 1:23 | 50:11,16 |
| 52:19 | 1:11 2:21 | 72:1 | 57:21 58:8 | 72:21 | 74:6 | front 28:6,9 | 52:8,18 |
| 56:16 | 32:4 | doing 4:24 | 58:19 | | fine 4:8 24:6 | 28:11,13,22 | 53:3 55:11 |
| daily 26:21 | demeanor | 5:1 16:7 | employ 32:4 | **F** | 39:21 | 41:17,18 | 56:22 |
| 27:18 | 67:4 | DOMER | employer | F 1:16 2:17 | 50:14 68:5 | 43:5,18 | 63:11,19 |
| damages | deny 72:16 | 2:16 55:4 | 64:20 | 75:1 | 72:14,17 | frustration | 65:21 |
| 63:22,23 | department | 72:10 | employment | face 28:23 | 74:1,5,6 | 59:3,16 | 66:20 |
| Darby 25:4,6 | 2:15 29:11 | door 28:16 | 16:12 | faces 29:2 | finish 5:12 | full 6:15 | 72:10 |
| date 7:24 | deponent | 28:16 33:5 | energy 56:4 | fact 33:17,20 | first 3:15 4:3 | 42:19 | 73:20 |
| 41:12 | 75:6,9 | 41:17,18,19 | envelope | 33:21 71:2 | 5:6 10:7 | fully 61:20 | goings 36:13 |
| 42:21,22,24 | deposition | 43:5,19 | 43:6,7 47:3 | 73:24 | 11:5,9 | further 68:17 | good 5:1,2 |
| 44:5 72:3 | 1:14 5:5 | 44:2 60:6 | envelopes | facts 5:23 | 19:12 | | 66:19 75:3 |

Barrington Whyte
December 12, 2019

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **grandmother** | 66:23 67:5 | 60:20 | **interfere** | **Kennedy** | 21:22 32:3 | 36:12 | **M** 2:9,10 |
| 18:17,18 | 67:22 68:3 | 61:20 | 71:16 | 1:16 2:17 | 68:9 | **lived** 7:13 | **MAC** 53:15 |
| 19:8,20 | 68:11,21 | **Hughes** 25:9 | **interrogato...** | **kept** 45:23 | **known** 20:13 | 8:14,19 9:7 | 54:5 |
| **grandson** | 69:3,16 | 25:17 | 3:15 10:8 | 46:5 | **kosher** 48:18 | 9:9,20 13:4 | **machine** |
| 19:10 | 70:2,11,15 | **hurting** 63:9 | 11:9 12:2 | **kin** 75:15 | | 13:23 14:9 | 53:15,24 |
| **grocery** 53:5 | 70:18,20 | | 12:22 | **kind** 21:6 | **L** | 14:13,18,19 | 54:5,6 75:9 |
| 53:10 | 71:6,11,19 | **I** | **interrogato...** | 27:23 | **Landman** | 24:19,21 | **main** 41:4 |
| **guaranteed** | 72:4,13 | **ideas** 23:10 | 13:1,6,10 | 40:23 | 1:19 75:19 | 25:4,14,16 | **making** 73:3 |
| 17:22 | 73:6,19 | **identification** | 13:12 | 43:22 | **Lane** 1:23 | **lives** 7:21 8:9 | **mark** 30:9 |
| **guardian** | 74:1 | 10:9 30:14 | 14:16 | 57:18 61:8 | 25:6 | **living** 9:8 | 42:9 |
| 20:22 | **HASSAN** | **Identify** | 56:23 57:1 | 63:4 | **language** | 26:22 | **marked** 10:8 |
| **guess** 5:24 | 1:10,10 | 63:21 | 57:4,5,19 | **kindergarten** | 22:14,15,17 | 27:18 | 10:14,21 |
| 6:7 39:18 | **head** 5:9 45:9 | **impair** 6:12 | 58:4,12,13 | 20:17 | **Lansdowne** | **located** 16:18 | 11:2 30:14 |
| 42:18 | 45:12,13 | **important** | 58:17,22 | **know** 5:6,20 | 24:22 | 16:20 | 30:18 31:8 |
| 57:17 69:4 | 63:7,9 | 5:21 | 59:8 63:20 | 5:21 6:2,2 | **lastly** 56:4 | **locations** 7:8 | 39:13 |
| **gun** 51:10,12 | **headache** | **include** 30:24 | 63:24 | 7:21 8:18 | **late** 60:4 62:9 | **log** 71:24 | 52:19 |
| 51:16 | 63:7 | 64:1 | **involvement** | 9:19 10:22 | **LAW** 2:3,9 | **long** 8:14,18 | 56:16 |
| | **hear** 20:11 | **included** | 8:24 54:17 | 11:14 | 2:15 | 15:4,12 | 63:17 |
| **H** | 21:22,23 | 52:23 | **Irregardless** | 16:11,13,15 | **lawsuit** 9:4 | 16:10,21,23 | **Market** 2:4 |
| **H** 3:12 | 36:24 | **includes** | 34:2 | 16:17,19 | 24:15 | 36:1 40:3 | 2:10 |
| **hand** 10:13 | **hearing** | 39:21 | **irritating** | 17:11,16,19 | **lawyer** 41:6 | 71:16 | **massage** |
| 10:17 | 21:21 | **including** | 40:24 | 17:21 18:7 | 65:2,4,5 | 72:20 | 27:23 |
| 60:14 | **heavier** 60:20 | 68:8 | | 19:3 20:4 | **leave** 38:11 | **longer** 67:11 | 52:24 |
| 75:17 | **held** 1:15 | **income** 64:4 | **J** | 20:15,19,21 | 38:13,21,23 | **look** 10:20 | **matter** 73:15 |
| **handed** 43:19 | 10:3 54:19 | **increased** | **JEWELL** 1:8 | 21:11 | **left** 38:10,19 | 30:22 | 30:22 |
| **happened** | 55:8 66:9 | 60:9 61:9 | **job** 15:1 | 22:10,16,19 | 47:16 | 35:15 | 60:1 63:1 |
| 28:3 45:18 | **helping** 26:13 | **indicated** | 16:14 17:5 | 25:5 26:6 | 48:17 49:6 | 39:14,22,24 | **meals** 27:1,15 |
| 45:21 46:3 | **helps** 57:14 | 63:8 75:5 | 35:23 | 26:15,24 | 60:2 62:7 | 42:11 | 62:7 |
| 46:13 | **history** 28:1 | **indication** | 37:17,20 | 27:2 28:1,3 | **leg** 27:24 | 48:18 | **mean** 6:22 |
| 64:23 | **hold** 44:14 | 22:11 | 38:6,8,10 | 34:6 35:4 | 52:24 | 56:17,18,18 | 19:8,16 |
| **happy** 42:8 | **home** 9:17 | **inducting** | 39:5 53:18 | 35:10 36:7 | **legal** 20:21 | 63:19 69:8 | 41:7,8 |
| 72:20 | 24:18 | 23:16 | 54:19,22 | 36:10,15 | **legs** 27:23 | 70:8,14,21 | 69:11 |
| **hard** 52:5 | 25:16 26:7 | **information** | **jobs** 15:21,24 | 40:19,23 | **length** 62:1 | 71:20 | 72:13 |
| **Harper** 2:16 | 26:9,10,11 | 11:18 12:1 | 53:20 | 42:7 43:3 | **let's** 39:12 | **looked** 43:10 | 73:23 |
| 3:8 4:6,21 | 32:22 36:5 | 13:15,22 | **John** 1:16 | 43:16 | 56:18 60:9 | 44:15 | **means** 32:21 |
| 4:22 9:23 | 36:15,19,21 | 31:17 33:2 | 2:17 | 44:12 | **life** 19:16 | 61:23 | **medical** 23:2 |
| 10:12,16,19 | 37:5,20,23 | 33:3,6,9 | **JOSHUA** | 45:14 | 52:23 | **looking** 28:8 | 26:17 |
| 11:24 12:7 | 38:7,8,18 | 40:15,20 | 2:16 | 46:23 48:2 | **light** 60:6 | 28:13 42:6 | **meeting** |
| 12:11,17 | 42:3 50:22 | 41:6 54:21 | **JOSHUA....** | 48:4,5 49:1 | 62:17,20,24 | 45:12 | 19:16 |
| 14:7 23:3 | 51:3 58:24 | 58:3 59:7 | 2:20 | 49:24 | **Lillian** 19:24 | 56:15 73:8 | **Megan** 2:16 |
| 23:15,24 | 60:1 61:17 | 64:8 | **July** 15:16,18 | 50:13,14 | **limitations** | **looks** 28:12 | 4:22 |
| 24:1,5,7 | 62:9,13 | **informed** | 15:19 17:4 | 51:3,7,9 | 20:6,10 | **lose** 46:8,10 | **MEGAN.H...** |
| 30:9,17,23 | **hours** 17:19 | 58:4 | 29:20 30:1 | 54:9,11 | 28:2 67:21 | **lost** 64:4 | 2:19 |
| 31:6 33:14 | 35:7,13,16 | **ingest** 6:11 | 30:4,7 | 55:13 | 68:10 | **lot** 65:10,11 | **members** |
| 33:20,24 | 35:19 | **inside** 41:18 | 37:17 39:9 | 56:24 | **line** 32:9 | **lucky** 37:2 | 16:8 |
| 34:7,16,17 | 38:14 | 44:8 47:7 | **June** 40:7,7,7 | 59:11,15 | 68:23 | **Lyndel** 1:4,6 | **men** 22:10 |
| 35:10,18 | **house** 28:19 | **instructions** | 44:21 | 61:17 | **lit** 61:23 | 8:11 13:19 | **mental** 59:4 |
| 42:6,14 | 29:4,23 | 5:4 | 46:13,16,17 | 62:20 | **little** 11:21 | 18:15 | 59:16 |
| 47:20,24 | 36:17 44:8 | **intend** 42:9 | 47:6 50:19 | 63:10 | 15:23 | 25:11,14 | **mention** 9:9 |
| 48:1 49:20 | 44:22 | **interacted** | 50:20,20 | 64:15 65:3 | 34:15 | 32:19 43:1 | **mentioned** |
| 49:23 50:4 | 46:11 47:7 | 67:15 | | 65:3,6 | 51:13 | 58:9 66:17 | 7:17 37:21 |
| 50:10 51:2 | 48:16 49:4 | **interest** 5:17 | **K** | 68:24 | 52:21 | 67:2 | 53:23 |
| 55:10 57:8 | 53:8 55:14 | **interested** | **keep** 5:8 | 72:24 73:7 | 55:12 63:7 | | **method** 22:12 |
| 57:12,16 | 56:11 | 75:16 | 65:15 | **knowledge** | **live** 24:24 | **M** | **Michelle** 1:19 |

Barrington Whyte
December 12, 2019

Page 4

| | | | | | | |
|---|---|---|---|---|---|---|
| 75:19 | neither 75:14 | 73:17 | 65:9,22 | originals | Pennsylvania | 2:7,13 9:3 |
| microwave | never 19:10 | Notices' 59:2 | offices 2:3,9 | 70:19 73:1 | 1:3,18,21 | 13:19 14:2 |
| 60:1 | 49:13 63:2 | noticing 60:8 | 69:11 | outcome | 1:23 2:5,11 | Plaintiff's |
| mind 71:15 | Newports | number 3:14 | official 22:13 | 75:16 | 2:18 6:20 | 10:5 11:7 |
| minute 66:5 | 62:4 | 27:9 65:17 | 22:15 | outright | people 61:21 | plan 27:2,16 |
| misunderst... | NEWTOWN | numbers | 75:17 | 72:17 | period 15:22 | 27:16 |
| 54:3 | 1:23 | 53:16 | okay 5:11 6:8 | outside 49:4 | 29:8,12 | 52:24 |
| moment | night 17:8 | nursing 26:7 | 6:15 7:2,5 | overall 67:4 | person 51:19 | pleading |
| 39:22,24 | 36:1 37:3,5 | 26:9,10,11 | 8:9,21 9:7 | oversees | 52:15,16 | 33:19 |
| Monday | 37:19,22 | NY 1:24 | 9:17 12:11 | 26:17 | 66:2 | please 5:12 |
| 17:18 | 38:4 46:21 | | 12:24 | | personal 32:6 | 5:20 12:20 |
| 36:20,21 | 61:15 | ____O____ | 13:17 14:2 | ____P____ | 32:16 | 12:24 |
| 39:5 | nine 39:2 | Object 22:24 | 14:8 15:1 | P 2:1,1 | personally | 30:10,22 |
| money 54:1,6 | NJ 1:24 | objected 12:6 | 15:15 | p.m 38:5 | 17:3 26:23 | 39:18,20 |
| 54:7 56:13 | Nods 5:9 | 12:8,10 | 18:18 20:5 | PA 1:24 | 34:22 | 58:17 |
| month 15:6 | normal 37:24 | objection | 20:9 21:11 | 13:14 | 43:24 | pocket 64:1 |
| 56:2,5,6 | normally | 12:14 | 23:24 | paced 63:2 | 49:15 | point 8:4 |
| 73:11 | 60:4,5 | 23:20 | 26:15 | page 3:4,14 | 69:19 | 20:16 29:9 |
| morning 17:7 | 62:16 | 33:11 34:5 | 27:21 28:6 | 11:6 13:1 | PFEsq@ifi... | 41:3 47:15 |
| 37:22 | Notary 1:20 | 35:8 47:19 | 28:18 | 31:19,20 | 2:6 | 48:3 51:18 |
| 38:11,16 | 75:2,21 | 50:24 67:5 | 32:20 | 39:12 57:4 | Philadelphia | 57:3 61:11 |
| 39:3 | notice 1:15 | 67:22 | 34:16 39:8 | 57:9,12 | 1:9,17 2:5 | 63:15 69:6 |
| mother 9:15 | 32:3 41:10 | 68:11 | 39:12 | 63:16 | 2:11,15,18 | pointed 52:1 |
| 18:4 19:24 | 41:11,15,20 | objections | 45:14 | paid 53:14 | 4:24 6:19 | posed 14:16 |
| 20:23 | 41:24 | 4:15 | 46:16 | 54:4,11,14 | 13:14 | position 67:2 |
| 26:13,14 | 42:23 43:8 | observe | 47:24 | pain 16:16 | 25:24 26:1 | 67:20 |
| 54:23 55:1 | 43:10,11,12 | 20:10 | 49:11,16 | 27:23 | 26:3 32:5 | possession |
| 67:9,11 | 43:14,17 | 41:23 44:6 | 50:3,15 | paper 43:1 | 32:15 33:8 | 49:7 69:10 |
| motions 71:4 | 44:1,5,6 | 44:9,21 | 51:18 | 43:21 52:1 | 34:18 | 69:18 |
| move 74:7 | 45:15,19 | 69:19 | 52:16 | 52:11 | 58:24 | possible 5:18 |
| Municipal | 46:3,13,18 | observed | 53:19 54:3 | paragraph | Philadelphi... | 5:22 |
| 1:15 2:17 | 49:12,13,18 | 41:16,20 | 55:16 | 31:23 32:1 | 10:7 11:9 | possibly |
| | 49:22 | 42:23 43:9 | 57:10,15 | 39:14 | Philly 26:8 | 33:15 34:1 |
| ____N____ | 50:22 51:4 | 43:16 | 60:17 62:7 | parents | phone 20:24 | post 59:14 |
| N 2:1,16 3:2 | 51:24 | 49:13 | 65:20 66:4 | 18:11 | 21:2,7,9,10 | posted 40:11 |
| name 4:22 | 52:13 | 62:23 | 67:13 | 19:23 | 27:9,10,12 | 40:16 41:7 |
| 6:15 15:10 | 60:14,15,16 | obtaining | 68:16 69:3 | part 32:14 | 64:19 | 41:18 |
| 16:16 20:1 | 60:18,21 | 54:18 | 69:13 | particular | photos 48:20 | 42:23 44:1 |
| 22:2 26:4 | 61:6 65:1,2 | occasion 43:2 | old 17:21 | 16:5 45:7 | physical | 44:22 |
| 66:3,3,15 | 75:5 | occasions | older 18:1 | particularly | 69:16 | 49:13,19,20 |
| narrow 6:3 | noticed 60:6 | 32:7,17 | once 27:24 | 53:7 | physician | 49:21 |
| natural 5:15 | 63:3 | 33:3 34:23 | 30:21 | parties 4:12 | 26:16 | 50:23 51:5 |
| nature 16:8 | notices 33:5 | 59:14 | open 35:24 | party 75:15 | picked 45:6 | 59:1 |
| 58:19 | 40:11,16 | 65:20 | 36:9 | passed 62:18 | 60:19 | posting 50:1 |
| near 6:24 | 45:3 47:15 | occurring | opinion 67:6 | 67:12,13 | pictures 70:7 | potential |
| 26:9 | 48:3,6,6,9 | 60:22 | 67:23 | passing 30:18 | piece 52:11 | 64:4 |
| neat 48:18 | 48:21 49:6 | October | 68:12 | pay 55:13,16 | pieces 24:10 | Predrag 2:3 |
| need 12:18 | 50:1 59:1 | 15:15,18,19 | opportunity | paychecks | 43:20 | 2:4 66:16 |
| 34:14 | 59:14 | 17:3 29:19 | 10:22 11:1 | 53:20 | pill 63:8 | prepared |
| 42:12 50:2 | 62:14 | 30:1,3,6 | 31:7 56:19 | paying 56:10 | pipe 29:9,10 | 38:21 |
| 72:15,15 | 63:11 65:7 | 37:16 39:9 | Oral 1:14 | payment 56:7 | place 75:5 | preparing |
| needed 16:4 | 69:8,17,23 | odd 15:23 | orders 32:10 | pays 55:14 | placed 32:2 | 27:15 |
| 64:20 | 69:24 | office 31:13 | original | PECO 56:4 | 41:9 | prepped 6:10 |
| needs 54:7 | 71:15 | 64:2,6,8 | 70:17 | peeked 52:2 | plaintiff 1:6 | prerogative |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | 72:18 |
| | | | | | | present 13:5 |
| | | | | | | 14:19 |
| | | | | | | presumes |
| | | | | | | 47:22 |
| | | | | | | pretty 40:3 |
| | | | | | | 43:4 46:24 |
| | | | | | | 54:23 62:9 |
| | | | | | | 66:19 |
| | | | | | | previously |
| | | | | | | 56:20 |
| | | | | | | primary |
| | | | | | | 26:16 |
| | | | | | | prior 9:12,20 |
| | | | | | | 15:7 71:14 |
| | | | | | | privilege |
| | | | | | | 11:23 |
| | | | | | | privy 73:14 |
| | | | | | | probably |
| | | | | | | 7:19 8:20 |
| | | | | | | 19:18 35:3 |
| | | | | | | 36:9 37:1 |
| | | | | | | 37:24 38:3 |
| | | | | | | 39:2 50:16 |
| | | | | | | 60:5,24 |
| | | | | | | 61:24 |
| | | | | | | 65:19 |
| | | | | | | problem |
| | | | | | | 70:23,24 |
| | | | | | | Proc 1:8 |
| | | | | | | process 32:5 |
| | | | | | | 45:11 |
| | | | | | | 59:19 |
| | | | | | | product |
| | | | | | | 11:22 |
| | | | | | | 33:12,23 |
| | | | | | | Professional |
| | | | | | | 1:20 |
| | | | | | | proof 74:3 |
| | | | | | | property 8:3 |
| | | | | | | 8:6,15,19 |
| | | | | | | 9:8,9,21 |
| | | | | | | 14:20 28:7 |
| | | | | | | 28:12 |
| | | | | | | 29:13 |
| | | | | | | 32:23 |
| | | | | | | 34:24 |
| | | | | | | 35:22 |
| | | | | | | 38:19 |
| | | | | | | 40:12,17 |
| | | | | | | 41:12 |
| | | | | | | 42:23 44:6 |
| | | | | | | 49:14,19,22 |
| | | | | | | 51:20 |

Barrington Whyte
December 12, 2019

55:16
59:13
60:22 61:2
**provide**
13:15
40:14 48:6
58:3 59:7
72:20
**provided**
13:22 48:9
70:10 72:2
**providing**
11:17
12:21
31:16
71:15
**province**
23:1,6
**public** 1:20
36:22 75:3
75:21
**pulling** 65:15
**purpose** 31:5
46:9
**purposes**
10:9 30:15
**pursuant**
1:15 75:4
**put** 24:17
33:5 41:5
44:12 46:7
46:11,15
52:1 53:20
53:23 54:1
61:22
73:11,17
**putting** 41:1

—— **Q** ——
**quarter**
61:22
**question** 4:16
5:13,19 6:3
6:4,6,9
12:16,19
13:3 14:16
23:6,8,22
24:6 34:15
47:20,22
58:7
**questioning**
68:23
**questions** 5:8
6:1 23:17

50:12
52:21 53:4
66:14,22
**quite** 64:11

—— **R** ——
**R** 2:1 75:1
**re-form** 6:3
**reached** 57:1
**read** 22:19,20
31:24
39:18,20
**reading** 4:13
**ready** 10:17
**really** 17:14
17:22
19:10
25:22
40:24 41:2
45:11
65:15
**recall** 41:24
64:22 65:8
**recess** 50:6
**recollection**
19:13
**record** 5:10
5:16,18,22
6:16 9:24
10:3 23:21
35:14
47:23 55:5
55:8 64:16
66:5,9,15
69:4,7 74:9
75:13
**recorded**
75:9
**recording** 5:7
**records**
64:18
**REDIRECT**
68:19
**refer** 8:3 11:5
12:24
32:14
52:18
**referring** 8:6
13:19 58:9
**refers** 64:12
**regard** 5:4,19
**regarding**
40:16
**regards**

68:22
**regular** 21:9
21:10
28:16 36:2
**regularity**
36:19
**regularly**
17:16
**related** 19:4
25:11
63:10
**relationship**
18:8,14,15
**remember**
19:12
25:22,24
26:4 64:24
65:21 66:1
66:2,3 70:3
**remembering**
41:4
**removed**
73:10
**repeat** 12:15
33:11
**rephrase**
34:15
**reporter** 1:20
5:7 52:6
**Representing**
2:7,13,21
**request** 69:6
71:13,24
72:14,15
73:3
**requested**
12:2
**requesting**
69:15
**reserved** 4:17
**reside** 7:2,4,5
7:8
**resided** 6:23
13:7,8,13
**residence**
32:6,16,21
**residing** 9:14
9:20
**respect** 9:4
21:24 22:5
71:24
**respective**
4:12
**responding**

5:13
**response** 6:1
6:5 13:1,12
58:22 59:8
63:24
64:10
71:23
**responses** 5:8
10:6 11:7
12:22 67:3
**restate** 12:18
**restaurant**
16:14,15,17
**restroom**
50:3
**result** 57:22
59:17 64:5
**resumed** 50:8
**retained** 3:17
**review** 10:23
11:2 31:8
56:20
**right** 23:24
28:17 31:3
34:8 40:14
46:2 52:18
56:15
57:11,17
65:8 72:4
73:22
**ring** 25:7
48:23 49:1
**room** 1:17
2:18 28:18
29:1 43:14
45:16,24
46:20,22
62:19
**rules** 66:21
**rush** 10:24
**Ruskin** 25:6

—— **S** ——
**S** 2:1 3:12
**sake** 31:2
**sale** 60:23
61:3
**saw** 41:11
45:5,8,21
46:3,14,17
51:9,12,22
60:14
**saying** 18:20
36:8 51:11

71:18
**says** 11:7
13:2,13,18
32:1,15,21
33:7 42:15
57:20 58:7
58:16,23
63:21 64:1
**schedule** 17:5
17:12,17
**scheduled**
16:2,3
**schick** 19:11
**school** 20:15
**scope** 6:4
33:23
**screen** 28:16
41:19
**seal** 75:17
**sealing** 4:13
**second** 3:16
9:24 43:14
45:5,11,19
55:5 60:13
60:16
63:20
**section** 26:2
32:8,9
**security** 49:3
**see** 11:10
13:2,9 21:3
31:20
32:12 33:7
34:21
39:16 43:6
49:24
57:20,23
58:12,14,20
59:4 62:19
64:8 70:6,6
70:17 73:6
74:4
**seeing** 68:24
**seek** 63:22
**seen** 11:12
31:14
52:14
62:17
69:21
70:15
72:24
**sending** 32:5
32:15 33:8

**sense** 16:10
36:13,15
**sentence** 32:1
32:12
39:19,21
40:1,15
**separate** 32:7
32:17 33:2
59:1,13
**series** 50:11
**Serve** 15:11
15:12
**service** 29:5,7
**Services** 1:16
2:17
**SERVING**
1:24
**set** 3:15 10:8
11:9 27:2
58:18 60:1
**seven** 17:9
28:15
38:13,15,16
45:13
**shaking** 45:8
45:13
**sheets** 72:1
**Sherbrook**
25:3
**sheriff** 1:9
10:6 11:8
24:16
**sheriff's**
31:13
57:22
60:23 61:3
**sheriffs** 32:6
32:16 33:6
33:8 34:19
35:21
58:24
59:12
**shield** 51:13
51:17,23
52:11,15
**shopping**
53:5,10
**shorthand**
75:10
**show** 38:2
**showed** 51:22
52:2 61:7
**showing**
51:15 52:7
52:13

62:15
**side** 43:20
**sidewalk** 28:8
28:9
**sign** 22:8,13
22:15,16
**significance**
7:16
**signing** 4:13
**signs** 62:22
**silver** 43:20
**similarity**
51:15 52:1
**single** 65:16
**sister** 18:12
**sitting** 52:9
**situation**
59:19
**six** 15:13 25:1
28:15 32:2
32:7,17
33:2 34:23
40:8 59:1
59:13
**smelling**
60:20
**smoke** 60:24
61:21
**smoked**
61:20
**smokes** 59:20
**smoking**
59:21
60:10,10,19
61:3,7,18
62:23
63:15
**sold** 60:22
61:2
**somebody**
36:16
51:12
**son** 18:22,23
**sorry** 6:22
29:22
47:11
69:14
**sort** 6:5 20:6
21:6 22:12
26:21
**South** 6:19
6:21,23 7:6
7:9,12,17
7:21 8:6,9

13:13 26:3
26:7 28:7
**speak** 5:23
21:18
65:24 66:6
72:11
**speaking**
13:21,24
17:2 21:15
21:16
**special** 21:6
66:16
**specific** 50:18
53:4
**spending**
64:6
**spent** 64:2
**spirit** 71:21
**squiggly** 32:9
**standing** 34:5
75:3
**stands** 32:9
**start** 5:3,13
5:14 53:22
60:9 61:7
**started** 59:18
60:10
**starts** 57:4,6
**state** 6:15
13:3 14:17
42:22 53:3
**stated** 13:5
42:12 53:3
**statement**
34:18
**statements**
24:17
**states** 1:2
13:3 14:19
30:12
**stating** 14:22
**stay** 32:10
35:24
52:3 64:4
**staying** 9:15
**stays** 36:9,10
**step** 66:5
**STEPHEN**
2:9,10
**Stephen@d...**
2:12
**steps** 28:14
28:15
**stipulated**
4:10

STREHLOW & ASSOCIATES, INC.
(215) 504-4622

Barrington Whyte
December 12, 2019

Page 6

| | | | | | | |
|---|---|---|---|---|---|---|
| **stipulations** 4:7 | **T** | **term** 41:8 64:10 | 51:19 55:2 55:19 | 68:10 | 32:18,20 34:9 67:20 | **W** |
| **stop** 64:3 | **T** 3:12 75:1,1 | **terms** 21:15 | **train** 27:8 | **understand...** 13:18 | **wait** 5:12 74:5 |
| **street** 2:4,10 | **table** 46:20 | 21:21 | **transcribed** 75:10 | 16:21 | **waiting** 71:22 |

| | | | |
|---|---|---|---|
| **works** 35:7 | 58:17 | 30:4,7 | **66** 3:9 |
| 35:11,23 | **1401** 1:16 | 37:17 39:9 | **68** 3:8 |
| 36:8 | 2:17 | 40:6,6,6,7,7 | **6936** 25:6 |
| **wouldn't** | **1425** 6:19,21 | 40:7 42:10 | |
| 46:7 51:11 | 6:23 7:12 | 42:16 | **7** |
| 59:23 | 7:17,21 | **2019** 1:12 | **7** 40:7 |
| **write** 22:1 | **146** 6:22 7:5 | 75:18 | **7th** 47:6 |
| **writing** 21:24 | 7:9 8:6,9 | **215** 1:24 | 50:20 |
| | 13:13 28:7 | **215-551-7109** | |
| **X** | **15** 8:20 14:13 | 2:11 | **8** |
| **X** 3:2,12 | 56:23 57:1 | **215-685-0503** | **80-90** 56:3 |
| | 57:5,7,18 | 2:19 | |
| **Y** | 58:13,23 | **24** 40:6 | **9** |
| **yeah** 7:10 | 59:8 | **24th** 42:21 | **9:00** 38:3,4 |
| 18:3 52:17 | **150** 56:6 | 44:1 45:19 | **9:45** 1:19 |
| 70:9 | **1515** 2:10 | 50:19 | |
| **year** 55:18 | **164** 25:3 | **25** 8:2 | |
| 69:1 | **17** 63:20,24 | **267-507-6084** | |
| **years** 8:16 | **1735** 2:4 | 2:5 | |
| 9:10,12 | **18** 40:6 | **27th** 75:18 | |
| 13:4,15,23 | **18-13098** 1:5 | | |
| 14:9,13,18 | **18000137** 1:9 | **3** | |
| 14:20,24 | **18940** 1:23 | **30** 3:16 13:15 | |
| 15:14 17:1 | **18th** 41:14,21 | 13:23 | |
| 25:1,20,23 | 41:24 42:4 | 14:20,23 | |
| 29:12 | 42:15,16 | 40:6 | |
| 54:19 | 43:9 45:15 | **30's** 17:24 | |
| **young** 19:15 | 45:17 | **30th** 44:4,6 | |
| | 49:12 | 46:2 50:19 | |
| **Z** | 50:19 | **360** 55:19 | |
| **Zalkin** 18:5 | **19102** 1:18 | **362** 32:8 | |
| 18:12,19,21 | 2:11,18 | **3750** 2:4 | |
| 19:1,21 | **19103** 2:5 | | |
| | **19139** 6:20 | **4** | |
| **0** | 13:14 | | |
| **04** 3:8 | **1983** 8:2 | **5** | |
| | **1st** 44:21 | **5** 40:7 | |
| **1** | 46:13 | **5:00** 36:2,3,6 | |
| **1** 13:6 40:7 | 50:20 | **504-4622** | |
| **10** 3:15 | | 1:24 | |
| **10:53** 50:7 | **2** | **54** 1:23 | |
| **100** 55:23 | **2** 13:2,10,12 | **580** 1:17 2:18 | |
| **11** 32:8 37:2 | 14:16 | **5813** 24:21 | |
| 37:5 38:1 | 31:19,21 | **5th** 46:16,17 | |
| 61:17 | 39:12 | 50:20 | |
| **11:05** 50:8 | **20** 17:1 54:19 | | |
| **11:30** 74:13 | **2017** 15:15 | **6** | |
| **116** 1:23 | 15:19 17:3 | **60's** 18:2 | |
| **12** 1:12 | 29:19 30:1 | **6045** 9:18 | |
| **1200** 2:10 | 30:3,6 | **62nd** 6:19,21 | |
| **13** 1:4 | 37:16 39:9 | 6:23 7:6,9 | |
| **14** 31:19,21 | **2018** 15:16 | 7:12,17,22 | |
| 57:4,8,18 | 15:19 17:4 | 8:6,10 | |
| 57:19 | 29:20 30:1 | 13:13 28:7 | |



**CITY OF PHILADELPHIA**
**LAW DEPARTMENT**
**TAX & REVENUE UNIT**

Megan N. Harper
Deputy City Solicitor
Direct Dial: (215) 686-0503
Electronic mail: Megan.Harper@phila.gov

August 23, 2019

**VIA E-MAIL AND FIRST-CLASS MAIL**

Stephen M. Dunne, Esq.
1515 Market Street, Suite 1200
Philadelphia, PA 19102

Co-Counsel: Predrag Filipovic, Esq.
1735 Market Street, Suite 3750
Philadelphia, PA 19103

Re:    Toppin v. Williams, et al., Adv. Pro. No. 18-00137 (MDC)

Dear Mr. Dunne and Mr. Filipovic:

Please find enclosed the Sheriff's Responses to Plaintiff's First Set of Interrogatories,

Request for Production of Documents, and Requests for Admission.

Very truly yours,

Megan N. Harper, Esq.
Deputy City Solicitor

cc:    David Offen, Esq., with enclosures (via email)

Municipal Services Building | 1401 JFK Blvd., Rm 580 | Philadelphia, PA 19102

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
----------------------------------------x
In re:                                   :
                                         :   In Chapter 13
LYNDEL TOPPIN,                           :
                                         :   Bankruptcy No. 18-13098 (MDC)
              Debtor.                    :
----------------------------------------x
----------------------------------------x
                                         :
LYNDEL TOPPIN,                           :
                                         :
              Plaintiff,                 :   Adv. Pro. No. 18-00137 (MDC)
                                         :
          v.                             :
                                         :
JEWELL WILLIAMS, SHERIFF                 :
OF THE CITY OF PHILADELPHIA and          :
ABDELDAYEM HASSAN a/k/a                  :
ABDELDYEM HASSAN,                        :
                                         :
              Defendants.                :
----------------------------------------x
```

## RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION, FIRST SET OF INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS <u>DIRECTED TO THE SHERIFF OF THE CITY OF PHILADELPHIA</u>

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure made applicable hereto pursuant to Federal Rules of Bankruptcy Procedure 7026, 7033, 7034 and 7036, the Defendant Jewell Williams, Sheriff of the City of Philadelphia (the "Sheriff"), by and through its undersigned counsel, hereby responds to the Requests for Admission, First Set of Interrogatories and Requests for Production of Documents Directed to the Sheriff of the City of Philadelphia by plaintiff, Lyndel Toppin (the "Plaintiff"), as follows:

## <u>GENERAL OBJECTIONS</u>

The Sheriff asserts these General Objections to Plaintiff's Requests for Admission, Interrogatories, and Requests for Production and incorporates them by reference into each.

1.    The Sheriff objects to the instructions to the extent they impose, or attempt to impose, any obligations upon the Sheriff that are inconsistent with and/or exceed the requirements of the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the applicable rules governing practice in the United States Bankruptcy Court for the Eastern District of Pennsylvania, or applicable case law.

2.     The Sheriff objects to each request that seeks information or documents protected by the attorney-client privilege, the attorney work-product doctrine and/or other applicable privileges or immunities, including but not limited to, executive privilege and deliberative process privilege. The Sheriff reserves the right to assert a privilege with respect to any such information, and further asserts the right to request the return of all privileged information that may be inadvertently disclosed.

3.     The Sheriff preserves all evidentiary objections and, accordingly, no waiver by the Sheriff of any objection is to be implied from these responses, or the information disclosed. To the extent that any response might arguably waive an otherwise assertible objection or claim of privilege, immunity, or confidentiality, such waiver shall be limited only to the specific subject matter of the response and shall not extend to any other matter, or any further discovery request. Specifically, by responding to these or other discovery requests, the Sheriff is not admitting that the subject matter of the response is relevant to the pending action or not protected by the attorney-client privilege, attorney work-product doctrine, or other applicable privileges or immunities.

4.     The Sheriff objects to each request to the extent it calls for information that is either irrelevant to the subject matter involved in the pending action, or not reasonably calculated to lead to the discovery of admissible evidence.

5.     The Sheriff objects to each request on the basis that it is overly broad, unduly burdensome, intentionally harassing, and oppressive.

6.     The Sheriff's responses are based only upon information and documents reasonably available and known to the Sheriff and their counsel after a reasonably diligent investigation and search of its records and files. The Sheriff reserves the right to supplement or modify any and all of its objections and responses if additional information is obtained or otherwise becomes available.

7.     A statement that the Sheriff will produce documents in response to any request herein does not mean that such documents exist, but only that, to the extent such documents do exist and are not subject to any General Objection, the Sheriff will produce non-privileged, responsive documents that are identifiable after a reasonable search.

8.     The Sheriff objects to the requests to the extent that they seek documents and information outside of the Sheriff's possession, custody, or control. The Sheriff objects to searching for, or producing, documents within the control or possession of any third-party.

Without waiving the foregoing General Objections, the Sheriff responds to Plaintiff's Requests for Admission, First Set of Interrogatories and Requests for Production of Documents as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

1.     Admit that Your [sic] responsible for managing all tax sales within Philadelphia County in an in an ethical, honest, transparent and respectful manner while offering dignity to all involved in the procedure.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objection and the General Objections, the Sheriff responds as follows: Admitted.

2.     Admit that Your [sic] committed to serve and protect the lives, property and rights of all people within a framework of high ethical standards and professional conduct at all times.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waving the foregoing objection and the General Objections, the Sheriff responds as follows: Admitted.

3.     Admit that an owner of a property in Philadelphia has a 9 month right of redemption under the Philadelphia Tax Act (53 P.S. § 7293) in connection with a property sold at tax sale?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

4.     Admit that the purchaser at a sheriff's tax sale does not obtain title to the property until the passage of the redemption period?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

5.     Admit that the owner of a property sold at tax sale retains the right of possession during the statutory period?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably

calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

6.     Admit that a purchaser of a sheriff's tax sale has no claim to possession or right to ejectment against an owner during the redemption period?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

7.     Admit that executing on a Writ of Possession during the statutory period would be a violation of your commitment to protect the property rights of Philadelphians?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

8.     Admit that executing on a Writ of Possession during the statutory period would be a dereliction of your responsibility to manage tax sales within Philadelphia County in an in an ethical, honest, transparent and respectful manner.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

9.     Admit that You acknowledged the deed in Abdeldayem Hassan's name on November 9, 2017?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Admitted.

10.    Admit that You recorded the deed in Abdeldayem Hassan's name on November 21, 2017?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. It is admitted only that the deed in Abdeldayem Hassan's name was recorded on November 21, 2017.


11.    Admit that evicting an owner of a property 2 months into the 9 month statutory redemption period is illegal?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.


12.    Admit that the owner's redemption period and right to possession expired on August 10, 2018?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.


13.    Admit that the contact details for the purchaser in the Sheriff's computer system states as follows:

      a.    Abdeldayem Hassan
      b.    309 Barker Avenue, Lansdowne, PA 19050
      c.    484-557-1737

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. It is admitted only that there is a computerized record from the Sheriff's Office that reflects the foregoing address as part of the contact details for Abdeldayem Hassan. It is specifically denied that the record includes the phone number stated above.


14.    Admit to [sic] You telephoned Hassan at this phone number: 484-557-1737?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as vague and ambiguous, overly broad and unduly burdensome. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Unknown. After reasonable inquiry of the available information, the Sheriff is unable to admit or deny this request. The Sheriff specifically reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure made applicable hereto pursuant to the Federal Rules of Bankruptcy Procedure.

15. Admit that You received notice of the Lyndel Toppin bankruptcy on May 8, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Admitted that the Sheriff's Real Estate Unit received notice of Lyndel Toppin's bankruptcy on or about May 8, 2018.

16. Admit that You received notice of the Lyndel Toppin bankruptcy from the Bankruptcy Noticing Center at the following mailing address: Philadelphia Sheriff's Office, 100 S. Broad Street, 5th Floor, Philadelphia, PA 19110?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. It is admitted only, upon information and belief, that on May 31, 2018, the Bankruptcy Noticing Center mailed a Meeting of Creditor Notice for Lyndel Toppin's bankruptcy to the address set forth in the request. After reasonable inquiry, the Sheriff is without sufficient information to admit or deny the remainder of the request.

17. Admit that Your [sic] or your Attorney at the Philadelphia Law Department received notice of the Lyndel Toppin bankruptcy from the Bankruptcy Noticing Center at bankruptcy@phila.gov on May 30, 2018 at 2.06 AM.

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Admitted in part, denied in part. It is admitted only, upon information and belief, that the City of Philadelphia Law Department received notice from the Bankruptcy Noticing Center at bankruptcy@phila.gov on the date and at the time set forth in the Request.

18. Admit that You received a fax at 215-686-3555 from Stephen Dunne on May 8, 2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. It is admitted only that on May 8, 2018 a fax was transmitted to a fax number for the Civil Enforcement Unit of the Sheriff's Office, which had a subject line "Notice of Bankruptcy Case Filing – Book/Writ1707-502." After

reasonable inquiry, the Sheriff is without sufficient information to admit or deny the remainder of the request.

19.    Admit that You received a fax at 215-686-3971 from Stephen Dunne on May 8, 2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Admitted.

20.    Admit that You received a telephone call at the following telephone number (215 686 3565) from Stephen Dunne (215-551-7109) notifying You of the Lyndel Toppin bankruptcy on May 7, May 9, May 10, May 15, and June 7 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Unknown. After reasonable inquiry of the available information, the Sheriff is unable to admit or deny this Request. The Sheriff's Office does not maintain a log of incoming calls and there are no records documenting that a call was received from either Stephen Dunne or 215-551-7109.

21.    Admit that You received a telephone call from Stephen Dunne at 215-551-7109 on May 9, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Unknown. After reasonable inquiry of the available information, the Sheriff is unable to admit or deny this Request. The Sheriff's Office does not maintain a log of incoming calls and there are no records documenting that a call was received from either Stephen Dunne or 215-551-7109.

22.    Admit that You received a fax at 215-686-3555 from Stephen Dunne on May 10, 2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. It is admitted only that on May 10, 2018 a fax was transmitted to fax number 215-686-3555, which had a subject line "Notice of Bankruptcy." After reasonable inquiry, the Sheriff is without sufficient information to admit or deny the remainder of the request.

23.    Admit that You received a fax at 215-686-3971 from Stephen Dunne on May 15, 2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Unknown. After reasonable inquiry, the Sheriff is without sufficient information to admit or deny this Request.

24.     Admit that You received a fax at 215-686-3555 from Stephen Dunne on June 7, 2018 containing a Notice of Bankruptcy Case Filing on behalf of Lyndel Toppin?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Admitted.

25.     Admit that You served a Notice to Vacate on Lyndel Toppin at 146 S. 62nd Street, Philadelphia, PA 19139 on May 18, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. Based upon available information, it is admitted only that the Sheriff posted a Notice to Vacate at the property located at 146 S. 62nd Street, Philadelphia, PA 19139 on or about May 10, 2018.

26.     Admit that You served a Notice to Vacate on Lyndel Toppin at 146 S. 62nd Street, Philadelphia, PA 19139 on May 24, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. Based upon available information, it is admitted only that the Sheriff posted a Notice to Vacate at the property located at 146 S. 62nd Street, Philadelphia, PA 19139 on or about May 10, 2018.

27.     Admit that You served a Notice to Vacate on Lyndel Toppin at 146 S. 62nd Street, Philadelphia, PA 19139 on May 30, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. Based upon available information, it is admitted only that the Sheriff posted a Notice to Vacate at the property located at 146 S. 62nd Street, Philadelphia, PA 19139 on or about May 10, 2018.

28.     Admit that You served an Eviction Notice on Lyndel Toppin at 146 S. 62nd Street, Philadelphia, PA 19139 on June 1, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. Based upon available information, it is admitted only that the Sheriff posted an Eviction Notice at the property located at 146 S. 62nd Street, Philadelphia, PA 19139 on or about June 1, 2018.

29.     Admit that You served an Eviction Notice on Lyndel Toppin at 146 S. 62nd Street, Philadelphia, PA 19139 on June 5, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. Based upon available information, it is admitted only that the Sheriff posted an Eviction Notice at the property located at 146 S. 62nd Street, Philadelphia, PA 19139 on or about June 1, 2018.

30.   Admit that You served an Eviction Notice on Lyndel Toppin at 146 S. 62nd Street, Philadelphia, PA 19139 on June 7, 2018?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: Denied as stated. Based upon available information, it is admitted only that the Sheriff posted an Eviction Notice at the property located at 146 S. 62nd Street, Philadelphia, PA 19139 on or about June 1, 2018.

31.   Admit that serving a Writ of Possession in an active bankruptcy case is a violation of the automatic stay?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as an improper request for an admission as to a legal conclusion regarding an ultimate issue in this case. The Sheriff further specifically objects to this request as irrelevant, outside the scope of matters allowed under Rule 36 of the Federal Rules of Civil Procedure and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: Denied as an improper request.

## RESPONSES TO INTERROGATORIES

1.     State the name, address, title and job description of each officer, director and employee (whether present or former) of defendant Sheriff who had any contact with plaintiff or his bankruptcy attorney regarding the Writ of Possession during the time period May 8, 2017 through to the present.

   **RESPONSE:** Objection. The Sheriff specifically objects to this request as overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Sheriff further objects to this request as vague and ambiguous with respect to the use of the term "contact." Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows:

          Inspector Monte Guess
          Deputy Jetaria Taylor
          Philadelphia Sheriff's Office
          Civil Enforcement/ Investigations Units
          215-686-3532

2.     State the name, address, title and job description of each officer, director and employee (whether present or former) of defendant Sheriff with supervisory responsibility over the plaintiff's property during the time period May 8, 2017 through to the present.

   **RESPONSE:** Objection. The Sheriff specifically objects to this request as vague and ambiguous. Subject to, and without waiving the foregoing objection and the General Objections, the Sheriff responds as follows: No one at the Sheriff's Office has "supervisory responsibility" over 146 S. 62nd Street, Philadelphia, PA 19139.

3.     In connection with the plaintiff's bankruptcy, did you contract with any vendor management groups or third-party providers, including but not limited to BANCO; ELECTRONIC BANKRUPTCY NOTICING, to provide notice of bankruptcy cases to the Sheriff? If yes, state:

   (a)     The name and address of each vendor or other service provider who has rendered service to/for you in connection with obtaining notice of bankruptcy cases.
   (b)     The dates such service was rendered;
   (c)     The general nature of the service rendered;

   **RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: The Sheriff does not contract with any vendors or third-party providers to provide notice of bankruptcy cases to the Sheriff.

4.     In connection with the plaintiffs bankruptcy, identify each Sheriff employee who was involved in reviewing, servicing, administering, managing, or executing on the Writ of Possession, Notice to Vacate, or the Notice to Evict and, in the form of a chronology, identify and

describe in detail and with particularity, the process, events, and circumstances under which the Sheriff handled each.

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows:

- Deputy Sheriff Jetaria Taylor posted the Notice to Vacate at 146 S. 62nd Street, Philadelphia, PA 19139, on May 10, 2018.

- On or about June 01, 2018, Deputy Taylor posted an Eviction Notice on the property.

- At all relevant times hereto, Inspector Monte' Guess oversaw the Sheriff's Civil Enforcement Unit.

- On or about June 07, 2018, Inspector Guess received the fax mailed to 215-686-3555 with the subject line "Notice of Bankruptcy Case Filing – 146 S. 62nd Street, Phila, PA 19145."

- Inspector Guess noted "6/7/18, Bankruptcy filed, Inspector Guess" on the face of the Writ of Possession and noted "Bankruptcy filed" in the possession log book next to 146 S. 62nd Street, Phila, PA 19145.

- On June 25, 2018, Inspector Guess entered a Service Event Report in JEWELL noting the receipt of the bankruptcy notice and the actions he took to stay the eviction process.

5.  Have you, or has anyone on your behalf, received any report from any employee, vendor, contractor, sub-contractor, agent, representative or other service provider concerning the plaintiff's bankruptcy? If so, state:

(a)  The date of each;
(b)  The name and address of the person from whom each was received and of the person who has custody of each;
(c)  Whether each such report was written or oral.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as vague and ambiguous. Subject to, and without waiving the foregoing objection and the General Objections, the Sheriff responds as follows: No.

6.  Identify and describe each document known to the Sheriff, which is related to or contains information about the allegations in the Complaint?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: In addition to those documents produced by Plaintiff:

- See the Service Event Report, dated 05/10/2018, attached to the Sheriff's responses to document requests;

- See the Service Event Report, dated 06/25/2018, attached to the Sheriff's responses to document requests;
- See the Writ of Possession attached to the Sheriff's responses to discovery requests;
- See the page from the possession log book attached to the Sheriff's responses to discovery;
- See the fax from Stephen Dunne to 215-686-3971 dated 5/8/2018, attached to the Sheriff's responses to document requests; and
- See the fax from Stephen Dunne to 215-686-3555 dated 6/7/2018 attached to the Sheriff's responses to document requests.

7.    Identify all software applications that you use in connection with acknowledging, processing, identifying or flagging bankruptcy cases?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: The Sheriff uses the "JEWELL" system for recording notes including notes regarding notice of bankruptcy.

8.    Identify and describe any and all documents that describe, record, or establish your methods and techniques used to comply with the U.S. Bankruptcy Code and avoid Stay Violation?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: There are no documents that meet the description in this interrogatory.

9.    Identify and describe with particularity all training received by you and any other person involved in the plaintiff's bankruptcy case, including but not limited to:

(a)    The training content, timing, and duration
(b)    All documents and audio or visual materials used in such training and
(c)    Each person involved in providing such training.

**RESPONSE:** Objection. The Sheriff objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

10.    Identify all communications between the Sheriff and Lyndel Toppin?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows:

- Notice to Vacate, posted at the property on May 10, 2018.
- Eviction Notice, posted at the property on or about June 01, 2018.

11.    State the name, address, title and job description of each officer, director and employee (whether present or former) of defendant Sheriff who was working at the dates/times alleged in the Complaint whereby the plaintiff alleged that telephone calls and facsimiles were transmitted to the Sheriff?

**RESPONSE:** Objection. The Sheriff objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

12.    Identify all persons who have personal knowledge of facts and matters set forth in the Complaint and describe the facts known or observed by that person.

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows:

- Inspector Monte' Guess
  - o Land Title Building, 100 S. Broad Street, 5th Floor, Philadelphia, PA 19110, 215-686-3532.
  - o Inspector in Civil Enforcement Unit
  - o Job duties include supervising the Civil Enforcement Unit, tasked with, *inter alia*, executing writs, serving complaints, levying property, and carrying out evictions.
  - o Has personal knowledge of receiving the bankruptcy notice on or about June 07, 2018 and noting the JEWELL system.
- Deputy Sheriff Jetaria Taylor
  - o Land Title Building, 100 S. Broad Street, 5th Floor, Philadelphia, PA 19110, 215-686-3542.
  - o Deputy Sheriff in Civil Enforcement Unit
  - o Job duties include executing Writs of Possession.
  - o Has personal knowledge regarding posting the Notice to Vacate and the Eviction Notice.

13.    Identify all fact witnesses you intend to call at trial and as to each such witness, state the facts to which that person is expected to testify.

**RESPONSE:** Objection. The Sheriff objects to this request as it seeks information subject to the attorney work product privilege. Subject to, and without waiving the foregoing objection and the General Objections, the Sheriff responds as follows: The Sheriff has not determined which witnesses it may call at trial. As of the date of these responses, the Sheriff may call Inspector Monte' Guess and Deputy Sheriff Jetaria Taylor, further identified in the Sheriff's response to Question 12.

14.    With respect to each person whom you intend to call as an expert witness in connection with this matter:

(a)    Identify the person;
(b)    Attach a copy of the person's resume or curriculum vitae;
(c)    Identify the subject matter on which the person is expected to testify;
(d)    Identify the facts and opinions the person is expected to offer at any evidentiary hearing or trial;

(e)     Identify each document and communication directed to the person regarding the subject matter of this action;

(f)     Identify any document or demonstrative evidence the person is expected to use, refer to or rely upon at any evidentiary hearing or trial; and

(g)     Attach a copy of that person's written report.

**RESPONSE:** Objection. The Sheriff objects to this request as it seeks information subject to the attorney work product privilege. Subject to, and without waiving the foregoing objection and the General Objections, the Sheriff responds as follows: As of the date of these responses, the Sheriff does has not identified any expert witnesses it will call at trial. The Sheriff specifically reserves the right to amend this response in accordance with the Federal Rules of Civil Procedure made applicable hereto pursuant to the Federal Rules of Civil Procedure.

15.     Did you answer these questions with the assistance of anyone other than your attorney? If the answer is yes, please state who helped you, if anyone, to provide these answers.

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: No.

16.     Did the Sheriff explain the owner's Right of Redemption to Mr. Hassan after the Tax Delinquent Sale in connection with 146 S. 62nd Street, Philadelphia, 19139?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: No. By way of further response, the Real Estate Tax Division of the Tax & Revenue Unit of the City of Philadelphia Law Department informs purchasers of the taxpayer's right of redemption at tax sales conducted by the Sheriff. By way of further response, the Sheriff's Office provides material information and advice to the public on the Sheriff's website: https://www.officeofphiladelphiasheriff.com/en/real-estate/how-sheriffs-sales-work, including slideshows and videos, explaining the sheriff sale process and specifically advising purchasers of the Right of Redemption after a Tax Delinquent Sale: https://www.officeofphiladelphiasheriff.com/en/real-estate/how-sheriffs-sales-work/overview-of-the-sheriff-sale-process.

17.     What does the Sheriff communicate to a Purchaser of a Tax Delinquent Sale to explain the owner's rights during the statutory redemption period?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: See the response to interrogatory 16.

18.     Did You record a deed in Mr. Hassan's name on November 21, 2017 in connection with the property located at 146 S. 62nd Street, Philadelphia, PA 19139?

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: No. Deeds are recorded by the City of Philadelphia Department of Records.

19.     What is Your policy to protect Philadelphia homeowners when a purchaser at Tax Sale attempts to evict an owner 6 days after the winning bid or in this case October 11, 2017? See Exhibit CC.

**RESPONSE:** Subject to, as limited by, and without waiver of the objections set forth in the General Objections, the Sheriff responds as follows: Objection. The Sheriff objects to the Interrogatory as it is overbroad, vague, ambiguous, and unduly burdensome.

20.     Is it Your policy is to rescind the transaction or revoke the Tax Sale when a purchaser appears shortly after the Tax Sale to evict the owner? See Exhibit CC.

**RESPONSE:** Subject to, as limited by, and without waiver of the objections set forth in the General Objections, the Sheriff responds as follows: Objection. The Sheriff objects to the Interrogatory as it is overbroad, vague, ambiguous, and unduly burdensome.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All documents upon which you based any answer to the foregoing interrogatories.

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows: See the documents attached hereto and/or enclosed herewith and see also the Sheriff of Philadelphia's website: https://www.officeofphiladelphiasheriff.com/en/real-estate/how-sheriffs-sales-work/overview-of-the-sheriff-sale-process.

2.      A glossary of any abbreviated, internally created, technical, or proprietary terms used in any document produced herein.

**RESPONSE:** Subject to, and without waiving the General Objections, the Sheriff responds as follows:

   a. "DART" means Defendant Asset Recovery Team.
   b. "JEWELL" when used in reference to a computer system is, upon information and belief, an acronym. The Sheriff specifically reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure made applicable hereto by the Federal Rules of Bankruptcy Procedure.

3.      A complete transaction history pertaining to plaintiff's property and bankruptcy case.

**RESPONSE:** Objection. The Sheriff specifically objects as it seeks information equally available to the Plaintiff. The Sheriff further objects as the request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: See the documents attached hereto and/or enclosed herewith.

4.      All communications between the Sheriff and Lyndel Toppin.

**RESPONSE:** Subject to, as limited by, and without waiver of the objections set forth in the General Objections, the Sheriff responds as follows: Objection. The Sheriff objects to the Request as it is overbroad, vague, ambiguous, and unduly burdensome.

5.      Produce all documents provided you reviewed, referred to or relied on when preparing your answer or responses to the Plaintiffs First Set of Interrogatories.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as it seeks information equally available to the Plaintiff. The Sheriff further objects as the request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the

General Objections, the Sheriff responds as follows. See the documents attached hereto and/or enclosed herewith and see also the Sheriff of Philadelphia's website: https://www.officeofphiladelphiasheriff.com/en/real-estate/how-sheriffs-sales-work/overview-of-the-sheriff-sale-process..

6.      Produce all documents provided to your attorney by the Sheriff.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as it seeks information equally available to the Plaintiff. The Sheriff further objects as the request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Sheriff further objects as the request seeks documents covered by the by the attorney-client privilege and the work product doctrine. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: See the documents attached hereto and/or enclosed herewith.

7.      Produce all communications between your attorney and the Sheriff.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Sheriff further objects as the request seeks documents covered by the by the attorney-client privilege and the work product doctrine.

8.      All telephone log sheets or other internal memoranda or notes concerning Plaintiffs' account.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as vague and ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Sheriff further objects as the request seeks documents covered by the by the attorney-client privilege and the work product doctrine. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: See the documents attached hereto and/or enclosed herewith.

9.      All operating manuals, memoranda, or other documents concerning internal procedures of Defendant with respect to bankruptcy cases?

**RESPONSE:** Objection. The Sheriff specifically objects to this request as vague and ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: None known to the Sheriff at this time. The Sheriff specifically reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure made applicable hereto by the Federal Rules of Bankruptcy Procedure.

10.     All other documents pertaining to Plaintiffs' account.

**RESPONSE:** Objection. The Sheriff specifically objects to this request as vague and ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the

discovery of admissible evidence. The Sheriff further objects as the request seeks documents covered by the by the attorney-client privilege and the work product doctrine. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: See the documents attached hereto and/or enclosed herewith.

11.     Produce all documents provided to Mr. Hassan by the Sheriff in connection with 146 S. 62nd Street, Philadelphia, 19139?

**RESPONSE:** Objection. The Sheriff objects to this account as vague and ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to, and without waiving the foregoing objections and the General Objections, the Sheriff responds as follows: None known to the Sheriff at this time. The Sheriff specifically reserves the right to supplement this response in accordance with the Federal Rules of Civil Procedure made applicable hereto by the Federal Rules of Bankruptcy Procedure.


THE CITY OF PHILADELPHIA


Dated: August 23, 2019          By:     /s/ *Megan N. Harper*
                                        MEGAN N. HARPER
                                        Deputy City Solicitor
                                        PA Attorney I.D. 81669
                                        Attorney for the City of Philadelphia
                                        Municipal Services Building
                                        1401 JFK Boulevard, 5th Floor
                                        Philadelphia, PA 19102-1595
                                        215-686-0503 (phone)
                                        Email: Megan.Harper@phila.gov

# SHERIFF'S OFFICE OF PHILADELPHIA COUNTY

**Jewell Williams**
*Sheriff*

**Monte Guess**
*Inspector*



**Kevin Lamb**
*Chief Deputy*

**Robert Jackson**
*Chief of Staff*

---

HASSAN
vs.
UNKOWN OCCUPANTS

**Case Number**
180103400
(231566)

---

## REQUEST DETAILS
### ( Writ of Possession - Common Pleas )

*Request Details:*

*Category:*     Writ of Possession - Common Pleas - Writ of Possession          *Status:* Open

*Writ date:*     05/07/2018        *Expiration date:*  08/07/2018

*Notes:*

HASSAN
vs.
UNKOWN OCCUPANTS

**Case Number**
180103400
(231566)

## SERVICE EVENT REPORT
### ( Posted )

**Service Details:**

| | | | |
|---|---|---|---|
| **Category:** | Writ of Possession - Common Pleas - Possession | **Expires:** | 08/07/2018 |
| **Manner:** | < Not Specified > | **Warrant:** | |

**Notes:** MAIN DESK CLERK: LIONEL COOK

**Serve To:**

| | | | |
|---|---|---|---|
| **Name:** | UNKOWN OCCUPANTS | **Mobile:** | |
| **Primary Address:** | 146 S. 62ND ST PHILADELPHIA, PA 19139 | **Notes:** | |
| **Phone:** | | | |

**Service Event Details:**

| | | | |
|---|---|---|---|
| **Date:** | 05/10/2018 | **Category:** | Posted |

**Notes:** DEPUTY JETARIA TAYLOR, BEING DULY SWORN ACCORDING TO LAW, POSTED ONE TRUE AND ATTESTED COPY OF THE WITHIN WRIT OF POSSESSION UPON REAL ESTATE LOCATED AT 146 S. 62ND ST, PHILADELPHIA, PA 19139. 21 DAY NOTICE POSTED

POSSESSION DATE 6/25/18 @9AM

CANCELED PER DEFT FILED BANKRUPTCY

**Delivery Details:**

| | | | | |
|---|---|---|---|---|
| **Time In:** | | **Time Out:** | 9:45 AM | **Deputy 1:** Jetaria Taylor |
| **Mileage:** | 0 | | | **Deputy 2:** |
| **Accepted:** | | | | |

**Notes:**

| | | | | | |
|---|---|---|---|---|---|
| **Entered By:** | Joshua Wigfall | **Print Date:** | 02/21/2019 | **Print Time:** | 10:16 AM |

| HASSAN vs. UNKOWN OCCUPANTS | **Case Number** 180103400 (231566) |
|---|---|

## SERVICE EVENT REPORT
### ( Other )

### Service Details:

| | | | |
|---|---|---|---|
| **Category:** | Writ of Possession - Common Pleas - Possession | **Expires:** | 08/07/2018 |
| **Manner:** | < Not Specified > | **Warrant:** | |
| **Notes:** | MAIN DESK CLERK: LIONEL COOK | | |

### Serve To:

| | | | |
|---|---|---|---|
| **Name:** | UNKOWN OCCUPANTS | **Mobile:** | |
| **Primary Address:** | 146 S. 62ND ST PHILADELPHIA, PA 19139 | **Notes:** | |
| **Phone:** | | | |

### Service Event Details:

| | | | |
|---|---|---|---|
| **Date:** | 06/25/2018 | **Category:** | Other |

**Notes:** letter from bankruptcy court sent to the office. Defendant claims eviction proceedings continued after notifying the sheriff's office that bankruptcy was filed. Inspector Guess received bankruptcy fax on June 6th 2018. Bankruptcy notice was logged in possession book and on Jewell system. No other eviction actions were taken by the civil enforcement unit as of that date.
Letter and supporting documents are being forwarded to undersheriff vignola.

Inspector Guess

### Delivery Details:

| | | | |
|---|---|---|---|
| **Time In:** | | **Time Out:** | |
| **Mileage:** | 0 | **Deputy 1:** | Monte Guess |
| **Accepted:** | | **Deputy 2:** | |
| **Notes:** | | | |

| | | | | | |
|---|---|---|---|---|---|
| **Entered By:** | Monte Guess | **Print Date:** | 02/21/2019 | **Print Time:** | 10:15 AM |

S#H# 23/566 ✓

NOTICE Rec'd
ON 5-8-18

PHILADELPHIA
SHERIFF'S OFFICE-MAIN DESK

2018 MAY -8  PM 3: 52

Court of Common Pleas

No. 1801023460 _____ Term, 20____

HASSAN   vs. UNKNOWN OCCUPANTS

146 S. 62ND ST
PHILA.    PA. 19139

WRIT OF POSSESSION

HASAN

484-557-1737

300
25

$ 325. cw

5/7/18
Bankruptcy Filed
Inspection Guess

**20**

June 25

| 230615 | Metropolitian Contracting LLC | France Bowens | 228267 |
| 12:00pm | 223-225 Market St. | 215-237-2633 | 12:00pm |

| 231936 | AnnyAH Moore | (C) KML | 231609 |
| 9am | 5367 Morris St given | 215 825 6454 | 9am |

| 231900 | FaTmoTa Bangurra | Cancelled Knste LiTTle | 231583 |
| 9:00 | 6709 Woolston | 610 278 6800 | 9am |

| 231566 | Unknown Occupante | Bankruptcy (N) Jasan | 231777 |
| 9am | 146 S 62nd | Filed 484 557 1737 | 9am |

| 231718 | Dawn Cyrus (PD) | (VM) Tyslleen Hargrove | 232064 |
| 9am | 2443 So Edgewood | 215 791 5751 | Lock out 10 |

| 231897 | Tara Kennedy given | (N) Sunil Nunet | 231904 |
| Lockout 10am | 3645 N 19th | 973 953 7345 | Lockout 10 |
| | | *973 986 9282 | |

| | | | 228587 N |
| | | | 10:00 |

MOVE OUT – LOCK OUT – SEIZURE

ADDRESS: 146 S 62nd St

SHERIFF NUMBER: 231066

DEPUTY _____   DEPUTY _____

DATE & TIME: _____ @ _____

OCCUPANTS PRESENT: ☐ YES  ☐ NO

— 21-DAY NOTICE —

DATE & TIME POSTED: 5.10.18 @ 9:45am

DEPUTY: Taylor

CONTACT INFO: _____

POSSESSION GIVEN TO: _____

PHONE NUMBER: _____

ADDITIONAL DETAILS: _____

LOCKSMITH: _____

PHONE NUMBER: _____

MOVING COMPANY: _____

ADDRESS: _____

PHONE NUMBER: _____

— FINAL NOTICE —

DATE & TIME POSTED: _____ @ 3:40pm

DEPUTY: Taylor

STORAGE FACILITY: _____

ADDRESS: _____

CONTACT INFO: _____

PHONE NUMBER: _____

ADDITIONAL DETAILS: _____

DEPUTY SIGNATURE: X _____

SCHEDULED EVICTION DATE: June 25th @ 9am

PLAINTIFF (REP): X _____

# FAX COVER SHEET

| TO | Sheriff |
|---|---|
| COMPANY | Sheriff |
| FAX NUMBER | 12156863971 |
| FROM | Stephen Dunne |
| DATE | 2018-05-08 22:25:14 GMT |
| RE | Notice of Bankruptcy Case Filing - Book/Writ 1707-5002 |

## COVER MESSAGE

Please see Notice of Bankruptcy Case Filing for Lyndel Toppin, who resides at 146 S. 62nd Street, Philadelphia, PA 19145.

Book/Writ 1707-5002

Thank you.

Stephen M. Dunne, Esq.

Live Database Area                                                                    Page 1 of 2

United States Bankruptcy Court
Eastern District of Pennsylvania

## Notice of Bankruptcy Case Filing



A bankruptcy case concerning the debtor(s)
listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on
05/08/2018 at 6:04 PM and filed on 05/08/2018.

Lyndel Toppin
146 S. 62nd Street
Philadelphia, PA 19145
SSN / ITIN: xxx-xx-2550

The case was filed by the debtor's attorney:

STEPHEN MATTHEW DUNNE
Dunne Law Offices, P.C.
1515 Market Street
Suite 1200
Philadelphia, PA 19102
U.S.A.
215-551-7109

The case was assigned case number 18-13098-mdc to Judge Magdeline D. Coleman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://ecf.paeb.uscourts.gov or at the Clerk's Office, 900 Market
Street, Suite 400, Philadelphia, PA 19107.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

Timothy B McGrath

# FAX COVER SHEET

| | |
|---|---|
| TO | Sheriff's Office |
| COMPANY | Sheriff's Office |
| FAX NUMBER | 12156863555 |
| FROM | Stephen Dunne |
| DATE | 2018-06-07 20:01:07 GMT |
| RE | Notice of Bankruptcy Case Filing - 146 S. 62nd Street, Phila, PA 19145 |

## COVER MESSAGE

Please be advised that Lyndel Toppin filed a Chapter 13 bankruptcy case on 05/08/2018.

Name: Lyndel Toppin

Address: 146 S. 62nd Street, Philadelphia, PA 19145

231566

United States Bankruptcy Court
Eastern District of Pennsylvania

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s)
listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on
05/08/2018 at 6:04 PM and filed on 05/08/2018.

**Lyndel Toppin**
146 S. 62nd Street
Philadelphia, PA 19145
SSN / ITIN: xxx-xx-2550



The case was filed by the debtor's attorney:

**STEPHEN MATTHEW DUNNE**
Dunne Law Offices, P.C.
1515 Market Street
Suite 1200
Philadelphia, PA 19102
U.S.A.
215-551-7109

The case was assigned case number 18-13098-mdc to Judge Magdeline D. Coleman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://ecf.paeb.uscourts.gov or at the Clerk's Office, 900 Market
Street, Suite 400, Philadelphia, PA 19107.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

                                                                    **Timothy B McGrath**

# SHERIFF'S OFFICE OF PHILADELPHIA COUNTY



**Jewell Williams**
*Sheriff*

**Kevin Lamb**
*Chief Deputy*

**Richard Verrecchio**
*Chief Inspector*

**Robert Jackson**
*Chief of Staff*

| CITY OF PHILADELPHIA<br>vs.<br>STANLEY ZALKIN AND ELEANOR ZALKIN | Case Number<br>1504T0192<br>(1707-5002) |
|---|---|

## SHERIFF'S RETURN OF SERVICE

| | |
|---|---|
| 04/27/2017 | COURT DECREE, HANDBILL, LEGAL DESCRIPTION |
| 04/27/2017 | WRIT DATA VERIFIED BY TOMIKO VAUGHON |
| 07/06/2017 | AS DIRECTED BY GRB LAW, ATTORNEY FOR THE PLAINTIFF, SHERIFF'S SALE CONTINUED TO 9/7/2017 |
| 09/07/2017 | AS DIRECTED BY GRB LAW, ATTORNEY FOR THE PLAINTIFF, SHERIFF'S SALE CONTINUED TO 10/5/2017 |
| 10/05/2017 | REAL ESTATE SOLD AT SHERIFF'S SALE |
| 10/05/2017 | SALES RECEIPT DATA VERIFIED BY TOMIKO VAUGHON |
| 10/05/2017 | AUTOMATED DEED ASSIGNMENT PATRIOT LAND TRANSFER, LLC |
| 10/06/2017 | BUYER'S ACKNOWLEDGEMENT |
| 11/03/2017 | SHERIFF'S SETTLEMENT |
| 11/03/2017 | PRINTED ON NOVEMBER 03, 2017 BY MARK WILSON WITH TRACKING ID:  1509726459 |
| 11/09/2017 | REAL ESTATE:<br>ABDELDAYEM HASSAN<br>309 BARKER AVENUE<br>LANSDOWNE, PA 19050 |
| 05/08/2018 | DEFENDANT ATTORNEY |
| 05/09/2018 | BANKRUPTCY FILED IN SHERIFF'S OFFICE |
| 07/26/2018 | DART DISTRIBUTION POLICY REQUESTED FROM PATRIOT LAND TRANSFER, LLC (NOTED BY BADIA BEASLE) |
| 11/07/2018 | DISTRIBUTION POLICY RECECIVED FROM PATRIOT LAND TRANSFER, LLC (NOTED BY RICHARD VERRECCHIO) |

SHERIFF COST: $2,931.71

SO ANSWERS,

August 20, 2019

JEWELL WILLIAMS, SHERIFF

(c) CountySuite Sheriff, Teleosoft, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA | : | |
| | : | |
| , | : | TRIAL STIPULATIONS |
| | : | |
| Defendant. | : | |

STIPULATIONS FOR THE TRIAL

IT IS HEREBY AGREED AMONG PARTIES SHERIFF OF THE CITY OF

PHILADELPHIA, AND PLAINTIFF LYNDEL TOPPIN THAT THE FOLLOWING FACTS

HAVE BEEN  STIPULATED TO AND ARE CONCLUSIVELY ESTABLISHED FOR THE

PURPOSES OF THE TRIAL. STIPULATIONS ARE AS FOLLOWS:

A) Abdeldayem Hassan filed a Complaint in Ejectment against "Unknown Occupants"
   pertaining to 146 S 62nd Street in Philadelphia Court of Common Pleas, in January 2018,
   docketed as 003400. (P2)
B) Abdeldayem Hassan procured a Judgment by Default for Possession, which was entered
   against Unknown Occupants at "the property" on April 5th 2018 in the Philadelphia Court
   of Common Pleas. (P4)
C) Abdeldayem Hassan procured a Writ of Possession against "Unknown Occupants" on May
   7, 2018. (P6)
D)  On May 8, 2018, Plaintiff Lyndel Toppin filed a Chapter 13 bankruptcy in the Eastern
   District of Pennsylvania, Bankruptcy Court.

By: Joshua Domer

Assistant City Solicitor

City of Philadelphia Law Department

Tax & Revenue Unit

Municipal Services Building

1401 John F. Kennedy Blvd., 5th Floor

Philadelphia, PA 19102

215-686-0519


By: /s/ Predrag Filipovic                    BY: /s/ Stephen M. Dunne
Predrag Filipovic, Esquire                    Stephen M. Dunne, Esquire
1735 Market St., Suite 3750                  1515 Market Street, Suite. 1200
Philadelphia, PA 19103                        Philadelphia, PA 19102
267-265-0520 Phone                            (215) 551-7109 Phone
Attorney for Plaintiff                        Attorney for Plaintiff

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| LYNDEL TOPPIN, | : | |
| | : | |
| Debtor. | : | Bankruptcy No. 18-13098 (MDC) |
| _____ | : | |
| | : | |
| LYNDEL TOPPIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Proc. No. 18-00137 (MDC) |
| | : | |
| JEWELL WILLIAMS, SHERIFF | : | |
| OF THE CITY OF PHILADELPHIA and | : | Plaintiff's Remote Witness List |
| ABDELDAYEM HASSAN a/k/a | : | |
| ABDELDYEM HASSAN, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**Plaintiff's Remote Witness List**

### I. Barrington Whyte

| Witness Name/Title | Summary of Anticipated Testimony | Email Address | Location of Remote Witness |
|---|---|---|---|
| Barrington White "FRIEND OF THE COURT" pursuant to Order Doc. 22 (Case # 18-13098-mdc). | >Plaintiff's residence and relevant financial affairs, >Bankruptcy filing and the notice to the Sheriff thereof. >First hand knowledge of the ill effect the post BK notice collection and writ enforcement had on the Plaintiff. | phillypride21514 @gmail.com | Philadelphia, PA, USA |

| Place from which Remote Witness will testify | Person(s) in the room where Remote Witness will testify | Whether Remote Witness will have access to any documents other those on the Exhibit List | |
|---|---|---|---|
| Dunne Law Offices, P.C. 1515 Market Street, Suite 1200 Philadelphia, PA 19102 | Stephen M. Dunne, Debtor's Attorney Lyndel Toppin, Debtor | Barrington White Will only have access to those documents on the Exhibit List | |

**II. Jetaria Taylor**

| Witness Name/Title | Summary of Anticipated Testimony | Email Address | Location of Remote Witness |
|---|---|---|---|
| Jetaria Taylor Philadelphia Sheriff Officer | >Philadelphia Sheriff Office's visits to Plaintiff's residence post-petition >Sheriff's Policy and Procedures | Megan Harper <megan.harper@phila.gov>, | Philadelphia, PA, USA |

| Place from which Remote Witness will testify | Person(s) in the room where Remote Witness will testify | Whether Remote Witness will have access to any documents other those on the Exhibit List | |
|---|---|---|---|
| City of Philadelphia Law Department Municipal Services Building 1401 J.F.K. Blvd., 5th Floor Philadelphia, PA 19102-1595 | Unknown | Unknown | |

### III. Custodian of Records

| Witness Name/Title | Summary of Anticipated Testimony | Email Address | Location of Remote Witness |
|---|---|---|---|
| Philadelphia Sheriff's Custodian of Records | >Authenticate Facsimile Transmissions and Correspondence to Philadelphia Sheriff Office >Sheriff's Policy and Procedures | Megan Harper <megan.harper@phila.gov>, | Philadelphia, PA, USA |

| Place from which Remote Witness will testify | Person(s) in the room where Remote Witness will testify | Whether Remote Witness will have access to any documents other those on the Exhibit List | |
|---|---|---|---|
| City of Philadelphia Law Department Municipal Services Building 1401 J.F.K. Blvd., 5th Floor Philadelphia, PA 19102-1595 | Unknown | Unknown | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
In re:                                          :
                                                :     Chapter 13
LYNDEL TOPPIN,                                  :
                                                :
        Debtor.                                 :     Bankruptcy No. 18-13098 (MDC)
_____:
                                                :
LYNDEL TOPPIN,                                  :
                                                :
        Plaintiff,                              :
                                                :
        v.                                      :     Adv. Proc. No. 18-00137 (MDC)
                                                :
JEWELL WILLIAMS, SHERIFF                        :
OF THE CITY OF PHILADELPHIA and                 :
ABDELDAYEM HASSAN a/k/a                         :
ABDELDYEM HASSAN,                               :
                                                :
        Defendants.                             :
_____:

## PLAINTIFF's EXHIBIT LIST

**Pursuant to the Court Order Doc. 140 below is the list of Exhibits which**

**Plaintiff reserves the right in his discretion to offer at trial.**

P1. Tax Balances on Plaintiff's residence (BATES 0002-0008).

P2. State Court Ejectment litigations Docs, and Legal Description and Deed to the property ( (0008-00018).

P3. Affidavit of Service of Underlying Action (00020).

P.4. State Court Litigation Docs, Judgment by Default (00022-26).

P5. State Court Litigation Docs, Praecipe for Writ of Possession (00028-00042).

P6. State Court Litigation Docs, Writ of Possession (00042-46).

P7. Notice of BK to Sheriff's Office (00048-50).

P.8. Notice of BK to Sheriff's Notice Letter from the BK, Court ( 00052-54).

P9. TC Log to Sheriff's Office Re BK filing by Attorney Dunne. (00055).

P10. Notice of BK, Faxed to the Sheriff's Office ( 00057-58).

P11. Notice of BK, Faxed to the Sheriff's Office ( 00060-61).

P12. Notice of BK, Faxed to the Sheriff's Office ( 00063-64).

P13. Notice of BK, Faxed to the Sheriff's Office ( 00067-68).

P14. Fax confirmations of Notices of BK, Faxed to the Sheriff's Office ( 00070-71).

P15. Certificate of Notice by BK Court to Sheriff's office ( 0073-75).

P16. Sheriff's procedures per Filing of BK, Stay Order (0077-78).

P17. Notice to Vacate served by Sheriff ( P0080).

P18. Notice to Vacate served by Sheriff ( P0082).

P19.  Notice to Vacate served by Sheriff ( P0084).

P20. Notice to Evict served by Sheriff ( P0086).

P21. Notice to Evict served by Sheriff ( P0088).

P22. Notice to Evict served by Sheriff ( P0090).

P35. Philadelphia Sheriff Office Internal Log showing when BK notice was received by the Sheriff's Office ( 00123).

## REBUTTAL EXHIBITS IF NECESSARY

P23. To P35. Discovery admissions by the Defendant, Philadelphia Sheriff ( 0092-00121).
 (If necessary for rebuttal)

P36. to P60. Discovery admissions by the Defendant, Philadelphia Sheriff ( 0092-00121).
 (If necessary for rebuttal) ( 00125 - 00203)

** P44. Will not be used unless stipulated to.  ( 00144-163). **