**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: TOPPIN,** | |
| **Debtor.** | **CIVIL ACTION** |
| **LYNDEL TOPPIN** | |
| **Appellant,** | |
| **v.** | **NO.  21-cv-5144-WB** |
| **JEWELL WILLIAMS, SHERIFF OF THE CITY OF PHILADELPHIA,** | |
| **Appellee.** | |

## OPINION

This matter, here on cross appeal from the Bankruptcy Court, arises from Lyndel Toppin's Chapter 13 bankruptcy and the violation of the subsequent automatic stay by Jewell Williams in his capacity as Sheriff of the City of Philadelphia (the "Sheriff").  Plaintiff alleges that the Sheriff's post-petition Notices to Vacate and Evict him from his home caused him to suffer actual and emotional damages.  For the reasons that follow, the Bankruptcy Court's decision will be affirmed.

### I.   BACKGROUND

Toppin is deaf and unable to speak.  At the time in question, he lived together with his nephew and caretaker, Barrington Whyte, at 146 S. 62nd Street in Philadelphia (the "Property").  To recover delinquent taxes, the Property was sold at a sheriff's sale to Abdeldayem Hassan who filed an ejectment action in the Philadelphia Court of Common Pleas on January 22, 2018 against "unknown occupants" of the Property and subsequently obtained a judgment of default for possession of the Property.  The following day, Toppin filed a Chapter 13 Bankruptcy Petition

1

(the "Petition"), 11 U.S.C. § 1321, and served notice of the Petition on the Sheriff's Real Estate

Unit.  Despite the notice, the Sheriff served a total of six notices to vacate and of eviction on

Toppin (collectively, the "Notices") in quick succession.  Over the course of a month, a sergeant

from the Sheriff's office served a Notice to Vacate by knocking and taping it to the Property's

front door as well as leaving another copy in the mail slot or inside the front door; the Sheriff

mailed another copy of the Notice to Vacate to the Property giving occupants twenty-one days to

leave before he issued an Eviction Notice; a sergeant from the Sheriff's office served an Eviction

Notice ordering occupants to vacate by a date certain by taping it to the front door and leaving

another copy in the mail slot or inside the front door; and, separately by mail, the Sheriff sent

another copy of the Eviction Notice to the Property.  On June 7, Toppin's counsel faxed the

Sheriff's Civil Enforcement Unit a copy of Toppin's Chapter 13 Petition and thereafter the

Sheriff stopped all enforcement efforts.

Toppin then brought suit in the Bankruptcy Court alleging that the Sheriff violated the

automatic stay provision of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. and, in so doing,

caused Toppin to suffer material and emotional distress.  On a motion for summary judgment,

the Sheriff argued that: (1) the case is barred on quasi-judicial immunity grounds as he was

acting pursuant to a valid court order; (2) his actions are excusable under the ministerial acts

exception to automatic stays; (3) Toppin's claims to emotional distress are barred pursuant to

sovereign immunity; and (4) Toppin is owed no damages.[1]  The Bankruptcy Court held decision

on the motion for summary judgment until after trial was concluded.  After trial, the Sheriff

again raised immunity issues in a motion for directed verdict as well as making arguments that

---

[1] In the Sheriff's reply to the summary judgment motion in the Bankruptcy Court, he clarifies that he does not disagree that sovereign immunity is waived as to actual damages from automatic stay violations, but sovereign immunity remains as to emotional distress damages.

Toppin had not proved a willful violation of the stay or that he had suffered damages from any stay violation that may have occurred.

On November 8, 2021 the Bankruptcy Court issued an opinion purporting to decide both the summary judgment and the directed verdict motions. *In re Toppin*, 637 B.R. 88 (Bankr. E.D. Pa. 2021).

## II.   JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. Section 158(a)(1), district courts serve an appellate role reviewing "the [B]ankruptcy [C]ourt's legal determinations *de novo*, its factual findings for clear error[,] and its exercise of discretion for abuse[.]" *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998); *In re DeSeno*, 17 F.3d 642, 643 (3d Cir. 1994) (referring to the District Court's review of law standard as "plenary"). Where there are issues of mixed law and fact, District Courts "accept the trial court's finding of historical or narrative facts unless clearly erroneous, but exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal citations omitted).

As a preliminary matter, it should be noted that the Bankruptcy Court erred in waiting to decide the summary judgment motion after trial: Orders on summary judgment cannot be issued when the motion "has been overtaken by subsequent events, namely, a full-dress trial and [a] . . . verdict." *E. Mountain Platform Tennis, Inc. v. Sherwin-Williams Co.*, 40 F.3d 492, 500 (1st Cir. 1994); *see also Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 185 (3d Cir. 2015) ("[A] party may not appeal an order denying summary judgment after a full trial on the merits.") (citing *Ortiz v. Jordan*, 562 U.S. 180, 183-84, 188 (2011)). While there was no jury verdict here, the principle limiting summary judgment to pre-trial applies equally to non-

jury trials.

As the Bankruptcy Court erred by determining sovereign immunity, quasi-judicial immunity, and the ministerial acts exception on summary judgment post-trial, these issues were not properly decided.  However, when a lower court improperly reaches or "fail[s] to reach a question below that becomes critical[,]" it is "generally appropriate[,] when the factual record is developed and the issues provide purely legal questions," as is the case here, for "an appellate court [to] exercise[] plenary review" and "resolve the issue on appeal rather than remand to the [lower court]." *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998); *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 186 (3d Cir. 2014) (doing so, in part, "in the interest of judicial economy").  Here, the questions of whether given the facts of this case: (1) sovereign immunity protects the Sheriff from suit; (2) quasi-judicial immunity protects the Sheriff from suit; and (3) the ministerial acts exception applies (which, although raised in the summary judgment motion, was not decided until after trial) are purely legal issues appropriate to resolve on appeal.  The question of whether the evidence supports an award of actual or emotional damages to Toppin, which was raised in the motion for a directed verdict and decided by the Bankruptcy Court, is also properly before the Court.

## III.   DISCUSSION

### A.  Automatic Stay

The filing of a bankruptcy petition operates as an automatic stay of debt collection activities and related enforcement actions outside of bankruptcy proceedings, unless otherwise waived.  11 U.S.C. § 362(a).  The "primary purpose[]" of an automatic stay is to "effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [his] creditors" so as to "appropriately resolve competing

economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (internal quotations and citations omitted).  An automatic stay is willfully violated when a "defendant knew of the automatic stay and [the defendant's] actions which violated the stay were intentional[,]" indeed, "specific intent to violate the automatic stay" is not required.  *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990); *In re Lansdale Fam. Restaurants, Inc.*, 977 F.2d 826, 829 (3d Cir. 1992); *see e.g., In re Wilson*, 19 B.R. 45, 47 (Bankr. E.D. Pa. 1982) (finding a sheriff, not a creditor, capable of violating automatic stay).

When a stay is willfully violated, debtors "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  "Congress intended the automatic stay to protect both financial and non-financial interests[,]" and as such the Third Circuit has "join[ed] a growing number of circuits by expressly concluding that 'actual damages' under § 362(k)(1) include[s] damages for emotional distress resulting from a willful violation of the automatic stay."  *In re Lansaw*, 853 F.3d 657, 667 (3d Cir. 2017).  To prove emotional damages, a debtor must "demonstrate, as required by the statute, that [he] suffered 'actual' emotional harm caused by the willful stay violation."  *Id.* at 670.

Neither party disputes the Bankruptcy Court's decision that the Sheriff violated the automatic stay: Toppin filed the Petition and an automatic stay was triggered; Toppin gave notice of the Petition, and thus the stay, to the Sheriff when he faxed the Petition to the Sheriff's Real Estate Unit; the Sheriff willfully violated the stay when he served the Notices, despite his knowledge of the automatic stay.  *In re Toppin*, 637 B.R. at 110-11.

### B.  Lack of Immunities Barring Action

#### i.  Sovereign Immunity

Under the Eleventh Amendment, sovereign immunity protects states from suit in federal

court, unless the immunity is specifically waived.  U.S. Const. amend. XI; *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008).  State officials sued in their official capacity, as is the case here, may fall under the aegis of sovereign immunity because a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). When waived, however, sovereign immunity does not protect the state or its officers.  *Lombardo*, 540 F.3d at 194-95.

The Constitution states "[t]he Congress shall have Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States[.]"  U.S. Const. art. I, § 8, cl. 4 (the "Bankruptcy Clause").  "In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 378 (2006).  A bankruptcy court's jurisdiction is, "at its core, *in rem*[,]" meaning the "adjudication of interests claimed in a *res*[,]" or the "bankruptcy estate".  *Id.* at 362 (citing *Gardner v. N.J.*, 329 U.S. 565, 574 (1947)) (internal quotations omitted).  As such, the Bankruptcy Clause enables bankruptcy courts "the power to issue compulsory orders to facilitate the administration and distribution of the *res*[,]" or the bankruptcy estate, to address the "pressing goal of harmonizing bankruptcy law[.]"  *Id.* at 362-63.

"[C]ritical features of every bankruptcy proceeding" which are necessary to effectuate the *in rem* jurisdiction "are [(1)] the exercise of exclusive jurisdiction over all of the debtor's property, [(2)] the equitable distribution of that property among the debtor's creditors, and [(3)] the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further

liability for old debts." *Id.* at 363-64 (internal citations omitted).  If a proceeding meets one of these standards, sovereign immunity is deemed waived and a state, or its officers, are subject to suit.  *See generally id*.  The Third Circuit views *Katz* as a "useful starting point[,]" for a functional approach evaluating whether sovereign immunity has been waived.  *In re Venoco LLC,* 998 F.3d 94, 104 (3d Cir.), *cert. denied sub nom. Cal. State Lands Comm'n v. Davis*, 142 S. Ct. 231 (2021).  It requires "courts [to] focus on function and not form when testing a proceeding's connection to the bankruptcy court's *in rem* jurisdiction."  *Id*.  *In re Venoco* does so to better "define the range of proceedings that further a bankruptcy court's *in rem* jurisdiction" and are therefore deemed to waive sovereign immunity.  *Id*.  The framework "asks whether: [(1) the proceeding decides and affects interests in the *res*, the property of the debtor and its estate[;] (2) the proceeding is one "where the connection to a specific piece of property may be lacking, but there is broader effect on the equitable distribution of the debtor's property[;]" or (3) the proceeding is "bound by a bankruptcy court's discharge order no less than other creditors."  *Id*. at 104-05.  In short, sovereign immunity is deemed waived by the Bankruptcy Clause if "one or more" of the *Katz* critical features, one of the *In re Venoco* functions interpreting the *Katz* critical features, or another similar function, as the *In re Venoco* list is not exhaustive, are met.  *Id*. at 105.

The Bankruptcy Court found the automatic stay fulfilled the *Katz* requirement as a critical function of the bankruptcy court's *in rem* jurisdiction, thereby waiving sovereign immunity.  On appeal, however, the Sheriff argues that the Bankruptcy Court erred when it declined to find the Sheriff was protected by sovereign immunity against Toppin's claim for emotional distress damages because this claim does not in any way involve the Bankruptcy Court's jurisdiction over the debtor's property and assets.  Specifically, the Sheriff argues that in

denying sovereign immunity for emotional distress damages, the Bankruptcy Court extended the holding in *Katz* too far because a debtor's request for emotional distress damages in no way implicates the debtor's property, assets, or the orderly administration of the bankruptcy estate among creditors.  The Sheriff carefully distinguishes this case—which involves a request for a sum of money which it argues has nothing to do with the *res* of the bankruptcy estate—from the hypothetical situation in which (unlike here) a sheriff did not terminate its enforcement efforts with respect to the property in question—because that continued action would have interfered with the *res* of the bankruptcy estate.  In the latter situation, the Sheriff argues that it would not be protected by sovereign immunity but in the former case—this case—it is.

Although neither the Bankruptcy Court nor the Sheriff delve deep into the *In re Venoco* functional approach, it is appropriate to do so here.  Specifically, a focus on the second *In re Venoco* is warranted because it "captures proceedings where the connection to a specific piece of property may be lacking[.]"  *Id.* at 105.  This function does not focus on the *res* itself—the debtor's property, estate, assets, etc.  Rather, it points to proceedings with a "broader effect" on "equitable distribution" of the *res*.  *Id.*  In *dicta*, the Third Circuit stated that an automatic stay is one such proceeding, because "[when] a creditor has violated the automatic stay [it] generally qualif[ies] as [a] proceeding[] necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."  *Id.* (internal citations and quotations omitted).  This is "due to the disruptive effects [of automatic stay violations] on [the] orderly administration of the estate."  *Id*.  This is logical because, as noted *supra*, the "primary purpose[]" of an automatic stay is to "appropriately resolve competing economic interests in an orderly and effective way."  *Taylor*, 178 F.3d at 702 (internal quotations and citations omitted).  When an automatic stay is violated, the orderly and equitable distribution of the *res*—a debtor's property, estate, assets, etc.—is put in jeopardy.  As

8

noted in the legislative history for Section 362 of the Bankruptcy Code, the section codifying the automatic stay:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. . . . Without [the automatic stay], certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97.  Failing to deem automatic stay violations as a proceeding necessary to effectuate a bankruptcy court's *in rem* jurisdiction would erode the stay's essential protections envisioned by Congress. Designating automatic stays as a proceeding under *In re Venoco* functionally protects and preserves the *res* so that it may be orderly and properly distributed among creditors.  S*ee e.g.*, *In re PVI Assocs.*, 1995 WL 20421, at *2 (E.D. Pa. Jan. 13, 1995); *In re Odom*, 571 B.R. 687, 695 (Bankr. E.D. Pa. 2017); *In re Diaz*, 647 F.3d 1073, 1085 (11th Cir. 2011).  As the Bankruptcy Court discussed, albeit under *Katz* as opposed to *In re Venoco*, suits claiming damages for automatic stay violations "facilitate the *in rem* proceedings which form the foundation of bankruptcy." *In re Toppin*, 637 B.R. 88 at 104.  Thus, the statute, legislative history, and case law make certain that an automatic stay has a broader effect on equitable distribution of a debtor's property.  As such, automatic stays fall under the second *In re Venoco* factor.  In bankruptcy suits litigating automatic stay violations then, the state is deemed to have waived sovereign immunity.  Consequently, here, the Sheriff is correct that his willful violation of Toppin's automatic stay did not directly deprive Toppin of the *res*—the Property—*per se*.  But, because automatic stay violations have a broader effect on orderly bankruptcy proceedings, sovereign immunity in this case is deemed waived under the second *In re Venoco* function.

The Sheriff's main contention is that sovereign immunity is specifically not waived for emotional damages, as those damages do not implicate the *res*. However, as noted *supra*, the Third Circuit "join[ed] a growing number of circuits by expressly concluding that 'actual damages' under [Section] 362(k)(1)[, the section of the bankruptcy code assigning damages for automatic stay violations,] include damages for emotional distress resulting from a willful violation of the automatic stay." *In re Lansaw*, 853 F.3d at 667. Accordingly, emotional damages are available for automatic stay violations.

The Sheriff additionally contends that, under *Katz*, sovereign immunity is waived when there is a continuing stay violation but not, as here, when the violation stopped after receipt by the Sheriff's Office of Toppin's counsel's June 7 fax, such that the *res* of the bankruptcy estate was no longer implicated. However, this argument is unavailing. This attempt to draw distinctions between sovereign immunity protections for continued stay violations and violations which have ceased is incorrect in light of the *In re Venoco* framework. The Sheriff focuses too literally on the Property at issue, just one aspect of the sovereign immunity analysis. The key question, as decided in the affirmative *supra*, is whether the automatic stay necessarily effectuates a bankruptcy court's *in rem* jurisdiction. It does. This is true if an automatic stay violates the *res* itself—like, for example, with a continuing stay violation—or carries a broader effect on equitable distribution of the estate—as is the case here.

### ii.    *Quasi-Judicial Immunity*

Even if sovereign immunity does not shield the Sheriff from emotional distress damages, he argues that the doctrine of quasi-judicial immunity does. In executing the Writ, the Sheriff argues he acted as an arm of the court. The Bankruptcy Court rejected these arguments, determining that the Sheriff's discretion to stop enforcing the Writ shows he is subject to suit.

10

Quasi-judicial immunity extends "absolute immunity to certain others who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985).  It protects three categories of individuals, those who: (1) "make discretionary judgments functional[ly] comparab[le] to judges[,]" *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (citing *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976) (internal quotations omitted)); (2) "perform a somewhat different function in the trial process but whose participation . . . is equally indispensable, such as witnesses[,]" *id.* (citing *Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) (internal quotations omitted)); or (3) those who act as "arms of the court" and are "an integral part of the judicial process" by "fulfill[ing] a quasi-judicial role at the court's request[.]" *Id*. (citing *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001)) (internal citations and quotations omitted); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992).  Quasi-judicial immunity does not automatically apply when performing part of a judicial function, even an "extremely important" part.  *Russell*, 905 F.3d at 247 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)) (internal quotations omitted).

Nevertheless, a sheriff may qualify for quasi-judicial immunity when "charged with the duty of carrying out facially valid court orders[.]"  *Addlespurger v. Corbett*, 461 F. App'x 82, 85 (3d Cir. 2012) (citing *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 772-73 (3d Cir. 2000)). Specifically, actions taken pursuant to orders or writs from a Pennsylvania Court of Common Pleas can be protected by quasi-judicial immunity.  *See e.g., Tronetti*, 961 F.2d at 1084-85 (deciding that a person acted as an "arm of the court" when they acted pursuant to an Erie County Court of Common Pleas judicial order); *see also Addlespurger v. Corbett*, 2011 WL 3418975, at *11 (W.D. Pa. Aug. 1, 2011), *aff'd*, 461 F. App'x 82 (3d Cir. 2012) (finding "quasi-judicial immunity for all actions taken as part of the official functions of the Court of Common

Pleas" of Allegheny County).  The Sheriff argues he was acting as an "arm of the court" as the enforcement actions he did were authorized by a facially valid Writ from the Pennsylvania Court of Common Pleas, in other words, he was acting at the request of the Pennsylvania Court of Common Pleas.

When an individual fits into the third quasi-judicial immunity category, acting as an "arm of the court," the Third Circuit limits this immunity to (1) "the acts authorized by court order, i.e., to the execution of a court order, and not to the manner in which it is executed[,]" *Russell*, 905 F.3d at 250; (2) "an implicit caveat" in court orders "that the [individual] follow the Constitution in executing [orders]," *id*. (internal citations omitted); and (3) when an individual's acts are "measure[d] against the yardstick of that [individual's functions] . . . extend[ing] quasi-judicial immunity only to acts consistent with the appropriate exercise of [an individual's] functions." [2]  *Id*. at 251 (citing *Forrester v. White*, 484 U.S. 219, 219 (1988)) (internal quotations omitted).

The Sheriff is constrained by the third *Russell* limitation measuring an individual's acts against their function.  Quasi-judicial immunity is only extended to acts "consistent with the appropriate exercise of [an individual's] functions."  *Russell*, 905 F.3d at 251 (internal citations omitted).  In evaluating this limitation, the Third Circuit looks to "the effect that exposure to

---

[2] The first *Russell* limitation, that acts must be authorized by a court order, is not at issue here.  *Russell*, 905 F.3d at 250.  The Sheriff had a facially valid Writ from the Pennsylvania Court of Common Pleas.  As such, the first limitation does not stand in the way of the Sheriff's claim to quasi-judicial immunity.

The second *Russell* limitation, that acts must be in line with the Constitution, is also not at issue.  *Id*.  Automatic stays are not themselves rooted in a constitutional right.  *See e.g., In re Radogna*, 331 F. App'x 962, 964 (3d Cir. 2009) (treating an automatic stay violation and constitutional rights violation as two distinct inquires).  Although they may be implicated in the Constitution's Bankruptcy Clause, automatic stays originate from and are protected by the Bankruptcy Code.  *Compare* U.S. Const. art. I, § 8, cl. 4; *with* 11 U.S.C. § 362(a).  As such, the Sheriff violated an automatic stay, not a constitutional right, and he is therefore not deprived of quasi-judicial immunity by the second *Russell* limitation.

particular forms of liability would likely have on the appropriate exercise of those functions."
*Id*. (citing *Forrester*, 484 U.S. at 224) (internal quotations omitted).  The Sheriff served the
Notices on Toppin, violating the automatic stay.  The Sheriff argues that he is owed quasi-
judicial immunity because he did so pursuant to a facially valid writ.  But even though the
Sheriff was unquestionably "lawfully entrusted" with the Writ, his enforcement actions
inappropriately violated the automatic stay.  *Id*. (internal quotations omitted).  Also, the Sheriff
did so inappropriately under the Sheriff's own internal policy, as Toppin's witness at trial, Sean
Thornton, pointed out.  Thornton, the commander of the Sheriff's Civil Enforcement Unit,
testified that the Sheriff has a policy of stopping all legal action upon receiving a bankruptcy
petition notice.  As such, when the Sheriff served Toppin with the Notices after receiving notice
of Toppin's bankruptcy petition, the Sheriff's actions were contrary to his own policy.  By the
Bankruptcy Code standard for an automatic stay and the Sheriff's own internal policies, his
enforcement actions were an inappropriate exercise of his functions.  As the Bankruptcy Court
pointed out "*notwithstanding its facial validity* . . . [a]bsent [a waiver of the automatic stay], [the
Writ] could not be enforced.  Therefore, . . . the crux of the issue is whether enforcement at all
violated the stay[,]" which the Sheriff's actions did.  *In re Toppin*, 637 B.R. at 101 n.19
(emphasis original).  In short, the Sheriff's enforcement actions were not an appropriate exercise
of his judicially authorized functions, and so the quasi-judicial immunity that would otherwise be
his due in acting as an "arm of the court" does not apply here.

### C.  Ministerial Acts Exception

Post-petition, the Bankruptcy Code automatically stays most "enforcement, against the
debtor or against property of the estate[,]" while offering additional protections.  11 U.S.C.
§ 362.  However, within the well litigated automatic stay doctrine, a ministerial act is a common

law defense, recognized by most circuits, which excuses certain post-petition enforcement actions.  The Sheriff's next argument is that his actions to enforce the Writ were ministerial so as not to constitute a violation of the automatic stay.

Ministerial acts are those that are simple, routine, clerical, or automatic but "exclude[ actions] involving deliberation, discretion, or judicial involvement".  *In re Soares*, 107 F.3d 969, 974 (1st Cir. 1997) ("Such acts can usefully be visualized as the antithesis of judicial acts, inasmuch as the essence of a judicial act is the exercise of discretion or judgment"); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *In re Knightsbridge Dev. Co. Inc.*, 884 F.2d 145, 148 (4th Cir. 1989) (finding "ministerial function . . . condones only rote post-petition activity"); *In re Fillion*, 181 F.3d 859, 861 (7th Cir. 1999); *In re Pettit*, 217 F.3d 1072, 1080 (9th Cir. 2000) ("Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding."); *Roberts v. Comm'r*, 175 F.3d 889, 897 (11th Cir. 1999).  The purpose of the ministerial acts exception is to "honor [the automatic stay] principle because [it] comports precisely with the text of [S]ection 362(a)(1)" preventing enforcement and the exception "also facilitates the statute's due administration" by allowing for "essentially clerical" acts but still preventing those that would contravene the stay.  *In re Soares*, 107 F.3d at 975.

The Third Circuit has not explicitly adopted the ministerial acts exception.  Nevertheless, it has discussed actions that qualify as ministerial, such as delivering a deed which conveys legal title that is "routinely performed [and] does not affect the redemption rights of the parties."  *In re Connors*, 497 F.3d 314, 321 (3d Cir. 2007) (internal quotations omitted); *see also In re Chavannes*, 2014 WL 1917681, at *9 (Bankr. E.D. Pa. May 13, 2014) (applying the exception when "nothing is left to the exercise of the official's discretion or judgment, the resultant act is

14

ministerial"); *In re Solar Tr. of Am., LLC*, 2015 WL 1011548, at *3 (Bankr. D. Del. Jan. 12, 2015); *In re Pulcini*, 261 B.R. 836, 841 (Bankr. W.D. Pa. 2001).

The Sheriff argues that because his enforcement actions were pursuant to the Writ, they were taken pursuant to a valid court order and are ministerial.  But actions taken pursuant to a court order are not always ministerial—*e.g.* when they involve a party's redemption rights, discretion, or deliberation.  And, if they are not ministerial, then the exemption does not apply. *In re Connors*, 497 F.3d at 321; *In re Soares*, 107 F.3d at 974.  As Thornton testified, the Sheriff has a policy of stopping all legal action upon receiving a bankruptcy petition notice.  Thus, when the Sheriff made the determination to enforce the Writ and served Toppin with the Notices, he acted in the face of the limitations of the automatic stay and in contravention of his Office's own internal procedure.  As such, his actions were not clerical, rote, routine, or automatic.  They were discretionary and not ministerial.

New Jersey Bankruptcy Court Judge Winfield's decision in *In re Last* underscores why the Sheriff's acts were not ministerial.  She found acts were ministerial where a state court entered a post-petition judgment[3] against a debtor and the creditor gave a post-petition notice of that judgment to the debtor without demand for payment.  440 B.R. 642, 652 (Bankr. D.N.J. 2010).  In other words, the notice "made no demand for payment by the Debtor, and merely informed the Debtor's counsel of the action by the state court" which "indicat[ed] no intention to enforce the [state court's] order."  *Id*. at 652-53.  Both the debtor in *In re Last* and Toppin received post-petition notices.  Crucially however, the notices demanded different things.  The *In re Last* notice simply informed the debtor of the court's order, but made no demand on the

---

[3] The court first found that the state court simply entered a judgment which was "merely a formality" rather than making a substantive determination, and therefore ministerial.  440 B.R. at 653.

debtor's property or for payment.  *Id.* at 652.  Unlike *In re Last*, the Sheriff's Notices here

instructed Toppin to leave the Property, or face eviction.  Also dissimilar are the effect of the

notices.  In *In re Last*, the notice was not deemed to be enforcement at all.  *Id*. at 653.  Yet here,

the Notices were by all accounts post-petition enforcement actions.  The Notices had the effect of

enforcing a post-petition writ, telling Toppin he must leave the Property or be evicted, rather

than a simple, clerical task of informing Toppin that the Writ existed.  As such, the Sheriff's

actions are not ministerial, unlike those in *In re Last*, and so do not excuse the stay violation.

　　In arguing that a ministerial exception should apply, the Sheriff draws the Court's

attention to *In re Williams*, in which a bankruptcy court found a Pennsylvania landlord's post-

petition request for an order of possession, which a magisterial district court granted, did not

violate an automatic stay.  *In re Williams*, 371 B.R. 102, 111 (Bankr. E.D. Pa. 2007).  Its

decision was premised on the Pennsylvania Landlord Tenant Act, which requires a state court to

issue an order for possession and requires the sheriff execute the order.  *Id*.  The statute in

*Williams* does so by stating the order and execution "shall" take place.  *Id*.  Thus, the bankruptcy

court in *Williams* found the statute designated certain actions as ministerial.[4]  *Id*.

　　The Sheriff argues the same logic applies here.  Specifically, the Sheriff contends that,

like the Pennsylvania Landlord Tenant Act in *Williams*, the Sheriff acted pursuant to a statute

which states: "The sheriff . . . shall serve process and execute orders directed to him pursuant to

law."  42 Pa. Cons. Stat. § 2921.  However, there are two crucial distinctions.  First, the statute in

*Williams* was the source of the cause of action in the case and provided for a discrete action

---

[4] The Bankruptcy Court "respectfully disagrees with the *Williams*['] decision's reasoning[,]" finding instead that an automatic stay "changes what is or is not compelled[.]"  *In re Toppin*, 637 B.R. at 102.  This, however, is an overstatement.  In *Williams*, the relevant "shall" originated not in a valid court order, but rather in rules effectuating the Pennsylvania Landlord Tenant Act.  *In re Williams*, 371 B.R. at 111.  It proves too much to read *Williams*, as the Sheriff argues, as holding nearly any use of the word "shall" does away with important automatic stay protections. Yet, it is also an overstatement to completely dismiss the statutory analysis in *Williams* which carves out a specific instance of a ministerial act.  Therefore, *Williams* is good law, it is just not directly applicable to this case.

specifically applicable to the dispute at hand. *In re Williams*, 371 B.R. at 111. In this case however, the statute only generally provides for the "[p]owers and duties of the sheriff[.]" 42 Pa. Cons. Stat. § 2921. Second, the statute cited by the Sheriff specifically limits a sheriff's power and duty to execute orders to those that are "directed to him pursuant to law[.]" *Id*. Here the Sheriff's actions in serving the Notices were not directed pursuant to law. To the contrary, they were in violation of the Bankruptcy Code's Automatic Stay.

### D.  Damages

#### i.    *Lack of Procedural Hinderance to Proving Emotional Distress*

Turning now to Toppin's concerns with decisions made at trial. As a preliminary issue, he argues that the Bankruptcy Court erred by designing trial procedures which prevented him from properly presenting his case. Specifically, because the trial was held virtually due to the COVID-19 pandemic, Toppin says the judge was unable to see and hear him emote (which he says, given his disabilities, is his best way of communicating) while his caretaker and nephew who lived with him at the Property, Whyte, testified about Toppin's distress on receiving the notices. But, there was no objection to this procedure at trial and, as such, it is waived. *United States v. Baylin*, 696 F.2d 1030, 1036 (3d Cir. 1982) ("During trial, the court and opposing parties are justified in expecting litigants to raise their objections at the procedurally correct moment, and in assuming that objections not so raised have been waived."); *see also Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) ("The waiver rule serves two purposes: ensuring that the necessary evidentiary development occurs in the trial court, and preventing surprise to the parties when a case is decided on some basis on which they have not presented argument." (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). Therefore, this concern, because it was addressed by counsel at trial and is raised for the first time on appeal,

will not be considered.  *Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat. Bank of Evans City*, 611 F.2d 465, 470 (3d Cir. 1979).

### ii.    *Emotional Damages*

And now, we get to the crux of this matter: as stated by Toppin, the question is whether the Bankruptcy Court erred in finding Toppin failed to both "demonstrate, as required by the statute, that [he (a)] suffered 'actual' emotional harm [(b)] caused by the willful stay violation". *In re Lansaw*, 853 F.3d at 670.

### a.   Toppin's Burden and Failure to Prove Emotional Damages

The evidence presented at trial was that the Notices were (albeit in violation of the automatic stay) served by regular procedure: the Sheriff's representative knocked on the door, taped the Notices to the door, left copies at the Property, and mailed additional copies to the Property.  Toppin was never evicted from the Property nor was he deprived of his possessions. Toppin was never threatened, indeed the record shows no evidence that Toppin ever even spoke to the Sheriff's representative.  He could—at trial—have proved emotional distress through "corroborating medical" or other evidence.  *Id.* at 669 (citing *Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 36 (3d Cir. 1994)).  But he did not.  The only evidence of how Toppin felt about all of this came from Whyte, who testified that after the Notices were served he observed Toppin suffering from insomnia, pacing excessively at night, suffering from painful headaches, losing his appetite, feeling anxious, having a sense of dread, and generally losing his enjoyment in life. But, on cross examination, Whyte acknowledged that Toppin did not fully understand the Notices.[5]

---

[5] On appeal, Toppin challenges the Bankruptcy Court's determination of Whyte's credibility, claiming the court did not find him credible, improperly subordinating the weight of his testimony.  But, the Bankruptcy Court did not find Whyte lacking in credibility.  Rather, it found Whyte's testimony alone was insufficient to support an award for

In certain circumstances, "credible testimony alone can be sufficient to support an award of emotional-distress damages[,]" but only if such evidence sufficiently illustrates that the stay violation was patently egregious. *Id*. But Whyte's testimony did not rise to that level. *See e.g., In re Wagner*, 74 B.R. 898, 900-01 (Bankr. E.D. Pa. 1987) (finding patently egregious behavior where a creditor entered the debtor's house, shut off lights, and pretended to hold a gun and "screamed, 'I'm not playing, I'm not playing, next time I'm going to blow your brains out, bring a gun and I'll blow your brains out.'"); *In re Johnson*, 601 B.R. 365, 376 (Bankr. E.D. Pa. 2019) (finding testimony alone established that actions were patently egregious when the creditor "repeatedly enlist[ed] law enforcement to cause the [d]ebtor's wrongful ejectment from the Property" after debtor filed for bankruptcy, the automatic stay was in place, and the creditor "thr[ew] away substantially all of the Debtor's personal property and attempt[ed] to interfere with his electrical service.").

Toppin argues that the Bankruptcy Court's decision to deny emotional damages was wrong for a number of other reasons including because the Sheriff failed to present contradictory evidence challenging Whyte's testimony. But the Sheriff was required to do no such thing. Toppin, not the Sheriff, bears the burden in this instance. *In re Lansaw*, 853 F.3d at 670. Toppin suggests that because his disabilities prevented him from testifying on his own behalf the Bankruptcy Court's denial of emotional distress damages should be overturned. But the burden does not shift, even if a party's disability poses challenges other debtors do not face.[6]

Toppin additionally contends that he has established his emotional distress because, he

---

emotional distress.

[6] Toppin also argues any reasonable person would be emotionally distressed if they were evicted from their home, which Toppin was not. The relevant inquiry is what Toppin did in fact experience.

claims, the threshold to establish emotional distress is low, citing to *In re Odom*.  However, the court in *In re Odom* awarded emotional distress damages not by application of a low threshold to evidence of distress, but because of the "circumstances surrounding" the violation—namely the Philadelphia Parking Authority's two-time, post-petition impoundment of the debtor's car.  *In re Odom*, 570 B.R. 718, 724 (Bankr. E.D. Pa. 2017).

In short, none of Toppin's arguments warrant a finding that the Bankruptcy Judge erred in concluding that Toppin failed at trial to adequately establish emotional damages.

### iii.   Actual Damages

Quite apart from emotional damages, Toppin seeks actual damages for out-of-pocket costs for travel to his attorney's office and lost wages.  The Bankruptcy Court declined to award damages because Toppin did not present at trial evidence of these expenses, exact amount amounts, or further explanation.[7]  While debtors "need not employ intellectually sophisticated methodologies to prove the amount of actual damages, the damages requested must be supported by concrete evidence and proven with reasonable certainty, as mere speculation, guess, or conjecture will not suffice."  *In re Johnson*, 601 B.R. at 379.  Absent such evidence, the Bankruptcy Court did not err in denying Toppin's request for actual damages.

### iv.   Attorney's Fees

Toppin also maintains that he should be awarded attorney's fees.  The Bankruptcy Court found disagreement within the Third Circuit as to whether attorney's fees may be awarded to

---

[7] In his Reply Brief, Toppin contends he offered further information about his actual damages in the appellate record.  But these arguments were not fully discussed at trial nor are they in his opening or reply briefs on appeal.  As such, they deemed are waived.  *Matter of Am. Biomaterials Corp.*, 954 F.2d 919, 927–28 (3d Cir. 1992) ("We generally refuse to consider issues on appeal that were not raised in the lower courts.  This general rule applies with added force where the timely raising of the issue would have permitted the parties to develop a factual record.");  *Laborers' Int'l Union of N. Am., AFL-CIO*, 26 F.3d at 398 (3d Cir. 1994).

debtors in bankruptcy suits where there is no other recoverable injury, but ultimately decided attorney's fees are conditional on the debtor actually "being injured by a willful stay violation." *In re Toppin*, 637 B.R. at 113.  Section 362(k) of the Bankruptcy Code, defining recovery for automatic stays, states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney['s] fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).  The vast majority of recent cases in the Third Circuit dealing with this issue have focused on the text of Section 362(k) and held, as the Bankruptcy Court did, that the Bankruptcy Code allows for attorney's fees only when a debtor is "injured"—in other words, an injury is a "condition precedent" to an award of attorney's fees.  *City of Phila. v. Walker*, 2015 WL 7428501, at *3 (E.D. Pa. Nov. 23, 2015) ("Section 362(k)(1) makes clear that injury is a condition precedent to any request for actual damages[.]"); *see also Cal. Coast Univ. v. Aleckna*, 2019 WL 4072405, at *6 (M.D. Pa. Aug. 28, 2019), *aff'd sub nom*. *In re Aleckna*, 13 F.4th 337 (3d Cir. 2021); *Rosas v. Monroe Cnty. Tax Claim Bureau*, 323 B.R. 893, 901 (Bankr. M.D. Pa. 2004); *In re Whitt*, 79 B.R. 611, 615-166 (Bankr. E.D. Pa. 1987) ("[T]he violation of the stay, by itself, does not support an award of damages and attorney's fees.  Thus, . . . no damages will be awarded as a result of the violation of the automatic stay. . . if there was no evidence that the debtor suffered any harm.") (citing *In re Wagner*, 74 B.R. at 902, 905) (internal citations and quotations omitted); *In re Micro Mktg. Int'l, Inc.*, 150 B.R. 573, 575 (Bankr. M.D. Pa. 1992).  These cases emphasize Section 362(k)'s text that awards damages to "an individual *injured*" so that attorney's fees are awarded only if "damages [] repay actual losses."  *Walker*, 2015 WL 7428501, at *3 (emphasizing Section 362(k)'s use of the word injured rather than, for instance, just stating a person whose stay is violated) (emphasis original); *In re Dean*, 490 B.R. 662, 667

21

(Bankr. M.D. Pa. 2013).

Noting the plain language of the statute this Court agrees that actual injury is a condition precedent for attorney's fees under Section 362(k).  In this instance, because the evidence is that Toppin has suffered no legally cognizable injury, he is not owed attorney's fees.

**IV.    CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's decision and order of November 8, 2021 shall be affirmed.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**